# EXHIBIT 4

| | | | |
|---|---|---|---|
| TRANSOURCE MARYLAND, LLC | * | IN THE | |
| Petitioner | * | CIRCUIT COURT | |
| Vs. | * | FOR | |
| MARY BETH SCOTT, *et al.* | * | HARFORD COUNTY | |
| Respondents | * | CASE NO.  12-C-18-000549 | |

* * * * * * * * * * *

## MEMORANDUM OPINION

This case comes before the court on Transource Maryland, LLC's Petition for Entry Upon Land to Conduct Surveys Pursuant to Real Property Article Section 12-111 and the Respondent Mary Beth Scott and Daniel John Scott's Motion to Dismiss.  Including this case, there are 12 cases in which the Petitioner is seeking the same relief.[1]  In the interest of judicial economy, the cases have been consolidated as the essence of the arguments of Petitioner and the Respondents in each case is similar.[2]  Therefore, this opinion will apply to all 12 cases.

## FACTUAL AND PROCEDURAL BACKGROUND

The Petitioner Transource Maryland, LLC (hereinafter "the Petitioner" or "Transource") is a wholly owned Maryland subsidiary of Transource Energy that was created for the purpose of constructing, owning, operating and maintaining interstate electric transmission facilities in Maryland.

On February 27, 2018, the Petitioner filed the 12 Petitions requesting relief.  It contends that the electric transmission line that it wishes to construct will cross above private properties and that they have been unsuccessful in their efforts to obtain the Respondent property owners' consent to access their properties to conduct field surveys and obtain information relating to the acquisition of property and for the construction of the transmission line.  Therefore, Petitioner

---

[1] 12-C-18-000542, Curtis Darrel Comer, *et al.*
  12-C-18-000543, Curtis Darrel Comer, *et al.*
  12-C-18-000544, Curtis Darrel Comer, *et al.*
  12-C-18-000545, Harriett S. Crowl
  12-C-18-000546, Jody Lee Edwards, *et al.*
  12-C-18-000547, Lee S. Magness, Jr., *et al.*
  12-C-18-000548, John W. Miller, *et al.*
  12-C-18-000549, Mary Beth Scott, *et al.*
  12-C-18-000550, Barron T. Shaw
  12-C-18-000551, Todd Ray Shenk
  12-C-18-000552, Tony D. Tamer, *et al.*
  12-C-18-000553, Travis Judd Szerensits, *et al.*

[2] The Respondents in Case Nos. 12-C-18-000546, 548, and 553 did not file motions to dismiss.

has filed this request to access the property and to conduct the survey pursuant to Md. Code Ann., Real Prop. Art. §12-111(a).

Transource states that it is developing an Independence Energy Connection Project, which includes an overhead electric transmission project designed to alleviate transmission congestion constraints and increase consumer access to more affordable power in the region. They are working with PJM Interconnection, LLC, a regional transmission organization responsible for managing the high voltage electricity grid for 13 states. PJM Interconnection LLC has identified concerns with the grid for delivery of electricity to the region and proposed a solution to address them.

With respect to those concerns and the proposed solution, on December 27, 2017, Petitioner filed an application with the Maryland Public Service Commission (hereinafter "Commission") for a Certificate of Public Convenience and Necessity (hereinafter "CPCN" or "certificate") pursuant to Md. Code Ann., Public Util. Art. §7-207 for authorization for the construction of the Independence Energy Connection Project through Washington and Harford Counties.

The Petitioner is seeking to access the properties for the purpose of making surveys and obtaining information relating to (1) the acquisition by eminent domain of an easement for the construction of a high voltage transmission line through parts of Maryland and Pennsylvania; and (2) the suitability of each of the individual properties for construction and operation of the transmission line. Petitioner contends that it requires access by April 1, 2018, to ensure that it can complete its permit applications and receive the required approvals to begin construction in 2019 and place the Independence Energy Connection Project in service by June 2, 2020.

On March 1, 2018, Respondents filed a Motion for Leave to Answer and Respond[3] arguing, among other things, that Transource does not presently have the power of eminent domain and only will have that power if the Commission grants the Petitioner a CPCN under §7-207. Specifically, Respondents' argument is that procedurally, the Petitioner is not eligible for a CPCN and cannot exercise the power of eminent domain, and that this court lacks subject matter jurisdiction to determine whether Petitioner may enter onto the Respondents' property until after the Commission issues the CPCN. The Respondents also contend that Petitioner has known for "several months" that Respondents were denying access and that the "immediateness" of the need to access the property is due to the inaction of Petitioner.

On March 2, 2018, Petitioner filed an opposition to the motion for leave again contending that §12-111(a) cannot be reasonably interpreted to require a condemning authority to satisfy all conditions to exercise the right of eminent domain. On March 20, 2018, the Court granted the Motion for Leave to Answer.

On March 5, 2018, Respondents filed a Motion to Dismiss. They allege that Petitioner lacks standing to seek relief under Title 12 because it is not a body corporate or body politic pursuant to §12-111. Alternatively Respondents argue that Petitioner failed to state a request

---

[3] Although the procedural history recited herein relates to Case No. 12-C-18-00549, the factual and legal underpinnings in each case is similar.

upon which relief can be granted, arguing that Petitioner states only a conclusory statement that it is a body corporate of the State without providing support. The Petitioner filed its opposition to that motion on March 23, 2018.

## ANALYSIS

There are several issues for this court to resolve: (1) whether a hearing on the merits is required before this court may grant the Petitioner's request; (2) whether this court has subject matter jurisdiction to authorize a non-corporate entity to enter onto private property to exercise the power of eminent domain; and (3) whether the Petitioner is entitled to relief before this court without the Maryland Public Service Commission first granting it a CPCN. The latter two issues will be combined for purposes of the analysis below.

> **I.   This Court is not required to hold a hearing on the merits before granting the Petition.**

This court agrees with the Petitioner that a hearing on the merits is not required to consider the petitions filed in accordance with §12-111. The Petitioner cites <u>King v. Mayor and Council of Rockville</u>, 52 Md. App. 113, 115, 447 A.2d 118, 119 (1982) which held a permitted party may enter onto the land and make said findings under §12-111 without a hearing. In that case, agents of Rockville and Montgomery County were permitted to enter upon appellants' property pursuant to §12-111(b) for purposes of making a survey. On appeal the property owners argued that the circuit court erred and deprived the appellants of due process when it signed an *ex parte* order permitting entry upon the appellants' land before the petition requesting the order was served upon the appellants or before the appellants were given an opportunity to respond to the petition.

The Court found the following:

> It seems reasonable to suppose that the Legislature could have devised a mechanism whereby property owners could be heard prior to entry under §12-111 if they so intended. Since the Legislature has not provided such an avenue, it is a logical interpretation of the statute that it intended the governmental agencies to enter under § 12-111(b) without giving the property owner a means of protesting. We reiterate that this does not mean the nature of the work contemplated can exceed what is permissible under the statute.

<u>Id.</u>, 52 Md. App. at 123, 447 A.2d at 123.

It is not a violation of due process for this court to proceed without a hearing and the Respondents have presented no persuasive information to show otherwise. Therefore, this Court may, and will issue its ruling without a hearing.

> **II.   This Court may grant the Petition before the Maryland Public Service Commission issues the Petitioner a Certificate of Public Convenience and Necessity.**

Petitioner is seeking this order because the Respondents have declined to permit Transource entry upon their respective properties, claiming that Transource is not a public utility. Specifically, the Petitioner argues that, pursuant to Md. Code Ann., Pub. Util. Art. §7-207(b)(3)(iii) and (v), Transource is a public utility and, subject to the issuance of a CPCN by the Maryland Public Service Commission, it will have the authority to exercise eminent domain to construct high voltage transmission lines.

In order to resolve the questions presented in this case, it is necessary to review the statute in question. As the Court of Appeals has said on numerous occasions, the cardinal rule of statutory interpretation is to ascertain and carry out the true intention of the legislature. In interpreting statutes, courts begin by looking at the plain language of the statute and attaching to the words their ordinary and natural meanings. Gardner v. State, 344 Md. 642, 689 A.2d 610 (1997). When the plain meaning of the language is clear, unambiguous and consistent with the purposes of both the initial legislation and the specific purpose of their provision being interpreted, then any judicial inquiry must end. Phillip Electronics v. Wright, 348 Md. 209, 703 A.2d 150 (1997). When the Legislature fails to define a particular statutory term, we first consider the plain meaning of the term, and give that term its "ordinary and natural meaning without resort to subtle or forced interpretations...." Md.-Nat'l Capital Park & Planning Comm'n v. Dep't of Assessments & Taxation, 110 Md. App. 677, 689, 678 A.2d 602 (1996), aff'd, 348 Md. 2, 702 A.2d 690 (1997).

Further, the court is obligated to construe the statute as a whole, so that all provisions are considered together and, to the extent possible, reconciled and harmonized. Curran v. Price, 334 Md. 149, 172, 638 A.2d 93 (1994); State v. Crescent Cities Jaycees Foundation, Inc., 330 Md. 460, 468, 624 A.2d 955 (1993); Heartwood 88, Inc. v. Montgomery County, 156 Md. App. 333, 359, 846 A.2d 1096 (2004). Where appropriate, the court is to interpret a provision in the context of the entire statutory scheme of which it is a part. Gordon Family Partnership v. Gar On Jer, 348 Md. 129, 138, 702 A.2d 753 (1997); see Knight v. Princess Builders, Inc., 162 Md. App. 526, 531, 875 A.2d 771 (2005). Therefore, if a provision "is part of a general statutory scheme or system, the sections must be read together to ascertain the true intention of the Legislature." Mazor v. State Dep't. of Correction, 279 Md. 355, 361, 369 A.2d 82 (1977). Maryland-Nat. Capital Park And Planning Comm'n v. Anderson, 164 Md. App. 540, 570, 884 A.2d 157, 174 (2005), aff'd sub nom. Maryland-Nat'l Capital Park & Planning Comm'n v. Anderson, 395 Md. 172, 909 A.2d 694 (2006). When reasonably possible the court shall read a statute so that no word, phrase, clause, or sentence is rendered "superfluous or redundant." Blondell v. Baltimore City Police Dep't, 341 Md. 680, 691, 672 A.2d 639 (1996); see also Eng'g Mgmt. Servs. v. Md. State Highway Admin., 375 Md. 211, 224, 825 A.2d 966 (2003); Mayor & Council of Rockville v. Rylyns Enters., 372 Md. 514, 551, 814 A.2d 469 (2002).

In construing a statute, the court should neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning. Addison v. Lochearn Nursing Home, LLC, 411 Md. 251, 276, 983 A.2d 138, 153 (2009). Even under the plain meaning rule we do not ignore the Legislature's purpose if it is readily known. State v. Pagano, 341 Md. 129, 133, 669 A.2d 1339 (1996). In this regard, "we may ... consider the particular problem or problems the legislature was addressing, and the objectives it sought to attain." Sinai Hosp. of Baltimore, Inc. v. Department of Employment & Training, 309 Md. 28,

40, 522 A.2d 382 (1987); *see also* Romm v. Flax, 340 Md. 690, 693, 668 A.2d 1 (1995); Maryland-Nat. Capital Park And Planning Comm'n v. Anderson, 164 Md. App. 540, 569–70, 884 A.2d 157, 174 (2005), aff'd sub nom. Maryland-Nat'l Capital Park & Planning Comm'n v. Anderson, 395 Md. 172, 909 A.2d 694 (2006).  To be sure, we "avoid construing a statute in a way which would lead to absurd results." Blandon v. State, 304 Md. 316, 319, 498 A.2d 1195 (1985). Nor may we read language into the statute that is not expressly stated or clearly implied, or embellish a statute to expand its meaning. Department of Econ. & Employment Dev. v. Taylor, 108 Md. App. 250, 277–78, 671 A.2d 523 (1996), *aff'd,* 344 Md. 687, 690 A.2d 508 (1997); Graves v. State, 364 Md. 329, 351, 772 A.2d 1225 (2001). To effectuate the Legislature's intent, we may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense. Chesapeake Charter, Inc. v. Anne Arundel Cty. Bd. of Educ., 358 Md. 129, 747 A.2d 625 (2000).  Addison v. Lochearn Nursing Home, LLC, 411 Md. 251, 276, 983 A.2d 138, 153 (2009).

Md. Code Ann., Pub. Util. Art. §7-207(b)(3)(iii) to (v) provides as follows:

> (3)(i) Except as provided in paragraph (4) of this subsection, **unless a certificate of public convenience and necessity for the construction is first obtained from the Commission, a person may not begin construction of an overhead transmission line** that is designed to carry a voltage in excess of 69,000 volts or exercise a right of condemnation with the construction.
>
> (ii) For construction related to an existing overhead transmission line, the Commission may waive the requirement in subparagraph (i) of this paragraph for good cause.
>
> (iii) Notwithstanding subparagraph (i) of this paragraph and subject to subparagraph (iv) of this paragraph, the Commission may issue a certificate of public convenience and necessity for the construction of an overhead transmission line only if the applicant for the certificate of public convenience and necessity:
>   1. is an electric company; or
>   2. is or, on the start of commercial operation of the overhead transmission line, will be subject to regulation as a public utility by an officer or an agency of the United States.
>
> (iv) The Commission may not issue a certificate of public convenience and necessity for the construction of an overhead transmission line in the electric distribution service territory of an electric company to an applicant other than an electric company if:
>   1. the overhead transmission line is to be located solely within the electric distribution service territory of that electric company; and
>   2. the cost of the overhead transmission line is to be paid solely by that electric company and its ratepayers.

> (v) 1. This subparagraph applies to the construction of an overhead transmission line for which a certificate of public convenience and necessity is required under this section.
> 2. **On issuance of a certificate of public convenience and necessity for the construction of an overhead transmission line, a person may acquire by condemnation, in accordance with Title 12 of the Real Property Article, any property or right necessary for the construction or maintenance of the transmission line.**

(Emphasis added.)

Nothing in §7-207(b)(3), however, requires that the exercise eminent domain is a prerequisite to entry onto the Respondents' property to conduct a study of the feasibility of *constructing* overhead transmission lines. The exercise of eminent domain is limited to an entity that obtains a CPCN, but as outlined below that authority is not a prerequisite to *conducting the study* Petitioner seeks.

Petitioner argues that Transource MD, LLC is a "public utility" that is only seeking pursuant to §12-111(a) limited entry onto private property to conduct a survey or gather information for the acquisition for future public use—necessary action precedent to determining whether to exercise the right of eminent domain. Specifically, §12-111(a) provides the following:

> (a) Civil engineers, land surveyors, real estate appraisers, and their assistants acting on behalf of the State or of any of its instrumentalities **or any body politic or corporate having the power of eminent domain** after every real and *bona fide* effort to notify the owner or occupant in writing with respect to the proposed entry may:
> (1) Enter on any private land to make surveys, run lines or levels, or obtain information relating to the acquisition or future public use of the property or for any governmental report, undertaking, or improvement;
> (2) Set stakes, markers, monuments, or other suitable landmarks or reference points where necessary; and
> (3) Enter on any private land and perform any function necessary to appraise the property.
>
> (b) If any civil engineer, surveyor, real estate appraiser, or any of their assistants is refused permission to enter or remain on any private land for the purposes set out in subsection (a) of this section, the person, the State, its instrumentality, or the body politic or corporate on whose behalf the person is acting may apply to a law court of the county where the property, or any part of it, is located for an order directing that the person be permitted to enter on and remain on the land to the extent necessary to carry out the purposes authorized by this section.

(Emphasis added.)

Here, Petitioner's request is subject to a two-part analysis. Part one is whether Transource is an entity that is a public service utility. Although factually distinguishable, <u>C & P v. Maryland/Delaware Cable</u>, 310 Md. 553, 562-563 (1987) is instructive. There, the Court pointed out that "the PSC has the power to regulate public *services*…" those provided for the benefit of the entire public, not just those that benefit only a few private parties. In addition, the Public Utilities Article defines a public service company to include an electric company. Md. Code Ann., Pub. Util. §1-101(x). Therefore, Transource MD, LLC is correct that they are a public utility because, as part of their parent company, Transource Energy, they provide electricity for the public use. There is no definition otherwise in the Public Utilities Article that defines a "utility" because electricity can be provided to the public by either a governmental entity <u>or</u> a private entity that has authority from the government to do so subject to regulation by the Commission. <u>Id.</u> at 562.

The second part of the analysis is whether a limited liability company falls within the scope of the language in Md. Code Ann., Real Prop. Art., §12-111(a) "any body politic or *corporate*" that may conduct a study or gather information. The Respondents' reading of "corporate" is too narrow and is contrary to the legislative history of the statute. *See* Exhibit 1 attached to Petitioner's Opposition to Motion to Dismiss. It is clear from the legislative history that the original statute limited this authority to the government until later amendments added "any body politic or corporate." The Maryland General Assembly did not intend to exclude limited liability companies from this authority for two reasons: no such legal entity existed in 1963 when the statute was amended to include "corporate" entities; and there are private entities that would have to exercise the right of eminent domain for the public good (e.g., electric companies, telephone companies, etc.).

The Respondents' argument that the definitions of corporation and non-corporation (including limited liability corporation) in the Corporations and Associations Article is not persuasive. It is leads to an unreasonable and illogical result that conflicts with the plain reading and legislative history of the amendments that added "corporate" to §12-111(a). The illogical result is that the Commission already could have denied Transource MD, LLC's application if they are not eligible to file an application and the Commission has not done so. Also, even if the applicant must be a corporation as defined by the Corporations and Associations Article, the application could be amended to substitute Transource Energy as the applicant. This, however, puts form over substance and would be inconsistent with common sense. *See* <u>Chesapeake Charter, Inc. v. Anne Arundel Cty. Bd. of Educ.</u>, 358 Md. at 135. Courts should "avoid construing a statute in a way which would lead to absurd results." *See* <u>Blandon v. State</u>, 304 Md. at 319. Hence, this court finds that the Respondents' interpretation is strained.

For these reasons, this court has subject matter jurisdiction to permit Transource to enter onto the Respondents' property to conduct a study or to gather information pursuant to §12-111(a). And, the Petitioner has stated a claim upon which relief may be granted.

As to the second issue—whether the Commission must issue a CPCN before Transource can enter onto the Respondents' property to conduct a study or to gather information pursuant to §12-111(a), the Petitioner argues that a reading of the statute to require a CPCN issued pursuant to §7-207(b)(3) before accessing property under Title 12, would render the CPCN obsolete because the Public Service Commission requires Petitioner to obtain information necessary for

the approval of the project and for the public need.  Particularly, Petitioner asserts that it was required by the Public Service Commission to survey for bog turtles, "a federally threatened and state endangered species."

Respondents' reading that Transource may enter onto property only after a CPCN is issued is contrary to the plain reading of the statute.  Section 7-207(b) is applicable to the determination of construction of an overhead transmission line.  The Commission awards CPCNs, but only upon a showing that the property is suitable for construction.  Section 7-207 gives the Commission the authority to take <u>final action</u> on a certificate *only after due consideration of* the factors enumerated in subsection (e)(2).  It provides,

> (e) The Commission shall take final action on an application for a certificate of public convenience and necessity only after due consideration of:
>> (1) the recommendation of the governing body of each county or municipal corporation in which any portion of the construction of the generating station, overhead transmission line, or qualified generator lead line is proposed to be located;
>> **(2) the effect of the generating station, overhead transmission line, or qualified generator lead line on:**
>>> (i) the stability and reliability of the electric system;
>>> (ii) economics;
>>> (iii) esthetics;
>>> (iv) historic sites;
>>> (v) aviation safety as determined by the Maryland Aviation Administration and the administrator of the Federal Aviation Administration;
>>> (vi) when applicable, air and water pollution; and
>>> (vii) the availability of means for the required timely disposal of wastes produced by any generating station; and

(Emphasis added.)

These factors must be read in conjunction with the reasons for entry onto private property permitted pursuant to §12-111(a).  No other reading makes sense.  In other words, §7-207(b) contemplates the Commission making its decision after first obtaining <u>all</u> information pertinent to the award of a certificate that could lead to a taking by eminent domain.  And, in construing legislative intent, the Court of Appeals has held "we may consider the particular problem or problems the legislature was addressing, and the objectives it sought to attain."  *See* <u>Sinai Hosp. of Baltimore, Inc. v. Department of Employment & Training</u>, 309 Md. at 40.

In the case *sub judice*, the Commission is not scheduled to decide whether to issue the certificates until after a hearing in February 2019.  Waiting until after that time for a study or gathering of information to be undertaken pursuant to §12-111(a) <u>after</u> the Commission has awarded a certificate could potentially invalidate the certificate.  The parties deserve finality, but

only after the Commission considers *all* applicable information, including those factors enumerated in §7-207 (e)(2). There is no dispute that the Commission is not the entity that will conduct the study. Although the Respondents contend that only a corporate entity may undertake the study, Transource MD, LLC is such an entity as outlined above. Moreover, in the event of damage to the property, § 12-111(c) provides a remedy for damage to or destruction of the property. For these reasons, this court finds that a CPCN is not required to be issued before the Petitioner may access the Respondents' property to conduct a study to determine the suitability of constructing overhead transmission lines.

## **CONCLUSION**

For reasons set forth above, Transource MD, LLC's Petition for Entry Upon Land to Conduct Surveys Pursuant to Real Property Article Section 12-111 is granted and the Respondents' motions to dismiss is denied. A separate Order consistent with this opinion shall be entered.

_____                                          _____
**DATE**                                                                                        **ANGELA M. EAVES, JUDGE**


cc:     Kurt J. Fischer, Esq.
        Venable LLP
        210 W. Pennsylvania Ave., Suite 500
        Towson, MD 21204

        Christine E. White, Esq.
        Venable LLP
        750 E. Pratt Street, Suite 900
        Baltimore, Maryland 21201

        James B. Rutledge, Esq.
        Rutledge & Aitken, LLC
        P.O. Box 395
        14246 Jarrettsville Pike
        Phoenix, MD 21131

        Charles D. MacLeod, Esq.
        Patrick W. Thomas
        MacLeod Law Group LLC
        120 Speer Road, Suite 1
        Chestertown, MD 21620