## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **PSEG RENEWABLE TRANSMISSION, LLC** | |
| *Petitioner,* | |
| v. | **Civil Action No.** 1:25-cv-01235 |
| **ARENTZ FAMILY, LP, *et al.*,** | |
| *Respondents.* | |

### RESPONDENTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Respectfully submitted,

*/s/ Harris W. Eisenstein*
Harris W. Eisenstein (Fed. Bar No. 29694)
David M. Wyand (Fed. Bar No. 23413)
Lauren M. McLarney (Fed. Bar No. 20982)
Rosenberg Martin Greenberg, LLP
25 S. Charles Street 21st Floor
Baltimore, Maryland 21201
Phone: (410) 727-6600
Fax: (410) 727-1115
heisenstein@rosenbergmartin.com
dwyand@rosenbergmatin.com
lmclarney@rosenbergmartin.com

*Attorneys for Respondents*

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL BACKGROUND........................................................................................2

III. LEGAL STANDARD ..................................................................................................4

IV. ARGUMENT ...............................................................................................................4

    A.    PSEG-RT Failed to State a Claim Under Section 12-111 of the Real Property Article of the Maryland Code Because PSEG-RT Does Not Have the Power of Eminent Domain...........................................................................................................................4

        i.    Based on the plain language of RP § 12-111 and PU § 7-207, PSEG-RT has no pre-condemnation access authority. ..........5

        ii.    PSEG-RT has admitted that RP § 12-111 does not permit geotechnical surveys. ............................................................13

        iii.    PSEG-RT is not an agent of PPRP, DNR, or any other State agency. ...............................................................................16

        iv.    Under RP §12-111, PSEG-RT has not made "every real and bona fide effort to notify the owner or occupant in writing with respect to the proposed entry."......................................17

    B.    This Court Should Decline to Exercise Jurisdiction Because PSEG-RT Asks This Court To Decide The Same Issues That Are Pending Before The PSC And Exclusively Regulated By The State, and PSEG-RT Failed To Exhaust Those Special Administrative Remedies.................................................................................................................18

        i.    *Burford* abstention should apply here, because exercising federal jurisdiction over PSEG-RT's claim will usurp the PSC's administrative process. ..............................................19

        ii.    PSEG-RT failed to exhaust the PSC's special administrative remedies. ....................................................................24

    C.    This Case Should Also Be Dismissed For Failure to Join A Necessary Party Under Fed. R. Civ. P. 12(b)(7).......................................................................................25

V. CONCLUSION ...........................................................................................................30

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama Pub. Serv. Comm'n v. S. Ry. Co.*,
  341 U.S. 341 (1951)................................................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................4

*Barr v. Atl. Coast Pipeline, LLC*,
  295 Va. 522, 815 S.E.2d 783 (2018)......................................................10

*Bath Mem'l Hosp. v. Maine Health Care Fin. Comm'n*,
  853 F.2d 1007 (1st Cir.1988).................................................................19

*Bd. of Cnty. Commissioners of Washington Cnty. v. Perennial Solar, LLC*,
  464 Md. 610, 212 A.3d 868 (2019) ........................................................24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................4

*Board of Governors, FRS v. Dimension Financial Corp.*,
  474 U.S. 361 (1986)................................................................................9

*Broadway Servs., Inc. v. Comptroller of Maryland*,
  478 Md. 200 (2022) ...............................................................................16

*Burford v. Sun Oil Co.*,
  319 U.S. 315 (1943)....................................................................... *passim*

*Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*,
  636 F.3d 101 (4th Cir. 2011) ...........................................................26, 27

*City of Baltimore Dev. Corp. v. Carmel Realty Assocs.*,
  395 Md. 299 (2006) ...............................................................................17

*Comptroller of Maryland v. Comcast of California*,
  484 Md. 222, 297 A.3d 1211 (2023) ......................................................24

*Cotham v. Bd. of Cnty. Comm'rs for Prince George's Cnty.*,
  260 Md. 556 (1971) .................................................................................9

*Davis v. Bd. of Educ. of Anne Arundel Cnty.*,
  166 Md. 118 (1934) .................................................................................9

*E. Tennessee Nat. Gas Co. v. Sage*,
    361 F.3d 808 (4th Cir. 2004) ........................................................11, 12

*Edwards v. City of Goldsboro*,
    178 F.3d 231 (4th Cir. 1999) ..................................................................4

*Gen. Tech. Applications, Inc. v. Exro Ltda*,
    388 F.3d 114 (4th Cir.2004) .................................................................26

*Goines v. Valley Cmty. Servs. Bd.*,
    822 F.3d 159 (4th Cir. 2016) ..................................................................4

*Grode v. Mut. Fire, Marine & Inland Ins. Co.*,
    8 F.3d 953 (3d Cir. 1993) ......................................................................22

*Johnson v. Collins Entm't Co.*,
    199 F.3d 710 (4th Cir. 1999) ...........................................................20, 23

*La. Power & Light Co. v. City of Thibodaux*,
    360 U.S. 25 (1959) ................................................................................22

*Mackie v. Mayor and Com'rs of Town of Elkton*,
    265 Md. 410 (1972) .........................................................................14, 18

*Martin v. Stewart*,
    499 F.3d 360 (4th Cir. 2007) ................................................................19

*Mayes v. Rapoport*,
    198 F.3d 457 (4th Cir. 1999) ................................................................26

*McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*,
    373 U.S. 668 (1963) ..............................................................................23

*Mid-Atl. Express, LLC v. Chapolini Assocs.*,
    No. 1:09-CV-2386 CCB, 2009 WL 10676438 (D. Md. Oct. 22, 2009), vacated
    and remanded ........................................................................................12

*Mid-Atlantic Express, LLC v. Baltimore Cnty., Md.*,
    410 F. App'x 653 (4th Cir. 2011) .....................................................11, 12

*MLC Auto., LLC v. Town of S. Pines*,
    532 F.3d 269 (4th Cir. 2008) ...........................................................20, 22

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes
    Powell*,
    915 F.3d 197 (4th Cir. 2019) ................................................................11

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of S.C., Inc.*,
    210 F.3d 246 (4th Cir. 2000) ................................................................27

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
    491 U.S. 350 (2989) ..........................................................................19

*New Prime Inc. v. Oliveira*,
    586 U.S. 105 (2019) ............................................................................9

*New York v. F.E.R.C.*,
    535 U.S. 1 (2002) ..............................................................................23

*Nexus Gas Transm., L.L.C. v. Sprague*,
    2016-Ohio-4901, 2016 WL 3654532 (Ohio App.) ................................10

*Palmer v. Atl. Coast Pipeline, LLC*,
    293 Va. 573, 801 S.E.2d 414 (2017) ....................................................10

*Potomac Elec. Power Co. v. Montgomery Cnty.*,
    80 Md. App. 107, 560 A.2d 50 (1989), *aff'd sub nom. Howard Cnty. v.
    Potomac Elec. Power Co*., 319 Md. 511, 573 A.2d 821 (1990) ................23

*Prop. Rsrv., Inc. v. Superior Ct.*,
    1 Cal. 5th 151, 375 P.3d 887 (2016) ....................................................11

*Provident Tradesmens Bank & Trust Co.*,
    390 U.S. 102 (1968) ..........................................................................28

*Public Util. Comm'n of Ohio v. United Fuel Gas Co.*,
    317 U.S. 456 (1943) ..........................................................................20

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706 (1996) ..........................................................................20

*Rogan v. B & O R. Co*., 188 Md. 44, 52 A.2d 261 (1947) ............................9

*Rosemann v. Salsbury, Clements, Bekman, Marder & Adkins,*
    LLC, 412 Md. 308 (2010) ....................................................................9

*Rucci v. Cranberry Twp., Pa.*,
    130 F. App'x 572 (3d Cir. 2005) ..........................................................22

*Sec'y of State For Defence v. Trimble Nav. Ltd.*,
    484 F.3d 700 (4th Cir. 2007) ................................................................4

*Simpson v. Moore*,
    323 Md. 215 (1991) ............................................................................9

*Teamsters Local Union No. 171 v. Keal Driveaway Co.*,
   173 F.3d 915 (4th Cir. 1999) ................................................................27, 28

*Winter v Natural Resource Defense Council, Inc.*,
   555 U.S. 7 (2008) ......................................................................................21

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
   780 F.3d 597 (4th Cir. 2015) ....................................................................4

**Statutes**

28 U.S.C.A. § 1332(a)(1) ................................................................................26

15 U.S.C. § 717a .............................................................................................10

15 U.S.C. § 717f(h) .........................................................................................11

16 U.S.C. § 824(a) ..........................................................................................23

Md. Code Ann., Pub. Util. § 1-101(i) .......................................................6, 13

Md. Code Ann., Pub. Util. § 2-113 ................................................................23

Md. Code, Pub. Util. § 7-207 ................................................................ *passim*

Md. Code, Real Property § 12-111 ....................................................... *passim*

Md. Code, Nat. Res. § 3-305 .....................................................................10, 15

Md. Code, Nat. Res. § 3-306 .................................................................8, 9, 10

Md. Code Regs. 20.79.01.06(K)(2) .................................................................20

Md. Code Regs. 20.79.01.10 ...........................................................................20

Md. Code Regs. 20.79.04.01(A)(1),(2),(5) .....................................................21

Md. Code Regs. 20.79.04.01(A)(3) .................................................................21

Md. Code Regs. 20.79.04.02(B), 20.79.04.03 ................................................21

Md. Code Regs. 20.79.04.04 ...........................................................................20

Ohio Rev. Code Ann. § 1723.01 .....................................................................11

Va. Code Ann. § 56-49.01 ...............................................................................10

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1, 4, 30

Fed. R. Civ. P. 12(b)(7) ............................................................................... 1, 4, 25, 27, 29, 30

Fed. R. Civ. P. 19 ..................................................................................... 4, 25, 27, 28, 29, 30

FERC Order No. 1000, *Final Rule, Transmission Planning and Cost Allocation*
   *by Transmission Owning and Operating Public Utilities* ...................................................... 23

Respondents,[1] by and through their undersigned counsel, hereby file this memorandum in support of their Motion to Dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7) and under the *Burford* abstention doctrine.

## I.    INTRODUCTION

In this case, PSEG Renewable Transmission LLC ("PSEG-RT") seeks to use the power of this Court to force numerous private landowners to grant PSEG-RT extensive rights to enter and remain on their private land with only 24 hours' notice, with this right lasting likely more than a year. PSEG-RT, however, is a stranger to the State of Maryland, having never received approval to do anything in Maryland. Nevertheless, PSEG-RT claims it possesses the State's power of eminent domain but cannot point to any statute delegating the power of eminent domain to a private company that has not already received a certificate of public convenience and necessity ("CPCN") from the Maryland Public Service Commission ("PSC") to construct overhead transmission lines within the State.

PSEG-RT also seeks to embroil this Court in issues that presently are pending before the PSC. These issues are within the peculiar expertise of the PSC, such as whether the CPCN application is complete, what information is needed for a CPCN application, whether the proposed power line and route are within the public interest, and whether PSEG-RT should be given the right to proceed with the project.

PSEG-RT also has cherry-picked the Respondents in this case in order to avoid landowners who are residents of New Jersey and would destroy diversity jurisdiction. PSEG-RT itself has indicated it cannot pursue the project piecemeal, but nevertheless has intentionally filed a lawsuit where it cannot get complete relief, even if it were entitled to relief.

---

[1] For ease of reference, the term Respondents refers to the fifty-six (56) landowners represented by undersigned counsel as well as the other landowners sued in this action.

## II.    FACTUAL BACKGROUND

PSEG-RT is a New Jersey entity with no previous connection to Maryland. To date, its only connection to Maryland is that it has filed an application for a CPCN with the Maryland Public Service Commission ("PSC") to build a project known as the Maryland Piedmont Reliability Project ("MPRP"). The MPRP is a proposed 67-mile, 500 kilovolt ("kV") aboveground power line project running through Baltimore, Carroll, and Frederick Counties.  The proposed route cuts through numerous private properties, only some of which are listed as Respondents in this case. In the course of its planning and landowner outreach efforts in Maryland, PSEG-RT did not register with the State Department of Assessments and Taxation to do business in Maryland (only registering on the day this lawsuit was filed), and hired a land agent, Contract Land Staff, LLC ("CLS") that also was not registered to do business in Maryland, its registration having been forfeited in 2016. **Exhibit A; Exhibit B**.

In October, 2024, "The MPRP Project Team" sent letters to landowners along the proposed route, asserting, among other things, that "PSEG will be seeking temporary access to your property to perform studies necessary to verify existing site conditions and to validate public data," but providing no details about the temporary access and not mentioning PSEG-RT or its role in the plans. *E.g.,* ECF 5-2 at 15. In November, 2024, the unregistered land agent, CLS, wrote to landowners again mentioning the "temporary right of entry" but not providing any details or timing. *E.g.,* ECF 5-2 at 11. In some but not all instances, PSEG-RT followed up through its unregistered land agent to provide landowners a "Temporary Right of Entry Form," offering minimal compensation and describing the requested right of entry to "include but not be limited to: appraisals, property boundary and utility surveys, engineering studies, wetland delineation, environmental assessment/investigation and geo-technical borings." *E.g.,* ECF 5-2 at 4.

2

On December 31, 2024, PSEG-RT filed its Application for a CPCN with the PSC. ECF 1 at ¶ 2. As of April 29, 2025, PSEG-RT and other interested parties had made nearly five hundred (500) filings in the PSC proceeding. *In re Application of PSEG Renewable Transmission LLC*, Case No. 9773 (Md. Pub. Serv. Comm'n 2024).[2]

On March 26, 2025, the Power Plant Research Program ("PPRP") of the Maryland Department of Natural Resources ("DNR") filed comments with the PSC asserting that PSEG-RT's CPCN application was incomplete. ECF 3-5. In particular, PPRP asserted that the application required more information about alternative transmission line routes. *Id*. at 1-4. PPRP also indicated that the application did not include the following field surveys:

- o Wetland Delineations – necessary for the entirety of the Project ROW.

- o Forest Stand Delineations – necessary for the entirety of the Project ROW.

- o Geotechnical surveys – necessary for the entirety of the Project ROW.

- o Sensitive Species Project Review Areas (SSPRA) surveys - the SSPRA field surveys should be conducted on those parcels identified by the DNR Wildlife Heritage Service (WHS).

- o Maryland Historical Trust (MHT) required field surveys - the MHT field surveys should be conducted on those parcels identified by MHT as being of concern.

*Id*. at 4-5. That same day, March 26, 2025, PSEG-RT asked the PSC to adopt an aggressive schedule and to address whether or not the CPCN application was complete. **Exhibit C.** PSEG-RT disputed PPRP's assertion that the application was incomplete. *Id*. at 11-13. On April 10, 2025 and April 28, 2025, PSEG-RT continued to dispute PPRP's assertion that the application was

---

[2] The PSC docket in the case is available on the PSC's website: https://webpscxb.psc.state.md.us/DMS/recentcases.

incomplete. **Exhibit D**; **Exhibit E**. As of now, the PSC has not set a schedule and has not ruled on the issue of whether the application is complete. No CPCN has been issued in the case.

### III.    LEGAL STANDARD

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a 12(b)(6) motion focuses on the allegations of the complaint, it is well established that a document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was 'integral to the complaint and authentic.'" *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (quoting *Sec'y of State For Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). Moreover, "courts at any stage of a proceeding may judicially notice a fact that is not subject to reasonable dispute, provided that the fact is generally known within the court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).

Rule 12(b)(7) of the Federal Rules of Civil Procedure provides that a party may raise by motion before answering a complaint "failure to join a party under Rule 19."

### IV.    ARGUMENT

#### A.  PSEG-RT Failed to State a Claim Under Section 12-111 of the Real Property Article of the Maryland Code Because PSEG-RT Does Not Have the Power of Eminent Domain.

This case must be dismissed because PSEG-RT's sole claim for relief is not available to PSEG-RT under Section 12-111 of the Real Property Article ("RP § 12-111"). PSEG-RT is not an

entity "having the power of eminent domain" such that the access rights granted by the statute do not extend to PSEG-RT. Arguments to stretch the statute beyond its plain language based on supposed policy goals are not permissible under Maryland or federal law. Also, PSEG-RT seeks relief from this Court that goes well beyond what the statute allows, even if PSEG-RT could invoke the statute. PSEG-RT even seeks relief that PSEG-RT told the Maryland Public Service Commission was not available under the statute, just a few days before this case was filed. Finally, PSEG-RT's affidavits do not establish that it made real and bona fide efforts to access the properties.

> **i. Based on the plain language of RP § 12-111 and PU § 7-207, PSEG-RT has no pre-condemnation access authority.**

The language of the Maryland statute PSEG-RT is asking this Court to enforce is clear, and it does not apply to PSEG-RT:

> Civil engineers, land surveyors, real estate appraisers, and their assistants acting on behalf of the State or of any of its instrumentalities or any body politic or corporate *having the power of eminent domain* after every real and bona fide effort to notify the owner or occupant in writing with respect to the proposed entry may:
>
> (1) Enter on any private land to make surveys, run lines or levels, or obtain information relating to the acquisition or future public use of the property or for any governmental report, undertaking, or improvement;
>
> (2) Set stakes, markers, monuments, or other suitable landmarks or reference points where necessary; and
>
> (3) Enter on any private land and perform any function necessary to appraise the property.

RP § 12-111(a) (emphasis added).

PSEG-RT repeatedly asserts, falsely, that it has the right of eminent domain, but there is no legal authority for this assertion. For a private company planning to operate an overhead transmission line in Maryland, the only possible source of eminent domain authority is found in

the Maryland statute relating to a "certificate of public convenience and necessity" ("CPCN")

codified at Section 7-207 of the Public Utilities Article ("PU § 7-207"). Specifically, no person can

construct "an overhead transmission line that is designed to carry a voltage in excess of 69,000

volts or exercise a right of condemnation with the construction" unless that person first obtains a

CPCN. *Id*. § 7-207(b)(3)(i).[3] The statute, however, grants the power of eminent domain only to

those who have already been issued a CPCN. Subparagraph (b)(3)(v) provides:

> 1. This subparagraph applies to the construction of an overhead
> transmission line for which a certificate of public convenience and
> necessity is required under this section.
>
> *2. On issuance of a certificate of public convenience and necessity
> for the construction of an overhead transmission line, a person may
> acquire by condemnation, in accordance with Title 12 of the Real
> Property Article, any property or right necessary for the
> construction or maintenance of the transmission line.*

(Emphasis added).

There is no other source of eminent domain power for a holder of a CPCN certificate.

Indeed, in 2017, the Maryland General Assembly had to amend PU § 7-207 to give the power of

eminent domain to entities that had received a CPCN. 2017 Maryland Laws Ch. 840 (S.B. 969).

The language of the amended statutory text makes clear that the power of eminent domain is

extended only "[o]n the issuance of a [CPCN]." PU § 7-207(b)(3)(v). Likewise, 2017 Senate Bill

969 was passed for "the purpose of authorizing a person to which a certain certificate of public

convenience and necessity is issued" to acquire property by condemnation. 2017 Maryland Laws

Ch. 840 (S.B. 969). The 2017 amendment thus gave a holder of a CPCN the power of eminent

---

[3] PSEG-RT applied for a CPCN as an entity that "on the start of commercial operation of the overhead transmission line, will be subject to regulation as a public utility by an officer or an agency of the United States." *Id*. § 7-207(b)(3)(iii)(2). This provision was added to the Maryland statute in 2015. 2015 Maryland Laws Ch. 174 (S.B. 460). Prior to that amendment, a CPCN for overhead transmission lines was only available to an electric company, defined as one "who physically transmits or distributes electricity in [Maryland] to a retail electric customer." Md. Code, Pub. Util. § 1-101(i).

domain. There is no support in the statutory text or the language of the amendment bill for the notion that the power of eminent domain was provided to entities that had not received a CPCN and done nothing more than *apply* for a CPCN.

Neither PU § 7-207 nor any other law provides eminent domain power to a private entity for the construction of overhead transmission lines prior to the issuance of a CPCN.[4] From a policy perspective, this makes sense. Unless and until the private entity receives a CPCN from the Maryland Public Service Commission, the private entity is essentially a stranger to the State of Maryland and vested with no authority to act on the State's behalf. The CPCN process is specifically designed to be the mechanism by which the State of Maryland decides whether to delegate the State's authority to the entity undertaking the project. PU § 7-207 and RP § 12-111 cannot be construed to delegate the State's power of eminent domain to an entity that has received no approval from any State agency to do anything in the State of Maryland, particularly when the plain language of PU § 7-207(b)(3)(v) provides no condemnation authority until "the issuance of a [CPCN]."

Here, PSEG-RT's disconnectedness from the State of Maryland is exacerbated by the fact that up until the day it filed this lawsuit, during the entire period PSEG-RT was supposedly contacting landowners to gain rights of entry for various parcels, PSEG-RT was not registered to do business in Maryland. **Exhibit A** (PSEG-RT registering to do business in Maryland on April 15, 2025, the same date this lawsuit was filed). To make matters worse, PSEG-RT's land agent, Contract Land Staff, LLC ("CLS") also was not registered to do business in Maryland, its registration having been forfeited in 2016 **Exhibit B**. Thus, PSEG-RT, an entity not authorized to

---

[4] The link between the issuance of the CPCN and eminent domain authority is further demonstrated by the legislature's decision to permit a waiver for "construction related to an existing overhead transmission line…" but only if the "the construction does not," among other requirements, "require the person to obtain new real property or additional rights-of-way through eminent domain." PU § 7-207(b)(4).

do business in Maryland, was using land agents also not authorized to do business in Maryland in attempts to convince landowners to grant voluntary rights of entry for private land in Maryland.

PSEG-RT, having invoked this Court's diversity jurisdiction because it is not a citizen of Maryland, and being a complete stranger to the State of Maryland, asks this Court to rule that it nevertheless has the "power of eminent domain" delegated from the State of Maryland. The plain language of PU § 7-207 and RP § 12-111 provides to the contrary.

PSEG-RT's argument that it should be allowed to invoke RP § 12-111 essentially boils down to an argument that it needs the information. From the mere fact that the legislature requires the PSC under PU § 7-207 to consider "the effects of a proposed transmission line [on] the impacted property and adjacent properties" and "requires the PPRP to complete an extensive environmental and socioeconomic project assessment and propose licensing conditions" (ECF 75-1 at 20), PSEG-RT claims that RP § 12-111 must be interpreted to allow PSEG-RT to enter and remain on private property to gather such information.[5] This is illogical. The mere fact that a government agency is tasked with considering certain information does not mean that the legislature has given applicants to that agency the ability to infringe on the private property rights of others to get that information. The question remains whether the legislature intended to provide the access, and, here, the plain text of RP § 12-111(a) suffices to conclude that only an entity "having the power of eminent domain" may have pre-condemnation access.

Requiring CPCN issuance before giving a private entity eminent domain authority is a deliberate legislative decision to balance private property rights against the State's interests in

---

[5] It should also be noted that PSEG-RT is playing fast and loose with its assertions concerning the CPCN application requirements. In this Court, PSEG-RT asserts that it needs pre-condemnation access to provide the information necessary for review by PPRP under Section 3-306 of the Natural Resources Article ("NR § 3-306"). ECF 75-1 at 20-21. But just a few days before this lawsuit was filed and again this past Monday, PSEG-RT has asserted that it has already provided the information required for the CPCN application. **Exhibit D** at 5-6; **Exhibit E** at 6-7.

public utility projects. But even if there were gaps in the statutory scheme, this court is not permitted to fix those gaps. First, "statutes of eminent domain are to be strictly construed." *Davis v. Bd. of Educ. of Anne Arundel Cnty.*, 166 Md. 118 (1934). In addition, Maryland courts have held that courts must "refuse to 'judicially place in the statute language which is not there' in order to avoid a harsh result." *Simpson v. Moore*, 323 Md. 215, 225 (1991) (quoting *Cotham v. Bd. of Cnty. Comm'rs for Prince George's Cnty.,* 260 Md. 556, 565 (1971)). Maryland's highest court has explained: "Even though a certain provision, which has been omitted from a statute, appears to be within the obvious purpose or plan of the statute, and to have been omitted merely by inadvertence, nevertheless, the court is not at liberty to add to the language of the law; and the court must hold that the Legislature intended to omit the provision, however improbable that may appear in connection with the general policy of the statute." *Rosemann v. Salsbury, Clements, Bekman, Marder & Adkins*, LLC, 412 Md. 308, 327 (2010) (*Rogan v. B & O R. Co*., 188 Md. 44, 54, 52 A.2d 261, 266 (1947)). Similarly, the United States Supreme Court has explained: "If courts felt free to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal, we would risk failing to 'tak[e] ... account of' legislative compromises essential to a law's passage and, in that way, thwart rather than honor 'the effectuation of congressional intent.'" *New Prime Inc. v. Oliveira*, 586 U.S. 105, 120–21 (2019) (quoting *Board of Governors, FRS v. Dimension Financial Corp*., 474 U.S. 361, 374 (1986)).

Under both Maryland and federal law, PSEG-RT cannot appeal to policy, divorced from the actual text of RP § 12-111. As the Court in *Rosemann* noted, "[i]f the situation brought to light by this case is an oversight, it is a matter for the Legislature to correct," not the Court. *Rosemann*, 412 Md. at 327.[6]

---

[6] PSEG-RT's assertion that pre-condemnation access by a private entity must be inferred from a "carefully balanced statutory scheme in NR § 3-306, PUA § 7-207, and RP § 12-111" (ECF 75-1 at 21) is further undermined by the fact

The out-of-state cases cited by PSEG-RT further demonstrate why PSEG-RT has no authority to force entry onto private property in Maryland. The two Virginia cases – *Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 801 S.E.2d 414 (2017), and *Barr v. Atl. Coast Pipeline, LLC*, 295 Va. 522, 815 S.E.2d 783 (2018) – were interpreting a statute that expressly gave access rights to "[a]ny firm, corporation, company, or partnership, organized for the bona fide purpose of operating as a natural gas company as defined in 15 U.S.C. § 717a, as amended." Va. Code Ann. § 56-49.01. In both cases, it was undisputed that the company met the definition of "natural gas company" under the federal statute. *See Barr*, 295 Va. at 532, 815 S.E.2d at 788 ("it is undisputed that ACP meets the definition of a natural gas company under 15 U.S.C. § 717a"); *Palmer*, 293 Va. at 579, 801 S.E.2d at 417 ("Palmer does not contest that ACP fits within this definition."). Thus, in Virginia, all natural gas companies meeting the federal definition are expressly granted access rights to "make such examinations, tests, hand auger borings, appraisals, and surveys." In contrast, Maryland requires CPCN issuance before an entity can have the power of eminent domain. PU § 7-207(b)(3)(v). The Maryland statute does not grant condemnation power to companies that meet some federal definition.[7]

In *Nexus Gas Transm., L.L.C. v. Sprague*, 2016-Ohio-4901, 2016 WL 3654532 (Ohio App.), the court held that a natural gas transporter company was authorized to access property

---

that the subtitle creating PPRP, Title 3, Subtitle 3 of the Natural Resources Article, has its own pre-condemnation access provision, which plainly does not extend to private entities. NR § 3-305(f) gives "the Department [DNR], its agents, employees, and contractors" the right to "enter onto private property to collect data and otherwise conduct environmental and engineering studies related to … potential overhead transmission lines in excess of 69,000 volts," including "the installation of meteorological testing equipment, biological sampling, soil borings, and installation of test wells." This provision is limited to DNR and permits an "electric company" to make a "written request" to DNR "setting out the nature, extent, and duration of the work to be done." This provision clearly does not extend to PSEG-RT, but it does provide a specific mechanism for DNR and PPRP to obtain the information they need to assist in the course of their duties under NR § 3-306. PSEG-RT, in this case, is seeking improperly to expand the mechanisms expressly provided by the General Assembly.

[7] All the Maryland statute does is give entities that will be subject to federal regulation as public utilities the right to *apply* for a CPCN. PU § 7-207(b)(3)(iii)(2).

pursuant to a statute that expressly stated: "If a company is organized … for storing, transporting, or transmitting water, natural or artificial gas …; then such company may enter upon any private land to examine or survey lines for its tubing, pipes, conduits, poles, and wires, … and may appropriate so much of such land, or any right or interest therein, as is deemed necessary for the laying down or building of such tubing, conduits, pipes…." Ohio Rev. Code Ann. § 1723.01. Thus, the statute expressly allowed *any* natural gas transporting company access to private property. If anything, these cases demonstrate that a private entity cannot compel access to private land without express statutory authority. The authority plainly existed in those cases and plainly does not exist here. Maryland requires CPCN issuance before an entity may have the power of eminent domain. PU § 7-207(b)(3)(v).[8]

PSEG-RT also cites two inapposite Fourth Circuit cases interpreting the federal Natural Gas Act, 15 U.S.C. § 717f(h). *E. Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808, 818 (4th Cir. 2004); *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197 (4th Cir. 2019). These cases *both* involved situations where the company constructing the pipeline had *already received* a CPCN.[9] Moreover, both cases were eminent domain cases in which the gas companies were actually seeking to condemn the properties. *See Sage*, 361 F.3d at 819 (cases were "seeking orders of condemnation"); *Mountain Valley*, 915 F.3d at 209 (cases "initiated condemnation proceedings"). Pre-condemnation access was not an issue in either case.

PSEG-RT did not cite *Mid-Atlantic Express, LLC v. Baltimore Cnty., Md.,* 410 F. App'x 653 (4th Cir. 2011), a Fourth Circuit case that *did* involve pre-condemnation access sought by a

---

[8] *Prop. Rsrv., Inc. v. Superior Ct.,* 1 Cal. 5th 151, 165, 375 P.3d 887, 892 (2016), did not even address the issue of private companies attempting to force access to private land. There, the California Department of Water Resources, a public agency of the State of California, was the entity seeking pre-condemnation access. Although the opinion discusses the reasons a legislature might provide pre-condemnation access to a public agency, the case does not support expanding pre-condemnation access to private entities that do not have the power of eminent domain.

[9] Under the Natural Gas Act, CPCN's are issued by FERC, not by a state commission. *See, e.g., Sage*, 361 F.3d at 818 (describing requirement for FERC to issues CPCN).

gas company pursuant to RP § 12-111.[10] In *Mid-Atlantic*, the Fourth Circuit reversed the district court's grant of a preliminary injunction giving a gas company pre-condemnation access to private property. The reversal was based on the Court's holding that the gas company "did not have the authority to condemn property, and accordingly, the district court was without jurisdiction to enter the preliminary injunction." *Id.* at 657. The Court distinguished *Sage* on the basis that the court there expressly determined that the gas company had the "substantive right to condemn property." *Id.* (quoting *Sage*, 361 F.3d at 828). In *Sage*, the gas company already had been issued a CPCN that expressly allowed condemnation authority. *Sage*, 361 F.3d at 819. In *Mid-Atlantic*, the gas company had been issued a CPCN, but with restrictions on condemnation authority; these restrictions deprived the gas company of condemnation authority and prevented the district court from granting an injunction for pre-condemnation access under RP § 12-111. *Mid-Atlantic,* 410 F. App'x at 657. In this case, PSEG-RT has not progressed nearly as far as Mid-Atlantic had progressed in the process. PSEG-RT has no CPCN and has been given no approvals by the Maryland PSC. Thus, this Court should follow the directive of the Fourth Circuit in *Mid-Atlantic* and dismiss this case on the basis that PSEG-RT has no authority to condemn property and cannot get the relief it seeks.

The opinion from the Circuit Court for Harford County in *Transource Maryland, LLC v. Scott* (ECF No. 75-5) is not persuasive and cannot override the plain language of PU § 7-207 and RP § 12-111. In the opinion, then Judge Eaves appears to have determined that Transource had the power of eminent domain because it was "an entity that is a public service utility." ECF 75-5 at 8. It appears that the judge determined that Transource was a "public utility" because it was an

---

[10] *See Mid-Atl. Express, LLC. v. Chapolini Assocs.,* No. 1:09-CV-2386 CCB, 2009 WL 10676438, at *2 (D. Md. Oct. 22, 2009), vacated and remanded sub nom. *Mid Atl. Express, LLC v. Baltimore Cnty.*, Md., 410 F. App'x 653 (4th Cir. 2011) (district court explained that pre-condemnation access was sought under RP § 12-111).

"electric company" under Section 1-101 of the Public Utilities Article. Although it is unclear how Transource met the definition of "electric company," it is clear in this case that PSEG-RT does not. In the Public Utilities Article, "'Electric company' means a person who physically transmits or distributes electricity in the State to a retail electric customer." Md. Code Ann., Pub. Util. § 1-101(i)(1). PSEG-RT does not transmit or distribute electricity in Maryland to retail electric customers. Therefore, PSEG-RT could not have survived the first part of Judge Eaves' two-part analysis. ECF 75-5 at 8. Starting with the premise that Transource already had the power of eminent domain, the court decided that Transource could invoke RP § 12-111. Here, PSEG-RT does not have the power of eminent domain and cannot invoke RP § 12-111. The court's analysis concerning timing of access is not persuasive because that analysis cannot create a power of eminent domain here, where PSEG-RT does not already have that power.

### ii.  PSEG-RT has admitted that RP § 12-111 does not permit geotechnical surveys.

Even if PSEG-RT already had the power of eminent domain, which it does not, a significant portion of the relief PSEG-RT is requesting is not available. Among the field-based surveys PSEG-RT claims it needs to complete on private properties are "geotechnical surveys," which involve boring holes in the ground. ECF 75-1 at 15. In a letter dated March 26, 2025, PPRP asserted that "Geotechnical surveys [are] necessary for the entirety of the Project ROW." ECF 3-5 at 8. On April 10, 2025, in response to the March 26 letter, PSEG-RT, through the law firm representing it in this case, explained that "geotechnical surveys" are "invasive surveys … that would require the Company to disturb the land or conduct underground boring." **Exhibit D** at 6. PSEG-RT informed the Public Service Commission: "Any surveys that involve invasive activities on private property are not legally authorized prior to the issuance of a CPCN without the express approval of the property owner." *Id*. PSEG-RT specifically cited RP § 12-111(a), and then explained:

13

> In *Mackie v. Mayor and Com'rs of Town of Elkton,* 265 Md. 410
> (1972), the Supreme Court of Maryland (then the Court of Appeals)
> held that the predecessor statute to Md. Code Ann., Real Property §
> 12-111 did not authorize various government entities to engage in
> core drill activities or construct pits for backhoes. The Court held
> that the reach of the statute extends only to activities similar to
> "making surveys, running lines or levels, [or] setting stakes,
> markers[, and] monuments" that are "innocuous and temporary[,]
> effecting only minimal incidental damage and little, if any,
> disturbance." 265 Md. at 419.

*Id.* at 6 n. 17. In this case, PSEG-RT has not cited *Mackie* and has not made this Court aware of

this limitation on RP § 12-111 under controlling Maryland precedent. Nevertheless, its arguments

to the Public Service Commission are correct. RP § 12-111 *does no*t authorize entry onto private

land for the purpose of conducting the invasive geotechnical surveys that PPRP is asserting to be

necessary.

This limitation on geotechnical surveys under RP § 12-111(a) is further reinforced by the

interplay between subsection (a) and subsection (g), which applies only to activities by the State

Highway Administration ("SHA") and the Maryland Transit Authority ("MTA"). In contrast to

subsection (a), which limits access to surveys and appraisals done by "[c]ivil engineers, land

surveyors, real estate appraisers, and their assistants," subsection (g) permits the SHA and MTA

and their "consultants" to "enter upon private property to conduct environmental and engineering

studies, including soil boring and excavation." This distinction between subsection (a) and

subsection (g) thus calls into question whether even the other environmental studies PSEG-RT

claims it needs to perform are permitted under subsection (a) – "wetland delineations," "forest

stand delineations," and "Sensitive Species Project Review Area surveys" – all of which are

environmental surveys expressly permitted under subsection (g) but not mentioned in subsection

14

(a).[11] Nor are such surveys typically performed by "[c]ivil engineers, land surveyors, real estate appraisers, and their assistants."

In any event, although PSEG-RT in the Petition and Motion for Preliminary Injunction purports to request only "non-invasive" field surveys, PSEG-RT suggests that geotechnical surveys are included in the surveys that need to be completed, without noting that those surveys are admittedly invasive in nature. ECF 75-1 at 15; **Exhibit D** at 6. More compelling is the fact that when PSEG-RT provided a proposed "Temporary Right of Entry Form" to landowners, the form expressly stated that the temporary right of entry would include "geo-technical borings." ECF 5-2 at 4; ECF 6-2 at 6; ECF 16-2 at 5; ECF 23-2 at 4; ECF 33-2 at 7; ECF 45-2 at 8; ECF 50-2 at 6; ECF 61-2 at 6. In the correspondence provided to the Court by PSEG-RT, all of the Respondents received letters dated November 18, 2024, indicating that they would be asked for access using this "temporary right of entry (ROE) form." *E.g.,* ECF 4-2 at 3; ECF 7-2 at 3; ECF 74-2 at 4. This is further confirmed by Roger J. Trudeau, PSEG's Manager of Corporate Real Estate Transactions, in his testimony submitted to the Public Service Commission in connection with the CPCN Application. When asked if PSEG-RT would need access to landowners' property before negotiating easements, he indicated that "the Company may need temporary property access to conduct additional preliminary due diligence, which may include environmental, *geotechnical* and land surveys." **Exhibit F** at 5 (emphasis added).

The fact that geotechnical surveys are admittedly beyond the scope of RP § 12-111 also undermines PSEG-RT's policy arguments that the section *must* be interpreted to provide all the

---

[11] The pre-condemnation access right in the Natural Resources Article also presents a contrast with RP § 12-111 pertaining to environmental studies. *See* NR § 3-305(f) (giving DNR right to "enter onto private property to collect data and otherwise conduct environmental and engineering studies related to … potential overhead transmission lines in excess of 69,000 volts," including "the installation of meteorological testing equipment, biological sampling, soil borings, and installation of test wells").

information required for the CPCN application. PSEG-RT already has admitted that RP § 12-111 cannot be interpreted to provide the required geotechnical information. This inevitably leads to the conclusion that the legislature never intended for RP § 12-111 to facilitate access to all of the required information or to solve all of a private entity's problems in pursuing a greenfield power line project. Instead, RP § 12-111 must be interpreted based on its plain language, that only those entities already having the power of eminent domain have the limited authority to access private property for certain purposes. PSEG-RT does not qualify to invoke this section and may never qualify.

### iii.   PSEG-RT is not an agent of PPRP, DNR, or any other State agency.

PSEG-RT's alternative contention, relegated to a footnote, that it can force entry onto private land "on behalf of instrumentalities of the State" has no basis in fact or law. ECF 75-1 at 24 n. 4. The "implicit agency principles," to which PSEG-RT refers, demonstrate definitively that there is no agency relationship between DNR or PPRP and PSEG-RT. *Id*. Relying on the Restatement (Second) of Agency, the Court of Appeals (now the Supreme Court of Maryland) identified three factors to determine if implicit agency exists: "(1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent." *Broadway Servs., Inc. v. Comptroller of Maryland*, 478 Md. 200, 216 (2022). PSEG-RT has presented no evidence to support these factors.

Indeed, the record of an ongoing dispute between PPRP and PSEG-RT over the completeness of the CPCN application demonstrates that none of these factors exist here. ***See*** **Exhibit C** (PPRP comments); **Exhibit D** (PSEG-RT comments); **Exhibit E** (PSEG-RT additional comments). PSEG-RT has no power to alter the legal relations of PPRP, has no duty to act primarily for the benefit of PPRP, and is not controlled by PPRP. The case cited by PSEG-RT involving the

Baltimore Development Corporation ("BDC") presents a contrast that further demonstrates PSEG-RT's lack of any agency relationship. *City of Baltimore Dev. Corp. v. Carmel Realty Assocs.*, 395 Md. 299 (2006). The court explained that "the BDC is subject to substantial control by the City because of how closely the two are intertwined." *Id*. at 336. Even then, the court expressly held that BDC had no power of eminent domain: "The BDC's involvement in the [eminent domain] process is through, and only through, the City. The power of eminent domain *adheres* to the City's *sovereignty* generally, and by reason of the constitutional provisions. BDC has no independent source of power in the urban renewal process." *Id*. at 317 n. 13 (emphasis in original). In contrast to the BDC and the City of Baltimore, PPRP and PSEG-RT have no relationship other than PPRP's statutory obligation to provide "an independent environmental and socioeconomic project assessment" of the CPCN application submitted by PSEG-RT.

> **iv.  Under RP §12-111, PSEG-RT has not made "every real and bona fide effort to notify the owner or occupant in writing with respect to the proposed entry."**

The facts, affidavits and correspondence before the Court demonstrate that PSEG-RT did not make "every real and bona fide effort to notify the owner or occupant in writing with respect to the proposed entry," further disqualifying PSEG-RT from relief in this case. RP § 12-111 expressly makes such extensive efforts a pre-requisite to any right of entry encompassed in the statute.

Here, the correspondence sent to landowners never identified PSEG-RT as the entity seeking entry onto private properties. *E.g.,* ECF 4-2 at 3; ECF 7-2 at 3; ECF 74-2 at 4. This omission was even more significant given the fact that PSEG-RT was not registered to do business in Maryland at the time of these communications. **Exhibit A**.

Moreover, these communications did not give landowners information about the proposed entry, instead simply stating that "PSEG" wanted temporary access "to perform studies" (e.g., ECF 71-2 at 8) or "to evaluate [the property's] suitability for the project" (ECF 71-2 at 6). Some of the Respondents received a draft "Temporary Right of Entry Form" providing more details concerning what PSEG-RT was requesting, but those forms sought a right of entry to perform a number of different surveys or studies, including "geo-technical borings," which are not permitted under RP § 12-111(a). ECF 5-2 at 4; ECF 6-2 at 6; ECF 16-2 at 5; ECF 23-2 at 4; ECF 33-2 at 7; ECF 45-2 at 8; ECF 50-2 at 6; ECF 61-2 at 6. *See also Mackie*, 265 Md. at 419 (boring and excavation not permitted). In this Court, PSEG-RT seeks the right to "enter" onto private property and "to remain on the property" for an indefinite amount of time, giving only 24 hours' notice. ECF 75-6, ¶¶ 2, 4. PSEG-RT further asks that this extensive right to enter and remain on private property last from the date of the Court's order until the CPCN application is either granted or denied – something that will likely take over a year. *Id.* ¶ 2. This proposed relief is much more onerous than anything PSEG-RT ever requested from the Respondents.

PSEG-RT's efforts prior to this lawsuit did not request the same entry that PSEG-RT is asking this Court to force on the Respondents now. Before this lawsuit, Respondents received communications from a stranger, with no connection to the State of Maryland, asking for non-specific access that was well beyond what would be permitted even to the State under RP § 12-111. See, e.g., ECF 5. No reasonable person would have believed that these communications had any force of law behind them, much less that they would be a precursor to a federal lawsuit demanding free access for a period likely extending more than a year. For this additional reason, PSEG-RT cannot invoke RP § 12-111.

**B. This Court Should Decline to Exercise Jurisdiction Because PSEG-RT Asks This Court To Decide The Same Issues That Are Pending Before The PSC And Exclusively Regulated By The State, and PSEG-RT Failed To Exhaust Those Special Administrative Remedies.**

PSEG-RT asks this Court to decide numerous issues that are still pending with the PSC. The PSC is currently considering whether PSEG-RT's application for a CPCN is complete; PSEG-RT told the PSC that its application is complete but argues the opposite in this forum. To grant the relief sought, this Court would have to decide (i) that PSEG-RT's application is incomplete, (ii) that there is a need for the proposed transmission line, and (iii) that entry on Respondents' property is necessary to complete that project, all *before* the PSC has an opportunity to make a final determination on those issues. Because such complex administrative and eminent domain matters are exclusively governed by the state, and PSEG-RT did not exhaust its remedies with the PSC, this Court should decline to exercise jurisdiction.

**i. *Burford* abstention should apply here, because exercising federal jurisdiction over PSEG-RT's claim will usurp the PSC's administrative process.**

In *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943), the Supreme Court held that federal courts have the discretion to decline to exercise jurisdiction with "proper regard for the rightful independence of state governments in carrying out their domestic policy." "*Burford* permits abstention when federal adjudication would 'unduly intrude' upon 'complex state administrative processes' because either: (1) 'there are difficult questions of state law ... whose importance transcends the result in the case then at bar'; or (2) federal review would disrupt 'state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361–63 (2989) ("*NOPSI*")).

19

"*Burford* is concerned with protecting complex state administrative processes from undue federal interference." *NOPSI*, 491 U.S. at 362; *see Bath Mem'l Hosp. v. Maine Health Care Fin. Comm'n*, 853 F.2d 1007, 1012 (1st Cir.1988) (*Burford* abstention is invoked when the exercise of federal jurisdiction risks "turning the federal court into a forum that will effectively decide a host of detailed state regulatory matters, to the point where the presence of the federal court, as a regulatory decision-making center, makes it significantly more difficult for the state to operate its regulatory system."). Indeed, "the 'Supreme Court has admonished the federal courts to respect the efforts of state governments to ensure uniform treatment of essentially local problems.'" *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 280 (4th Cir. 2008) (quoting *Johnson v. Collins Entm't Co.*, 199 F.3d 710, 719 (4th Cir. 1999); *Public Util. Comm'n of Ohio v. United Fuel Gas Co.*, 317 U.S. 456, 468 (1943) ("The federal courts should be wary of interrupting the proceedings of state administrative tribunals by use of the extraordinary writ of injunction.").

There is no "formulaic test for determining when dismissal under *Burford* is appropriate," but a federal court's exercise of such discretion "must reflect principles of federalism and comity." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 72 –28 (1996) (internal quotation omitted).

Here**,** PSEG-RT asks this Court to decide numerous issues that are pending before the PSC. First, the PSC is currently considering whether PSEG-RT's application is incomplete. Applications to construct a transmission line must include certain "environmental, natural resources, and socioeconomic information," Md. Code Regs. 20.79.01.06(K)(2); Md. Code Regs. 20.79.04.04, and the PSC will make a final determination on whether PSEG-RT's application includes that information. Md. Code Regs. 20.79.01.10. In its PSC filings, PSEG-RT asked the PSC to "determine that the Company's Application is administratively complete," claiming that the matters flagged by PPRP were either not required by COMAR (*e.g.*, assessments of impacts

identified by field studies) or satisfied the regulations (e.g., the Routing Study). **Exhibit C** at 3. But in this action, PSEG-RT asks this Court to find that such information is required for its application, *and* that it will suffer irreparable harm if it cannot enter Respondents' properties to obtain it. The Court must make those threshold determinations before it can issue the extraordinary remedy sought, *Winter v Natural Resource Defense Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that…he is likely to suffer irreparable harm in the absence of preliminary relief"), even though the PSC is also considering PSEG-RT's contradictory positions on the same matter.

Second, if PSEG-RT's application is held to be complete, the PSC will determine whether to approve it, *i.e.,* whether the proposed transmission line is needed and in the public's interest. An application for a proposed transmission line must include "[a]n explanation of the need for the project in meeting demands for service," as well as descriptions of "the effect of the project on system stability and reliability," and "impact of the project on the economies of the State." Md. Code Regs. 20.79.04.01(A)(1),(2),(5). But now, PSEG-RT asks this Court to prematurely conclude that the proposed transmission line is in fact needed and in the public's interest, *Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits… and that an injunction is in the public interest.'"), before the PSC decides those same matters.

Lastly, the PSC must determine the appropriate location and timing of the project. A CPCN application must describe the property to be acquired for the proposed transmission line and describe alternative transmission line routes. Md. Code Regs. 20.79.04.02(B), 20.79.04.03, The application must also include "[a] description of the consequences if the project is delayed or not approved." Md. Code Regs. 20.79.04.01(A)(3). But here, PSEG-RT also asks this Court to find

that it must enter Respondents' properties now, or it will suffer irreparable consequences. Once again, this Court is being asked to weigh in on matters that will be (but have yet not been) decided by the PSC.

More globally, *Burford* abstention should also apply because this case is akin to an eminent domain proceeding (albeit PSEG-RT does not have the power of eminent domain as explained above). *Burford* abstention is usually applied when federal jurisdiction would interfere with, conflict with, or supplant a state's eminent domain proceedings. *Grode v. Mut. Fire, Marine & Inland Ins. Co.*, 8 F.3d 953, 956 (3d Cir. 1993); *Rucci v. Cranberry Twp., Pa.*, 130 F. App'x 572, 578 (3d Cir. 2005); *Alabama Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341, 346–350 (1951); *see La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 26–29 (1959) (distinguishing eminent domain from "ordinary diversity cases" before reinstating stay). That is because an eminent domain proceeding "is of a special and peculiar nature…intimately involved with sovereign prerogative." *La. Power & Light*, 360 U.S. at 28. Indeed, "[t]he special nature of eminent domain justifies a district court judge, when his familiarity with the problems of local law so counsels him, to ascertain the meaning of a disputed state statute from the only tribunal empowered to speak definitively – the Courts of the State under whose statute eminent domain is sought to be exercised – rather than himself make a dubious and tentative forecast." *Id.* at 29.

Here, PSEG-RT's ability to enter Respondents' properties is intrinsically connected to the state's eminent domain power, a fundamentally local issue regulated by the state. Indeed, PSEG-RT's claim arises under a state law granting authority to local courts,[12] and it is entirely dependent upon resolution of a state administrative proceeding regarding the issuance of a CPCN. *Burford*

---

[12] Notably, the General Assembly gave jurisdiction over orders under RP § 12-111 to "a law court *of the county* where the property, or any part of it, is located." RP § 12-111(b) (emphasis added). While that does not divest this Court of diversity jurisdiction, it is further evidence that PSEG-RT's purported "right" to enter Respondents' property is an intrinsically local issue.

abstention is appropriate under those circumstances. *See MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 282–83 (4th Cir. 2008) (court did not abuse its discretion in abstaining under *Burford*, where "Leith's sole federal claim is entirely dependent upon resolution of its state law claim in its favor."); *Johnson v. Collins Ent. Co.*, 199 F.3d 710, 719–20 (4th Cir. 1999) (district court should have abstained, because "[t]he exercise of federal equitable discretion in this case supplanted the legislative, administrative, and judicial processes of South Carolina and sought to arbitrate matters of state law and regulatory policy that are best left to resolution by state bodies.").

There is no federal nexus or preemption to warrant a different conclusion. When Congress amended the Federal Power Act, it declared that Federal regulation of interstate transmission and sale of electric energy for ultimate distribution to the public should "extend only to those matters which are not subject to regulation by the States." 16 U.S.C. § 824(a); *but see New York v. F.E.R.C.*, 535 U.S. 1, 20–24 (2002). In Maryland, the PSC has exclusive authority to regulate the construction and location of transmission lines in the state. Md. Code Ann., Pub. Util. § 2-113; *Potomac Elec. Power Co. v. Montgomery Cnty.*, 80 Md. App. 107, 115, 560 A.2d 50, 54 (1989*), aff'd sub nom. Howard Cnty. v. Potomac Elec. Power Co.*, 319 Md. 511, 573 A.2d 821 (1990). FERC has no jurisdiction over such matters. *See* FERC Order No. 1000, *Final Rule, Transmission Planning and Cost Allocation by Transmission Owning and Operating Public Utilities* 136 FERC P 61051 (July 21, 2011) at ¶ 107 (Acknowledging "longstanding state authority" over "matters relevant to siting, permitting, and construction" of transmission lines, and explaining that rule "in no way involves an exercise of authority over those specific substantive matters traditionally reserved to the states, including… authority over such transmission facilities.").

Because PSEG-RT's claim is "entangled in a skein of state law that must be untangled before the federal case can proceed," *McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia,*

*Ill.*, 373 U.S. 668, 674 (1963). the Court should apply the *Burford* abstention doctrine and decline to exercise jurisdiction.

### ii. PSEG-RT failed to exhaust the PSC's special administrative remedies.

When an administrative remedy is exclusive or primary, as is the case here, *see Bd. of Cnty. Commissioners of Washington Cnty. v. Perennial Solar, LLC*, 464 Md. 610, 632, 212 A.3d 868, 881 (2019), the claimant must exhaust that administrative remedy before judicial intervention is appropriate. *Comptroller of Maryland v. Comcast of California*, 484 Md. 222, 232, 297 A.3d 1211, 1217 (2023). PSEG-RT cannot use the federal Courts to expedite or end-run special administrative procedures, which is exactly what it is attempting to do with the instant action.

First, as discussed *supra*, PSC has not yet determined that PSEG-RT's application is incomplete and, therefore, has not yet decided whether PSEG-RT (or anyone else, for that matter) needs to enter Respondents' properties. Again, PSEG-RT told the PSC that its application was complete, *see* **Exhibit C** at 3 and **Exhibit D** at 1, but asks this Court to conclude the opposite. PSEG-RT relies on PPRP's opinion that the application is missing certain information, but the PSC has exclusive authority to make that determination and is not bound by PPRP's input. COMAR 20.79.01.10. If the PSC determines that PSEG-RT's application is in fact complete, there will be no need for PSEG-RT to enter Respondents' land.

There will also be no authority. Section § 12-111 of the Real Property Article limits an entity's right to obtain an Order authorizing entry on private land "to the extent **necessary** to carry out the purposes authorized by this section." (emphasis added). So, if an injunction is granted in this case, but the PSC later finds that PSEG-RT's application was/is complete, the Court will have issued an Order in contravention of the controlling statute.

Likewise, the PSC has not determined if PSEG-RT should construct a transmission line *anywhere* in Maryland, let alone whether it can or should do so on Respondents' properties. If the injunction sought in this action is granted, but the PSC later concludes that PSEG-RT cannot construct a transmission line on Respondents' properties, the Court will have authorized PSEG-RT to enter private land in furtherance of a project it had no right to undertake.[13]

For these reasons, this Court should dismiss this action for failure to exhaust, or, in the alternative, find that Burford abstention is appropriate due to the pending administrative matter.

### C. This Case Should Also Be Dismissed For Failure to Join A Necessary Party Under Fed. R. Civ. P. 12(b)(7).

This case should be dismissed under Fed. R. Civ. P. 12(b)(7) because PSEG-RT failed to join all necessary and indispensable parties as required under Fed. R. Civ. P. 19. PSEG-RT contends that it will suffer irreparable harm absent injunctive relief in this case. ECF 75-1 at 9. Specifically, PSEG-RT has requested that this Court enter an order to allow it to access properties along the proposed route of the MPRP owned by the Respondents (the "Subject Properties") for the purpose of conducting surveys and other field-based investigations, which it contends (at least in this Court) are necessary to obtain a CPCN. ECF 1 at 17. Although PSEG-RT itself alleges it cannot proceed piecemeal with its CPCN application due to construction deadlines (ECF 75-1 at 28), PSEG-RT chose not to name landowners in the path of the MPRP who are citizens of New Jersey, as their inclusion would frustrate federal diversity jurisdiction.

One such landowner is Congxin Xie ("Ms. Xie"), a citizen of the state of New Jersey and the owner of the property known as 2038 Littlestown Pike, Westminster, Maryland 21158 (the

---

[13] Such inconsistent outcomes could undermine policy considerations that drive the State's decision to preclude access to private land under RP § 12-111 before a CPCN is issued. For example, the State may wish to incentivize companies to PSEG-RT to maximize the use of existing rights-of-way, to maximize the efficiency of current infrastructure, minimize the burden to private landowners, and facilitate an orderly development of utility corridors.

"Littlestown Pike Property"). The Littlestown Pike Property is located in Carroll County, Maryland, directly in the path of the MPRP, and is marked as the proposed site of two preliminary H-frame transmission structures. *See* **Exhibit G**, Declaration of Congxin Xie Regarding 2038 Littlestown Pike at ¶ 2-5. In 2024, PSEG-RT contacted Ms. Xie and requested access to the Littlestown Pike Property for the purpose of conducting surveys and other studies of the Property related to the MPRP. *See id.* at ¶ 6. Ms. Xie declined PSEG-RT's request for access. *See id.* To date, Ms. Xie has not granted PSEG-RT or any other entity access to the Property for the purpose of conducting the requested surveys and studies. *See id.* at ¶ 7.

PSEG-RT apparently omitted Ms. Xie as a respondent in this suit because her inclusion would frustrate federal diversity jurisdiction. The only possible basis for federal subject matter jurisdiction in this case is diversity of citizenship under 28 U.S.C.A. § 1332(a)(1). To establish diversity jurisdiction, the parties must be completely diverse; this means that the petitioner may not share state citizenship with any of the respondents. *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). In this case, PSEG-RT is a Delaware limited liability company with its principal place of business in Newark, New Jersey. ECF 80 at 1. For purposes of diversity jurisdiction, the citizenship of a limited liability company (such as PSEG-RT) is determined by the citizenship of all of its members. *Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (citing *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir.2004)). PSEG-RT's Local Rule 103.3 Corporate Disclosure Statement provides the requisite information about its membership and indicates that its ultimate parent is a publicly traded company headquartered in Newark, New Jersey (ECF 80 at 1); thus, PSEG-RT is a citizen of the state of New Jersey for the purposes of determining whether federal diversity jurisdiction exists.

*Mountain State*, 636 F.3d at 103. Accordingly, to establish federal diversity jurisdiction in this case, none of the respondents may be citizens of New Jersey.

Even though Ms. Xie denied PSEG-RT's request to enter the Littlestown Pike Property for the purpose of conducting the same surveys and studies PSEG-RT seeks to conduct on the Subject Properties in this case, Ms. Xie was not named as a respondent in this suit. PSEG-RT's conscious decision to exclude Ms. Xie as a respondent in this case is a clear effort to cherry-pick respondents to obtain federal diversity jurisdiction, to avoid filing suit in Maryland state court in each of the counties where the Subject Properties are located as contemplated by RP § 12-111. Ms. Xie is a necessary and indispensable party to this case because of her ownership interest in the Littlestown Pike Property. Fed. R. Civ. P. 12(b)(7) provides for dismissal of an action where a litigant fails to join a party as required under Fed. R. Civ. P. 19. Accordingly, this case should be dismissed for failure to join a necessary party under Fed. R. Civ. P. 12(b)(7).

Fed. R. Civ. P. 19 sets forth a two-step inquiry for the court to determine whether a party should be joined in a case. First, the court must determine whether the party is necessary to the action under Rule 19(a). *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 249 (4th Cir. 2000).  If the court determines that the party is necessary, it must be joined "if feasible." Fed. R. Civ. P. 19(a). If the party cannot be joined, then the court must determine whether the proceeding can continue in the party's absence, i.e., whether the party is "indispensable" to the action under Rule 19(b). *Nat'l Union*, 210 F.3d at 249, *see also Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 917-918 (4th Cir. 1999). If the party is both necessary and indispensable but cannot be joined without destroying complete diversity of citizenship, then dismissal is appropriate. *Nat'l Union*, 210 F.3d at 250, *see also Teamsters*, 173 F.3d at 918. Although a "drastic remedy," "a decision whether to dismiss must be made

pragmatically, in the context of the substance of each case, rather than by a procedural formula."

*See Id.* (quoting *Provident Tradesmens Bank & Trust Co.*, 390 U.S. at 112 n. 10 (1967) (internal

quotation marks omitted).

> A party is a "necessary party" under Fed. R. Civ. P. 19(a)(1) if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing
>     parties; or
> (B) that person claims an interest relating to the subject of the action and is so
>     situated that disposing of the action in the person's absence may:
>     (i)   as a practical matter impair or impede the person's ability to protect
>           the interest; or
>     (ii)  leave an existing party subject to a substantial risk of incurring
>           double, multiple, or otherwise inconsistent obligations because of
>           the interest.

In this case, Ms. Xie is a necessary party to this suit under Fed. R. Civ. P. 19(a)(1)(B)(i).

Ms. Xie's ownership interest in the Littlestown Pike Property is directly related to the subject

matter of this action because it is in the path of the MPRP and is the proposed site for two H-frame

transmission structures. *See* Xie Decl. at ¶ 5. Furthermore, Ms. Xie declined PSEG-RT's request

for permission to enter the property and conduct the *same surveys and tests* that it seeks to force

upon the Respondents in this case.  Like Ms. Xie, all the Respondents in this case either refused to

respond or outright declined PSEG-RT's request for access to their properties.

Disposing of this action in Ms. Xie's absence would impair or impede her ability to protect

her ownership interest in the Littlestown Pike Property. If this Court issues an order in PSEG-RT's

favor in this action, PSEG-RT will likely use that order as persuasive authority to convince other

courts to force access to Ms. Xie's property and may even argue that Ms. Xie is somehow

collaterally estopped from relitigating the issues. Accordingly, Ms. Xie is a necessary party to this

action because her ownership interest in the Littlestown Pike Property is directly related to the

subject matter of this action and disposing of the action in her absence would impair or impede her ability to protect that interest.

If joinder of a necessary party is appropriate but not feasible under Rule 19(a)(1), then the court must determine whether "in equity and good conscience" the lawsuit can proceed without the absent party or should be dismissed under Rule 12(b)(7) because that party is both necessary and indispensable. Fed. R. Civ. P. 19(b). Rule 19(b) directs the court to consider the following factors when determining whether a party is indispensable:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

The first point of consideration under this Rule 19(b) addresses the same concerns raised by Rule 19(a)(1)(B). As noted above, if this suit were to proceed without Ms. Xie, she could be deprived of her property rights because she is situated in a similar position to the Respondents named in this case. As to the second factor, the court cannot tailor its relief to lessen or avoid the prejudice to Ms. Xie because any order in PSEG-RT's favor in this case necessarily increases the likelihood that it will gain access to the Littlestown Pike Property in the future.

Furthermore, PSEG-RT itself contends that it cannot proceed in a piecemeal fashion due to construction timeline constraints, and on that basis seeks injunctive relief to immediately obtain surveys and avoid purported irreparable harm. ECF 75-1 at 28. This means that any judgment rendered in Ms. Xie's absence would not be adequate to provide PSEG-RT with complete relief because it would still need to obtain a right to enter the Littlestown Pike Property to conduct the

necessary surveys and studies. Finally, if this action were dismissed for non-joinder, PSEG-RT could secure an adequate remedy by bringing actions in state court where the Respondents' properties are located. All four factors weigh heavily in favor of finding that Ms. Xie is an indispensable party in this case; accordingly, the court cannot "in equity and good conscience" proceed in Ms. Xie's absence.

It is also worth noting that PSEG-RT's failure to join Ms. Xie as a respondent in this case demonstrates that it is not operating in good faith. By its own admission, PSEG-RT knows it must survey all of the properties from "beginning to end" of the line (ECF 75-1 at 28), which would include the Littlestown Road Property, yet PSEG-RT does not seek access to all affected properties in this suit because doing so would destroy federal diversity jurisdiction. In other words, PSEG-RT consciously decided to name only those respondents domiciled in Maryland in the hopes of obtaining an access order from a federal court which it could use to expedite future access orders against other landowners in the path of the MPRP. For all of the foregoing reasons, this action should be dismissed under Fed. R. Civ. P. 12(b)(7) for failure to join a necessary party under Fed. R. Civ. P. 19.

## V.    CONCLUSION

For the reasons set forth above, the Court should dismiss this action under Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 12(b)(7), and/or the *Burford* abstention doctrine.