# EXHIBIT C

**BEFORE THE**
**MARYLAND PUBLIC SERVICE COMMISSION**

| | |
|---|---|
| Application of PSEG Renewable Transmission LLC for a Certificate of Public Convenience and Necessity to Construct a New 500 kV Transmission Line in Portions of Baltimore, Carroll, and Frederick Counties, Maryland | *<br>*<br>*   Case No. 9773<br>*<br>*<br>*<br>* |

**MOTION REQUESTING A PRE-HEARING CONFERENCE TO RULE ON INTERVENTION PETITIONS AND ESTABLISH A PROCEDURAL SCHEDULE TO MEET PJM'S REQUIRED JUNE 2027 IN-SERVICE DATE FOR THE PROJECT**

**Introduction**

Now that the Maryland Public Service Commission's ("Commission") intervention deadline has passed and the Power Plant Research Program of the Maryland Department of Natural Resources ("PPRP") has submitted its recommendation regarding administrative completeness, PSEG Renewable Transmission LLC (the "Company" or the "Applicant") hereby respectfully moves the Commission to promptly schedule a pre-hearing conference in the above-captioned case.[1] The pre-hearing conference will allow the Commission to (i) rule on the 174 pending petitions to intervene; (ii) set a procedural schedule,[2] and (iii) address the administrative completeness of the Company's Application. The prompt scheduling of a pre-hearing conference and the efficient progression of this case is needed to allow the Company to meet the June 2027

---

[1] On January 10, 2025, the Commission ordered petitions to intervene to be filed by February 17 (later extended to February 24) and requested PPRP to report (by March 26) its recommendation on the administrative completeness of the Company's December 31, 2024 application (the "Application") for a Certificate of Public Convenience and Necessity ("CPCN"). *See* Case No. 9773, Notice of Intervention Deadline and Requested Completeness Determination (Jan. 10, 2025) (ML No. 314771). The Commission stated that it would thereafter consider the procedural schedule in this case. *See id.* at 3. PPRP filed its report as to the administrative completeness of the CPCN Application on March 26, 2025 (ML No. 317070).

[2] As discussed further herein, the Company's proposed procedural schedule is attached as **Exhibit A**.

1

in-service date for the Maryland Piedmont Reliability Project (the "MPRP" or the "Project")[3] mandated by PJM Interconnection, LLC ("PJM") to address "extensive, severe and widespread reliability violations facing Maryland."[4]

As set forth in detail in the Company's Application for a Certificate of Public Convenience and Necessity ("CPCN"),[5] PJM, the independent federally regulated regional transmission organization serving the 13-state region that includes Maryland,[6] has directed the Project to be placed in service by **June 1, 2027** to prevent the "severe" overloading of "numerous 500 kV (and lower voltage) lines in Maryland and the surrounding PJM system" and "thousands of voltage collapse and extreme low voltage (non-sustainable) violations."[7] If left unaddressed, PJM has determined that these violations "could compromise overall system reliability" and lead to "widespread and extreme conditions, such as system collapse and blackouts" for Marylanders and other customers in the region.[8] To meet PJM's deadline and ensure the continued reliability of the electric transmission system in Maryland, the Company must begin construction of the MPRP by **January 2026**.[9] A pre-hearing conference should therefore promptly be convened to move the

---

[3] The MPRP is an approximately 67-mile 500 kV alternating current ("AC") single circuit overhead transmission line that traverses portions of Baltimore, Carroll and Frederick Counties.

[4] Direct Testimony of Dr. Sami Abdulsalam ("Abdulsalam Direct") at 6:5-7.

[5] *See* Case No. 9773, Application of PSEG Renewable Transmission LLC for a Certificate of Public Convenience and Necessity for the Maryland Piedmont Reliability Project ("Application"), ML No. 314555 (Dec. 31, 2024) at 4-6, 10-13, 37, 41; Abdulsalam Direct at 5-8, 41-53 & Exs. SA-5 through SA-8; Direct Testimony of Andrew Gledhill at 8-16 & Exs. AG-4 through AG-6.

[6] *See* Application at 4 n.8.

[7] *Id.* at 7:10-12, 43:14-18, 44:8-12, 45:11-13.

[8] *See supra* n.5.

[9] *See* Application at 22, 41; Direct Testimony of Dawn Shilkoski ("Shilkoski Direct") at 27. Based on its extensive experience constructing transmission projects, the Company has estimated that the Project's construction activities will take approximately 18 months to complete.

case move forward.[10]

Additionally, as discussed further herein, the Commission should also determine that the Company's Application is administratively complete for the purposes of setting a procedural schedule. The Company appreciates PPRP's thorough review of the Application, and the Company looks forward to working with PPRP through the discovery process to provide any relevant additional data it requests to complete its review of the Project prior to the evidentiary hearings. In particular, PPRP has requested the Company to provide further description on the Routing Study, and for the Company to conduct field-based studies, an assessment of impacts identified by field-based studies, and an assessment of unavoidable impacts and recommended mitigation of the same.[11] As to the questions PPRP has regarding the Company's Routing Study, it appears that these questions go to issues that PPRP would like to better understand and not as required information that is missing under the Code of Maryland Regulations ("COMAR"). As to the question of additional field level studies that PPRP are requesting, those surveys are not required under COMAR at the time the application is filed.[12]

---

[10] The Applicant notes that neither the Maryland Code's Public Utilities Article ("PUA") or COMAR requires the Commission to hold a pre-hearing conference for the purpose of adopting a procedural schedule. Given the large number of petitions to intervene filed in this case, the Commission's typical practice of holding an in-person pre-hearing conference to set a procedural schedule may not be practical. The Commission could instead issue a notice to solicit responsive comments to the instant Motion by a specific date and then set the procedural schedule and rule on the petitions to intervene based on this Motion and the responsive comments. However, recognizing that the Commission may not want to deviate from its customary practice, the Company suggests that the Commission accommodate the exigent June 2027 in-service date for the Project by promptly holding a pre-hearing conference, which could be held virtually for the purpose of administrative efficiency.

[11] The Company is reviewing PPRP's concerns provided in its report on the administrative completeness of the Application and will provide a more fulsome response to the report in advance of the Commission's determination. We agree with PPRP's assessment that the Commission should schedule a pre-hearing conference.

[12] COMAR 20.79.01.10 provides that a CPCN Application "may not be deemed incomplete for failure to provide information that is not required by COMAR 20.79.01.06." COMAR 20.79.01.06 in turn requires a transmission line CPCN applicant to provide the information specified in COMAR 20.79.04 ("Details of Filing Requirements – Transmission Lines"), and COMAR 20.79.04 does not specify that field surveys are needed to support any of the information about the project comprising the filing requirements. In comparison, in generating station CPCN cases, because the applicant has site control of the property on which the generating station will be located, COMAR

3

However, PPRP states that it needs field level survey data to "undertake its independent assessment."[13]  The Company understands PPRP's position and has already been working with PPRP through the discovery process to provide the field level survey data it requests.  In fact, the Company anticipated PPRP's request and, because the Company does not have site control over the proposed route, it has already been working for the past several months to contact landowners to obtain access to the private properties along the proposed route to perform the requested surveys.[14]  Where necessary and appropriate, the Company may also need to seek judicial support to conduct the surveys.  The Commission should therefore determine that the Application is administratively complete because the Application addresses all relevant COMAR requirements.  The Commission should also adopt the Company's proposed schedule to allow the case to advance forward to meet PJM's required in-service date for the Project, while also providing the Company time to provide PPRP the field level survey data it requests through discovery, as soon as the Company obtains the necessary access to the properties.

---

expressly requires survey level data to be included in a generating station CPCN application.  *See* COMAR 20.79.03.03

[13] *See* PPRP's Report on Administrative Completeness at 6, (March 26, 2025) (ML No. 317070).  In addition to field-based studies for wetlands, forest stand, geotechnical surveys, sensitive specifies project review areas, and historical or archeological resources, PPRP also requests an assessment of impacts identified by the field-based studies, and the assessment of unavoidable impacts and recommended mitigation.  PPRP requests clarification on the Company's Routing Study.

[14] *See* **Exhibit E** (Applicant's Response to PPRP DR 1-8 and PPRP 1-8 Attachment 01, which detail the efforts and timeline of the Applicant's engagement with and outreach to landowners to obtain temporary, non-intrusive property access to conduct field surveys); **Exhibit F** (sample letter to landowner requesting temporary, non-intrusive field survey access, sent in November 2024).  Exhibit F was also included with the Company's December 31, 2024 Application filing as Exhibit RJT-5 to the Direct Testimony of Roger J. Trudeau.

4

**Argument**

**A. The Commission should promptly hold a pre-hearing conference and rule on the 174 petitions to intervene.**

The Applicant respectfully requests that the Commission expediently hold a pre-hearing conference and rule on the pending petitions to intervene. In total, 174 petitions to intervene have been filed in this proceeding.[15] These 174 petitions were filed by residential and commercial landowners, special interest groups, local governments or State elected representatives, and one local electric company (The Potomac Edison Company), respectively. Petitions to intervene in Commission proceedings are governed by PUA § 3-106, which provides that the Commission shall grant leave to intervene unless "(1) the parties to the proceeding adequately represent the interest of the person seeking to intervene; or (2) the issues that the person seeks to raise are irrelevant or immaterial."[16]

The Commission should hold a prehearing conference to consider the petitions that have been filed. As set forth in greater detail below, the Company does not object to the Commission granting any intervention petitions filed by individual landowners whose properties are on or directly adjacent to the Project's route (a total of 114 petitions).[17]

---

[15] In addition, Staff and the Maryland Office of People's Counsel ("OPC") each filed an entry of appearance formalizing their participation as parties in this case pursuant to PUA §§ 3-104(e) and 2-204(a), respectively. Pursuant to Md. Code Ann., Nat. Res. § 3-303, PPRP will participate as a party to this case and as indicated above, PPRP has already propounded written discovery requests on the Applicant.

[16] Of the 174 petitions to intervene filed in this proceeding, four were filed by local governments or elected officials. See ML Nos. 315404, 315504, 315105, 315215. This Motion does not address these four petitions to intervene, and the Company does not oppose them. See PUA § 7-207(c)(1) and (2) (requiring notice of a CPCN application filing to be provided to relevant local governments and elected members of the General Assembly). The Company also does not oppose the petition to intervene filed by The Potomac Edison Company, ML No. 316000. See COMAR 20.79.02.02 (requiring that a copy of the application be provided to the electric company(ies) serving the areas where a proposed project is to be located).

[17] In accordance with PUA 7-207(c)(1)(iv) and COMAR 20.79.02.02B, the Company provided notice to each owner of land and each owner of adjacent land regarding the filing of the application as well as the notice of intervention deadline publication. See Case No. 9773, Compliance Filing re: Notice of Intervention Deadline Requirements (ML No. 315603).

5

As to the individual landowners whose properties are not on or adjacent to the Project's route (48 petitioners), and to the special interest groups who have filed petitions to intervene (seven petitioners), the Company understands the interests these petitioners have expressed and appreciates that the Commission will be interested in hearing from these petitioners as the case proceeds forward.  Consistent with the PUA and prior Commission practice, the Company respectfully suggests that the Commission should grant "Interested Person" status to these 55 petitioners and allow these petitioners to participate through the public comment and public hearing process.  For purposes of the remaining aspects of the CPCN case, these petitioners' interests will be represented by the statutory and other landowner parties to this proceeding.

Additionally, given the large number of intervention petitions that allege many of the same concerns, the Company respectfully requests that, for the petitions the Commission does grant, the Commission also include language in its procedural order requesting that the intervenors coordinate with each other to avoid duplicative testimony, filings, and discovery requests.[18]  Finally, the Company also respectfully recommends that the Commission give consideration to scheduling a status conference to occur shortly before the start of the evidentiary hearing to implement procedures for the orderly and efficient administration of the evidentiary hearing.

    A.   <u>Petitions Filed by Residential and Commercial Landowners (162 Petitioners)</u>

Of the 174 petitions to intervene filed in this case, 162 petitions were submitted by individual residential or commercial landowners.  These 162 petitioners indicate that they intend

---

[18] *See, e.g.*, Case No. 9471, *Re Transource Maryland, LLC*, Order No. 88585 at 2 n.2 (Feb. 22, 2018) ("The … individual intervenors [landowners whose properties were located on or adjacent to the project route] each assert that the outcome of this proceeding will have a substantial impact on their respective properties.  These intervenors are encouraged to coordinate with each other in order to avoid duplicative presentations and, if possible – for purposes of cross examination of witnesses – coordinate their presentations during the evidentiary proceedings.").

to raise issues ranging from viewshed and property value impacts to public health, economics, and environmental impacts, among other issues.[19]

1. *Petitions Filed by Landowners Whose Properties are Located on or Adjacent to the Project Route (114 Petitioners).*

Of the 162 individual landowner petitions described above, 114 petitioners own or represent property located either on (within 150 feet of) or adjacent to (within 550 feet of) the Project's right-of-way ("ROW").[20] A list of those 114 petitioners is attached hereto as **Exhibit C**. The Company does not object to the Commission granting these 114 petitions. The Company has confirmed that these individual landowners' properties are located on or adjacent to the Project ROW as set forth in PUA § 7-207(c).[21]

2. *Petitions Filed by Landowners Whose Properties are Not On or Adjacent to the Project ROW (48 Petitioners).*

The remaining 48 individual landowner petitions were filed by persons whose properties are not located on or adjacent to the Project ROW. A list of those 48 petitioners is attached hereto as **Exhibit B**. The Company appreciates the interest of these 48 petitioners in participating in the Commission's review of the Project and expects that the Commission will want to hear from these petitioners and consider their concerns prior to making a final decision in this case. The Company proposes that these 48 petitioners be granted "Interested Person" status (rather than party status), which would allow these 48 petitioners to receive official Commission notices in the docket and

---

[19] *See* Exs. B & C (listing issues raised in each individual residential or commercial landowner's petition).

[20] Under COMAR 20.79.02.02, an applicant is required to provide notice of the filing of its CPCN application to such persons. The Applicant complied with this provision. *See* Case No. 9773, ML No. 315603.

[21] *See* PUA § 7-207(c)(1)(vi) ("[T]he Commission shall … require the applicant to provide notice immediately of the application to … for a proposed overhead transmission line, each owner of land and each owner of adjacent land[.]"). *Cf.* Case No. 9361, *Re Merger of Exelon Corp. and Pepco Holdings, Inc.*, Order No. 86646 at 4 (Oct. 2, 2014) (noting that under the PUA, petitioners "still must have a direct interest in the issues they intend to raise").

7

participate in this proceeding by filing written public comments and participating in future public comment hearings. For purposes of other aspects of the CPCN proceeding, the concerns raised by these 48 petitioners will also be represented by the 114 landowners who the Company does not object to joining as parties to the proceeding.[22] Moreover, issues raised in these 48 petitions regarding utility rates and the environment will be statutorily represented by OPC, and PPRP—the state agency that by law coordinates a full environmental review of the Project on behalf of various State agencies.[23]

The Commission has taken similar action in several prior cases.[24] The Applicant's proposed approach to these intervention petitions is thus supported by Commission precedent and, given the large volume of petitions to intervene that have been filed in this case, also confers the benefit of facilitating the efficient and orderly administration of this case, while still ensuring that each of these 48 petitioners are provided opportunities through public comments to voice their concerns to the Commission.

---

[22] *See, e.g.*, Case No. 9692, Order No. 91518 at 9 (Feb. 10, 2025) ("For the remaining issues that will be resolved in BGE's Year 2023 final reconciliation, the Commission finds that Petitioners' interests will be adequately represented by existing parties. For Petitioners who are BGE ratepayers, their concerns regarding BGE's 2023 reconciliation will be addressed by OPC, who represents the interests of all Maryland residential ratepayers.").

[23] *See* Md. Code Ann., Nat. Res. § 3-303.

[24] *See* Case No. 9127, Order of Hearing Examiner on Motion to Intervene, ML No. 111588 (July 11, 2008) (denying individual's motion to intervene because he did not "allege any individual impact or other specific effects from the proposed project, and his interests are no different from the general body of ratepayers and citizens" and "presented no individual interests related to his specific proposed participation," but allowing the individual to participate in the case as an "Interested Person" and by filing public comments); Case No. 9031, Hearing Examiner's Ruling on Petition to Intervene, ML No. 97210 (May 6, 2005) (denying CSX Transportation's petition to intervene but granting CSX "interested person status" in the case); Case No. 9003, Order of Hearing Examiner (June 9, 2004) (denying Yellow Transportation's petition to intervene but granting interested person status).

B.  Petitions Filed by Special Interest Groups (7 Petitioners)

A total of 7 special interest organizations, consisting of three land preservation interest groups and four environmental interest groups, also filed petitions to intervene in this proceeding.[25] As with the 48 landowners described above, the Company appreciates the interest of these groups in participating in the Commission's review of the Project and expects that the Commission will want to hear from these petitioners and consider their concerns prior to making a final decision in this case.  Consistent with the discussion above, the Company proposes that these 7 special interest organizations participate in this case as "Interested Persons" in this case and express their concerns regarding the Project through the Commission's public comment process.[26]

The petitions filed by the 3 of these 7 organizations—STOP MPRP, Land Preservation Trust, and the Maryland Farm Bureau—indicate an intent to raise issues regarding the need for the Project, preserved land and agricultural preservation, property values, and viewsheds.  For purposes of other aspects of the CPCN case, those issues will be represented by the Commission's Technical Staff ("Staff") (as to the need for the Project), OPC (as to the need for the Project and ratepayer impacts), PPRP (as to the need for the Project, preserved/agricultural land, property impacts, and viewsheds), and the 114 individual landowners who own properties on or adjacent to the ROW and who the Company does not object to being parties to the proceeding.[27]  Similarly, the petitions filed by the remaining 4 of these 7 organizations—Sierra Club, Valleys Planning

---

[25] The 3 land preservation interest groups petitioning for intervention are STOP MPRP (ML No. 315926), Land Preservation Trust (ML No. 315951), and the Maryland Farm Bureau (ML No. 315956).  The 4 environmental interest groups are Sierra Club (ML No. 315793), Valleys Planning Council, Inc. (ML No. 315917), Gunpowder Riverkeeper (ML No. 315825), and Potomac Riverkeeper Network (ML No. 315481).

[26] As the Company stated above, if the Commission elects to grant these intervenors party status, the Company encourages the Commission to include language in its procedural order requesting these intervenors likewise coordinate with each other to avoid duplicative testimony, filings, and discovery requests.

[27] Importantly, the 114 landowner petitioners to whose intervention the Company does not object include farm owners and agri-entertainment or agri-tourism businesses.

Council, Gunpowder Riverkeeper, and Potomac Riverkeeper Network—raise issues regarding natural resources and the environment. As noted above, however, PPRP is statutorily charged with being a party to this case for the purpose of assessing the environmental and natural resource impacts of a proposed project. The Company values the interests expressed by these 7 special interest organization petitioners, and in fact the Company has already met with several of these organizations to discuss their concerns,[28] therefore the Company proposes they participate in this case as "Interested Persons" and express their concerns through the Commission's public comment process.

> **B.    The Commission should promptly hold a prehearing conference to adopt the Applicant's proposed procedural schedule to enable the Project to meet PJM's required June 2027 in-service date and address the administrative completeness of the Application.**

The Applicant also requests that the Commission hold a prehearing conference as soon as possible to adopt a procedural schedule and thereby advance this proceeding so that the Project can meet its June 2027 in-service date.[29] For the Commission's convenience and with the mandatory in-service date in mind, the Applicant has developed a proposed procedural schedule (attached as **Exhibit A**) for the Commission to consider at the prehearing conference, which provides for a final CPCN Order by the end of January 2026.[30] The proposed schedule is consistent with the time periods allocated for similar milestones and comparable deadlines in other

---

[28] *See* Shilkoski Direct, Ex. DHS-3.

[29] The Company notes that formal discovery has already commenced in this proceeding. Both PPRP and Staff have propounded discovery requests on the Applicant. The first PPRP discovery set was served on February 20, 2025 and the first Staff discovery set was served February 27, 2025. Staff's second discovery set was served March 21, 2025 (after 5:00pm).

[30] *See* Application at 22, 41; Direct Testimony of Dawn Shilkoski at 27. Based on its extensive experience constructing transmission projects, the Company has estimated that the Project's construction activities will take approximately 18 months to complete.

transmission line CPCN cases.[31]  Thus, the proposed schedule balances the need for the Commission to implement an efficient but also fair and thorough process for the Commission and the parties to comprehensively review the Application.

In addition, the Commission should determine that the Company's Application is administratively complete for the purposes of advancing the case forward.  The Application filed on December 31, 2024, together with the Environmental Review Document ("ERD") Supplement filed on February 14,[32] contains all the information that is required to be included with a transmission line CPCN application, consistent with COMAR's filing requirements.[33]  As the Company explained in its Application, the COMAR-required information and data contained in the ERD is based on publicly available desktop-level and GIS survey-level data obtained from

---

[31] For example, the Commission will be afforded thirteen months to thoroughly analyze and rule on the Application. Moreover, parties will have six months to analyze the Application and issue discovery requests to the Company prior to filing their first round of testimony.  And parties will have three months prior to the evidentiary-style hearings to review and analyze the Company's rebuttal testimony.  *E.g.*, Case No. 9470 (13 months between application filing and final order); Case No. 9367 (ten months between application filing and final order); Case No. 9309 (seven months between application filing and final order).

[32] *See* ML No. 315863.

[33] *See* COMAR 20.79.01.06.  For example, in satisfaction of COMAR 20.79.01.06.K, which requires the Company to provide the environmental information specified in COMAR 20.79.04.04, the Company's ERD filed with the Application provides a description of the "physical, biological, aesthetic, and cultural features, and conditions of the site and adjacent areas," a "summary of the environmental and socioeconomic effects of the construction and operation of the project (including unavoidable impacts and recommended mitigation), copies of all studies of the environmental impact of the Project, and a statement that the Project will "conform to applicable environmental standards."  *See* Application Attachment B (Environmental Review Document) at 39-154 (Sections 3.2 through 3.7); Direct Testimony of Corey Gray at 9-10.  Attached hereto as **Exhibit D** is a chart prepared by the Company showing where each of COMAR's transmission line CPCN application requirements is located in the Application or supporting documents.

federal, state, and local governmental sources.[34] Accordingly, the Commission should not delay in holding a prehearing conference or adopting a procedural schedule in this case.[35]

The Company appreciates the time and energy that PPRP has already devoted to reviewing and analyzing the Company's Application and supporting materials, and the Company intends to provide field-based studies as requested by PPRP contingent upon the Company being granted access to those properties. However, the Company notes that neither the PUA nor controlling COMAR provisions require a transmission line CPCN applicant to produce field survey data in order for the case to otherwise move forward.[36]

Even though field-level surveys are not required by COMAR to be completed at the time the CPCN application is filed, the Company appreciates and agrees to PPRP's request for such

---

[34] For example, as stated on pages 40-41 of the ERD, "Publicly available Maryland GIS data was reviewed to determine the potential for environmental resources within the proposed MPRP ROW. Maryland's Environmental Resources and Land Information Network (MERLIN) (MDNR 2024f) was the primary source of existing data. MERLIN is an electronic database maintained by MDNR that allows users to access various publicly available data sets throughout the State of Maryland." And as clarified in the ERD, all of the data was enhanced with federal and state-level data sets as the sources for the information. The ERD discusses in detail and at length the extensive data analyzed and used to provide the information required under COMAR, but also summarizes the data analyzed in, for example, Table 10 ("GIS Desktop Analysis"), and Table 33. The ERD further explains that its Section 3.4, "Cultural Resources," "identifies and evaluates potential impacts to known cultural resources within and in the vicinity of the proposed MPRP ROW" based on "previously documented historic architectural and archaeological sites cataloged by Maryland Historical Trust (MHT) using the MEDUSA online cultural resource database," including resources listed in the Maryland Inventory of Historic Properties (MIHP), the National Register of Historic Places (NRHP), previously recorded archaeological sites, National Historic Landmarks (NHL), and other historical overlays, including Maryland Heritage Areas and MHT Historic Preservation Easements."

[35] COMAR 20.79.01.10 provides that a CPCN Application "may not be deemed incomplete for failure to provide information that is not required by COMAR 20.79.01.06." COMAR 20.79.01.06 in turn requires a transmission line CPCN applicant to provide the information specified in COMAR 20.79.04 ("Details of Filing Requirements – Transmission Lines"), and COMAR 20.79.04 does not specify that field surveys are needed to support any of the information about the project comprising the filing requirements.

[36] In comparison, in generating station CPCN cases, because the applicant has site control of the property on which the generating station will be located, COMAR expressly requires survey level data to be included in a generating station CPCN application. *See* COMAR 20.79.03.03 (requiring for generating stations "a forest stand delineation" an "evaluation of mitigation and minimization actions to address impacts to rare, threatened, and endangered species, as needed," and "a Phase I environmental site assessment report, prepared in accordance with the American Society for Testing Materials (ASTM) standard E1527"). The absence of a corresponding express survey level data requirement for transmission line CPCN applications is therefore instructive here.

data to perform its analysis prior to the evidentiary hearings in this case.[37] Indeed, the Company anticipated PPRP would make such a request and has for the past several months already been making every effort to obtain access to the private properties along the proposed route to conduct these surveys and provide PPRP with the requested data.[38] However, the Company does not have site control over the private properties along the proposed route, which means that the Company will need to be granted access to these properties to conduct the on-site, non-intrusive surveys that PPRP seeks. So far, despite the Company's real and bona fide efforts to obtain voluntary consent from landowners for temporary property access to conduct the non-intrusive surveys for the field data that PPRP is requesting, the Company's access requests have been almost universally denied.[39] The Company will continue attempting to negotiate with landowners in earnest for their consent, but if these efforts remain unfruitful, the Company is prepared to seek court orders for rights of entry on these properties for the limited purpose of conducting the surveys PPRP requests.

In light of the above facts, the Company's proposed schedule progresses the case forward while the Company works on obtaining property access to conduct any field-level surveys that PPRP has requested or may request through the discovery process on a rolling basis, and, if needed, work its way through the judicial process to obtain property access. The parallel efforts contemplated in the Company's proposed procedural schedule is therefore consistent with the

---

[37] *See* **Exhibit E**, the Company's Response to PPRP Data Request 1-8 (PPRP Data Request 1-8 sought field-based measures on environmental features such as streams, 100-year floodplains, nontidal wetlands, 12-digit watersheds, and rare, threatened or endangered species).

[38] *See supra* n.14.

[39] In fact, out of the 114 petitioners on the 150' right of way ("ROW") or within the 550' study corridor, 56 property owners (approximately half) have provided verbal, written, or in-person communication prohibiting the Applicant, or its agents access to the properties along the study corridor to conduct field-level surveys. Out of the total 360 parcels along the ROW, 332 landowners have declined survey access to the Company or its agents: 265 landowners have provided hard declines and 67 landowners have disallowed agent entry, been unwilling to respond, or placed anti-MPRP signage.

COMAR transmission line CPCN application requirements, will provide PPRP the field-level survey data it requires for its full analysis of the Project prior to the evidentiary hearings, and will avoid unnecessary delays in the proceeding and allow the Commission to rule on the Application by January 2026 so that the MPRP can be timely constructed to address the critical system needs described above.

## Conclusion

Based on the foregoing, the Applicant respectfully requests that the Commission:

(1) Promptly schedule a prehearing conference for the purpose of ruling on the petitions to intervene, adopting a procedural schedule in this case, and addressing any other preliminary issues;[40]

(2) Grant the 114 individual landowner petitions to intervene identified in **Exhibit C** and the petitions to intervene filed by the four local government/elected official petitions and The Potomac Edison Company identified in Footnote 16 above;

(3) Note the 48 individual landowner petitioners identified in **Exhibit B** and the seven specialty interest organizations identified in Footnote 25 above as "Interested Persons" in this proceeding and encourage their filing of written public comments and participation at the forthcoming public comment hearings;

(4) Adopt the procedural schedule proposed as **Exhibit A** to this Motion and in the Order adopting the procedural schedule, encourage the coordination of discovery and other efforts by the many intervenors in this proceeding who have alleged overlapping interests in the Project.

---

[40] As noted in n.10 *supra*, if the Commission determines that a prehearing conference is needed before it can adopt a procedural schedule, the Company respectfully suggests that such a conference be held virtually for the purpose of administrative efficiency.

(5) Address any other preliminary issues including the resolution of the administratively completeness of the Company's Application.

Dated: March 26, 2025						Respectfully submitted,

/s/ J. Joseph Curran, III
J. Joseph Curran, III
Christopher S. Gunderson
Susan R. Schipper
Ananya G. Sinha
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202

Jodi L. Moskowitz
Ana J. Murteira
PSEG Services Corporation
80 Park Plaza
Newark, New Jersey 07102

*Counsel for PSEG Renewable Transmission LLC*

15