# EXHIBIT F

**BEFORE THE**
**MARYLAND PUBLIC SERVICE COMMISSION**

Application of PSEG Renewable    *
Transmission LLC for a Certificate of    *
Public Convenience and Necessity to    *      Case No. _____
Construct a New 500 kV Transmission    *
Line in Portions of Baltimore, Carroll, and    *
Frederick Counties, Maryland.    *
   *

**PSEG Renewable Transmission LLC**

**Maryland Piedmont Reliability Project**

**Direct Testimony of**
**Roger J. Trudeau**

**Topics Addressed:**    Property Rights Acquisition
Interactions with Landowners
Policy Regarding Landowners' Use of
ROW
Preserved Land
Compensation to Landowners.

Date: December 31, 2024

Case No. _____
PSEG Renewable Transmission LLC
Direct Testimony of Roger J. Trudeau

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION.................................................................................... 1

II.    PROPERTY RIGHT ACQUISITION NEEDED FOR THE PROJECT........ 4

III.   LANDOWNER INTERACTIONS............................................................ 5

IV.   RIGHT OF WAY ("ROW") POLICY ...................................................... 8

V.    FARMLAND AND PRESERVED LAND ........................................... 11

VI.   COMPENSATION ............................................................................... 13

VII.  CONCLUSION .................................................................................... 14

Case No. _____
PSEG Renewable Transmission LLC
Direct Testimony of Roger J. Trudeau

---

1                          **I.    <u>INTRODUCTION</u>**

2  **Q1.  PLEASE STATE YOUR NAME AND BUSINESS ADDRESS.**

3  A1.    My name is Roger J. Trudeau.  My business address is 80 Park Plaza, Newark, NJ 07102.

4  **Q2.  BY WHOM ARE YOU EMPLOYED AND IN WHAT CAPACITY?**

5  A2.    I am employed by PSEG Services Corporation as Manager – Corporate Real Estate

6         Transactions.   In this capacity, I provide real estate services to PSEG Renewable

7         Transmission LLC (hereinafter the "Company" or "PSEG Renewable Transmission").

8  **Q3.  PLEASE PROVIDE A SUMMARY OF YOUR EDUCATIONAL BACKGROUND**

9  **      AND PROFESSIONAL EXPERIENCE.**

10  A3.    I am a graduate of University of Wisconsin-Oshkosh, where I earned a Bachelor of Arts in

11         Political Science in 1978.  I also have a Juris Doctorate from Hamline University School

12         of Law.  I have previously held positions as National Real Estate Manager of 3M National;

13         Real Estate Director of Video Update; Director Real Estate for Wisconsin Public Service

14         Company; and Real Estate Director of Starbucks.  I have been employed by PSEG Services

15         Corporation as Manager – Corporate Real Estate Transactions for eight years.  I began my

16         tenure at PSEG Services Corporation in 2008 as a Lead Real Estate Representative and

17         was promoted to Senior Corporate Property Consultant in 2011.  In 2014, I was promoted

18         to Principal Real Estate Consultant and was then promoted to my present role in 2016.  I

19         have also presented to utility organizations on the topic of right-of-way ("ROW")

20         acquisition for linear projects.   In my role as Manager – Corporate Real Estate

21         Transactions, I have the overall responsibility for securing real estate rights required for all

1  projects being developed by Public Service Enterprise Group, Inc. ("PSEG Enterprise

2  Group") and its affiliates, as well as transferring real estate rights to third parties.

3 **Q4.  WHAT ARE YOUR RESPONSIBILITIES IN CONNECTION WITH THE**

4  **MARYLAND PIEDMONT RELIABILITY PROJECT?**

5 A4.  I oversee the real estate, property rights, easement, and ROW acquisitions for the Maryland

6  Piedmont Reliability Project ("MPRP" or the "Project"), including managing scope, cost,

7  schedule of ROW and all property rights acquisitions, and all landowner interactions for

8  the Project.  To assist in the Company's property acquisition activities for the MPRP, the

9  Company has hired Contract Land Staff ("CLS"), one of the largest independent providers

10  of ROW and land acquisition consulting companies in the United States, as the general

11  contractor, and Diversified Property Services, Inc. ("Diversified"), a woman-owned ROW

12  consulting firm that has served the Mid-Atlantic region of Maryland, Washington D.C.,

13  and Virginia for over 30 years, as the sub-contractor.  The Project will staff approximately

14  6-10 employees.  In my role as Manager – Corporate Real Estate Transactions, I oversee

15  both CLS and Diversified in their efforts on behalf of the Company.

16 **Q5.  PLEASE DESCRIBE THE PURPOSE OF YOUR DIRECT TESTIMONY IN THIS**

17  **PROCEEDING.**

18 A5.  First, I will explain the Company's efforts to obtain the necessary temporary or permanent

19  easements on landowners' properties to construct the Project and explain the Company's

20  policy regarding landowner interactions.  Second, I will provide an update on the status of

21  the Company's negotiations with landowners and the goals that PSEG Renewable

Case No. _____
PSEG Renewable Transmission LLC
Direct Testimony of Roger J. Trudeau

1    Transmission adheres to in these negotiations.  Third, I will discuss PSEG Renewable

2    Transmission's efforts to obtain necessary property rights in relation to preserved land.

3  **Q6.   HAVE YOU EVER TESTIFIED BEFORE ANY REGULATORY AUTHORITIES?**

4  A6.   Yes, I have testified before the New Jersey Board of Public Utilities regarding real estate

5    transactions associated with PSEG Enterprise Group's subsidiary Public Service Electric

6    and Gas Company ("PSE&G").

7  **Q7.   ARE YOU SPONSORING ANY EXHIBITS ALONG WITH YOUR DIRECT**

8  **TESTIMONY?**

9  A7.   Yes.  The following documents are attached to my testimony:

10   - **Exhibit RJT-1**: Code of Conduct for Landowner Interactions;

11   - **Exhibit RJT-2**: MPRP Right-of-Way Guidelines Brochure;

12   - **Exhibit RJT-3**: Sample of October 17, 2024 Letters from PSEG Renewable
         Transmission to Landowners[1];

14   - **Exhibit RJT-4**: Sample of October 28, 2024 Letters from PSEG Renewable
         Transmission to Landowners[2]; and

[1] **Exhibit RJT-3** consists of a sample of the October 17, 2024 letters sent by PSEG Renewable Transmission to landowners whose properties are located along the proposed route ("Proposed Route") of the Project and landowners whose properties are located adjacent to (within 275 feet of the centerline of) the Proposed Route.  These letters were sent to the above groups of landowners in each of Baltimore, Carroll, and Frederick Counties, for the purpose of notifying the landowners of the selection of the Proposed Route for the Project and the potential need for the Company to acquire property rights from the landowners based on the Proposed Route, inviting landowners to attend the Company's upcoming public information sessions and providing the date, time, and location of the session in the landowner's county, and providing the contact information (email address and hotline telephone number) for landowners to submit comments or questions directly to the Company regarding the Project.

[2] **Exhibit RJT-4** consists of a sample of the October 28, 2024 letters sent by PSEG Renewable Transmission only to landowners whose properties are located along the Proposed Route.  These letters provided information about several topics, including right of entry (*i.e.*, temporary access that may be needed to perform surveys), the nature of the property right to be acquired, the fact that the Project's proposed route is farming compatible in most circumstances, the rights of property owners to be compensated for any damage or loss to crop yield, and the property valuation

1    • **Exhibit RJT-5**: Sample of November 18, 2024 Letter from PSEG Renewable

2        Transmission to Landowners.[3]

3    II.    <u>**PROPERTY RIGHT ACQUISITION NEEDED FOR THE PROJECT**</u>

4  **Q8.  PLEASE DESCRIBE THE PROPERTY RIGHTS THAT THE COMPANY NEEDS**

5        **TO ACQUIRE TO CONSTRUCT THE MPRP.**

6  A8.  The Project will require either temporary or permanent easements on properties along the

7        Project's route (the "Proposed Route").  The Proposed Route is described in more detail in

8        the Direct Testimony of Kristin Weidner and in Attachment B, Routing Study, of the

9        Application.  For example, the Project may require temporary property rights for access

10       roads that will be predominantly used during construction and maintenance phases, or

11       permanent easements for the Project's structures and facilities for the operation of the

12       transmission line.  PSEG Renewable Transmission plans to purchase property interests in

13       the form of easements, *i.e.*, perpetual rights to construct, repair, maintain, replace, access,

14       or remove the Project's lines and associated structures.  An easement is not a fee interest

15       in the land; landowners will have full access to the land and may conduct any activity that

16       does not interfere with the rights granted in the easement and is permissible as provided in

17       the Company's Right-of-Way Guidelines Brochure (**Exhibit RJT-2**).

---

process.  The October 28 letters also notified landowners that the Company would send another letter to each
landowner during the week of November 18 to introduce the land agent assigned to the landowner and again notified
the landowners of the contact information (email address and hotline telephone number) to submit comments or
questions directly to the Company regarding the Project.

[3] Exhibit **RJT-5** consists of a sample of the November 18, 2024 letter sent by designated land agents assigned by the
Company to each landowner whose property is located within 150 feet of the Project ROW, introducing the land agent,
providing contact information (phone number and email address) for the land agent, and notifying landowners of the
Company's need to seek temporary access to property through a temporary right of entry form.

1  **Q9.**  **MAY THE COMPANY NEED ACCESS TO LANDOWNERS' PROPERTY**

2  **BEFORE ANY EASEMENT OR RIGHT-OF-WAY NEGOTIATIONS WITH**

3  **LANDOWNERS OCCUR?**

4  A9.  Yes.  As of the time of this CPCN application filing, the Company has reached out to

5  landowners whose properties are located within the 150 feet of the Project's ROW

6  regarding the fact that the Company may need temporary property access to conduct

7  additional preliminary due diligence, which may include environmental, geotechnical and

8  land surveys.  These surveys may further establish field conditions and resources.  The

9  Company may conduct these surveys to further develop plans for the avoidance,

10  minimization, and mitigation of Project impacts.  In addition, as discussed further below,

11  temporary property access may be required to confirm the suitability of the Project's

12  proposed access road locations.

13  **III.    LANDOWNER INTERACTIONS**

14  **Q10.**  **PLEASE EXPLAIN THE COMPANY'S POLICY REGARDING INTERACTIONS**

15  **WITH LANDOWNERS.**

16  A10.  As discussed in the Direct Testimony of Jason Kalwa and Dawn Shilkoski, PSEG

17  Renewable Transmission works with communities and will negotiate with impacted

18  landowners to acquire the necessary property rights to construct and maintain transmission

19  projects.  When negotiating with landowners to acquire property rights along a proposed

20  project route, the Company adheres to its Code of Conduct for Landowner Interactions, see

21  **Exhibit RJT-1**.  The Company's Code of Conduct incorporates leading professional

22  standards and ensures that all representatives acting on behalf of the Company are

1    courteous, respectful in all interactions with landowners, and treat landowners fairly and

2    consistently.

3    **Q11.   DID THE COMPANY PROVIDE NOTICE TO LANDOWNERS WHOSE**

4    **PROPERTY MAY BE SUBJECT TO A RIGHT-OF-WAY OR EASEMENT**

5    **AGREEMENT?**

6    A11.   Yes.  On October 17, 2024, PSEG Renewable Transmission mailed letters to landowners

7    whose properties are located within the 150-foot ROW of the Project's Proposed Route, as

8    well as landowners whose properties are located adjacent to (within 275 feet of the

9    centerline of) the Proposed Route, providing them with updates regarding the route

10   selection process and inviting them to public information sessions for the Project held in

11   November 2024.  The Company provided notices to each landowner whose name was

12   publicly registered on the deed of the property.  Samples of these letters are attached as

13   **Exhibit RJT-3**.

14   **Q12.   DID THE COMPANY SEND ANY OTHER CORRESPONDENCE TO**

15   **LANDOWNERS?**

16   A12.   Yes.  On October 28, 2024, the Company sent follow-up letters to landowners whose

17   properties are located within the 150-foot ROW of the Proposed Route.  These letters

18   provided information about several topics, including the Company's potential need to

19   obtain rights of entry (*i.e.*, temporary access that may be needed to perform surveys), the

20   fact that the Project's Proposed Route is farming compatible in most circumstances, the

21   rights of property owners to be compensated for any damage or loss to crop yield, and the

22   property right valuation process.  The October 28 letters also notified landowners that the

1    Company would send another letter to each landowner during the week of November 18

2    to introduce the individual land agent the Company would assign to the landowner and

3    again notified the landowners of the contact information (email address and hotline

4    telephone number) to submit comments or questions directly to the Company regarding the

5    Project.

6          Following the public meetings held in Baltimore County on November 12, 2024,

7    Carroll County on November 13, 2024, and Frederick County on November 14, 2024, the

8    assigned land agent for each property owner along the Proposed Route sent these

9    landowners letters on November 18, 2024, introducing the land agent, providing contact

10    information (phone number and email address) for the land agent, and notifying

11    landowners of the Company's need to seek temporary access to property through a

12    temporary right of entry form.   The letter made clear that the Company was seeking only

13    access to the property to perform studies and is not offering to purchase permanent property

14    rights at this time.  Samples of these letters are attached as **Exhibits RJT-4** and **RJT-5**.

15          Following the receipt of these letters, certain landowners contacted the Company

16    with questions, to which the Company replied.  Some landowners contacted the Company

17    to inform the Company that they did not want to be contacted in any manner, while others

18    contacted the Company to inform PSEG Renewable Transmission of their engagement of

19    counsel (in which case, letters were then sent to these landowners' respective attorneys).

20    All requests and responses were logged and respected.  Thereafter, designated land agents

21    began contacting their assigned landowners to discuss obtaining a right of entry.

1  **Q13.  YOU MENTIONED LAND AGENTS ABOVE. WHY DID THE COMPANY**

2      **ASSIGN LAND AGENTS TO LANDOWNERS?**

3  A13.   The Company will keep open lines of communication with affected landowners.  Thus,

4       each landowner whose property is impacted by the MPRP is assigned a designated land

5       acquisition agent.  Once communication with landowners begins, landowners can contact

6       the Company with questions or concerns throughout the land acquisition process, and they

7       can also contact their specific assigned land agent.  The land agents, when appropriate, will

8       also coordinate or conduct the property rights negotiation with landowners.  The land

9       agents are local and will be available to discuss or to meet with the landowners up until

10      construction is complete.

11                          **IV.    ROW POLICY**

12  **Q14.  DOES THE COMPANY MAINTAIN A ROW POLICY?**

13  A14.   Yes.  The Company's ROW policy provides information to landowners and clarifies the

14      types of activity that are freely permitted, limited, or restricted within the ROW.

15  **Q15.  PLEASE DESCRIBE THE COMPANY'S ROW POLICY FOR THE MPRP.**

16  A15.   After initiation of the Company's public informational sessions, the Company received

17      several requests to clarify the allowed uses of land in the MPRP's transmission corridor

18      specific to farming and agribusinesses.  In response to these requests and as a general

19      matter, the Company will review all ROW joint use proposals on a case-by-case basis.  In

20      **Exhibit RJT-2** (MPRP Right of Way Guidelines Brochure), the Company identifies some

21      permitted uses within the ROW such as plowing/tillage planting, harvesting, and crop

1    management, drone application subject to FAA rule and regulations, and the use of

2    equipment no more than 20 feet in height.

3    **Q16.    PLEASE DESCRIBE THE TYPES OF ACTIVITY ALLOWED IN THE**

4    **TRANSMISSION LINE ROW FOR THE MPRP.**

5    A16.    PSEG Renewable Transmission is committed to working with landowners to review safe

6        practices within the ROW.  As mentioned above, the Company will review limited and

7        ROW joint uses on a case-by-case manner.  Several farming and land use activities are

8        allowed without review, such as drone application of seeds, planting trees that do not

9        exceed twenty-five (25) feet in height, and using vehicles and equipment under twenty (20)

10       feet.   Other uses permissible without PSEG Renewable Transmission's review are

11       vegetation and agriculture activity, *i.e.*, cropping corn, soybeans, and vegetables; plowing,

12       orcharding; and Christmas tree farming or harvesting.  The height limitations provided in

13       **Exhibit RJT-2** were developed to ensure the safety of the public and the safe operation of

14       the transmission line.  A diagram of the Guidelines for typical wire clearance is provided

15       below.

16   **Q17.    PLEASE DESCRIBE THE TYPE OF ACTIVITY RESTRICTED IN THE**

17   **TRANSMISSION LINE ROW POLICY FOR THE MPRP.**

18   A17.    Restricted uses are predominantly necessary for the safe operation and maintenance of the

19       MPRP and for the landowners themselves.  The clearances used for this Project will be

20       designed according to the electrical clearance standards set and required by the National

21       Electrical Safety Code ("NESC").  It is important to leave unobscured or unobstructed the

22       ingress and egress access roads to the transmission line easements.  A list of prohibited

Case No. _____
PSEG Renewable Transmission LLC
Direct Testimony of Roger J. Trudeau

1    activity in the ROW is provided in the Right-of-Way Guidelines Brochure (**Exhibit RJT-**

2    **2**).

3    **Diagram of Guidelines for Typical Wire Clearance**



4

5    **Q18.   ARE THERE EXCEPTIONS TO THE ROW POLICY?**

6    A18.   Yes.  In limited case-by-case circumstances, PSEG Renewable Transmission may grant an

7         exception to the prohibited activity where it is reasonable to do so and with priority

8         provided to the safety of all and the reliable operation of the transmission line.   As

9         mentioned above, each landowner has a designated land acquisition agent available for

1    questions or concerns up until the completion of construction activity for the MPRP—this

2    includes any questions or concerns regarding the ROW policy.

3                    **V.    FARMLAND AND PRESERVED LAND**

4  **Q19.  DOES THE MPRP ALLOW FOR CONTINUED FARMING OPERATIONS IN**

5          **THE TRANSMISSION CORRIDOR?**

6  A19.  Yes.  The MPRP—like many existing transmission lines—anticipates minimal impact to

7          normal farming operations, such as animal and cattle grazing or growing crops such as corn

8          or soybeans.  Crops can be grown up to the H-frame foundations and the Company will

9          work with landowners to create the least impactful access to crops and livestock to

10         accommodate construction and maintenance of the lines in a safe manner.  In fact, 90 miles

11         of PSE&G-constructed and maintained New Jersey transmission lines allow for continued

12         farming operations within the ROW and under the transmission lines, as shown in the

13         example picture below depicting portions of PSE&G's Hope Creek—New

14         Freedom/Salem—New Freedom transmission line in Gloucester New Jersey.   Farming

15         and power lines have coexisted for over a hundred years—the MPRP is designed to be

16         compatible with farming operations.

Case No. _____
PSEG Renewable Transmission LLC
Direct Testimony of Roger J. Trudeau

1    *Shown is a horse farm on an existing 500 kV PSE&G line route (New Freedom) in Gloucester County, New Jersey*



2

3  **Q20.   DOES THE PROJECT ROUTE FALL ALONG ANY PROPERTIES ALREADY**

4  **ENCUMBERED BY PRESERVATION EASEMENTS?**

5  A20.   Yes, certain of the properties or portions thereof located along the Proposed Route are

6        currently encumbered by local and state preservation easements.

7  **Q21.   PLEASE   DESCRIBE   THE   COMPANY'S   APPROACH   TO   OBTAINING**

8  **EASEMENTS ON LAND CURRENTLY ENCUMBERED BY PRESERVATION**

9  **EASEMENTS.**

10  A21.   PSEG Renewable Transmission will address and comply with the processes required for

11        all conservation easements and work with landowners and easement holders to minimize

12        any temporary or permanent impacts of the Project.

1                   **VI.**     **COMPENSATION**

2 **Q22.** **HOW DOES THE COMPANY DETERMINE THE VALUE OF PROPERTY**

3       **RIGHTS?**

4 A22.    The Company uses an appraisal-based approach that values property rights on a fair market

5       value basis. PSEG Renewable Transmission will negotiate fair terms with landowners for

6       the acquisition of any needed easements. Each property owner will be fairly compensated

7       for any land rights needed by the Company. Compensation is available for permanent

8       ROW easements or temporary easements and where temporary right of entry is sought for

9       surveys and other studies. The Company will negotiate a convenience fee for this access.

10      Agents for the Company will review the fair market value for the property and extend an

11      offer for the land rights needed for the MPRP and use best efforts to work with the

12      landowner to come to a mutually agreeable solution.

13 **Q23.** **WILL THE COMPANY PROVIDE COMPENSATION FOR LAND CURRENTLY**

14       **ENCUMBERED BY PRESERVATION EASEMENTS?**

15 A23.    Yes. As mentioned above, the Company employs an appraisal-based approach to

16      determine the fair market value of property rights and will do the same for land encumbered

17      by preservation easements. The Company will work with the easement holder and

18      landowner to determine how compensation should be allocated. PSEG Renewable

19      Transmission strives to provide reasonable and mutually acceptable compensation for

20      property rights. PSEG Renewable Transmission will strive to avoid access roads along

21      lands encumbered by preservation easements. Should it be unavoidable to place access

22      roads on land encumbered by preservation easements, PSEG Renewable Transmission will

1    provide fair compensation to landowners for access roads required during construction.  In

2    such instances, the Company will also compensate landowners for temporary delays to

3    farming or other temporary impacts to agribusinesses.

4    **Q24.   WILL   LANDOWNERS   BE   COMPENSATED   FOR   THE   COMPANY'S**

5    **TEMPORARY   ENTRY   TO   CONDUCT   FURTHER   DUE   DILIGENCE   OR**

6    **SURVEYS?**

7    A24.   Yes.  As previously mentioned, in circumstances where the Company needs access to

8    landowners' properties prior to obtaining easements, the Company will ask landowners to

9    sign a right of entry document allowing the Company to access the property for these

10   purposes.  The Company will compensate landowners that agree to enter into a right of

11   entry agreement for this temporary right of entry.[4]

12   **VII.   CONCLUSION**

13   **Q25.   DOES THIS CONCLUDE YOUR DIRECT TESTIMONY AT THIS TIME?**

14   A25.   Yes, although I reserve the right to supplement this testimony as appropriate.

---

[4] All property owners will be paid the same amount per parcel for rights of entry; however, compensation for easements may vary based on fair market value of the easement right obtained.





**Maryland Piedmont Reliability Project – Right-Of-Way Agents and Subcontractor Employees - Code of Conduct**

**This Code of Conduct applies to all communications and interactions with property owners and occupants of property by all right-of-way agents and subcontractor employees representing the Maryland Piedmont Reliability Project in the negotiation of right-of-way and the performance of surveying, environmental assessments and the other activities for the Maryland Piedmont Reliability Project.**

**I. All communications with property owners and occupants must be factually correct and made in good faith.**

    a. Do provide maps and documents necessary to keep the landowner properly informed.

    b. Do not make false or misleading statements.

    c. Do not purposely or intentionally misrepresent any fact.

    d. If you do not know the answer to a question, do not speculate about the answer. Advise the property owner that you will investigate the question and provide an answer as soon as possible.

    e. Follow up promptly on all commitments to provide additional information. If an owner is provided with a follow-up date or time, ensure that the follow-up occurs at that specified date or time.

    f. Do not send written communications suggesting an agreement has been reached when, in fact, an agreement has not been reached.

    g. If the information provided is subsequently determined to be incorrect, follow up with the property owner(s) as soon as practical to provide the correct information.

    h. Do provide the property owner(s) with appropriate contact information should additional contact be necessary.

    i.   Do ensure that any discussions, attempted interactions, communication, correspondences, in-person meetings, etc., are promptly documented within 24 hours of the interaction or attempted interaction.

    j.   Do ensure any written communication received from a property owner, a representative on their behalf, attorney, relative, etc. is documented properly and a copy of said written interaction is memorialized.

    k.   Do maintain contact reports detailing specific information concerning interactions with property owner(s), including date and time of contact, means of contact (*e.g.*, in-person, by mail, by email, etc.) and a description of the interaction and what was discussed during the interaction.

    l.   Do mail or email property owner(s) documentation/project information if they are unable to meet in-person. All pertinent documentation as well as any information regarding the project not previously provided, a written statement explaining the procedure involved in the acquisition (*i.e.*, instructions on how the matter may be finalized, the name of who to contact, and a statement that the ROW agent will be reaching out by telephone), and a copy of any documentation, should be sent to landowners by mail or recognized overnight courier with delivery confirmation, or by email (requesting confirmation of receipt).

## II. All communications and interactions with property owners and occupants of property must be respectful and reflect fair dealing.

    a.   When contacting a property owner in person, promptly identify yourself as representing the Maryland Piedmont Reliability Project and as an employee of Contact Land Staff representing PSEG.

    b.   When contacting a property owner by telephone, promptly identify yourself as representing the Maryland Piedmont Reliability Project and as an employee of Contact Land Staff representing PSEG.

    c.   Do not engage in behavior that may be considered harassing, coercive, manipulative, intimidating or causing undue pressure.

    d.   All communications by a property owner, whether in person, by telephone or in writing, in which the property owner indicates that he or she does not want to negotiate or does not want to give permission for surveying or other work on his or her property, must be respected and politely accepted without argument. Unless specifically authorized by Contact Land Staff MGMT or PSEG, do not contact the property owner again regarding negotiations or requests for permission.

    e.   When asked to leave property, promptly leave and do not return unless specifically authorized by Contact Land Staff MGMT or an authorized PSEG representative.

    f.   If discussions with the property owner become acrimonious, politely discontinue the discussion and withdraw from the situation.

    g.   Obtain unequivocal permission to enter property for purposes of surveying or conducting environmental assessments or other activities. Clearly explain to the property owner the scope of the work to be conducted based on the permission given. Attempt to notify the occupant of the property each time you enter the property based on this permission.

    h. Do not represent that a relative, neighbor and/or friend have signed a document or reached an agreement with PSEG.

    i. Do not ask a relative, neighbor and/or friend of a property owner to convince the property owner to take any action.

    j. Do not represent that a relative, neighbor and/or friend supports or opposes the Maryland Piedmont Reliability Project, unless asked.

    k. Do not suggest that any person should be ashamed of or embarrassed by his or her opposition to the Maryland Piedmont Reliability Project or that such opposition is inappropriate.

    l. Do not argue with the property owner about the merits of the Maryland Piedmont Reliability Project.

    m. Do not suggest that an offer is "take it or leave it."

    n. Do not threaten to call law enforcement officers or obtain court orders.

    o. Do not threaten the use of eminent domain.

    p. Do not suggest that PSEG could or will seek federal authorization to construct the project.

    q. Do inquire if there are any existing conservation easements covering the property. Ask if the property owner would provide any information regarding any existing conservation easements, either a copy of said documentation or information that may assist with obtaining a copy of the public record.

    r. Do ensure property owners are always being treated with respect.

    s. Do identify yourself as an employee of Contract Land Staff representing PSEG and display a badge ID. If necessary, provide identification or business cards before being asked.

    t. Do ensure all required PPE is worn when conducting work within the ROW.

    u. Do seek approval from Contract Land Staff MGMT for any material changes to any documentation (unless otherwise previously approved). If a previously approved material change is made to any documentation, all property owners must initial and acknowledge those specific changes.

**III. All communications and interactions with property owners and occupants of property must respect the privacy of property owners and other persons.**

    a. Discussions with property owners and occupants are to remain confidential.

    b. Do not discuss your negotiations or interactions with other property owners or other persons.

    c. Do not ask relatives, neighbors and/or friends to influence the property owner or any other person.

    d. Avoid discussions regarding personal matters about the property, owner, others, and yourself.



## MPRP
### MARYLAND PIEDMONT
### RELIABILITY PROJECT

**PSEG**

## Introduction

This pamphlet contains some helpful information on the real estate process and easement purchase process in the event the MPRP is approved by the Maryland Public Service Commission, and contains information about some permitted and prohibited activities near the transmission lines.

## Real Estate Process

### Siting/Tract identification
**1**
Define the area and nature of the property rights needed based on selected route.

### Discussions with Property Owner
**2**
Land Agent engages with property owner to explain the project, answer questions, and outline the process for assessing the property and next steps.
*Starting the week of November 18*

### Temporary Right of Entry (ROE)
**3**
Temporary access to property for conducting preliminary studies. Right of Entry (ROE). ROEs are not easements and convey nothing permanently.

### Preliminary Assessment and Survey
**4**
Perform a site survey to define exact boundaries and scope of easement.

### Compensation
**10**
Compensation for easement, and/or crop yield loss or crop damage.

### Agreement
**9**
Parties sign agreement (ROW is 150 feet wide over a portion of the property).

### Negotiations
**8**
Land Agent will present easement agreement and compensation offer to property owner.

### Valuations and Discussions
**7**
Conduct an appraisal to determine fair compensation.
*If a Certificate of Public Convenience and Necessity is granted from the PSC, move to steps 7 to 10 above.*

### Maryland Public Service Commission (PSC) Decision
**6**
*Timeline subject to PSC schedule.*

### Maryland Public Service Commission Application
**5**
A public process through which the State evaluates the merits, substance, and impact of an application, including but not limited to the route that will be needed for a transmission right of way.
*Estimated submission by end of 2024.*

# The MPRP Right-of-Way Guidelines

*Guidelines are not all-inclusive. All ROW joint use proposals will be reviewed on a case-by-case basis.*

*Certain conditions such as inspection requirements, construction access, transmission line voltage and line criticality may require elevated restrictions in the ROW properties to provide safe and reliable service.*



## Prohibited Uses in ROW:

Below are some prohibited uses around the transmission lines in the right-of-way (ROW).

- Burning activities.

- Storage of hazardous/toxic materials, waste, substance, equipment or vehicles.

- Combustible gas blow-off/blow-down valves.

- Swimming pools.

- Kite Flying, Model Airplane Flying or similar activity.

- Vehicle fueling/refueling.

- Excavation work by means of dragline, cable-type crane or other machine.

- Septic Tanks, drain fields, absorption pits, retention ponds, wells, burial grounds, sports fields, tennis courts, underground vaults, and similar immovable in-ground or underground facilities.

- Conductive objects (metallic fences, pipes, rails, or wires) that parallel lines. *Livestock fencing may be addressed on a case-by-case basis.*

## Permitted Uses in ROW:

Below are some permitted uses around the transmission lines in the right-of-way (ROW).

Vegetation and Agriculture may be grown, including adjacent to the structure bases. Plowing / tillage, planting, harvesting and crop management are permitted.





Trees with a natural mature height less than twenty-five (25) feet.

Drone application of materials for agriculture purposes is allowed in accordance with the FAA rules and regulations.





Equipment under twenty (20) feet in height, or extends no more than twenty (20) feet in height.

60 West Street
P.O. Box 749
Annapolis, Maryland 21404
833-451-MPRP (6777)
PSEG-MPRP@pseg.com



October 17, 2024

Dear Property Owner/Current Resident,

In 2023, PJM (the Regional Transmission Organization responsible for operating and planning the regional electric grid in all or part of thirteen states including Maryland) determined there is a need for significant increased transmission capacity into Maryland and the surrounding region to ensure reliability.  After running a competitive solicitation process, PJM selected numerous projects to address these reliability concerns. PSEG's Maryland Piedmont Reliability Project (MPRP), one of these critical electric transmission system enhancements, is a 500,000-volt (500 kV) transmission line which will increase power supply import capability into Maryland and the surrounding region to meet customer needs and support Maryland's energy future.

PSEG has completed a comprehensive routing analysis applying multiple selection criteria, with an objective to minimize overall impacts, which has resulted in the development of a proposed route.  Based on the proposed route, we anticipate the need to acquire property rights from you for the project.  We understand you will have questions and concerns regarding the project and the property rights acquisition process. As such, you will be receiving another letter from the PSEG real estate team before the public session with more specific information regarding the real estate process, and an MPRP land agent will be contacting you shortly after the public session. You are also welcome and encouraged to attend the public information session at the date, time and location listed below.

Please visit the project website at www.MPRP.com to view an online interactive map of the proposed route and provide further comment.  Please note that the proposed route is subject to review by the Maryland Public Service Commission, which will provide further opportunity for public hearing and comment.

PSEG will continue to stay engaged with you as this process moves forward. If you have any questions, please email us at PSEG-MPRP@pseg.com or call the MPRP project hotline at 1-833-451-MPRP (6777).

Thank you,

The MPRP Project Team

---

**PUBLIC INFORMATION SESSION**

PSEG invites you to a public information session to learn more about MPRP and the process moving forward.

**Date:**  Tuesday, November 12, 2024
**Time:**  6 – 8:30 p.m. (Doors open at 5:30)
**Venue:**  Embassy Suites by Hilton
213 International Circle
Hunt Valley, MD 21030

There will be a brief overview of the project followed by a moderated question and answer session.

EXHIBIT RJT-3

60 West Street
P.O. Box 749
Annapolis, Maryland 21404
833-451-MPRP (6777)
PSEG-MPRP@pseg.com



October 17, 2024

Dear Property Owner/Current Resident,

In 2023, PJM (the Regional Transmission Organization responsible for operating and planning the regional electric grid in all or part of thirteen states including Maryland) determined there is a need for significant increased transmission capacity into Maryland and the surrounding region to ensure reliability. After running a competitive solicitation process, PJM selected numerous projects to address these reliability concerns. PSEG's Maryland Piedmont Reliability Project (MPRP), one of these critical electric transmission system enhancements, is a 500,000-volt (500 kV) transmission line which will increase power supply import capability into Maryland and the surrounding region to meet customer needs and support Maryland's energy future.

PSEG has completed a comprehensive routing analysis applying multiple selection criteria, with an objective to minimize overall impacts, which has resulted in the development of a proposed route. Based on the proposed route, we anticipate the need to acquire property rights from you for the project. We understand you will have questions and concerns regarding the project and the property rights acquisition process. As such, you will be receiving another letter from the PSEG real estate team before the public session with more specific information regarding the real estate process, and an MPRP land agent will be contacting you shortly after the public session. You are also welcome and encouraged to attend the public information session at the date, time and location listed below.

Please visit the project website at www.MPRP.com to view an online interactive map of the proposed route and provide further comment. Please note that the proposed route is subject to review by the Maryland Public Service Commission, which will provide further opportunity for public hearing and comment.

PSEG will continue to stay engaged with you as this process moves forward. If you have any questions, please email us at PSEG-MPRP@pseg.com or call the MPRP project hotline at 1-833-451-MPRP (6777).

Thank you,

The MPRP Project Team

---

**PUBLIC INFORMATION SESSION**

PSEG invites you to a public information session to learn more about MPRP and the process moving forward.

**Date:**   Wednesday, November 13, 2024
**Time:**   6 – 8:30 p.m. (Doors open at 5:30)
**Venue:**  Carroll County Agricultural Center
            706 Agricultural Center Drive
            Westminster, MD 21157

There will be a brief overview of the project followed by a moderated question and answer session.

60 West Street
P.O. Box 749
Annapolis, Maryland 21404
833-451-MPRP (6777)
PSEG-MPRP@pseg.com



October 17, 2024

Dear Property Owner/Current Resident,

In 2023, PJM (the Regional Transmission Organization responsible for operating and planning the regional electric grid in all or part of thirteen states including Maryland) determined there is a need for significant increased transmission capacity into Maryland and the surrounding region to ensure reliability.  After running a competitive solicitation process, PJM selected numerous projects to address these reliability concerns. PSEG's Maryland Piedmont Reliability Project (MPRP), one of these critical electric transmission system enhancements, is a 500,000-volt (500 kV) transmission line which will increase power supply import capability into Maryland and the surrounding region to meet customer needs and support Maryland's energy future.

PSEG has completed a comprehensive routing analysis applying multiple selection criteria, with an objective to minimize overall impacts, which has resulted in the development of a proposed route.  Based on the proposed route, we anticipate the need to acquire property rights from you for the project.  We understand you will have questions and concerns regarding the project and the property rights acquisition process. As such, you will be receiving another letter from the PSEG real estate team before the public session with more specific information regarding the real estate process, and an MPRP land agent will be contacting you shortly after the public session. You are also welcome and encouraged to attend the public information session at the date, time and location listed below.

Please visit the project website at www.MPRP.com to view an online interactive map of the proposed route and provide further comment.  Please note that the proposed route is subject to review by the Maryland Public Service Commission, which will provide further opportunity for public hearing and comment.

PSEG will continue to stay engaged with you as this process moves forward. If you have any questions, please email us at PSEG-MPRP@pseg.com or call the MPRP project hotline at 1-833-451-MPRP (6777).

Thank you,

The MPRP Project Team

| **PUBLIC INFORMATION SESSION** |
| --- |
| PSEG invites you to a public information session to learn more about MPRP and the process moving forward. |
| **Date:** Thursday, November 14, 2024 |
| **Time:** 6 – 8:30 p.m. (Doors open at 5:30) |
| **Venue:** New Market District Volunteer Fire Company<br>76 W Main Street<br>New Market, MD 21774 |
| There will be a brief overview of the project followed by a moderated question and answer session. |

60 West Street
P.O. Box 749
Annapolis, Maryland 21404
833-451-MPRP (6777)
PSEG-MPRP@pseg.com



October 28, 2024

«Last Name», «First Name»
«Address»
«City», «State» «Zip»

RE: Maryland Piedmont Reliability Project—Proposed Route: Update to October 17 Letter.
Property Address: _____
Portion of Assessor's Parcel Number(s): _____

Dear «First Name or Entity»:

In 2023, PJM (the Regional Transmission Organization responsible for operating and planning the regional electric grid in all or part of thirteen states including Maryland) determined there is a need for significantly increased transmission capacity into Maryland and the surrounding region to ensure reliability.  After running a competitive solicitation process, PJM selected numerous projects to address these reliability concerns. PSEG's Maryland Piedmont Reliability Project (MPRP), one of these critical electric transmission system enhancements, is a 500,000-volt (500 kV) transmission line which will increase power supply import capability into Maryland and the surrounding region to meet customer needs and support Maryland's energy future.

You are receiving this letter because public records indicate you own property along the proposed route for the 150-foot wide right of way proposed for this project.  Please note that at this time, PSEG is not seeking to buy an easement from you, but PSEG would like to begin discussions with you regarding the process and timing of purchasing an easement.  PSEG will purchase a permanent easement across a portion of your land for the approved route, only if approved by the Maryland Public Service Commission.

**PSEG will send a letter to you during the week of November 18 to introduce the land agent assigned to you. This agent will be your direct real estate contact throughout this project.**

In the interim, PSEG would like to provide you with additional information below.

**Right of Entry (ROE)**. This is the first step in the real estate acquisition process. PSEG will be seeking temporary access to your property to perform studies necessary to verify existing site conditions and to validate public data. The ROE is not an easement and is only temporary.

**Portion of Property.** The final right of way footprint is proposed to be about 150 feet wide. The property rights sought will be a permanent easement over **a portion** of the land, in other words, **you will continue to own your property while granting certain property rights to PSEG for a fee.**

**Farming.** The majority of the proposed route will be occupied by conductor lines (wires)  above the property. The conductors will be connected to H-frame structures every 1,000 or so feet.  Therefore, not all property will have H-frame structures. This design allows the project route **to be farming compatible in most circumstances** may  be planted right up to the foundations of the structures, vegetation up to a height of 25 feet and using equipment up to a height of 20 feet, **are permissible** activities under the lines.

**Compensation for Crop Yield Loss or Damage.** While most of the proposed route is designed to be farming compatible there may be instances of crop yield loss.  In those instances, PSEG will compensate you for that crop yield loss. Also, if damage occurs to crops or other non-restorable property during construction, PSEG will reimburse the landowner for those damages.

60 West Street
P.O. Box 749
Annapolis, Maryland 21404
833-451-MPRP (6777)
PSEG-MPRP@pseg.com



**Property Valuation.** PSEG will pay you for the property rights sought. Following the property studies performed under the ROE, your land agent will provide details specific to your property concerning values and compensation for the portion of land that will be needed for the easement. A local appraiser will perform a market appraisal to determine fair market value for the property rights needed for the easement. The information used in the appraisal will be provided to you. Once provided, PSEG encourages you to review that information closely and discuss any specific issues you may have or unique circumstances related to your property that may impact value with your land agent.

For more information please visit the FAQ section of www.MPRP.com.

Once again, PSEG will send a letter to you during the week of November 18 to introduce the land agent assigned to you. The agent will be your direct real estate contact throughout this project and will be able to answer your specific questions.

**Please be advised that only a PSEG/Contract Land Staff-badged representative has the authority to discuss the project with you.**

PSEG will continue to stay engaged with you as this process moves forward. If you have any questions, please email us at PSEG-MPRP@pseg.com or call the MPRP project hotline at 1-833-451-MPRP (6777).

Thank you,

The MPRP Project Team

EXHIBIT RJT-5

60 West Street
P.O. Box 749
Annapolis, Maryland 21404
833-451-MPRP (6777)
PSEG-MPRP@pseg.com



November 18, 2024

«Last Name», «First Name»
«Address»
«City», «State» «Zip»

RE: Maryland Piedmont Reliability Project—Proposed Route: Land Agent Introduction
Property Address: _____
Portion of Assessor's Parcel Number(s): _____

Dear «First Name or Entity»:


My name is _____, and I am an independent Land Agent with Contract Land Staff, LLC (CLS). PSEG has retained CLS to support the real estate effort for the Maryland Piedmont Reliability Project.

In 2023, PJM (the Regional Transmission Organization responsible for operating and planning the regional electric grid in all or part of thirteen states including Maryland) determined there is a need for significantly increased transmission capacity into Maryland and the surrounding region to ensure reliability.  After running a competitive solicitation process, PJM selected numerous projects to address these reliability concerns. PSEG's Maryland Piedmont Reliability Project (MPRP), one of these critical electric transmission system enhancements, is a 500,000-volt (500 kV) transmission line which will increase power supply import capability into Maryland and the surrounding region to meet customer needs and support Maryland's energy future.

PSEG will be filing an application to the Maryland Public Service Commission to seek approval and grant of a Certificate of Public Convenience and Necessity (CPCN) to build the project.  You are receiving this letter because public records indicate you own property along the proposed route for the 150-foot wide right of way for this project.

Although PSEG is not seeking to purchase an easement from you at this time, PSEG is seeking temporary access to your property to evaluate its suitability for the project through a temporary right of entry (ROE) form.  **Please note that a temporary right of entry is not an easement and does not grant permanent property rights or construction rights, and does not obligate you to grant an easement.** PSEG will purchase easements for the project route only if approved by the Maryland Public Service Commission.

As your assigned Land Agent, I will be your main point of contact throughout this process. I will be reaching out to you via phone, email or in-person to discuss this project, the temporary right of entry form and related compensation.

Please provide your preferred contact information by sending your information to me via text, phone or email referencing your address and/or Assessor's Parcel Number(s) listed above so that we can set up a convenient time to meet and discuss any questions you may have. I can be reached at _____ or via email at_____.  Please contact me when you can, if I do not hear from you, I will attempt to reach you by phone or email over the coming weeks and/or stop by to speak with you to set up a convenient time to discuss your concerns.

60 West Street
P.O. Box 749
Annapolis, Maryland 21404
833-451-MPRP (6777)
PSEG-MPRP@pseg.com



I look forward to discussing the project further with you.

**Please be advised that only a PSEG/Contract Land Staff-badged representative has been granted the authority by PSEG to discuss the project with you.**

Sincerely,


Signature [Land Agent]

Agent Name
Agent Title
Mobile:
Email:

