# EXHIBIT 4



750 E. PRATT STREET   SUITE 900   BALTIMORE, MD 21202
T 410.244.7400   F 410.244.7742   www.Venable.com

April 10, 2025

t 410.244.5466
f 410.244.7742
JCurran@Venable.com

**_VIA ELECTRONIC MAIL AND E-FILING_**

Andrew S. Johnston, Executive Secretary
Maryland Public Service Commission
6 St. Paul Street, 16th Floor
Baltimore, MD 21202

      Re:    **Case No. 9773: PSEG Renewable Transmission LLC's Application for a Certificate of Public Convenience and Necessity to Construct a New 500 kV Transmission Line in Portions of Baltimore, Carroll, and Frederick Counties**

Dear Executive Secretary Johnston:

      On March 26, 2025, at the request of the Maryland Public Service Commission (the "Commission"),[1] the Maryland Department of Natural Resources – Power Plant Research Program ("PPRP") provided its recommendation to the Commission as to the administrative completeness ("Completeness Letter") of PSEG Renewable Transmission LLC's ("PSEG" or the "Company") Application for a Certificate of Public Convenience and Necessity ("CPCN") to Construct a New 500 kV Transmission Line in Portions of Baltimore, Carroll, and Frederick Counties in the above-captioned case (the "Application").[2]  The Company thanks PPRP for its review and report on the matter and provides the following information to the Commission in response to the issues raised by PPRP in its Completeness Letter.  As discussed further herein, the Commission should determine that the Company's Application is administratively complete for the purposes of establishing a procedural schedule that will allow the Company to provide PPRP additional environmental survey data through the Commission's discovery process and also allow for a final order regarding the Company's Application by the end of January 2026.[3]

---

[1] *See* Case No. 9773, Commission's Notice of Intervention Deadline and Requested Completeness Determination (Jan. 10, 2025) (Maillog No. 314771).

[2] *See* Case No. 9773, The Department of Natural Resources' Power Plant Research Program's recommendation as to the Administrative Completeness of the CPCN Application (March 26, 2025) (Maillog No. 317070).

[3] The Company has respectfully requested that the Commission issue a final order on its Application by January of 2026 to allow the Company the opportunity to comply with PJM Interconnection L.L.C.'s ("PJM") required in service date of June 2027 to address severe and widespread reliability criteria violations forecast to impact the regional

Andrew Johnston, Executive Secretary
April 10, 2025
Page 2

The Company filed its Application for the Maryland Piedmont Reliability Project (the "MPRP" or "Project") on December 31, 2024.[4] In addition to the supporting written testimony and exhibits provided by ten witnesses, the CPCN Application included an Environmental Review Document ("ERD") (Attachment A of the Application) and Routing Study (Attachment B of the Application).[5] The ERD and Routing Study were prepared by and conducted under the supervision of the Company's expert environmental consulting firm Stantec Consulting Services, Inc ("Stantec").[6] As reflected in **Exhibit A** to this letter, the Company's CPCN Application addresses each one of the Commission's COMAR filing requirements.[7]

Despite the Company's careful and extensive documentation, data collection, and analysis of the environmental and socioeconomic impacts along the MPRP's proposed right-of-way ("ROW") and surrounding vicinity, PPRP's Completeness Letter identified two areas that PPRP claims requires further analysis: (A) information on alternative transmission line routes described in the Company's Routing Study and (B) field-measured survey information for the proposed ROW.[8] The Company responds to PPRP's requests for further information in turn below.

### A.     Routing Study and Alternative Transmission Line Routes

In relation to alternative transmission line routes, the Code of Maryland Regulations ("COMAR") required the Company to provide in its Application: (i) "[t]he description of each alternative route considered for the transmission line," (ii) "[a]n estimate of the capital and annual

---

transmission system serving Maryland and the surrounding states. *See* Case No. 9773, Application of PSEG Renewable Transmission LLC for a Certificate of Public Convenience and Necessity for the Maryland Piedmont Reliability Project ("Application"), ML No. 314555 (Dec. 31, 2024), Direct Testimony of Abdulsalam at 7:10-12, 43:14-18, 44:8-12, 45:11-13.

[4] *See* Case No. 9773, Application for a Certificate of Public Convenience and Necessity to Construct a New 500 kV Transmission Line in Portions of Baltimore, Carroll, and Frederick Counties (Dec. 31, 2024) (Maillog No. 314555).

[5] *See id*; *see also* Case No. 9773, Update to Environmental Review Document (Feb. 14, 2025) (Maillog No. 315863). These documents reflect the extensive material that informs the Company's analysis of the Project's environmental and socioeconomic information.

[6] Stantec, an environmental and engineering firm, has a nationwide portfolio of routing and siting projects. Stantec provides services throughout the development of transmission line projects from environmental constraint analysis through routing, permitting, and engineering procurement and construction management. *See supra* n. 3, Direct Testimony of Kristin Weidner at 1:17-2:10.

[7] COMAR 20.79.04 describes the form of information that a CPCN applicant must include as part of its application. COMAR 20.79.01.06 sets a CPCN application filing requirements and integrates COMAR 20.79.04. **Exhibit A** was provided in the Company's motion requesting a pre-hearing conference. *See also* Motion Requesting a Pre-Hearing Conference to Rule on Intervention Petitions and Establish a Procedural Schedule to Meet PJM's Required In-Service Date, at Exhibit D (March 26, 2025) (Maillog No. 317082).

[8] *See supra* n. 2.

VENABLE LLP

Andrew Johnston, Executive Secretary
April 10, 2025
Page 3

operating costs for each alternative route," and (iii) "[a] statement of the reason why each alternative route was rejected."[9] The Routing Study, together with the Direct Testimony of Kristin Weidner, provided these three required pieces of information, and much more.

As to the three COMAR requirements, the description of each alternative route considered was provided in the Routing Study at pages 15-34 (Section 3.3 – Segment Network and Alternative Route Identification and Section 4 – Alternative Route Evaluation and Selection) and in the Direct Testimony of Kristin Weidner at pages 10-13, as well as in maps of the alternative routes in Appendix A to the Routing Study (Figures A-3, A-4, and A-5). The estimate of the capital and annual operating costs for each alternative route was provided in the Routing Study at page 34 (Section 4.5 – Estimated Costs). And a statement of the reason why each alternative route was rejected was provided in the Routing Study at pages 35-39 (Section 4.6 – Route Selection) and in the Direct Testimony of Kristen Weidner at pages 16-20.

In addition to providing the three COMAR required pieces of information, the Routing Study also details the route development process, including (i) the development of the routing guidelines; (ii) how the routing team identified the area it studied ("Study Area") to develop a segment network,[10] alternative routes, and ultimately, the proposed route for the MPRP; (iii) the data the routing team collected and relied on for its routing analysis; (iv) the routing evaluation criteria used by the routing team; (v) the public input sought and relied on by the routing team; and (vi) the methodology the routing team used to evaluate each alternative route and ultimately select the proposed route.

In its Completeness Letter, PPRP identifies seven areas where it requests clarifications regarding the Routing Study.[11] In **Exhibit B** to this letter, the Company has provided the requested clarifications to each of these points. None of the routing questions PPRP raised in its Completeness Letter, however, indicate that the Application failed to include information addressing any of the three discrete COMAR routing requirements discussed above. Instead, PPRP's requested clarifications (which the Company is happy to provide) go to better understanding how and why the Company came to select the proposed route in comparison to the alternative routes and are not directed to the actual completeness of the Routing Study itself. As the case moves forward, the Company expects that PPRP will continue to have other similar questions and requests for further explanations as to how the Company performed the Routing Study and why the proposed route was selected. The Company looks forward to responding to

---

[9] *See* COMAR 20.79.04.03.

[10] *See supra* n. 3, Application, Attachment B (Routing Study) at iv (segments are portions of the line route that when combined may be used to form a complete route that combine to make the segment network between the project endpoints).

[11] *See supra* n. 2 at 2-3.

Andrew Johnston, Executive Secretary
April 10, 2025
Page 4

PPRP's questions and will continue to address all follow up questions through the Commission's discovery process. As to the COMAR application routing requirements, however, the Commission should find that the Company has in fact provided the three COMAR required pieces of information to render the Application administratively complete for the purposes of setting a procedural schedule for the matter.

### B. Field-Measured Surveys

COMAR 20.79.04.04(B) requires that "the environmental information in the CPCN application for a transmission line must include …[a] summary of the environmental and socioeconomic effects of the construction and operation of the project, including a description of the unavoidable impacts and recommended mitigation." COMAR 20.79.04.04(C) requires "a copy of all studies of the environmental impact of the proposed project prepared by the applicant" to be included in the CPCN application.

In compliance with these COMAR requirements, the Company included with its Application an ERD and the Direct Testimony of Corey Gray. Together, the ERD and supporting testimony contains a detailed analysis of the environmental and socioeconomic effects of constructing the MPRP. The ERD also contains COMAR's requisite analysis of the Company's recommendations for how it intends to avoid and minimize those effects and its approach to any required mitigation of those effects in accordance with controlling state and federal law.[12]

In its Completeness Letter, PPRP states that the Company must also provide field-measured survey data for all or nearly all parcels along the MPRP ROW for the Commission to deem the Application administratively complete. In addition to requesting field surveys for the entirety of the Project's 150' ROW, PPRP has also specifically requested that the Company (i) conduct field surveys of a "550-foot study corridor" to include parcels that are outside of the ROW and (ii) conduct "geotechnical" surveys that would require underground boring on each affected parcel.

### 1. PPRP's Request for Field Survey Data

Neither the PUA nor the controlling COMAR provisions require a transmission line CPCN applicant to produce field survey data as an application requirement. COMAR 20.79.01.10 provides that a CPCN application "may not be deemed incomplete for failure to provide information that is not required by COMAR 20.79.01.06." COMAR 20.79.01.06 in turn requires a transmission line CPCN applicant to provide the information specified in COMAR 20.79.04 ("Details of Filing Requirements – Transmission Lines"). COMAR 20.79.04 does not specify that field surveys are needed to support any of the transmission line filing requirements. Indeed, as

---

[12] *See supra* n. 3, Case No. 9773, Application, Attachment A (ERD).

**VENABLE** LLP

Andrew Johnston, Executive Secretary
April 10, 2025
Page 5

PPRP acknowledges in its Completeness Letter, the Company does not have site control over the private properties along the proposed route unless a CPCN is issued, which means that the Company will need to be granted access to these properties to conduct any on-site surveys that PPRP seeks.

In comparison, in generating station CPCN cases, because the applicant has site control of the property on which the generating station will be located, COMAR expressly requires survey level data to be included in a generating station CPCN application.[13]  The absence of a corresponding express survey level data requirement for transmission line CPCN applications is therefore instructive here.

Nevertheless, as the Company explained in its Motion Requesting a Pre-Hearing Conference, the Company anticipated PPRP's request for field survey data and has been attempting for several months to obtain voluntary temporary access to private properties to provide field-measured information to PPRP.[14]  The Company will continue attempting to negotiate with landowners in earnest for their consent, but because these efforts have been unfruitful, the Company is now preparing to seek court orders for rights of entry on these properties for the limited purpose of conducting the surveys within the 150-foot ROW that PPRP requests.  Field level survey data will therefore be provided through the Commission's discovery process to PPRP as soon as it becomes available.

Based on the extensive information that the Company *did* have access to,[15] the Company has provided an ERD and supporting testimony addressing the COMAR application requirement to provide a "summary of the environmental and socioeconomic effects of the construction and operation of the project, including a description of the unavoidable impacts and recommended mitigation."[16]  Since the Company's Application addresses each of the Commission's COMAR filing

---

[13] *See* COMAR 20.79.03.03 (requiring for generating stations "a forest stand delineation" an "evaluation of mitigation and minimization actions to address impacts to rare, threatened, and endangered species, as needed," and "a Phase I environmental site assessment report, prepared in accordance with the American Society for Testing Materials (ASTM) standard E1527").

[14] *See* Case No. 9773, Motion Requesting a Pre-Hearing Conference to Rule on Intervention Petitions and Establish a Procedural Schedule to Meet PJM's Required In-Service Date (March 26, 2025) (Maillog No. 317082).

[15] The COMAR-required information and data contained in the ERD is based on publicly available desktop-level and GIS survey-level data obtained from federal, state, and local governmental sources: "Publicly available Maryland GIS data was reviewed to determine the potential for environmental resources within the proposed MPRP ROW. Maryland's Environmental Resources and Land Information Network (MERLIN) (MDNR 2024f) was the primary source of existing data.  MERLIN is an electronic database maintained by MDNR that allows users to access various publicly available data sets throughout the State of Maryland." *See supra* n. 3, Case No. 9773, Application, Attachment A (ERD) at 40-41.

[16] COMAR 20.79.04.04(B).

Andrew Johnston, Executive Secretary
April 10, 2025
Page 6

requirements, the Commission should therefore determine that the Application is administratively complete for the purposes of setting a procedural schedule, while the Company seeks access to conduct, and later provide to PPRP, any field level survey data it is later authorized to obtain.

### 2. Legal Limitations on PPRP's Request for Invasive Surveys

In its Completeness Letter, PPRP requests that the Company perform certain invasive surveys (*e.g.*, "geotechnical surveys") that would require the Company to disturb the land or conduct underground boring. Any surveys that involve invasive activities on private property are not legally authorized prior to the issuance of a CPCN without the express approval of the property owner.[17] To the Company's knowledge, invasive surveys, such as geotechnical surveys, have not been requested as part of any prior greenfield transmission line CPCN cases[18] and instead are performed after a CPCN is issued to confirm foundation design parameters during construction.[19] In any event, there are legal limitations prohibiting the Company from conducting invasive surveys on the entirety of the Project ROW, therefore the Company requests that the Commission not require the Company to seek access to properties along the ROW to conduct invasive surveys that are not permitted by law without the express approval of the property owner.

### 3. PPRP's Request for Field Level Surveys of a 550-foot "Study Corridor"

PPRP also requests that the Company conduct field surveys well beyond the Project's 150-foot ROW corridor, to include surveying of a 550-foot "study corridor."[20] PPRP's request goes beyond the properties along the proposed ROW. The Company is only seeking a 150-foot ROW for the proposed route.

---

[17] *See* Md. Real Prop., Section 12-111(a) (authorizing right-of-entry surveys). In *Mackie v. Mayor and Com'rs of Town of Elkton*, 265 Md. 410 (1972), the Supreme Court of Maryland (then the Court of Appeals) held that the predecessor statute to Md. Code Ann., Real Property § 12-111 did not authorize various government entities to engage in core drill activities or construct pits for backhoes. The Court held that the reach of the statute extends only to activities similar to "making surveys, running lines or levels, [or] setting stakes, markers[, and] monuments" that are "innocuous and temporary[,] effecting only minimal incidental damage and little, if any, disturbance." 265 Md. at 419.

[18] *See* Case No. 9471, The Department of Natural Resources' Power Plant Research Program's Administrative Completeness Review in Transource Maryland (July 13, 2018) (Maillog No. 221271) (listing surveys for environmental review as including "wetlands delineations, stream surveys, forest stand delineations, and Rare, Threatened and Endangered species surveys").

[19] *See*, *e.g.*, *supra* n. 3, Case No. 9773, Application, Attachment A (ERD) at 35 (discussing how "geotechnical information" will be gathered "during construction" and the Company will "apply for the appropriate MDE permits/waivers before construction begins").

[20] *See supra* n.2 at 5-6.

Andrew Johnston, Executive Secretary
April 10, 2025
Page 7

PPRP's request appears to be solely tied to the fact that the Company has asked in the Application for "reasonable flexibility to adjust the centerline" of its 150-foot ROW to accommodate unknown circumstances that the Company later discovers.[21] Such a request for reasonable flexibility is typical of greenfield transmission line CPCN applications,[22] but would only be exercised *if* the need arises. Moreover, if the need to adjust the centerline arises due to some unforeseen circumstances, then the Company has already agreed that it would notify property owners, PPRP, and applicable permitting agencies to ensure any necessary surveys are completed and permits are acquired prior to construction of the adjusted alignment.[23] Therefore, the more efficient and reasonable approach is for the Company to seek access to the properties along the 150-foot proposed ROW to conduct field surveys of the ROW and not unnecessarily disturb additional landowners that own property outside the ROW to obtain surveys unlikely to be needed or pursue court actions involving these landowners seeking access to properties outside the ROW to conduct surveys that are not required for the Project.[24] The Applicant would only address surveying of properties outside of the ROW if in the rare instance a need arises to adjust the centerline.[25]

C.   **Proposed Procedural Schedule**

PPRP recommends that the Commission schedule a prehearing conference "for the purpose of considering motions to intervene and to set a limited procedural schedule," but wait until the Applicant has provided the field level survey data before "adopt[ing] further procedural dates."[26] The Company appreciates PPRP's acknowledgment that the Commission should advance the case forward. However, the Company respectfully reiterates its request that the Commission adopt a full procedural schedule that provides for a final CPCN Order by the end of January 2026 so that the Company has an opportunity to meet PJM's in-service date for this critical reliability project.[27]

---

[21] *See supra* n. 3, Application at 31.

[22] *See* Case No. 9471, Transource Maryland, LLC's Application for a CPCN authorizing the construction of two 230 KV transmission lines associated with the Independence Energy Connection Project in portions of Harford and Washington Counties, Maryland at 22 (Dec. 27, 2017) (Maillog No. 218329).

[23] *See supra* n.3, Direct Testimony of Dawn Herring Shilkoski at 19:12-22.

[24] Conducting surveys outside of the proposed ROW would cause the Company to seek access to hundreds of additional properties for which the Company has no intention of needing to access or use for constructing the Project.

[25] To the Company's knowledge, such a broad field survey request has not been made or required in any prior greenfield transmission line CPCN cases.

[26] *See supra* n. 2 at 6.

[27] On April 4, 2025, PJM, Interconnection, L.L.C. ("PJM") asked the Commission to strongly consider the Project's required in-service date (June 1, 2027) and the need to timely address impending reliability criteria violations when setting the procedural schedule in this case. *See* Case No. 9773, PJM Comments (ML 317516).

**VENABLE** LLP

Andrew Johnston, Executive Secretary
April 10, 2025
Page 8

The Company intends to provide field-based studies requested by PPRP, contingent upon the Company being granted access to those properties, and the case should proceed forward while that process is underway. The parallel efforts contemplated in the Company's proposed procedural schedule[28] is therefore consistent with the COMAR transmission line CPCN application requirements,[29] will provide PPRP field-level survey data through discovery and will avoid unnecessary delays in the proceeding to allow the Commission to rule on the Application by January 2026 so that the MPRP can be timely constructed to address critical system needs.

**D.   Conclusion**

The Company respectfully requests that the Commission determine that the Company's Application is administratively complete for purposes of establishing a procedural schedule that will allow for the Commission's issuance of a final order regarding the Company's Application by the end of January 2026. The Company reiterates its appreciation of PPRP's review of the Application and supporting materials and looks forward to continuing to work with PPRP through the discovery process to provide additional information it may request to complete its analysis.

Sincerely,

*/s/ J. Joseph Curran, III*

J. Joseph Curran, III

*Attorney for PSEG Renewable Transmission LLC*

Enclosures

cc:   Case No. 9773 Parties Service List

---

[28] Notably, the Company's proposed procedural schedule is consistent with the time periods allocated for similar milestones and comparable deadlines in other transmission line CPCN cases. *See e.g.*, Case No. 9470 (13 months between application filing and final order); Case No. 9367 (ten months between application filing and final order); Case No. 9309 (seven months between application filing and final order).

[29] As explained above, neither the PUA nor controlling COMAR provisions require a transmission line CPCN applicant to produce field survey data in order for the case to otherwise move forward.