# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

### Northern Division

PSEG RENEWABLE
TRANSMISSION LLC,

  Petitioner,

   v.

ARENTZ FAMILY, LP, *et al.*,

  Respondents.

\*

\*

\*

\*

\*

\*

\*

Case No. 1:25-cv-01235

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM IN SUPPORT OF PETITIONER PSEG RENEWABLE TRANSMISSION, LLC'S OPPOSITION TO MOTIONS TO DISMISS</u>

Kurt J. Fischer (Bar No. 03300)
Venable LLP
210 W. Pennsylvania Avenue
Suite 500
Towson, MD 21204
(410) 494-6200
kjfischer@venable.com

J. Joseph Curran III (Bar No. 22710)
Christopher S. Gunderson (Bar No. 27323)
Kenneth L. Thompson (Bar No. 03630)
Susan R. Schipper (Bar No. 19640)
Emily J. Wilson (Bar No. 20780)
Venable LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
(410) 244-7400
jcurran@venable.com
csgunderson@venable.com
klthopmson@venable.com
srschipper@venable.com
ejwilson@venable.com

*Attorneys for Petitioner PSEG*
*Renewable Transmission LLC*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

LEGAL STANDARD ......................................................................................... 3

ARGUMENT ...................................................................................................... 4

    I.    The Company has stated a claim for relief under RP § 12-111. ........................... 4

        A.    The Company has adequately pled and established that it is a body politic or corporate having the power of eminent domain and thus falls within the scope of RP § 12-111. ........................... 4

        B.    The Company has adequately pled and established that it made real and bona fide efforts to secure Respondents' consent to enter the Subject Properties. ..................................... 11

    II.    There is no basis in *Burford* for the Court to decline to exercise jurisdiction over this dispute. ................................................................. 16

    III.    The Company did not fail to exhaust administrative remedies before filing suit. ................................................................................. 19

    IV.    This Court is the proper forum for this dispute ..................................... 21

    V.    Dismissal pursuant to Rule 12(b)(7) is unwarranted because Ms. Xie is neither a necessary nor indispensable party. ............................... 24

        A.    Ms. Xie is neither a necessary party nor an indispensable party to this proceeding ..................................................................... 25

        B.    As a matter of law, Arentz Respondents have failed to establish that Ms. Xie is domiciled in New Jersey. ................................. 28

    VI.    The Hill Respondents' Opinions as to the merits of the Company's pending CPCN Application are not a basis for dismissal. .................................. 29

CONCLUSION ................................................................................................. 30

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Am. Coll. of Obstetricians & Gynecologists v. FDA*, 467 F. Supp. 3d 282 (D. Md. 2020).......... 27

*Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83 (4th Cir. 2005) ................................... 24

*Blue v. Prince George's Cnty.*, 434 Md. 681 (2013) ..................................................................... 6

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)........................................................................ 2, 16

*Comptroller of Md. v. Comcast of Cal.*, 484 Md. 222 (2023) ..................................................... 20

*dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119 (4th Cir. 2023)........................................ 23, 24

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999)................................................. 29, 30

*Emigrant Mortg. Co., Inc. v. Bourke*, 712 F. Supp. 3d 164 (D. Mass. 2024)............................. 22

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) ......................................................................... 21

*Gaines v. Balt. Police Dep't*, 657 F. Supp. 3d 708 (D. Md. 2023).............................................. 4

*Goines v. Valley Cmty. Servs. Bd*., 822 F.3d 159 (4th Cir. 2016)................................................ 4

*Gunvor SA v. Kayablian*, 948 F.3d 214 (4th Cir. 2020) ............................................................ 25

*Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427 (4th Cir. 2014)...................................... 25

*Hughes v. White*, 388 F. Supp. 2d 805, 814 (S.D. Ohio 2005) ................................................. 22

*In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322 (4th Cir. 2004). ......................................... 27

*Johnson v. Advance Am.*, 549 F.3d 932 (4th Cir. 2008). ........................................................... 29

*Jones v. Sabal Trail Transmission, LLC*, 784 S.E.2d 865 (Ga. Ct. App. 2016) ........................... 8

*King v. Rockville*, 52 Md. App. 113 (1982) ........................................................................ 7, 10

*LaFontaine's Heirs v. LaFontaine's Heirs*, 205 Md. 311 (1954)................................................ 18

*Liner Tech., Inc. v. Warren Cnty. Pollution Control Fin. Auth.*, Civ. No. 91-1713, 1991 WL
    246943 (D.N.J. Oct. 22, 1991)......................................................................................... 22

*Martin v. Duffy*, 858 F.3d 239 (4th Cir. 2017)............................................................................ 4

*Martin v. Stewart*, 499 F.3d 360 (4th Cir. 2007) .................................................................. 16, 19

*Mayor and City Council of Baltimore v. Nat'l Dairy Products Corp.*, 193 F. Supp. 556 (D. Md. 1961) ........................................................................................................................................ 17

*Millennium Inorganic Chems. Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 686 F. Supp. 2d 558 (D. Md. 2010) ...................................................................................................................... 23

*Nationstar Mortg. LLC v. Kemp*, 476 Md. 149 (2021) ............................................................. 6

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Rite Aid of S.C., Inc.*, 210 F.3d 246 (4th Cir. 2000) ........................................................................................................................................ 26

*New Prime Inc. v. Oliveira*, 586 U.S. 105 (2019) ...................................................................... 8

*Owens-Illinois, Inc. v. Meade*, 186 F.3d 435 (4th Cir. 1999) ............................................. 25, 28

*Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573 (2017) .......................................................... 7

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) .................................................................. 23

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) ........................................................... 16

*Robinson v. Transcon. Gas Pipe Line Corp.*, 421 F.2d 1397 (5th Cir. 1970) ............................ 8

*Rosemann v. Salsbury, Clements, Bekman, Marder & Adkins*, LLC, 412 Md. 308 (2010) .......... 8

*Ry. Co. v. Whitton's Adm'r*, 80 U.S. 270 (1871) .................................................................... 21

*Sarmiento v. CHS TX, Inc.*, 756 F. Supp. 3d 22 (D. Md. 2024) ............................................... 29

*Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274 (4th Cir. 1994) ........................... 27

*Shaw v. Foreman*, 59 F.4th 121 (4th Cir. 2023) ....................................................................... 4

*Steuart v. Baltimore*, 7 Md. 500 (1855) ............................................................................ 7, 18

*Tang v. Synutra Int'l, Inc.*, 656 F.3d 242 (4th Cir. 2011) ....................................................... 23

*Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915 (4th Cir. 1999) ........ 26, 28

*United States v. Cnty. of Arlington*, 669 F.2d 925 (4th Cir. 1982) .......................................... 26

*Walker v. Gateway Pipeline Co.*, 601 So. 2d 970 (Ala. 1992), ............................................. 7, 21

*Westminster Mgmt., LLC v. Smith*, 486 Md. 616 (2024) ............................................................ 6

*Wheeling v. Selene Fin. LP*, 473 Md. 356 (2021) ...................................................................... 9, 10

*Wideman v. Innovative Fibers LLC*, 100 F.4th 490 (4th Cir. 2024) ............................................ 21

**Statutes**

Md. Code Ann., Pub. Util. ("PUA") § 7-207 ............................................................................ 5, 10

Md. Code Ann., Real Property ("RP") § 12-111 ................................................................. passim

Md. Code Ann., Transp. §§ 8-321 ............................................................................................ 11

**Rules**

Fed. R. Civ. P. 12 ...................................................................................................... 3, 24, 29, 30

Fed. R. Civ. P. 19 ............................................................................................................... 26, 27

**Regulations**

COMAR 20.79.04.04 ................................................................................................................ 10

## INTRODUCTION

Moving Respondents' arguments fundamentally misconstrue the Company's cause of action and the relief sought under Md. Code Ann., Real Property ("RP") § 12-111. Moving Respondents conflate the limited relief sought here—an order granting the Company temporary access to the properties owned by Respondents (the "Subject Properties")—with the relief the Company seeks before the Maryland Public Service Commission (the "PSC") and the various questions that the PSC will decide in that proceeding. Moving Respondents mischaracterize the Company as improperly seeking a final merits determination on its application for a Certificate of Public Convenience and Necessity ("CPCN"). Yet, in many respects, it is Moving Respondents who are asking this Court to answer questions that will be decided by the PSC.

The limited question before this Court—whether the Company has met the legal requirements to entitle it to temporary access to the Subject Properties under RP § 12-111—is distinct from whether the Company's pending CPCN application is either administratively complete or should be granted. The Court's resolution of this narrow legal question in no way intrudes on the PSC's jurisdiction or requires that any determination first be made by the PSC. The sole purpose of the Petition is to obtain the information that state regulators will consider when addressing the merits of the Company's CPCN application. To that same end, the various extraneous documents and representations upon which Moving Respondents rely should be disregarded, as they improperly direct the Court to consider policy and regulatory matters outside the four corners of the Petition, which are irrelevant to the legal questions before the Court.

None of Moving Respondents' proffered bases for dismissal are legally or factually sound. *First*, the Company has stated a cause of action under RP § 12-111 because it satisfies the statute's two requirements. The Company has established that it is a body politic or corporate having the

power of eminent domain that falls within the scope of the statute. Moving Respondents' assertions to the contrary would contort the meaning of the statute and stymie all CPCN applications for power lines in Maryland. The Company has also shown conclusively that it made real and bona fide efforts to obtain each Respondents' consent to access the Subject Properties. Moving Respondents' challenges to the sufficiency of the Company's efforts read requirements into RP § 12-111 that do not exist.

*Second*, the Court should not abstain from exercising jurisdiction over this dispute under the doctrine set forth by *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). *Burford* abstention is reserved for "narrow and extraordinary" circumstances that either present a difficult question of state law or would disrupt a state's efforts to create and effectuate a complex, coherent policy. This Petition does neither. Moving Respondents argue that this Court will intrude upon the PSC's jurisdiction if this case proceeds, but the limited relief the Company seeks is access to Respondents' properties so that it may proceed with the PSC's regulatory process. This claim for relief is distinct from any question the PSC will resolve.

*Third*, the Company has not failed to exhaust any administrative remedies that warrant dismissal of the Petition. The Company had no requirement, let alone ability, to request from the PSC the relief it seeks from the Court, as RP § 12-111 identifies a "law court" as the venue in which to seek a temporary right of entry, not the PSC.

*Fourth*, this Court is a proper forum for this dispute. Though RP § 12-111(b) identifies "a law court of the county" where the property at issue sits as a proper venue, that does not divest this Court of diversity jurisdiction. Dismissal is also not warranted under the doctrine of *forum non conveniens*, as Moving Respondents cannot demonstrate—as they must—that state court would be a more convenient forum than this one.

2

*Fifth*, dismissal is not warranted for failure to join Ms. Xie as a party. Ms. Xie is neither a necessary nor an indispensable party, as the relief sought here will not permit a right of entry onto Ms. Xie's property. Nor does Ms. Xie's absence prejudice her in protecting her interests in any future proceeding. Furthermore, Moving Respondents fail to demonstrate that Ms. Xie is domiciled in New Jersey such that her inclusion would destroy complete diversity.

*Finally*, though certain Respondents lodge various objections to the propriety and merits of the CPCN application, none of these objections are relevant to, let alone compel, dismissal. Moving Respondents' disagreements with the need for the MPRP or its proposed route are of no moment in this proceeding and should be disregarded. The place for Moving Respondents to raise their concerns is before the PSC, where Moving Respondents have and will continue to do so.

On April 16, 2025, this Court entered an order setting the deadline for the Company to file a reply memorandum in support of its motion for preliminary injunction three business days after a Respondent filed any opposition. (ECF 79). Consistent with the Court's order, the Company submits this Opposition three business days after the first of the motions were filed. (*See* ECF 88 (filed April 30, 2025)). As set forth above and in more detail below, the motions have no merit. Given the time sensitive nature of the surveys the Company seeks to conduct, the Company respectfully requests that the Court promptly deny the motions and grant the Company's motion for preliminary injunction (ECF 75).

## LEGAL STANDARD

In evaluating a Rule 12(b)(6) motion, "[a] district court should not dismiss a plaintiff's claim unless, 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" *Shaw*

*v. Foreman*, 59 F.4th 121, 127 (4th Cir. 2023) (quoting *Martin v. Duffy* (*Martin I*), 858 F.3d 239, 248 (4th Cir. 2017)).

The court's evaluation of a complaint's sufficiency is typically limited to a review of the factual allegations in the complaint itself, unless the plaintiff expressly incorporates documents into the complaint by reference or attaches documents to the complaint through exhibits. *Gaines v. Balt. Police Dep't*, 657 F. Supp. 3d 708, 732 (D. Md. 2023). Documents that are neither attached to, nor expressly incorporated into, the complaint may only be considered if they are "integral to the complaint" and "there is no dispute about the document's authenticity." *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016)). An "integral" document is one "that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Id.* (emphasis and citation omitted).

## ARGUMENT

### I.     The Company has stated a claim for relief under RP § 12-111.

#### A.     The Company has adequately pled and established that it is a body politic or corporate having the power of eminent domain and thus falls within the scope of RP § 12-111.

Moving Respondents argue that the Company has failed to state a claim for relief under RP § 12-111 because it is not a body politic or corporate having the power of eminent domain, as required by RP § 12-111(a). (*See* ECF 89-1 at 12-20; ECF 94 ¶¶ 10-11; ECF 95-1 at 12-14; ECF 101-1 at 2.).[1] Moving Respondents are incorrect, and their arguments to the contrary are based on an unsupported interpretation of RP § 12-111 that would frustrate, rather than advance, its purpose.

As explained in the Company's Petition (ECF 1), as well as the sworn Declaration of Dawn Shilkoski (ECF 3) and supporting exhibits, the Company is a qualified electric transmission

---

[1] All page number citations refer to the CM/ECF generated page numbers at the top of each document.

developer, or designated entity, of a public use project approved through PJM's regional transmission planning process, as approved by the Federal Energy Regulatory Commission ("FERC"). (ECF 3-1 (Designated Entity Agreement); ECF 3-2 (PJM submission to FERC for approval of Designated Entity Agreement); ECF 3-3 (FERC order approving filing of Designated Entity Agreement. Accordingly, the Company will be regulated as a public utility by FERC. (*See* ECF 75-1 at 19-24; ECF 3 ¶ 16). The Company is therefore a "body politic or corporate having the right of eminent domain" and is thus imbued under RP § 12-111(a) with the right of temporary, non-invasive survey access.

Erroneously focusing only on Md. Code Ann., Pub. Util. ("PUA") § 7-207, which governs CPCN issuance, Respondents assert that the Company can only obtain the power of eminent domain to conduct surveys upon receipt of a CPCN, and thus cannot proceed under RP § 12-111(a) unless and until a CPCN is issued for the Company's transmission line project (the Maryland Piedmont Reliability Project ("MPRP")). (*See* ECF 89 at 12-20 (examining only PUA § 7-207); ECF 92-1 at 8-9, 15-16 (same); ECF 94, at ¶¶ 10-11 (same); *see generally* ECF 95-1 at 13-14 (asserting Petitioner "lacks standing")). In effect, Respondents argue that a company "having the right of eminent domain" (such as a public utility developing an electric transmission line) cannot enjoy the survey access rights provided for under RP § 12-111(a) until the company has *also* obtained the authorization to *exercise* eminent domain rights (such as by the PSC's approval of a CPCN). Respondents' interpretation of RP § 12-111 is starkly outcome-oriented, but most importantly, it is unsupported by both the text and intent of RP § 12-111. Every principle of statutory interpretation cuts directly against their argument and in favor of the Company's.

1.   The Company's interpretation of RP § 12-111 is the only legally correct and logically sound one.

Fundamental principles of statutory construction mandate the adoption of the Company's interpretation of RP § 12-111, under which the statute provides a right of temporary, preliminary access to conduct non-invasive surveys that have been requested by state agencies to evaluate the Company's CPCN application before the CPCN is obtained.  This is the only logical interpretation of the statute.  "The goal of statutory construction is to discern and carry out the intent of the Legislature." *Westminster Mgmt., LLC v. Smith*, 486 Md. 616, 644 (2024) (quoting *Blue v. Prince George's Cnty.*, 434 Md. 681, 689 (2013)).  The "search for legislative intent begins with the text of the provision . . . viewed not in isolation but 'within the context of the statutory scheme to which it belongs.'" *Id.* (quoting *Nationstar Mortg. LLC v. Kemp*, 476 Md. 149, 169 (2021)).

The text of RP § 12-111(a) grants land surveyors access rights if they are acting on behalf of "the State or of any of its instrumentalities or any body politic or corporate having the power of eminent domain."  The plain text of RP § 12-111(a) does not mandate that all conditions precedent to the actual exercise of eminent domain be satisfied before the "body politic or corporate" is authorized to enter land to conduct surveys.  In other words, in relation to the Company's development of the MPRP, RP § 12-111(a) does not require the Company to first obtain a CPCN, or even exercise condemnation authority, before being granted the right of entry that RP § 12-111 codifies.  This plain reading of RP § 12-111 makes logical sense in the context of the extensive reviews that public use projects must undergo before a company receives authorization to exercise eminent domain along the approved route and to begin actual construction.

Within the context of the Public Utility and Real Property Articles, only the Company's approach harmonizes and gives effect to the purpose of both statutes: it allows public utilities to obtain critical, preliminary survey data, which empowers state agencies, such as the Maryland

Department of Natural Resources' Power Plant Resource Program ("PPRP") and, ultimately, the PSC itself to thereafter analyze and determine whether a proposed public utility should proceed to construction. If an environmental survey is completed and it reveals the proposed transmission line route must be altered due to an environmental sensitivity that cannot be mitigated or alleviated, that is not a bug of the system, but a feature of it. *See King v. Rockville*, 52 Md. App. 113, 122 (1982) ("The findings from these permitted activities is necessary for determining whether 'that particular piece of property' should be 'taken'" (citation omitted)). That is why the PSC and PPRP engage in environmental assessments and seek to balance numerous public interests through an extensive and comprehensive process.[2]

Other court decisions examining the interplay between CPCNs and right-of-entry statutes and, answering the same question presented here, confirm that the Company's interpretation is correct. For instance, in *Walker v. Gateway Pipeline Co.*, 601 So. 2d 970, 975 (Ala. 1992), the Supreme Court of Alabama upheld a trial court order permitting Gateway Pipeline Company (Gateway) to enter property of a landowner to conduct preliminary examinations and surveys for purposes of a *proposed* pipeline, i.e., before Gateway had obtained its CPCN. *Id.* at 971. "The trial court determined that Gateway was not required to possess a state or federal certificate as a prerequisite to obtaining an order for precondemnation entries and that Gateway had eminent domain power by virtue of §§ 10-5-1 and 10-5-4, Ala. Code 1975." *Id.* at 972.

---

[2] Moreover, the order the Company seeks is routine. RP § 12-111 is not a new statute. It was first enacted in 1916, when the common law privilege of preliminary rights of entry was first codified in Maryland. *See* Md. Laws Ch. 649 (1916); *Steuart v. Baltimore*, 7 Md. 500, 516 (1855) ("The constitutional prohibition against taking private property for public use . . . does not mean the preliminary measures necessary in such cases."). Maryland was not alone in codifying this common law privilege, and today, "every state has codified the common law privilege of a body exercising eminent domain authority to enter private property to conduct preliminary surveys." *Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 582 (2017); *id.* at 582 n.2 (collecting fifty state statutes). RP § 12-111 is a century-old codification of a common law privilege that existed before the advent of CPCNs.

*Walker* is not an anomaly, and state and federal courts have rejected arguments like those levied by Respondents.  It is common sense that to know where to build, land must first be surveyed.  *See Jones v. Sabal Trail Transmission, LLC*, 784 S.E.2d 865, 869 (Ga. Ct. App. 2016) (holding Georgia's right of entry statute, which provides that "[t]he power of eminent domain may be exercised by persons who are or may be engaged in constructing or operating pipelines for the transportation or distribution of natural or artificial gas and by persons who are or may be engaged in furnishing natural or artificial gas for heating, lighting, or power purposes in the State of Georgia," did not require a certificate of authorization "as a condition precedent to survey and entry rights"); *Robinson v. Transcon. Gas Pipe Line Corp.*, 421 F.2d 1397, 1398 (5th Cir. 1970) ("No such certificate is required under the Georgia statute nor does the Natural Gas Act require such a certificate as a condition precedent to the use of the Georgia statute.").

The two cases Arentz Respondents marshal against the Company's interpretation in fact support the Company's position that the Court should apply the plain and logical reading of the statutory text here, as opposed to the policy-oriented interpretation Moving Respondents propose. Arentz Respondents cite *Rosemann v. Salsbury, Clements, Bekman, Marder & Adkins*, LLC, 412 Md. 308 (2010) (regarding an absent mother avoiding garnishment for child arrears), *superseded by statute*, Md. Code Ann. Cts. & Jud. Proc. § 11-504(i) (2011), *as recognized in Kelly v. Montgomery Cnty. Off. of Child Enforcement*, 227 Md. App. 106 (2016), and *New Prime Inc. v. Oliveira*, 586 U.S. 105 (2019) (regarding federal arbitration agreements).  (ECF 89-1 at 16).  In both cases, the courts rejected litigant requests to divert from clear statutory language for policy reasons.  *See Rosemann*, 412 Md. at 319 (rejecting a litigant's request "to carve-out an exception . . . solely on the ground of general public policy"); *New Prime Inc.*, 586 U.S. at 120 (featuring a litigant that was "[u]nable to squeeze more from the statute's text" and was "left to appeal to its

8

policy"). But that is precisely what Moving Respondents, not the Company, ask the Court to do here. (*See* ECF 89-1 at 14 (arguing that "[f]rom a policy perspective," it "makes sense" for a CPCN to be required prior to rights of entry)). In other words, the Company's interpretation aligns with the courts' holdings in *Rosemann* and *New Prime*, comporting with the plain language of the statute without recourse to policy-oriented arguments.

Contrary to Moving Respondents' contentions, the adherence to ordinary principles of statutory interpretation is not a policy choice; it is a judicial directive. Maryland law makes clear that when a court is faced with two interpretations of a statute, and one of those interpretations would be "absurd, illogical, or incompatible with common sense," courts will "reject that interpretation in favor of another that does not suffer the same flaw." *Wheeling v. Selene Fin. LP*, 473 Md. 356, 377 (2021)) (quoting *Bell v. Chance*, 460 Md. 28, 53 (2018)). Here, Moving Respondents' interpretation of the statute, as explained in more detail below, produces a result that is "absurd, illogical, or incompatible with common sense," while the Company's interpretation does not. *See id.* The Court should adopt the Company's reading to avoid a nonsensical result in accordance with Maryland law.

2. <u>Respondents' interpretation of RP § 12-111 is unworkable, contrary to the purpose of the statute, and defies all principles of statutory interpretation.</u>

As just explained, the only logically sound and legally correct interpretation of RP § 12-111 is the Company's. RP § 12-111 is silent on when the power *to exercise* the right of eminent domain attaches to a body politic or body corporate. *See supra* Section I.A.1. To the extent this silence creates ambiguity, fundamental principles of statutory construction demand that the Court reject Respondents' interpretation. Respondents' interpretation of PUA § 7-207 and RP § 12-111 would require a public utility to obtain a CPCN *before* it could collect the data necessary for state agencies to recommend approval of a CPCN in the first place. This interpretation makes no sense;

indeed, it is "absurd, illogical, [and] incompatible with common sense," *see Wheeling*, 473 Md. at 377. Adopting Respondents' interpretation would render the CPCN procedure codified in PUA § 7-207(b)(3) ineffective and unworkable, given that the information to be gathered pursuant to the non-intrusive surveys authorized by RP § 12-111 is necessary for PPRP to evaluate and, ultimately, for the PSC to approve, the CPCN.

This interpretation of the statute runs against every tenant of statutory construction, including the principle that statutes are to be harmonized to the extent possible "consistent with the statute's object and scope." *Wheeling*, 473 Md. at 377 (citation omitted). Respondents' interpretation renders RP § 12-111 a nullity, intrudes on the State's eminent domain power, and makes the issuance of a CPCN impossible without landowner approval, permitting a single landowner to hold the public hostage by obstructing a necessary public project. As Maryland courts have explained, RP § 12-111 was designed to *prevent* these issues, not create them. *See King*, 52 Md. App. at 122-23 (1982) (noting "it is apparent that the purpose" of a court order to enter property for conducting land surveys "is to bring a recalcitrant landowner under the contempt power of the court pursuant to [RP] § 12-111(e)").

Moreover, a review of the regulations governing CPCN approvals establishes that an interpretation of RP § 12-111(a) that would prohibit the Company from making surveys until after the issuance of a CPCN would render the statutory scheme in PUA 7-207(b)(3) unworkable. PUA § 7-207(b)(3)(i) requires the PSC to review CPCN applications for a proposed electric transmission line alignment and the effects of the line on the impacted property and vicinal properties. Further, COMAR 20.79.04.04.A requires that a CPCN application contain a description of the physical, biological, aesthetic, and cultural features of the site. In this regard, PPRP, the lead state agency reviewing and analyzing the Company's CPCN application, has specifically requested the

Company conduct detailed environmental studies to determine whether, for example, certain endangered species are present on the Respondents' properties, so that the PPRP can assess the impacts of the Project and the PSC can evaluate the CPCN application.  (ECF 3 ¶¶ 19-20).  None of this necessary information could be gathered, if it were required that the Company first obtain a CPCN prior to having the authority to make surveys and obtain information under RP § 12-111(a).  Thus, under Respondents' interpretation, the regulatory scheme provided for under PUA § 7-207 (and its regulations) would effectively be a nullity.

Likewise, under Respondents' interpretation of RP § 12-111(a), statutory conditions imposed on the authority of the State Highway Administration ("SHA") to acquire property for State roads could never be satisfied.  Under the procedures set forth in Md. Code Ann., Transp. §§ 8-321 to -323 ("TR"), the SHA cannot condemn land for State roads until the State Roads Commission approves a plat showing the metes and bounds description of the right-of-way for the road and the proposed acquisition.  The preparation of a plat for State Roads Commission approval, however, necessitates land surveys.  If RP § 12-111(a) meant that no surveys could be conducted until the State Roads Commission approves the plat, the process of SHA condemnations for State roads would be stymied and altogether halt.

Thus, under Moving Respondents' interpretation, entities would be unable obtain a CPCN due to their lack of surveys, and entities would also be unable to obtain surveys due to their lack of a CPCN.  This circular scenario would result in an administrative gridlock, in which no entity could ever obtain a CPCN to construct public projects.  This interpretation must be rejected.

**B.    The Company has adequately pled and established that it made real and bona fide efforts to secure Respondents' consent to enter the Subject Properties.**

Moving Respondents argue that the Petition must be dismissed because the Company failed to make "every real and bona fide effort" to obtain Respondents' consent to enter the Subject

Properties, as is required by RP § 12-111(b). (*See* ECF 89-1 at 24-25, ECF 94 ¶¶ 10-11, ECF 95-1 at 14-27, ECF 101-1 at 2). But Moving Respondents do not identify any legitimate deficiencies in the Company's efforts to obtain their consent that would warrant dismissal of the Company's claim for relief under RP § 12-111.

First, Arentz Respondents argue that the letter correspondence did not identify the Company as the entity seeking access, which Arentz Respondents argue is "significant" given that the Company was not registered to do business in Maryland at that time. (ECF 89-1 at 24). But the letters sent provided to each Respondent clearly explained that Contract Land Services ("CLS") had been engaged by "PSEG" to support efforts regarding the "Maryland Piedmont Reliability Project." (*See, e.g.*, ECF 4-2 at 3). Arentz Respondents' contention that this letter somehow did not put Respondents on notice as to who was requesting access (and for what purpose) is thus a dubious one. Moreover, RP § 12-111 conferral of authority to bodies politic and corporate having the power of eminent domain does not exclude entities that are located outside of or not registered to business in Maryland. *See* RP § 12-111(a). Therefore, it is of no moment that the Company was not registered to do business at the time the letter correspondence was sent.

Next, both Arentz Respondents and Hill Respondents argue that letters sent to Respondents did not provide sufficient information regarding the Company's need to enter the Subject Properties and the scope of studies to be performed. (ECF 89-1 at 25; ECF 95-1 at 14). Arentz Respondents argue that the letters only requested "temporary access 'to perform studies,'" which they claim was insufficient. (ECF 89-1 at 25). Hill Respondents take this argument one step further, insisting that the letters should have stated (1) what surveys the Company intended to perform, (2) the purpose of the surveys, (3) where on the property the surveys would be performed, and (4) the identity of the bonded and insured persons and companies that would perform the

surveys.  (ECF 95-1 at 14).  But Arentz Respondents and Hill Respondents do not—and cannot—point to any provision of RP § 12-111 that requires the Company to provide such any specific detail to a landowner to render their efforts "real and bona fide."  (*See* 89-1 at 25; ECF 95-1 at 14).  They also do not—and cannot—point to any instance where a court has required this degree of detail to warrant an award of relief under RP § 12-111.  Instead, they invite the Court to legislate detailed requirements that the General Assembly did not establish.  Regardless, in focusing on isolated portions of the Company's letters, Moving Respondents ignore the full scope of the Company's efforts to obtain consent and ask the Court to do the same.  When reviewed in total, it is clear that the whole of the Company's efforts to obtain Respondents' consent was real and bona fide.

As set forth in the Declarations of Roger Trudeau, the Company initially sent two letters to each Respondent.  (*See, e.g.*, ECF 4 ¶ 8).  Though Arentz Respondents and Hill Respondents complain about the content of these letters, these letters made clear to each Respondent the nature of the Company's request.  (*See* ECF 4-2).  The first letter sent to each Respondent explained that "PSEG will be seeking temporary access to your property to perform studies necessary to verify existing site conditions and to validate public data.  (*Id.* at 10).  The ROE is not an easement and is only temporary."  (*Id.*).  Then, a second letter to each Respondent instructed that a land agent "will be reaching out to you [the Respondent] via phone, e-mail, or in person to discuss this project, the temporary right of entry form and related compensation."  (*See id.* at 6).  In other words, the letters sent to each Respondent were explicit that each Respondent would receive *more* information about the scope and purpose of the Company's request.

Arentz Respondents and Hill Respondents omit that the Company's contracted land agents *then* initiated personalized contact with each Respondent to obtain their consent (unless a

Respondent outright refused consent after receiving the letters, as did Respondent Brandon Hill, *see* ECF 95-1 at 12-13. As just one example, after sending the two letters described above to Respondents Alene Stickles and Robert Stickles, the Company's contracted land agent spoke to Alene Stickles by phone, explained that the Company "need[ed] to validate its proposed alignment with field studies including soil samples for any locations where the towers may be, as well as cultural surveys." (ECF 4-1). When the land agent followed up with Ms. Stickles, "[s]he said no to granting a ROE [right of entry]." (*Id.*) Arentz Respondents and Hill Respondents make no mention of these efforts made by the Company, which were real and bona fide.

Hill Respondents point to affidavits from two Respondents, Brandon Hill and Carol Knobloch (as representative of the C. William Knobloch, Jr. & Carol Knobloch Revocable Living Trust Agreement Dated January 30, 2019), to argue that the Company's efforts were somehow not real or bona fide. (ECF 95-8; ECF 95-11). Each affidavit presents Mr. Hill and Ms. Knobloch's opinions about the MPRP, reactions to receiving correspondence from the Company, and subjective understanding as to the Company's need to access their properties. (ECF 95-8 at 8; ECF 95-11 at 3). The Court should not look beyond the four corners of the Petition to consider these affidavits, which do not offer any information that is relevant to the Court's determination of whether the Company is entitled to relief under RP § 12-111. *See Gaines*, 657 F. Supp. 3d at 732. The statute contains no requirement that a landowner perceive or understand the Company's efforts to obtain consent, and Hill Respondents may not read language into the statute that does not exist.

Further, even if Mr. Hill or Ms. Knobloch's subjective understanding were relevant (it is not), their affidavits do not demonstrate that the Company's efforts to obtain their consent were not real or bona fide. Citing to only a portion of the correspondence he received from the

14

Company, Mr. Hill states that he refused the Company entry after receiving this correspondence because he found it "audacious" that the Company would "send out a real estate agent to assess the market value of [his] property rights, without first sending out any kind of surveyor, especially an environmental surveyor." (ECF 95-8 ¶ 12.)  But the correspondence that Mr. Hill received from the Company did not say that it would send out a real estate agent before sending a surveyor. Rather, the Company's correspondence sent on October 28, 2024 plainly stated that the Company was "seeking temporary access to your property to perform studies necessary to verify existing site conditions and to validate public data" and that the Company would introduce Mr. Hill to a land agent the following month, who would provide more information.  (ECF 15-2 at 8.)  Then, on November 18, 2024, the Company, through its land agent, informed Mr. Hill again that it was "seeking temporary access to [his] property to evaluate its suitability for the project" and would reach out to discuss the project with him.  (*Id.* at 6.)  Mr. Hill emailed the land agent four days later, denying consent and threatening to call the police if anyone representing the Company showed up on his property.  (ECF 15-1.)

Ms. Knobloch contends that she "would have considered granting access for a survey or even some environmental studies," but she nonetheless declined the Company access because it presented her with a Temporary Right of Entry Form that contemplated other kinds of surveys and tests, which she found "unreasonable." (ECF 95-11 ¶ 5; ECF 95-12.)  But again, Ms. Knobloch's subjective belief in the reasonableness of the Company's effort has no bearing on whether the Company's effort were real and bona fide.

In sum, the moving Respondents do not identify any legitimate deficiencies in the Company's efforts to obtain Respondents' consent to enter their properties.  Construing the allegations in the Petition in favor of the Company—as is required—the Company has adequately

15

pled that it made real and bona fide efforts to obtain Respondents' consent, entitling it to relief under RP § 12-111. What any Respondent understood the Company's efforts to mean, or why any Respondent refused the Company consent, is irrelevant under RP § 12-111 to whether the Company is entitled to the relief it seeks.

## II.     There is no basis in *Burford* for the Court to decline to exercise jurisdiction over this dispute.

Arentz Respondents argue that this Court should abstain from exercising jurisdiction over this dispute pursuant to the principles set forth in *Burford*. "Abstention doctrines," including *Burford*, "constitute extraordinary and narrow exceptions to a federal court's duty to exercise the jurisdiction conferred on it." *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (cleaned up). *Burford*, in particular, "justifies the dismissal of a federal action in a narrow range of circumstances"—where "(1) there are difficult questions of state law whose importance transcends the result in the case then at bar; or (2) federal review would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* (cleaned up). The Supreme Court has cautioned that these circumstances are "extraordinary," and it instructs courts to "balance the state and federal interests to determine whether the importance of difficult state law questions or the state interest in uniform regulation *outweighs* the federal interest in adjudicating the case at bar." *Id.* The Supreme Court has also cautioned that "[t]his balance only rarely favors abstention." *Id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996)).

This case does not present either of the "extraordinary and narrow" circumstances described above. The Company's request for injunctive relief does not present any "difficult questions of state law," the resolution of which would interfere with matters of state regulation and policy. Arentz Respondents do not contend otherwise. Arentz Respondents also do not claim

that this Court's review would "disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern." Rather, Arentz Respondents argue that this Court will intrude upon the PSC's jurisdiction if this case proceeds because the Company has asked this Court to decide "numerous issues that are pending before the PSC." (ECF 89-1 at 27).

This is not true. The PSC lacks jurisdiction to enforce RP § 12-111, and the Company's Petition only asks the Court to enforce the Company's rights under that statute. Applying RP § 12-111 does not require this Court to find that the information requested by PPRP is required for the Company's CPCN application to be deemed administratively complete, as Arentz Respondents claim. (*Id*. at 28). Nor does the Company's Petition ask this Court to make any findings regarding the merits of the Company's CPCN application. (*Id*.). In fact, RP § 12-111 does not require the Court to make *any* "threshold determinations" as to the propriety of the survey information sought, despite the Arentz Respondents' insistence otherwise. (*Id.*). Rather, RP § 12-111 only requires the Court to determine whether the Company has survey rights to enter onto the Subject Properties and whether the Company made real and bona fide efforts with respect to each Respondent but was refused entry. The Court's assessment of those two narrow questions does not intrude upon— let alone overlap with—the questions to be decided by the PSC.

Arentz Respondents next argue that this Court should decline to exercise its jurisdiction over this dispute because it pertains to the state's eminent domain power, which Arentz Respondents frame as a quintessential circumstance in which *Burford* applies. It is not. *See Mayor and City Council of Baltimore v. Nat'l Dairy Products Corp.*, 193 F. Supp. 556, 557 (D. Md. 1961) (declining to abstain from state condemnation proceeding). In any event, the two questions RP § 12-111 requires the Court to decide are not "intrinsically connected" to eminent domain, as Arentz Respondents claim. The temporary right of entry afforded by RP § 12-111 is distinct from a taking

of property that triggers the state's eminent domain procedures. *See LaFontaine's Heirs v. LaFontaine's Heirs*, 205 Md. 311, 320 (1954) ("Authorized temporary occupancy or momentary entry for purposes of survey or inspection is not a taking and may be done without compensation."); *Steuart v. Baltimore*, 7 Md. 500, 516 (1855) ("The constitutional prohibition against taking private property for public use, until compensation is first paid or tendered, means *taking* the property from the owner, and *actually* applying it to the use of the public. It does not mean the preliminary measures necessary in such cases. To hold that compensation must be paid or tendered, before a survey should be made, or other preparatory steps taken, would be a construction of the constitution not required by its language, or necessary for the protection of private rights."). None of Arentz Respondents' cited authorities pertain to a temporary right of entry, which is the sole relief that the Company seeks in the Petition. (*See* ECF 89-1 at 29).

Finally, Arentz Respondents argue that there is no federal interest at issue in the Petition because the PSC has exclusive authority to regulate the construction and location of transmission lines in Maryland. (ECF 89-1 at 30). Again, Arentz Respondents misconstrue the nature of the relief sought. The Petition seeks limited injunctive relief to enforce authority that state law affords the Company is afforded under state law: to enter Respondents' properties for the purpose of performing environmental surveys to inform the consideration of a public utility infrastructure project. (ECF 1 at 52). It does not seek any determination as to the merits of the Company's CPCN application or any other question to be answered by the PSC. Moreover, Arentz Respondents themselves recognize that the PSC cannot possibly provide the Company the relief sought because RP § 12-111(b) directs the Company to seek relief in a "law court." (*Id.* at 29 n.12). As a result, the Company's requested relief does not interfere with the PSC's exclusive authority to regulate the approval of the construction and location of transmission lines.

Regardless, the federal interest in adjudicating this case is significant. As the Petition explains, PJM—which oversees a region of thirteen states and the District of Columbia, at FERC's direction—has identified significant risks to the region's electric grid. (ECF 1 ¶¶ 244-45). If these risks are not addressed, overall system reliability for customers throughout PJM's region—not just in Maryland—could be compromised. (*Id*. ¶ 246). The Company's ability to fulfill its contract with PJM to construct the MPRP and address these regional concerns is thus a matter of federal concern. And, as explained above, there is no "difficult question[] of state law" or matter of state policy presented in the Petition, let alone one that outweighs this important federal interest. *See Martin*, 499 F.3d at 364 (observing that "[t]his balance only rarely favors abstention").

## III.    The Company did not fail to exhaust administrative remedies before filing suit.

Arentz Respondents also argue that the Petition must be dismissed because the Company failed to exhaust "special administrative remedies" before filing suit. (ECF 89-1 at 26). They accuse the Company of "us[ing] the federal Court to expedite or end-run around special administrative procedures[.]" (ECF 89-1 at 31). Arentz Respondents do not identify, however, what "special administrative remedies" the Company failed to exhaust. That is because there are none. As explained above, the PSC has no jurisdiction to grant the Company the relief that it seeks—only a "law court" may do that, as explicitly set forth in RP § 12-111(b). The PSC's general statutory authority to regulate the construction and maintenance of transmission lines does not expressly or impliedly preempt this Court's authority to grant relief under RP § 12-111, and Arentz Respondents do not contend otherwise.

Without identifying what "administrative remedies" exist, Arentz Respondents nonetheless assert that these remedies are "exclusive or primary" and thus, that the Company was required to exhaust them before filing suit. (ECF 89-1, at 31). In the context of administrative exhaustion, however, exclusive and primary remedies are legally distinct. An exclusive administrative remedy

precludes "any resort to an alternative remedy" for which "the only manner of obtaining judicial involvement is by pursuing judicial review of the final administrative decision." *Comptroller of Md. v. Comcast of Cal.*, 484 Md. 222, 232 (2023) (citation omitted).  In contrast, a remedy that is "primary but not exclusive" permits a claimant to "file an action to pursue an alternative judicial remedy, but the claimant must invoke and exhaust the administrative remedy, and seek judicial review of an adverse administrative decision, before a court can properly adjudicate the merits of the alternative judicial remedy." *Id.* (internal quotation marks and citation omitted).

Arentz Respondents do not identify, let alone explain, what exclusive or primary remedies existed that the Company failed to exhaust.  They do not contend that only the PSC may grant the relief afforded to the Company under RP § 12-111 and that the Company may only seek judicial involvement after the PSC makes that determination.  They also do not contend that this Court must stay its consideration of the relief the Company seeks until the PSC first decides the issue.  That is because RP § 12-111 vests exclusive jurisdiction in "law courts"—not the PSC—to grant the relief that the Company seeks here.  *See* RP § 12-111(c).  As a result, there is no administrative remedy, exclusive or primary, that the Company failed to exhaust.

Arentz Respondents again misconstrue the relief sought.  The Company does not ask this Court to conclude whether the Company's CPCN application is complete or whether the MPRP should be constructed.  The Company asks this Court to grant the limited relief sought—the ability to enter the Subject Properties and gather the survey information PPRP requested—so that the PSC's consideration of the Company's CPCN application may move forward.  To that end, the Arentz Respondents' implication that an order from this Court granting the Company access would be premature is unpersuasive.  (ECF 89-1 at 28-29).  The Company's entitlement to relief under RP § 12-111 does not depend on whether the PSC finds the Company's application to be

administratively complete or decides that the MPRP is needed and in the public interest; it only depends on the Company's satisfaction of the requirements set forth in the statute. Accordingly, if the Court grants the Company's requested relief, but the PSC ultimately does not grant the Company's CPCN application, this Court will not have run afoul of RP § 12-111 or any other provision of law. *See Walker*, 601 So. 2d at 972 (upholding a right of entry order for a CPCN applicant even when a CPCN route was, ultimately, not approved through a landowner's property and was altered based on information gained during environmental surveys).

### IV.    This Court is the proper forum for this dispute.

Hill Respondents and Dell Respondents argue that the Petition should be dismissed because RP § 12-111(c) requires suits to be brought in "a law court of the county" where their properties are located, which these Respondents construe to mean a county circuit court. (ECF 95-1 at 20-21; ECF 94 ¶ 10). Hill Respondents and Dell Respondents accordingly argue that this Court lacks subject matter jurisdiction to hear this dispute, or, in the alternative, that the doctrine of *forum non conveniens* compels this suit's dismissal. Neither argument holds water.

First, this Court has subject matter jurisdiction over the Petition. Notwithstanding the fact that RP § 12-111(c) identifies "a law court of the county" where a property is located as an appropriate venue, the statute cannot divest a federal court sitting in diversity from jurisdiction to hear such a dispute. While a federal court sitting in diversity looks to state law to define the substantive rights of the parties, *Wideman v. Innovative Fibers LLC*, 100 F.4th 490, 496 (4th Cir. 2024) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)), a state "cannot limit the subject matter jurisdiction of federal courts, even in diversity cases," *id.* at 497; *see Ry. Co. v. Whitton's Adm'r*, 80 U.S. 270, 286 (1871) ("Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case

21

between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation.").

Indeed, federal courts sitting in diversity routinely exercise jurisdiction over state law disputes, even where the state law at issue specifies a state or local venue. *See Liner Tech., Inc. v. Warren Cnty. Pollution Control Fin. Auth.*, Civ. No. 91-1713, 1991 WL 246943, at *2, *4 (D.N.J. Oct. 22, 1991) (declining to abstain from "an adjudication of claims under the New Jersey Municipal Mechanic's Lien Law, a statute that does not implicate an important New Jersey policy," where relevant state statute was "a permissive grant of jurisdiction to the state court, and not a restriction on the exercise of jurisdiction by the federal court over a diversity action involving the statute."); *Emigrant Mortg. Co., Inc. v. Bourke*, 712 F. Supp. 3d 164, 174-75 (D. Mass. 2024) (declining to abstain from foreclosure dispute and rejecting argument that state statute limited jurisdiction to state Land Court) ("[R]eal property rights, though derived mainly from state law, are routinely enforced in federal as well as state courts." (citation omitted)); *Hughes v. White*, 388 F. Supp. 2d 805, 814 (S.D. Ohio 2005) ("[W]hile it is true that Ohio law permits a credit union to commence a civil action, under specified conditions, exclusively in the Court of Common Pleas of Franklin County for an order to compel the superintendent of credit unions to remove the conservator, the Court is not persuaded that its resolution of Plaintiff's claims will disrupt the state's efforts to establish a coherent policy of credit union regulation."). Notably, Arentz Respondents concede this point.[3] (ECF 89-1 at 22 n.12 (acknowledging that the language of RP § 12-111(c) "does not divest this Court of diversity jurisdiction")).

---

[3] In a footnote, the Hill Respondents argue that a federal court *could* exercise jurisdiction over a claim brought under RP § 12-111 if the property at issue is located in the same county as the federal court. (ECF 95-1 at 22 n.17). The Hill Respondents offer no legal support for this argument, which contravenes the well-settled rule that a state may not divest a federal court sitting in diversity from hearing a state law dispute, as explained above.

Second, this Court should not decline to exercise jurisdiction under the *forum non conveniens* doctrine, which "allows a court to resist imposition upon its jurisdiction even when jurisdiction is authorized[.]" *Millennium Inorganic Chems. Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 686 F. Supp. 2d 558, 561 (D. Md. 2010) (citations omitted). But "the central focus of the *forum non conveniens* inquiry is convenience." *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 248 (1981)). To that end, where an alternative forum is available and adequate, an alterative forum must be "*more convenient* in light of the public and private interests involved." *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 136 (4th Cir. 2023) (citation omitted) (emphasis added). Both public and private interest factors weigh against dismissal here.

Public factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 249 (4th Cir. 2011) (citations omitted). These factors weigh against dismissal. Each of the Subject Properties is located within this judicial district, and, as such, deciding this dispute in this forum *is* deciding it "at home." This Court routinely interprets and applies Maryland law, and there will be no possible conflict of laws. Though a jury is unnecessary to resolve this dispute, the jury pool would be drawn from the same counties in which the MPRP is to be constructed and where the Subject Properties are located.

Private factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other

practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citations omitted). These factors, too, weigh against dismissal. All Respondents are Maryland residents or own property in Maryland. (*See* ECF 1 ¶¶ 5-122). Each of the Subject Properties is within this judicial district. (*Id.*). Though the Company disagrees that any testimony or discovery from State agencies is necessary to resolve this action, those third parties are also within this judicial district.

In sum, it would be no more convenient for a state court to resolve the present dispute than for this Court to do so. Because a state circuit court would not be "more convenient in light of the public and private interests involved," dismissal under the *forum non conveniens* doctrine is unwarranted. *dmarcian*, 60 F.4th at 136.

### V. Dismissal pursuant to Rule 12(b)(7) is unwarranted because Ms. Xie is neither a necessary nor indispensable party.

Under Rule 12(b)(7), Arentz Respondents bear the burden to "show that the person who was not joined is needed for a just adjudication." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005). Arentz Respondents have failed to meet that burden here, because their would-be necessary and indispensable party, Ms. Xie, does not have an interest that will be prejudiced by disposal of this action in her absence. Arentz Respondents arguments presuppose that somehow the Company will gain access to Ms. Xie's property if the Company gains access to the Subject Properties. But the action presently before this Court does not adjudicate any rights with respect to Ms. Xie's property. Even if Ms. Xie is sued in a subsequent proceeding, she will not be collaterally estopped from raising any arguments, and her property rights would receive the same level of consideration and adjudication that Respondents will receive in the present suit.

When addressing a motion for failure to join a necessary party under Federal Rule of Civil Procedure 19, the district court must engage in a two-step analysis, first determining "whether the nonjoined party is necessary under Rule 19(a) and then whether the party is indispensable under

Rule 19(b)." *Gunvor SA v. Kayablian*, 948 F.3d 214, 218 (4th Cir. 2020). If the absent party is both "necessary and indispensable to the action, but joinder would destroy subject matter jurisdiction, the court must dismiss the action." *Id.* at 218-19. Though required if these prerequisites are met, dismissal is "a drastic remedy that should be employed only sparingly." *Id.* (quoting *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014)); *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999) ("Courts are loath to dismiss cases based on nonjoinder of a party[.]").

Here, the Court is called upon to assess whether the Company has met RP § 12-111's requirements as to the Subject Properties. Put plainly, Ms. Xie does not need "to be in the courtroom" for the resolution of that question, *see Hanna*, 750 F.3d at 433, and she will be able, in a theoret subsequent proceeding, to protect her interests and challenge any attempts by the Company to seek a right of entry to her property in a future proceeding. *Infra* Section V.A. Further, Ms. Xie's declaration is insufficient as a matter of law to allege that her inclusion would destroy diversity of citizenship in the first place, and Arentz Respondents' arguments on this point should be rejected in full.[4] *Infra* Section V.B.

### A. Ms. Xie is neither a necessary party nor an indispensable party to this proceeding.

Arentz Respondents bear the burden of establishing both that: (1) Ms. Xie is a necessary party; and (2) Ms. Xie is an indispensable party. *Gunvor SA*, 948 F.3d at 218. Arentz Respondents prove neither.

---

[4] Arentz Respondents also accuse the Company of bad faith and assert it purposely did not join Ms. Xie in order to obtain diversity jurisdiction. (ECF 89-1 at 37). While the Company cannot proceed with its CPCN application in a piecemeal fashion, gaining approval for certain portions of its transmission line while waiting for approval on the remainder, that is irrelevant to how the Company attempts to gain access to the properties to fulfill a requirement in that broader process. (*See id.* at 36 (incorrectly implying that the Company's inability to proceed with its CPCN application in a piecemeal fashion means it cannot proceed with actions to enter onto properties in batches)). The Company seeks to enter the properties subject to *this action* due to the time it will take the company to conduct the required surveys on *those* properties, as alleged in the Petition. (ECF 1 at ¶ 263).

1. <u>Ms. Xie is not a necessary party as complete relief can be obtained among the existing parties in her absence.</u>

A party is necessary to an action under Rule 19(a)(1) if (1) the "court cannot accord complete relief among existing parties" in the person's absence or, as relevant here,[5] (2) the "person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest[.]"  Fed. R. Civ. P. 19(a)(1).  Ms. Xie does not meet these requirements and is therefore not a necessary party.

Crucially, the Court can provide complete relief among the existing parties in Ms. Xie's absence, because even though the Company has satisfied its obligation under RP § 12-111(a) as to each of Respondents' properties, complete relief would not permit the Company a preliminary right of entry for *Ms. Xie's* property.  *See* RP § 12-111(b) (referring to a single property or part of a property).  Accordingly, Ms. Xie's involvement is not necessary for the Court to grant or deny that relief as between the Company and Respondents' properties.[6]  *See United States v. Cnty. of Arlington*, 669 F.2d 925, 929 (4th Cir. 1982) ("Complete' relief refers to relief as between the persons already parties, not as between a party and the absent person whose joinder is sought . . . .") (citation omitted)).

---

[5] Arentz Respondents raise no argument as to the other reason a party may be necessary, i.e., that disposal of the action in the person's absence may leave the person "subject to a substantial risk of incurring . . . inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii).

[6] The only two authorities cited by Arentz Respondents involved situations where impairment would occur because the nonparty was in contractual privity with the plaintiff and interpretation of the contract was at issue in the case—a far cry from the situation here.  *See Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir. 1999) (holding local union affiliate was necessary party because it signed contract at issue between plaintiff and another local union affiliate and interpretation of that contract would affect interests of nonparty union affiliate's members); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 251 (4th Cir. 2000) (holding nonparty was necessary party because court had to interpret contract between plaintiff and nonparty to resolve dispute and thus judgment would impair nonparty's ability to protect its interests).

Arentz Respondents contend a decision in Ms. Xie's absence will impair her ability to protect her property interests because it will provide two potential tools for the Company to use against her in a future proceeding: persuasive authority and a collateral estoppel argument.  (ECF 89-1 at 35).  The law plainly does not treat any person that could be negatively affected by persuasive authority as "necessary" or "indispensable" to a proceeding.  *See Am. Coll. of Obstetricians & Gynecologists v. FDA*, 467 F. Supp. 3d 282, 289 (D. Md. 2020) (noting that even if unfavorable ruling in case could be used by opponents in future litigation and make those cases "harder to defend," this does not create an impairment warranting mandatory intervention because "every case has the potential to create new legal precedent or persuasive authority").  Moreover, the Company would have no basis to invoke collateral estoppel against Ms. Xie.  Collateral estoppel only forecloses the re-litigation of issues if the party had "a full and fair opportunity to litigate the issue or fact in the prior proceeding."  *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004).  Ms. Xie is not a party to this action, so she will not have any opportunity to litigate issues or facts that relate to her property in this proceeding, foreclosing invocation of collateral estoppel arguments against Ms. Xie.  Thus, Arentz Respondents have failed to establish, that Ms. Xie is a necessary party and Arentz Respondents' joinder argument should be rejected on this basis alone. *See Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1287 (4th Cir. 1994) (requiring both elements be satisfied for dismissal for nonjoinder).

## 2. Ms. Xie is not an indispensable party.

Additionally, even if Ms. Xie were a necessary party (which she is not), Arentz Respondents cannot demonstrate Ms. Xie is an indispensable party.  A court determines whether a party is indispensable by reference to "equity and good conscience."  *See* Fed. R. Civ. P. 19(b). Four factors are considered: (1) "the extent to which a judgment rendered in the person's absence

might prejudice that person or the existing parties"; (2) "the extent to which any prejudice could be lessened or avoided"; (3) "whether a judgment rendered in the person's absence would be adequate"; and (4) "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." *Id.* None of these factors support, let alone establish, that Ms. Xie is an indispensable party.

As noted above, the first factor weighs in the Company's favor as adjudication of this controversy will have no effect on Ms. Xie's interest in her Maryland property. *Supra* Section V.A.1. Additionally, because there is no prejudice, the second factor is inapplicable. The third factor addresses "much the same concerns as under the Rule 19(a)[(1)(B)] analysis." *Owens-Illinois, Inc.*, 186 F.3d at 441. Arentz Respondents failed to explain why the Company cannot obtain relief in Ms. Xie's absence; thus, the third factor weighs in the Company's favor as well. Collectively, these three factors "weigh[] so heavily" against a finding of indispensability that this Court could not, "in equity," find that joinder of Ms. Xie is required here. *See Teamsters Local Union No. 171*, 173 F.3d at 919. Thus, Arentz Respondents have failed to establish that Ms. Xie is either a necessary or indispensable party, though *both* must be proven for a nonjoinder argument to succeed. Accordingly, Arentz Respondents' arguments for dismissal pursuant to nonjoinder of a necessary and indispensable party should be rejected entirely.

**B.    As a matter of law, Arentz Respondents have failed to establish that Ms. Xie is domiciled in New Jersey.**

Moreover, Arentz Respondents fail to establish that joinder of Ms. Xie would destroy complete diversity because Ms. Xie's declaration does not demonstrate that Ms. Xie is a citizen of New Jersey for the purposes of diversity jurisdiction. Ms. Xie only states that she is a resident of

New Jersey and has an address there. (*See* ECF 89-8 ¶¶ 2, 4).[7] However, "residency is not sufficient to establish citizenship." *Johnson v. Advance Am.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008). A person must be domiciled in the state, which "requires physical presence, coupled with an intent to make the State a home." *Id.* Ms. Xie's affidavit says nothing about her physical presence in New Jersey nor her intent to make that state her home. For this reason, Ms. Xie's affidavit casts no doubt on the propriety of the Court's diversity jurisdiction.

## VI. Hill Respondents' Opinions as to the merits of the Company's pending CPCN Application are not a basis for dismissal.

Hill Respondents argue that the Company's CPCN application is "unprecedent in scope" and "incomplete," (*see* ECF 95-1 at 6), and that the Company's proposed timeline for the MPRP is "impossible," (*id.* at 12). The crux of these arguments appears to be that dismissal is warranted because Hill Respondents believe it is "unlikely" the Commission will grant the Company's CPCN application. (*Id.* at 5). Hill Respondents' perceived merits of the Company's application are irrelevant to this Court's consideration of whether the Petition survives dismissal, which it does.

Motions to dismiss under Rule 12(b)(6) "do[] not resolve contests surrounding the facts" or "the merits of a claim." *Sarmiento v. CHS TX, Inc.*, 756 F. Supp. 3d 22, 25 (D. Md. 2024) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). The question pending before the Court as to Hill Respondents' motion is whether, "accepting all well-pleaded allegations in the [Company's Petition] as true and drawing all reasonable factual inferences from those facts in the [Company's] favor, it appears certain that the [Company] cannot prove any set of facts in

---

[7] As a technical matter, Ms. Xie's declaration does not comport with Local Rules, which do not permit electronic signatures from non-attorneys. *See Non-Attorney Signature Formats*, United States District Court for the District of Maryland, https://www.mdd.uscourts.gov/content/non-attorney-signature-formats (last visited May 5, 2025). Accordingly, it cannot be recognized as a "sworn statement the contents of which are affirmed under the penalties of perjury to be true." Loc. R. 601(3) (D. Md. 2023). An unsworn statement from a non-party does not raise doubts about the complete diversity of citizenship in the present proceeding.

support of [its] claim entitling [it] to relief."[8] *See Edwards*, 178 F.3d at 244.  The question is not, as the Hill Respondents would seem to have it, whether the Company will be successful before the Commission.

The Company's Petition to this Court does not seek an assessment of its CPCN application. Rather, the Petition seeks limited injunctive relief that will, in turn, *permit the PSC* to consider that CPCN application.  (*See* ECF 1 ¶¶ 264, 284).  Hill Respondents' irrelevant contentions, such as that some people are opposed to the transmission line, add nothing to the analysis of whether the Company is entitled to relief under RP § 12-111.  (ECF 95-1 at 8).  Nor does Hill Respondents' desire that the Company withdraw its CPCN application, have any bearing on whether the Company has met the statutory requirements.  (*Id.* at 12).

## CONCLUSION

For the foregoing reasons, the Company respectfully requests that the Court enter an order denying the motions to dismiss filed by the Moving Respondents.


Date: May 5, 2025                                      Respectfully submitted,

                                                      */s/ Kurt J. Fischer*
                                                      Kurt J. Fischer (Bar No. 03300)
                                                      Venable LLP
                                                      210 W. Pennsylvania Avenue
                                                      Suite 500
                                                      Towson, MD 21204
                                                      (410) 494-6200
                                                      kjfischer@venable.com

---

[8] Hill Respondents' motion does not state the subsection(s) of Federal Rule of Civil Procedure 12(b) under which they seek dismissal, nor does their memorandum provide any legal standard for this Court's consideration of the motion. The Company thus presumes, based on the substance of Hill Respondents' arguments regarding "standing" and the Company's real and bona fide efforts, that Hill Respondents believe dismissal is warranted under Rule 12(b)(6).  (*See* ECF 95-1 at 13-20).  As to their arguments regarding the proper forum for this dispute, this appears to be an argument for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(3).  (*See id.* at 22-25).

J. Joseph Curran III (Bar No. 22710)
Christopher S. Gunderson (Bar No. 27323)
Kenneth L. Thompson (Bar No. 03630)
Susan R. Schipper (Bar No. 19640)
Emily J. Wilson (Bar No. 20780)
Venable LLP
750 E. Pratt Street
Suite 900
Baltimore, MD 21202
(410) 244-7400
jcurran@venable.com
csgunderson@venable.com
klthompson@venable.com
srschipper@venable.com
ejwilson@venable.com

*Attorneys for Petitioner PSEG*
*Renewable Transmission LLC*

## CERTIFICATE OF SERVICE

I hereby certify on this 5th day of May, 2025, I electronically filed and served the foregoing on all counsel of record via the Court's CM/ECF system.

*/s/ Emily J. Wilson*

Emily J. Wilson
