**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| PSEG RENEWABLE TRANSMISSION LLC, | * | |
| | * | |
| Petitioner, | | |
| | * | |
| v. | | Case No. 1:25-cv-01235 |
| ARENTZ FAMILY, LP, *et al.*, | | |
| | * | |
| Respondents. | | |
| | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**PETITIONER PSEG RENEWABLE TRANSMISSION LLC'S SUPPLEMENTAL
MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

Kurt J. Fischer (Bar No. 03300)
Venable LLP
210 W. Pennsylvania Avenue
Suite 500
Towson, MD 21204
(410) 494-6200
kjfischer@venable.com

J. Joseph Curran, III (Bar No. 22710)
Christopher S. Gunderson (Bar No. 27323)
Kenneth L. Thompson (Bar No. 03630)
Susan R. Schipper (Bar No. 19640)
Emily J. Wilson (Bar No. 20780)
Venable LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
(410) 244-7400
jcurran@venable.com
csgunderson@venable.com
klthompson@venable.com
srschipper@venable.com
ejwilson@venable.com

*Attorneys for Petitioner PSEG
Renewable Transmission LLC*

## TABLE OF CONTENTS

I.     INTRODUCTION ……………………………………………………………………..1

II.    THE FERC ORDER ........................................................................................ 3

III.   ARGUMENT ................................................................................................... 4

       A.    The Company Is Irreparably Harmed Because It Cannot Exercise
             Its Statutory Rights Under RP § 12-111 ................................................. 5

       B.    So Long As It Cannot Exercise Its Statutory Rights Under RP §
             12-111, The Company Will Not Be Able To Meet Its In-Service
             Deadline, Which Is Irreparable Harm Under *Sage* and *Mountain
             Valley* ................................................................................................. 10

       C.    Though The Company Need Not Show Monetary Harm, The
             FERC Order Confirms The Company Will Suffer Monetary Harm
             In The Absence of Preliminary Relief ................................................. 13

CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 289 F.Supp.3d 73 (D.D.C. Jan. 29, 2018) .................................................................................................................. 5

*Apotex, Inc. v. Food and Drug Admin.*, No. Civ.A. 06-0627 JDB, 2006 WL 1030151 (D.D.C. Apr. 19, 2006) ................................................................................................................ 6

*Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021) ................................................................. 9

*Columbia Gas Transmission, LLC v. 252.071 Acres More or Less*, Civil Action Nos. ELH-15-3462, ELH-15-3560, 2016 WL 1248670 (D. Md. Mar. 25, 2016) ................ 10, 11, 12

*Columbia Gas Transmission, LLC v. 84.53 Acres of Land*, 310 F. Supp. 3d 685 (N.D. W.Va. 2018) ...................................................................................................................... 15, 16

*Continental Resources, Inc. v. Langved*, No. 4:15–cv–19, 2015 WL 686965 (D.N.D. Feb. 18, 2015) .................................................................................................................. 6, 7, 8

*Fairy-Mart v. Marathon Petroleum Co., LP*, No. 3:17-cv-1195 (MPS), 2017 WL 5140514 (D. Conn. 2017 Nov. 6, 2017) ........................................................................................ 6

*Klemic v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 673 (W.D. Va. 2015). ........................ 9

*Planned Parenthood S. Atl. v. Baker*, 326 F. Supp. 3d 39 (D.S.C. 2018) ..................................... 5

**Statutes**

16 U.S.C. § 824d .................................................................................................................... 14

16 U.S.C. § 824s ...................................................................................................................... 3

255 Ill. Comp. Stat. Ann. 330/45 ........................................................................................... 9

26 Pa. Cons. Stat. Ann. § 309 ................................................................................................. 9

605 Ill. Comp. Stat. Ann. 10/11 ............................................................................................. 9

70 Ill. Comp. Stat. Ann. 15/5 ................................................................................................. 9

70 Ill. Comp. Stat. Ann. 3615/2.20 ........................................................................................ 9

70 Ill. Comp. Stat. Ann. 5/22.3 ................................................................................. 9

Ala. Code § 18-1A-50 ................................................................................................ 9

Alaska Stat. Ann. § 09.55.280 ................................................................................... 9

Ariz. Rev. Stat. Ann. § 12-1115 ................................................................................ 9

Ark. Code Ann. § 18-15-1302 ................................................................................... 9

Cal. Civ. Proc. Code § 1245.010 ............................................................................... 9

Colo. Rev. Stat. Ann. § 18-4-515 .............................................................................. 9

Colo. Rev. Stat. Ann. § 37-3-113 .............................................................................. 9

Conn. Gen. Stat. Ann. § 48-13 .................................................................................. 9

Del. Code Ann. tit. 2 § 1309 ..................................................................................... 9

Del. Code Ann. tit. 2 § 704 ....................................................................................... 9

Del. Code Ann. tit. 2 § 906 ....................................................................................... 9

Del. Code Ann. tit. 22 § 709 ..................................................................................... 9

Del. Code Ann. tit. 7 § 6406 ..................................................................................... 9

Del. Code Ann. tit. 9 § 4814 ..................................................................................... 9

Fla. Stat. Ann. § 163.370 .......................................................................................... 9

Fla. Stat. Ann. § 337.274 .......................................................................................... 9

Fla. Stat. Ann. § 471.027 .......................................................................................... 9

Fla. Stat. Ann. § 472.029 .......................................................................................... 9

Ga. Code Ann. § 22-3-82 .......................................................................................... 9

Haw. Rev. Stat. § 101-8 ............................................................................................ 9

Idaho Code Ann. § 7-705 .......................................................................................... 9

Ind. Code Ann. § 32-24-1-3 ...................................................................................... 9

Iowa Code Ann. § 314.9 ................................................................................................. 9

Iowa Code Ann. § 479.30 ............................................................................................... 9

Kan. Stat. Ann. § 17-4748 .............................................................................................. 9

Kan. Stat. Ann. § 26-512 ................................................................................................ 9

Ky. Rev. Stat. Ann. § 175B.050 ..................................................................................... 9

Ky. Rev. Stat. Ann. § 322.470 ........................................................................................ 9

Ky. Rev. Stat. Ann. § 416.130 ........................................................................................ 9

La. Rev. Stat. Ann. § 48:1097 ........................................................................................ 9

La. Rev. Stat. Ann. § 48:217 .......................................................................................... 9

La. Rev. Stat. Ann. § 49:214.6.9 .................................................................................... 9

La. Rev. Stat. Ann. § 50:61 ............................................................................................ 9

Mass. Gen. Laws Ann. ch. 164 § 72A ............................................................................ 9

Mass. Gen. Laws. Ann. ch 164 § 75D ............................................................................ 9

Md. Code Ann., Real Prop. § 12-111 ..................................................................... 1, 8, 10

Me. Rev. Stat. Ann. tit. 30-A § 5403 ............................................................................. 9

Me. Rev. Stat. Ann. tit. 32 § 18231 ............................................................................... 9

Mich. Comp. Laws Ann. § 213.54 .................................................................................. 9

Minn. Stat. Ann. § 117.041 ............................................................................................ 9

Miss. Code Ann. § 11-27-39 ........................................................................................... 9

Mo. Ann. Stat. § 250.232 ............................................................................................... 9

Mo. Ann. Stat. § 99.420 ................................................................................................. 9

Mont. Code Ann. § 70-30-110 ........................................................................................ 9

N.C. Gen. Stat. Ann. § 40A-11 ...................................................................................... 9

N.D. Cent. Code Ann. § 32-15-06 ...................................................................................... 9

N.D. Cent. Code Ann. § 38.11.1 ....................................................................................... 7

N.H. Rev. Stat. Ann. § 371:2-a ......................................................................................... 9

N.J. Stat. Ann. § 20:3-16 ................................................................................................. 9

N.M. Stat. Ann. § 42A-1-8 ............................................................................................... 9

N.M. Stat. Ann. § 70-3-5 ................................................................................................. 9

N.M. Stat. Ann. § 72-1-5 ................................................................................................. 9

N.Y. Em. Dom. Proc. Law § 404 ....................................................................................... 9

N.Y. Pub. Auth. Law § 1007(8) ......................................................................................... 9

Neb. Rev. Stat. Ann. § 15-229 .......................................................................................... 9

Neb. Rev. Stat. Ann. § 76-702 .......................................................................................... 9

Nev. Rev. Stat. Ann. § 37.050 .......................................................................................... 9

Ohio Rev. Code Ann. § 163.03 .......................................................................................... 9

Okla. Stat. Ann. tit. 11 § 22-114 ....................................................................................... 9

Okla. Stat. Ann. tit. 66 § 51 ............................................................................................. 9

Okla. Stat. Ann. tit. 69 § 702 ........................................................................................... 9

Or. Rev. Stat. Ann. § 35.220 ............................................................................................ 9

Or. Rev. Stat. Ann. § 772.010 ........................................................................................... 9

R.I. Gen. Laws Ann. § 24-12-9 .......................................................................................... 9

R.I. Gen. Laws Ann. § 45-29-29 ........................................................................................ 9

R.I. Gen. Laws Ann. § 46-15-7 .......................................................................................... 9

S.C. Code Ann. § 28-2-70 ................................................................................................. 9

S.D. Codified Laws § 49-33-6 ........................................................................................... 9

Tenn. Code Ann. § 29-16-121 .................................................................................... 9

Tex. Nat. Res. Code Ann. § 111.019 ......................................................................... 9

Tex. Util. Code Ann. § 181.083 ................................................................................ 9

Utah Code Ann. § 78B-6-506 .................................................................................... 9

Va. Code Ann. § 25.1-203 ......................................................................................... 9

Va. Code Ann. § 56-49 ............................................................................................... 9

Va. Code Ann. § 56-49.01 .......................................................................................... 9

Vt. Stat. Ann. tit. 10, § 960 ........................................................................................ 9

Vt. Stat. Ann. tit. 24, § 2299j .................................................................................... 9

Vt. Stat. Ann. tit. 24, § 3209 ..................................................................................... 9

Vt. Stat. Ann. tit. 5, § 3518 ....................................................................................... 9

W. Va. Code Ann. § 54-1-3 ....................................................................................... 9

Wash Rev. Code Ann. § 47.01.170 ............................................................................ 9

Wash Rev. Code Ann. § 78.04.015 ............................................................................ 9

Wash Rev. Code Ann. § 90.16.040 ............................................................................ 9

Wash. Rev. Code Ann. § 81.36.020 ........................................................................... 9

Wis. Stat. Ann. § 182.38 ............................................................................................ 9

Wis. Stat. Ann. § 200.35 ............................................................................................ 9

Wyo. Stat. Ann. § 1-26-506 ....................................................................................... 9

**Other Authorities**

*Promoting Transmission Inv. Through Pricing Reform*, Order No. 679, 71 Fed. Reg. 43293, 116
  FERC ¶ 61,057 (2006), *order on reh'g, Order* No. 679-A, 72 Fed. Reg. 1152, 117 FERC ¶
  61,345 (2006), *order on reh'g* 119 FERC ¶ 61,062 (2007) ....................................... 3

*PSEG Renewable Transmission LLC*, Order Granting Petition for Declaratory Order, 188 FERC
  ¶ 61,142 (2024) ...................................................................................................... 4, 14

**Regulations**

18 C.F.R. § 385.211 ................................................................................................................ 14

## I.    INTRODUCTION

Pursuant to the Court's May 20, 2025 Order (ECF 133), Petitioner PSEG Renewable Transmission LLC ("Petitioner" or the "Company") submits this supplemental brief addressing "the effect (if any)" of the order attached to the Declaration of Scott Molony (ECF 125-3) (the "FERC Order") "on the question of whether, for preliminary injunction purposes, PSEG has shown irreparable harm." (ECF 133.)

The FERC Order grants the Company the ability to request cost recovery if the Maryland Piedmont Reliability Project ("MPRP") is abandoned for reasons outside of the Company's control, recover pre-commercial and development costs, and use a hypothetical capital structure to assist in its financing efforts. The FERC Order does not address rights of entry issues or project development, review, and construction processes and deadlines. Accordingly, it has no effect on the Company's showing of irreparable harm for the following reasons:

*First*, Md. Code Ann., Real Prop. ("RP") § 12-111 grants the Company a substantive entitlement to enter Respondents' properties and conduct the sort of surveys that the Company asks the Court to do here. Respondents' continued refusal to permit the Company's entry without delay prevents the Company from freely exercising this statutory right. Indeed, the Company's only available remedy is to obtain "an order directing that the person be permitted to enter." Absent an immediate injunction, then, the Company's statutory right of entry will continue to be unjustifiably and fully obstructed, with no other recourse available. As a result, under the authorities discussed below, allowing the Respondents to continue to obstruct the Company's right of entry is irreparable harm to the Company's free exercise of its statutory rights—full stop.

*Second*, for as long as the Company is prevented from exercising its rights under RP § 12-111, the Company will be unable to perform the necessary surveys and gather the information

requested by the Power Plant Research Program ("PPRP"), the clearinghouse for various Maryland state agencies and the entity that is required by law to make a recommendation to the Maryland Public Service Commission ("PSC") on the Company's application for a Certificate of Public Convenience and Necessity ("CPCN"). Absent preliminary relief, the CPCN process will be unjustly delayed, which will prevent the Company from meeting the Project's contractually obligated in-service deadline mandated by PJM Interconnection, L.L.C. ("PJM") to ensure the continuation of reliable electric service for regional customers. The FERC Order, which is limited in scope, has no effect on these cascading and irreparable harms. Under *Sage* and *Mountain Valley*, the inability to meet an in-service deadline due to project delays alone is sufficient to show irreparable harm. The Company has made that showing here.

*Lastly*, the FERC Order is only relevant to whether the Company has shown it will suffer monetary harm absent preliminary relief **in addition to** the non-monetary irreparable harm described above. Because the Company has demonstrated it will suffer that non-monetary harm without preliminary relief, the Court need not reach the question of whether and to what degree the FERC Order impacts the secondary monetary harm the Company will suffer. Importantly, the FERC Order has nothing at all to do with the request made in this proceeding, which is to seek temporary access to Respondents' properties so that the Company is able to construct the MPRP to maintain reliability. Regardless, the FERC Order does not guarantee cost recovery but merely gives the Company the right to make a filing with FERC seeking cost recovery should the MPRP be abandoned in the future for reasons outside of the Company's control. Ultimately, if the project is abandoned, the extent to which the Company will be allowed cost recovery will be determined by FERC. But, even if the Court disagrees that the Company will suffer irreparable monetary

harm, the Company has made clear and unequivocal showings of non-monetary irreparable harm for preliminary injunction purposes, described above.

## II.    THE FERC ORDER

The FERC Order granted three financial incentives requested by the Company to support the Company's investment in and development of the MPRP.  For nearly two decades, FERC has used these incentives as tools to encourage investment in electric transmission infrastructure by mitigating certain risks and challenges faced by a transmission project.

In 2005, Congress amended the Federal Power Act to direct FERC to establish, by rule, incentive-based rate treatments to promote such investment "for the purpose of benefitting consumers by ensuring reliability and reducing the cost of delivered power by reducing transmission congestion."  *See* 16 U.S.C. § 824s.  On July 20, 2006, FERC issued Order No. 679, which sets forth available incentives and the criteria an applicant must satisfy in order to obtain each incentive.  *Promoting Transmission Inv. Through Pricing Reform*, Order No. 679, 71 Fed. Reg. 43293, 116 FERC ¶ 61,057 (2006), *order on reh'g, Order* No. 679-A, 72 Fed. Reg. 1152, 117 FERC ¶ 61,345 (2006), *order on reh'g* 119 FERC ¶ 61,062 (2007).   One such incentive, the Abandoned Plant Incentive, gives an applicant the ability to "**request** 100 percent of prudently-incurred costs associated with abandoned transmission projects."  *Id*. at P 163 (emphasis added).  Absent the Abandoned Plant Incentive, a project deliverer is limited to seeking recovery of 50% of its prudently incurred costs.

With respect to the Abandoned Plant Incentive, if the project is abandoned for reasons beyond the applicant's control, before the public utility may recover the abandoned plant costs, it must make a section 205 filing with FERC requesting recovery for the abandoned plant costs. FERC evaluates actual recovery proposals for companies that have obtained the Abandoned Plant Incentive on "a case-by-case basis."  *Id*. at PP 164, 166 (discussing 16 U.S.C. §824d).

3

The FERC Order granted the Company's request for the Abandoned Plant Incentive with respect to the MPRP. *PSEG Renewable Transmission LLC*, Order Granting Petition for Declaratory Order, 188 FERC ¶ 61,142, at P 16 (2024). "Consistent with Commission policy," FERC explained, "the Abandoned Plant Incentive for the [MPRP] would be available to [the Company] for 100% of prudently incurred costs expended on and after the date of this order [August 29, 2024], if the [MPRP] is abandoned for reasons beyond [the Company's] control." *Id.* at P 17. FERC further explained: "We will not determine the prudence of any cost incurred prior to abandonment, if any, unless and until [the Company] seeks such recovery in a future [Federal Power Act] section 205 filing." *Id.* However, "for costs expended during the time period prior to the effective date of this order"—August 30, 2024—FERC limited the Company's possible recovery to "50% of their prudently incurred costs, consistent with prior precedent." *Id.* at P 17, n.32.

## III.    ARGUMENT

The FERC Order does not affect the Company's showing of irreparable harm. The FERC Order is limited in scope and only grants the Company limited financial incentives regarding its investment in the MPRP. As a result, the FERC Order does not address the chief irreparable harm the Company will suffer absent preliminary relief: its inability to freely and immediately exercise its statutory entitlement under RP § 12-111 to enter Respondents' properties. The FERC Order likewise does not address that, if the Company cannot enter Respondents' properties, it will remain stymied in its efforts to obtain a CPCN and will not meet its contractually obligated in-service deadline set by PJM pursuant to its FERC-approved regional transmission planning process. The Company has thus shown it will suffer irreparable non-monetary harm absent preliminary relief, and the FERC Order does not change or affect that showing.

### A.    The Company Is Irreparably Harmed Because It Cannot Exercise Its Statutory Rights Under RP § 12-111

The Company will suffer irreparable harm absent preliminary relief because Respondents are preventing the Company from freely exercising its statutory right to enter their properties. RP § 12-111 grants the Company a substantive entitlement to enter Respondents' properties to conduct the surveys at issue in this case. This is so because the Company has satisfied both elements of RP § 12-111(a): it is a body corporate having the power of eminent domain, and it made real and bona fide efforts to notify Respondents of its intent to enter their properties to conduct surveys. (ECF 75-1 at 17-25.)

But Respondents have refused the Company entry, and they are preventing the Company from exercising its statutory right to do so. This alone is sufficient to demonstrate irreparable harm. Where a plaintiff has lost or will lose a right that is codified and guaranteed by statute, the loss of the right is not compensable in any future proceeding, and the plaintiff has no way of otherwise restoring the lost right, the plaintiff has shown irreparable harm. This is a principle that rings true across many statutory contexts and jurisdictions. *See Planned Parenthood S. Atl. v. Baker*, 326 F. Supp. 3d 39, 48 (D.S.C. 2018) (granting preliminary injunction enjoining state health department from terminating Medicaid enrollment of Planned Parenthood and stating "[t]he Court has no trouble concluding Ms. Edwards would suffer irreparable harm in the absence of a preliminary injunction because she would be deprived of her statutory right [under 42 U.S.C. § 1396a(a)(23)(A)] to select the qualified and willing provider of her choice"), *aff'd* 941 F.3d 687, 707 (4th Cir. 2019); *12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 289 F.Supp.3d 73, 75-76 (D.D.C. Jan. 29, 2018) (granting preliminary injunction that required agency to comply with Sunshine Act's notice requirements under 49 U.S.C. § 14504a(d)(4)(D) before

5

convening subcommittee meetings, noting "[t]he harm th[at] follows from [the lack of notice] is both obvious and certain: Plaintiffs cannot exercise their statutory right to attend and participate in subcommittee meetings that they do not know about"); *Apotex, Inc. v. Food and Drug Admin.*, No. Civ.A. 06-0627 JDB, 2006 WL 1030151, at *17 (D.D.C. Apr. 19, 2006) (noting intervenor-defendants in a dispute over generic medication marketing exclusivity "stand to lose a statutory entitlement, which is a harm that has been recognized as sufficiently irreparable" because "[o]nce the statutory entitlement has been lost, it cannot be recaptured" (citation omitted)); *Fairy-Mart v. Marathon Petroleum Co., LP*, No. 3:17-cv-1195 (MPS), 2017 WL 5140514, at *6 (D. Conn. 2017 Nov. 6, 2017) (holding  that where franchisor proposed to sell real estate to a third party without giving a gas station franchisee his statutorily-granted right of first refusal to purchase the real estate, the loss of that statutory right is not "compensable and readily quantifiable" and thus "is the type of harm that is suitable for injunctive relief" (internal citation and quotation marks omitted)).

Here, due to Respondents' interference, the Company has no way of exercising its statutory right to enter Respondents' properties.  The Company has no way to be compensated for the loss of this right in any future proceeding.  The Company also has no way of recapturing the free exercise of this statutory right absent relief from this Court.  Indeed, the Maryland General Assembly recognized this fact by providing that, if an entity is denied this important right, it may immediately apply under RP § 12-111(b) for "an order directing that the person be permitted to enter."  Obtaining a court order is the Company's sole possible remedy.  For these reasons, the Company will suffer irreparable harm without preliminary relief from this Court.

*Continental Resources, Inc. v. Langved*, No. 4:15–cv–19, 2015 WL 686965 (D.N.D. Feb. 18, 2015), is on point.  Continental acquired a leasehold interest in the oil and gas underneath

Langved's property, which granted Continental the exclusive right to conduct drilling and production operations on the property and to use as much of the surface estate of the property as necessary. 2015 WL 686965, at *1. Continental subsequently drilled three wells on the property pursuant to permits it obtained from the North Dakota Industrial Commission and made plans to install pipelines and electric utilities on the property. *Id.* North Dakota law required Continental to provide notice to Langved before entering his property to begin construction work, and Continental did so. *Id.* at 2; *see also* N.D.C.C. 38.11.1-04.1(2). As a result, after providing the required notice, Continental had a statutory right to enter Langved's property, and Continental did so. *Continental Resources*, 2015 WL 686965, at *3. Three days into Continental's work, however, Langved appeared on the property, ordered Langved's contractor to leave, and threatened the use of a rifle. *Id.*

Continental filed a complaint for declaratory and injunctive relief, as well as a motion for temporary restraining order seeking to restrain and enjoin Langved from interfering with its access. *Id.* at *3. Analyzing the same factors that this Court must consider in deciding the Company's Motion for Preliminary Injunction, the court granted Continental's motion. *Id.* at *7. The district court found that Continental was likely to succeed on the merits of its complaint, as "[u]nder North Dakota law, Continental has the right to move on and use so much of the surface estate as is reasonably necessary[.]" *Id.* at *4. The district court also found that Continental was likely to suffer irreparable harm absent preliminary relief, explaining: "If Langved is allowed to prevent Continental from continuing its drilling operations on the Subject Property, even temporarily, Langved will wrongfully strip Continental of its contractual and statutory rights." *Id.* at *5.

Just as Continental satisfied the requirements of North Dakota law that entitled it to enter Langved's property, the Company has satisfied the elements of RP § 12-111(a) that entitle it to enter Respondents' properties.  But, just as Langved interfered with Continental's statutory right of entry, Respondents now interfere with the Company's statutory right to do the same.[1]  Like Continental, the Company's loss of its statutory right is not compensable in a future proceeding.  And, like Continental, the Company has no way to recapture its statutory right to enter Respondents' properties absent relief from this Court.  Indeed, the case for irreparable injury is even stronger here than in *Continental Resources*, as RP § 12-111(b) limits the Company's remedy to "an order directing that the person be permitted to enter," while the North Dakota statute at issue in *Continental Resources* contained no such limiting provision.  *See* N.D.C.C. 38.11.1-04.1(2).  As a result, Respondents' continued obstruction of the Company's statutory entitlement to enter their properties is direct and unequivocal irreparable harm to warrant a preliminary injunction.  The FERC Order does not have any effect on this showing.

The irreparability of this harm to the Company is made even more clear by the fact that the Maryland General Assembly granted authority to certain entities to conduct pre-condemnation surveys, as such surveys are essential to serve the public interest in providing public projects like

---

[1] Notably, the court in *Continental Resources* also observed that the likelihood of physical harm to Continental and its agents, based on Langved's conduct, was sufficient to show irreparable harm.  *Continental Resources*, 2015 WL 686965, at *5 ("The situation has escalated to the point where there have been threats of physical harm to Continental's contractors.  Physical harm would be unlawful and clearly irreparable.").  Likewise, certain Respondents, in rejecting the Company's real and bona fide efforts to enter their properties, have threatened acts of physical violence toward the Company's contracted land agents, as documented in the Declarations of Roger Trudeau and supporting documents.  (ECF 27 ("Do not come on my property, I have a gun, and I will shoot you."); ECF 64-1 ("You should note that in many communities in Northern Baltimore and Carroll Counties, there is a 'shoot first, ask questions later' attitude.  This is not a threat; I'm just giving you a heads up - a courtesy most local homeowners would not provide.  Uninvited strangers who just show up on our properties typically regret their decision."); ECF 84 ("Lastly, I have Belgian Malinois dogs that have access to my entire property. They do not like strangers and if you come on my property, you're subject to repercussions from my watch dogs. I hope I was clear to you.").)  Accordingly, if the Company attempted to exercise its statutory right to enter Respondents' properties, the Company and its contractors would risk physical harm, if certain Respondents are to be taken at their word.

transmission lines, natural gas lines, highways, and landfills.  This public interest has been recognized by every single state legislature.[2]  As the Supreme Court explained in *Cedar Point Nursery v. Hassid*, "many government-authorized physical invasions will not amount to takings because they are consistent with longstanding background restrictions on property rights," consistent with "traditional common law privileges to access private property."  594 U.S. 139, 160-161 (2021) (citing Restatement (Second) of Torts (1964)).  To that end, while "the right to exclude is one of the essential sticks in the bundle of property rights," common law "has long recognized exceptions to the right."  *Klemic v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 673, 688 (W.D. Va. 2015).  One such exception is the common law right of a public utility "authorized to enter upon privately owned land for the purpose of making surveys preliminary to instituting a proceeding for taking by eminent domain."  *Klemic*, 138 F. Supp. 3d at 688 (citing Restatement

---

[2] Ala. Code § 18-1A-50; Alaska Stat. Ann. § 09.55.280; Ariz. Rev. Stat. Ann. § 12-1115; Ark. Code Ann. § 18-15-1302; Cal. Civ. Proc. Code § 1245.010; Colo. Rev. Stat. Ann. § 18-4-515; Colo. Rev. Stat. Ann. § 37-3-113; Conn. Gen. Stat. Ann. § 48-13; Del. Code Ann. tit. 2 § 704; Del. Code Ann. tit. 2 § 906; Del. Code Ann. tit. 2 § 1309; Del. Code Ann. tit. 7 § 6406; Del. Code Ann. tit. 9 § 4814; Del. Code Ann. tit. 22 § 709; Fla. Stat. Ann. § 163.370; Fla. Stat. Ann. § 337.274; Fla. Stat. Ann. § 471.027; Fla. Stat. Ann. § 472.029; Ga. Code Ann. § 22-3-82; Haw. Rev. Stat. § 101-8; Idaho Code Ann. § 7-705; 70 Ill. Comp. Stat. Ann. 5/22.3; 70 Ill. Comp. Stat. Ann. 15/5; 70 Ill. Comp. Stat. Ann. 3615/2.20; 255 Ill. Comp. Stat. Ann. 330/45; 605 Ill. Comp. Stat. Ann. 10/11; Ind. Code Ann. § 32-24-1-3; Iowa Code Ann. § 314.9; Iowa Code Ann. § 479.30; Kan. Stat. Ann. § 26-512; Kan. Stat. Ann. § 17-4748; Ky. Rev. Stat. Ann. § 175B.050; Ky. Rev. Stat. Ann. § 322.470; Ky. Rev. Stat. Ann. § 416.130; La. Rev. Stat. Ann. § 48:217; La. Rev. Stat. Ann. § 48:1097; La. Rev. Stat. Ann. § 49:214.6.9; La. Rev. Stat. Ann. § 50:61; Me. Rev. Stat. Ann. tit. 32 § 18231; Me. Rev. Stat. Ann. tit. 30-A § 5403; Mass. Gen. Laws Ann. ch. 164 § 72A; Mass. Gen. Laws. Ann. ch 164 § 75D; Mich. Comp. Laws Ann. § 213.54; Minn. Stat. Ann. § 117.041; Miss. Code Ann. § 11-27-39; Mo. Ann. Stat. § 99.420; Mo. Ann. Stat. § 250.232; Mont. Code Ann. § 70-30-110; Neb. Rev. Stat. Ann. § 15-229; Neb. Rev. Stat. Ann. § 76-702; Nev. Rev. Stat. Ann. § 37.050; N.H. Rev. Stat. Ann. § 371:2-a; N.J. Stat. Ann. § 20:3-16; N.M. Stat. Ann. § 42A-1-8; N.M. Stat. Ann. § 70-3-5; N.M. Stat. Ann. § 72-1-5; N.Y. Em. Dom. Proc. Law § 404; N.Y. Pub. Auth. Law § 1007(8); N.C. Gen. Stat. Ann. § 40A-11; N.D. Cent. Code Ann. § 32-15-06; Ohio Rev. Code Ann. § 163.03; Okla. Stat. Ann. tit. 11 § 22-114; Okla. Stat. Ann. tit. 66 § 51; Okla. Stat. Ann. tit. 69 § 702; Or. Rev. Stat. Ann. § 35.220; Or. Rev. Stat. Ann. § 772.010; 26 Pa. Cons. Stat. Ann. § 309; R.I. Gen. Laws Ann. § 24-12-9; R.I. Gen. Laws Ann. § 45-29-29; R.I. Gen. Laws Ann. § 46-15-7; S.C. Code Ann. § 28-2-70; S.D. Codified Laws § 49-33-6; Tenn. Code Ann. § 29-16-121; Tex. Nat. Res. Code Ann. § 111.019; Tex. Util. Code Ann. § 181.083; Utah Code Ann. § 78B-6-506; Vt. Stat. Ann. tit. 5, § 3518; Vt. Stat. Ann. tit. 10, § 960; Vt. Stat. Ann. tit. 24, § 3209; Vt. Stat. Ann. tit. 24, § 2299j; Va. Code Ann. § 25.1-203; Va. Code Ann. § 56-49; Va. Code Ann. § 56-49.01; Wash Rev. Code Ann. § 47.01.170; Wash Rev. Code Ann. § 78.04.015; Wash. Rev. Code Ann. § 81.36.020; Wash Rev. Code Ann. § 90.16.040; W. Va. Code Ann. § 54-1-3; Wis. Stat. Ann. § 182.38; Wis. Stat. Ann. § 200.35; Wyo. Stat. Ann. § 1-26-506.

(Second) of Torts §§ 159, 191–211 (1965)).  As *Klemic* points out, this common law exception has origins in American law dating back to the nineteenth century.  *Id*.

In other words, under longstanding common law principles, the State has always held the power to temporarily enter private property to perform the sort of pre-condemnation surveying at issue in this case.  Through RP § 12-111, the State has conferred that power on the Company (and the Company has satisfied both statutory requirements to wield that power).  When viewed through this lens, it is even clearer that the Company, having been conferred the sovereign right of entry by the State, will be irreparably harmed so long as it is denied that right.

**B.      So Long As It Cannot Exercise Its Statutory Rights Under RP § 12-111, The Company Will Not Be Able To Meet Its In-Service Deadline, Which Is Irreparable Harm Under *Sage* and *Mountain Valley***

The FERC Order also does not change the fact that, if the Company cannot exercise its statutory right to enter Respondents' properties, the Company will not be able to obtain the survey data and information requested by PPRP.  (ECF 75-1 at 28-30.)  PPRP has stated that this information is necessary for PPRP to fulfill its statutory duty to assess the Company's CPCN application.  (ECF 3 ¶ 20; ECF 3-5.)  As a result, absent preliminary relief, the Company will be stymied in its efforts to obtain a CPCN, as it will never be able to provide the information that PPRP requests.  (ECF 75-1 at 28-30.)  Once doomed to this purgatory state, the Company will have no chance of meeting the in-service deadline for the MPRP set by PJM—an irreparable harm recognized by both *Sage* and *Mountain Valley* as it related to in-service deadlines set by FERC. (ECF 75-1 at 25-28.)

*Columbia Gas Transmission, LLC v. 252.071 Acres More or Less*, Civil Action Nos. ELH-15-3462, ELH-15-3560, 2016 WL 1248670 (D. Md. Mar. 25, 2016), decided after *Sage*, echoes this principle.  There, the court granted a preliminary injunction to Columbia Gas to take

immediate possession of various properties and begin construction of a pipeline. The court found

that Columbia Gas would suffer irreparable harm if it was unable to meet FERC's in-service

deadline due to construction delays:

> Columbia has demonstrated that, without immediate access to the easements, it will
> be unable to complete Line MB before its current FERC Certificate expires in
> November 2017. . . . Columbia must either begin construction of Line MB
> immediately or wait until about April 1, 2017. And, Mr. Frederick's Declaration
> suggests that delay is not financially feasible for Columbia and would result in
> Columbia's breach of its contract with BG&E. Even disregarding Columbia's
> financial losses in the event of delay, as noted, it is highly unlikely, if not
> impossible, that Columbia could litigate its claims as to all of the defendants,
> including likely appeals, by April 2017, *i.e.* the next season for construction. And,
> even if construction were to begin on April 1, 2017, that would leave virtually no
> margin to assure completion by the expiration of the FERC Certificate.

*Id*. at \*16 (internal citations omitted).

Notably, the court in *Columbia Gas* rejected multiple arguments that Respondents have

raised challenging the Company's irreparable harm in this respect. First, the landowner defendants

argued that Columbia Gas had no real risk of missing FERC's in-service deadline because FERC

had already granted Columbia Gas one extension and could do so again. *Id*. The court rejected

this argument, observing that, "aside from the fact that FERC granted Columbia one extension,

[Defendants] proffer no evidence that a further extension is likely or even possible. . . . In essence,

they ask the Court simply to assume that FERC's extended deadline to complete Line MB can

again be moved. I decline to do so." *Id*. Here, likewise, Respondents' argument that PJM could

possibly extend the in-service date under the Designated Entity Agreement does not change the

fact that the in-service date is, at this time, June 1, 2027. Like the landowner defendants in

*Columbia Gas*, Respondents simply ask the Court to assume that PJM is likely or willing to offer

the Company an extension. The Court should reject Respondents' invitation to do so.

11

Second, the landowner defendants argued that Columbia Gas had created its own delay in seeking relief because it had delayed filing suit. *Id*. at *15. The court again disagreed, observing that Columbia Gas had contacted certain landowners before even obtaining its CPCN, which demonstrated Columbia Gas's diligence. *Id*. The court also noted that Columbia Gas had engaged in extended negotiations with the landowner defendants and only filed suit after those negotiations failed. *Id*. at *16. Here, the Company was similarly diligent: it began notifying Respondents of its intent to enter their properties in October 2024, more than two months before even filing its CPCN application. (ECF 4 through ECF 74; ECF 83; ECF 84.) The Company also engaged in discussions with some Respondents over the course of months (*i.e.*, from October 2024 through January 2025) and provided Respondents advance notice that it intended to file this suit. (ECF 3 ¶ 31; ECF 3-6; ECF 4 through ECF 74; ECF 83; ECF 84.) Just as in *Columbia Gas*, the argument that the Company has somehow created its own exigency should be rejected.

Finally, the landowner defendants argued that Columbia Gas failed to prove that grid failure would occur if Columbia Gas did not meet FERC's in-service deadline. *Columbia Gas*, 2016 WL 1248670, at *16. The court rejected this argument, too, explaining: "To be sure, as defendants note, there is no indication that Line MA will suffer an immediate catastrophic failure. Yet, asking Columbia to delay in constructing Line MB is only likely to enhance the danger that Columbia's customers will be left without reliable, safe natural gas service." *Id*. (internal citations omitted). Here, it is undisputed that PJM—the regional transmission organization responsible for managing the reliability and congestion of this region's electric grid—has stated that the MPRP is necessary to forestall reliability criteria violations beginning in 2027. (ECF 3 ¶¶ 8-16.) While Respondents have called PJM's determination into question, they have not presented legitimate evidence to contradict this fact.

As set forth above, the Company will suffer irreparable harm absent preliminary relief because Respondents have blocked the Company from exercising its statutory right under RP § 12-111 to enter their properties. The Company will also suffer irreparable harm because, without the ability to timely access Respondents' properties, it will have no way of meeting PJM's in-service date of June 1, 2027. If the Company does not meet PJM's in-service deadline, then PJM has forecasted that the region's electric grid will suffer significant reliability criteria violations. The FERC Order does not change or affect either of these showings. While the FERC Order is relevant to whether the Company will ultimately suffer monetary harm absent preliminary relief, the Court need not reach this question, as the Company has shown irreparable harm for the two reasons stated above. In fact, even if the Court found that the Company would not suffer *any* monetary irreparable harm here, the Company has still made a clear and unequivocal showing of non-monetary irreparable harm.

### C.  Though The Company Need Not Show Monetary Harm, The FERC Order Confirms The Company Will Suffer Monetary Harm In The Absence of Preliminary Relief

If the Court decides to reach the question of monetary irreparable harm, the FERC Order confirms that the Company will suffer monetary harm absent preliminary relief. As explained above, the FERC Order establishes that, if the MPRP is abandoned for reasons outside of the Company's control—including if the Company is unable to obtain regulatory approvals for the MPRP—then the Company may request that FERC allow recovery of prudently-incurred costs associated with the MPRP in a filing under section 205 of the Federal Power Act. In the proceeding that filing would initiate, the Company would bear the burden to show: (1) the project was abandoned for reasons beyond the Company's control (such as the inability to obtain regulatory approvals for the project); and (2) the costs were prudently incurred. Consumers, or other

interested parties, would have a right to protest and participate.  16 U.S.C. § 824d(e); 18 C.F.R. § 385.211.  For costs incurred prior to August 30, 2024, under FERC policy and under the FERC Order, the Company will only be able to recover, at most 50% of costs incurred.  (*See* ECF 3¶ 29 (identifying costs).)

While the FERC Order also granted the Company two additional incentives beyond the Abandoned Plant Incentive, neither of these incentives has any bearing on the Company's cost recovery in the event the MPRP does not proceed.  First, FERC granted the Company the Regulatory Asset Incentive, which allows the Company to establish a regulatory asset for costs it incurs "prior to the [MPRP's] commercial operation date" that do not otherwise meet the requirements to be capitalized.  *PSEG Renewable Transmission LLC*, Order Granting Petition for Declaratory Order, 188 FERC ¶ 61,142, at P 18.  This incentive allows the Company to make a filing with FERC seeking recovery of "pre-commercial costs, as well as start-up and development costs, **after the Project goes into service**."  *Id*. at P 21 (emphasis added).  Importantly, the Company would need to demonstrate that those costs were prudently incurred for FERC to permit cost recovery.  In other words, the Company's recovery of costs pursuant to the Regulatory Asset Incentive only comes into play if the MPRP receives its requisite regulatory approvals and becomes operational.  It does not apply in a situation where the MPRP is abandoned, including if the MPRP does not receive regulatory approval.

Second, FERC granted the Company the Hypothetical Capital Structure Incentive, which will permit the Company to use a capital structure of 45% equity and 55% "once the Project is placed into service."  *Id*. at P 24.  As FERC explained, this hypothetical structure assists the Company "with raising capital during the construction phase of the [MPRP] and in financing the [MPRP] at reasonable rates while its actual debt-to-equity ratio varies."  *Id*. at P 27.  Like the

Regulatory Asset Incentive, the Hypothetical Capital Structure Incentive has no bearing on what costs the Company may recover if the MPRP does not obtain regulatory approvals and does not proceed for reasons outside the Company's control.

In sum, the FERC Order grants the Company three specific incentives to support the Company's investment in and development of the MPRP. Of these three incentives, only the Abandoned Plant Incentive relates to the Company's recovery of costs in the event the MPRP is abandoned and does not come to fruition. That incentive, assuming the Company is able to demonstrate that the MPRP was abandoned for reasons outside the Company's control, only provides the **opportunity** to recover costs incurred after August 30, 2024 and does not change the fact that the Company will only be able to recover up to 50% of its pre-August 30, 2024 incurred costs.

Critically, the fact that the Company has already incurred these costs does not render them irrelevant in an irreparable harm analysis. In *Columbia Gas Transmission, LLC v. 84.53 Acres of Land*, 310 F. Supp. 3d 685, 692-93 (N.D. W.Va. 2018), the court found that Columbia Gas would suffer irreparable harm without immediate possession of property to construct a pipeline in order to meet an in-service deadline set by FERC. The court agreed that, without preliminary relief, Columbia Gas would suffer multi-million-dollar losses under certain agreements it had entered into before obtaining a CPCN to show FERC that there was a market demand for the project at issue. *Id.* at 693. The court acknowledged that "an injunction is usually inappropriate where the movant fails to show that it availed itself of opportunities to avoid the injuries of which it now complains." *Id*. at 394 (cleaned up) (citations omitted). But, citing to *Sage*, the court held that "a FERC-governed, natural gas company's 'self-inflicted' contracts and deadlines are not driven solely by its desire to place the pipeline into service as quickly as possible," and "[t]he process by

which natural-gas companies obtain approval and construct under the NGA necessitates forethought and a degree of speculation." *Id*.    "Undoubtedly," the Court explained, "Columbia decided to accept the risk that FERC would not approve its Project, but FERC did approve the Project and Columbia is appropriately prepared for construction." *Id*. at 694-95.

The court thus held that Columbia Gas's projected contractual losses were sufficient to show irreparable harm, even though Columbia Gas made the "business decision" to enter into those contracts prior to obtaining a CPCN. *Id*. at 694.  Here, costs that the Company has already prudently incurred before August 30, 2024—half of which the Company has no ability to recover—likewise demonstrate the Company will suffer irreparable monetary harm absent preliminary relief.

## CONCLUSION

As set forth above, the Company's inability to exercise its statutory right under RP § 12-111 to enter Respondents' properties is irreparable harm to the Company.  Moreover, so long as the Company is blocked from exercising this statutory right, the Company will be stymied in its efforts to obtain a CPCN and will have no way of meeting PJM's in-service deadline for the MPRP.  The FERC Order has no effect on either of these harms.  Accordingly, the Company respectfully asks this Court to enter a preliminary injunction that permits the Company to enter Respondents' properties to conduct the surveys and gather the information requested by PPRP.

Date: May 27, 2025

Respectfully submitted,

*/s/ Kurt J. Fischer*
Kurt J. Fischer (Bar No. 03300)
Venable LLP
210 W. Pennsylvania Avenue
Suite 500
Towson, MD 21204
(410) 494-6200
kjfischer@venable.com

J. Joseph Curran III (Bar No. 22710)
Christopher S. Gunderson (Bar No. 27323)
Kenneth L. Thompson (Bar No. 03630)
Susan R. Schipper (Bar No. 19640)
Emily J. Wilson (Bar No. 20780)
Venable LLP
750 E. Pratt Street
Suite 900
Baltimore, MD 21202
(410) 244-7400
jcurran@venable.com
csgunderson@venable.com
klthompson@venable.com
srschipper@venable.com
ejwilson@venable.com

*Attorneys for Petitioner PSEG*
*Renewable Transmission LLC*

17

**CERTIFICATE OF SERVICE**

I hereby certify on this 27th day of May, 2025, I electronically filed and served the foregoing on all counsel of record via the Court's CM/ECF system.

*/s/ Emily J. Wilson*
Emily J. Wilson