IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**Northern Division**

| | | |
|---|---|---|
| PSEG RENEWABLE TRANSMISSION, LLC, | * | |
| *Petitioner*, | * | |
| v. | * | **Case No. 1:25-cv-01235-ABA** |
| ARENTZ FAMILY, LP, *et al.*, | * | |
| *Respondents*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**SUPPLMENTAL MEMORANDUM OF LAW OF HILL RESPONDENTS REGARDING PSEG'S CLAIM OF "IRREPARABLE HARM"**

Pursuant to the Court's May 20, 2025 Order (ECF 133), Respondents Brandon Hill, Joseph Gover, Michael Davis, Judith Fiedler, Henry Whitaker, Nada E. Kourani, Mohamad Kourani, C. William Knobloch, Jr., Carol Knobloch, Dorothy Donmoyer, Petrice Marie Donmoyer-Resh, Chris Resh, Henry Whitaker, and Karen Schleper (collectively the "Hill Respondents"), hereby submit this Supplemental Brief regarding whether PSEG has shown irreparable harm for preliminary injunction purposes.

The Hill Respondents respectfully join in, adopt, and incorporate by reference the Supplemental Brief filed by counsel for Respondents Arentz Family, LP, *et al*. *See* ECF 247. In the event PSEG's improper material in its Supplemental Brief is not stricken, the Hill Respondents likewise request the opportunity to respond.

To frame its purported claim of irreparable harm, PSEG pronounces that it has a legal "**entitlement**" under RP § 12-111 to survey hundreds of the private properties, including the private properties owned by the Hill Respondents, but that the "free exercise of its **statutory**

**rights**" is being "unjustifiably and fully obstructed" by the owners of those private properties. *See,* ECF 167 at p. 9 (Emphasis supplied) (Because RP § 12-111 "grants [PSEG] a **substantive entitlement** to enter Respondents' properties and conduct the sort of surveys that the Company asks the Court to do here.") (Emphasis supplied). *See also id.* at p. 13 ("The Company will suffer irreparable harm absent preliminary relief because Respondents are preventing the Company from **freely exercising its statutory rights to enter their properties. RP § 12-111**.") (Emphasis supplied). PSEG argues that:

> Where a plaintiff has lost or will lose **a right that is codified and guaranteed by statute**, the loss of the right is not compensable in any future proceeding, and the plaintiff has no way of otherwise restoring the lost right, the plaintiff has shown irreparable harm.

*Id.* (Emphasis supplied). *And see, id.* at p. 14 ("Here, due to Respondents' interference, the Company has no way of exercising **its statutory right to enter Respondents' properties**.") (Emphasis supplied). *And see id.* at p. 18:

> In other words, under longstanding common law principles, the State has always held the power to temporarily enter private property to perform the sort of pre-condemnation surveying at issue in this case. **Through RP § 12-111, the State has conferred that power on the Company** [PSEG]…When viewed through that lens, it is even clearer that [PSEG], **having been conferred the sovereign right of entry by the State**, will be irreparably harmed so long as it is denied that right.

*Id.* (Emphasis supplied).

It is certainly agreed that the State of Maryland has the authority to enter private property under certain circumstances. But ***nowhere*** in the plain language of RP § 12-111 does the State of Maryland **confer on** or **convey to** an out-of-state utility company a legal entitlement or the statutory or sovereign right to obtain entry onto private property. To the contrary, the plain language of RP § 12-111 says that the government or a company "having the power of eminent domain" may seek survey access to private property under the statute. PSEG does not have the

2

power of eminent domain, and, no matter how many times PSEG says it, RP § 12-111 simply does not convey the extraordinary power of eminent domain on PSEG.[1]

PSEG's proposal to PJM, one of over 70 such proposals for a variety of grid projects, represented to PJM that PSEG would be able to complete construction of an "unprecedented" 67-mile long greenfield transmission line through three Maryland counties by June 2027, which the PPRP has cautioned is unlikely, because just the process for PSEG obtaining the necessary government permits to begin construction could take at least that long (regardless of any survey access considerations), and PSEG's proposal to truncate the permitting schedule is "nonsensical."  See ECF 95-4, ECF 95-7 at p. 6,[2] and ECF 127-1.[3]

---

[1] PSEG made a passing reference to *Cedar Point* but appears to ask this Court to sidestep its holding with a creative misdirection in its edited quotes, ECF 167 at p. 17, the complete quote of which is as follows:

> Second, many government-authorized physical invasions will not amount to takings because they are consistent with longstanding background restrictions on property rights. As we explained in *Lucas v. South Carolina Coastal Council*, the government does not take a property interest when it merely asserts a "pre-existing limitation upon the land owner's title." For example, the government owes a landowner no compensation for requiring him to abate a nuisance on his property, because he never had a right to engage in the nuisance in the first place.

See *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 160 (2021) (Internal citations omitted).  The Court held the right to exclude is alive and well, and where third parties such as unions in that case – or an out-of-state utility company's surveyors in this one – are granted the right to enter private property contrary to the right of private property owners to exclude, it is indeed a taking.  *Id.* at 162.  The Court's decision in *Cedar Point* is consistent with the plain language of Maryland's state statute RP § 12-111, which authorizes private party survey access only to those governments and companies "having the power of eminent domain," a power which PSEG plainly lacks.  PSEG then conflates the surveys that a government or a company "having the power of eminent domain" makes leading up to an actual taking (such as surveys to value a property in the ROW if a CPCN were granted) with the environmental field studies that PSEG wants for its PSC Application.  ECF 17-18.  PSEG does not have a CPCN (the receipt of which would convey the "power of eminent domain"), and therefore PSEG has no present right to obtain valuation, or any other, surveys.

[2] The PPRP expressed its concerns to PSC about the proposed timeline by PSEG in its CPCN Application Case No. 9773, explaining that the PSC process in "Case No. 9571 took approximately 30 months from its CPCN application to issuance of a final order" for multiple reasons, including the fact that there were thirteen parties in that case, which, the PPRP said, was "more than in most CPCN cases."  By comparison, in PSEG's pending Case No. 9773, the PSC has granted party status to nine times more Intervenors (122) than for Case 9571 (13).

[3] The PPRP cautioned that "Various other permits, like the CPCN, will also require an adequate timeframe for reviewing the vast amount of data that will be generated conducting field surveys along the 67-mile-long proposed right-of-way" including state and county authorities, as well as to get a Joint Federal/State Wetland Permit, "which can take on the order of a year to review and process."

PSEG has failed to meet its burden of demonstrating irreparable harm, so its Motion for Preliminary Injunction should be denied.

Respectfully submitted,

*/s/ Susan M. Euteneuer*
Susan M. Euteneuer (Fed. Bar No. 26997)
SEuteneuer@PKLaw.com
Randall M. Lutz (Fed. Bar No. 01896)
RLutz@PKLaw.com
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland 21204
410.938.8800
***Attorneys for Hill Respondents***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of May 2025, I electronically field and served the foregoing on all counsel of record via the Courts's CM/ECF system.

*/s/ Susan M. Euteneuer*
Susan M. Euteneuer

4