## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **PSEG RENEWABLE TRANSMISSION LLC** | |
| *Petitioner,* | |
| v. | **Case No.** 1:25-cv-01235-ABA |
| **ARENTZ FAMILY, LP,** *et al.* | |
| *Respondents.* | |

### RESPONDENTS' SECOND SUPPLEMENTAL BRIEF

Respondents,[1] by their undersigned counsel, hereby file this Second Supplemental Brief as permitted by the Court's Paperless Order dated June 2, 2025 (ECF 252).[2]

Unable to demonstrate irreparable harm in its written filings or during oral argument, PSEG-RT pivoted to a new theory in its Supplemental Brief (ECF 167). PSEG-RT now contends, for the first time, that it need not show any particular harm because being prevented "from freely exercising its statutory right to enter [Respondents'] properties" standing "alone is sufficient to demonstrate irreparable harm." ECF 167 at 13. This theory differs from every position PSEG-RT previously articulated. It is also legally unsound, both for the reasons explained in Respondent's initial Supplemental Brief (ECF 247) and those that follow.

---

[1] Undersigned counsel represents Respondents Arentz Family, LP, Barney's Farm, LLC, Charles William Bond, Morgan Davis Bond, Charlotte Ruth Bixler, Morris L. Bohlayer, Sharon A. Bohlayer, Gary J. Brockmeyer, Nancy M. Brockmeyer, Esther Johann Lentz-Buenger, Helen L. Bull, Chistopher D. Cockey, Carmen Cockey, Thomas B. Collins, Tracey W. Collins, Diane M. Cook, James R. Cook, Robert L. Donmoyer, Dorothy I. Donmoyer, Petrice Marie Donmoyer-Resh, Richard M. Doster, The Dug Hill Rod & Gun Club, Keith Emerson Ensor, Kevin Lee Ensor, Zhejun Fan, Joseph L. Gover, Raina C. Gover, HZ Properties, LLC, Bryan Hendrix, Connie Hendrix, Kimberly A. Johnston, Mohamad A. Kourani, Nada E. Kourani, Julia Lu, M & R, LLC, John D. Meader, Deborah H. Maeder, Nancy P. MacBride, Andrew D. McLean, Rebecca McLean, Carl E. Miller, Betty Lou Miller (Deceased), Catherine V. Miller, Kenneth E. Miller, Fay Ann Miller, Wayne D. Miller, Benjamin Eugene Nusbaum, Kenneth Eugene Nusbaum, Chris N. Resh, Rebecca Irene Scollan, Robert H. Stickles, Sr., Alene R. Stickles, Erich Charles Steiger, Troyer Farms, LLC, Troyer Real Estate, LLC, Matt Unkle, Tom Unkle, Leslie Alfred White, Justin Wright, and Amy Gayle Youngblood (collectively, "Respondents").

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in Respondents' Supplemental Brief filed May 29, 2025 (ECF 247).

PSEG-RT has had every opportunity to prove its case and it has yet to establish any actual, imminent, and irreparable injury absent injunctive relief. The Motion for Preliminary Injunction should be denied.

### I.    A mere deprivation of an alleged statutory right is not enough to establish irreparable harm.

PSEG-RT erroneously contends that its inability to exercise access rights under RP § 12-111 "*alone* is sufficient to demonstrate irreparable harm." ECF 167 at 13 (emphasis added). But multiple courts have held that the loss of a statutory right, by itself, does not constitute irreparable harm. *See*, *e.g.*, *Heritage Found. v. U.S. Dept. of State*, No. CV 24-2862 (TJK), 2024 WL 4607501, at *5 (D.D.C. Oct. 29, 2024) ("Plaintiffs cannot rely only on a statutory entitlement to expedited processing to show irreparable harm."); *US Airline Pilots Ass'n v. Pension Benefit Guar. Corp.*, No. CV 09-1675 (HHK), 2011 WL 13273132, at *5 (D.D.C. Mar. 14, 2011) ("[T]he harm at issue in *Hi-Tech* and *Apotex* was not the loss of the entitlement *per se*, but rather the lasting and significant economic consequences thereof."); *Metso Mins., Inc. v. Powerscreen Int'l Distribution Ltd.*, 788 F. Supp. 2d 71, 74 (E.D.N.Y. 2011) ("However, the Supreme Court and the Federal Circuit have made it clear that the mere violation of the [statutory] right to exclude alone does not necessarily result in irreparable injury." (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006)); *Guar. Corp.*, No. 09-1675 (JR), 2010 WL 3168048, at *3 (D.D.C. Apr. 16, 2010) ("USAPA's alternative argument is that its loss of a 'clear statutory entitlement' is irreparable harm, 'because once the statutory entitlement has been lost, it cannot be recaptured.' The 'statutory right' that USAPA invokes here is a right to adequate stewardship of the Plan by the trustee. The argument is creative, but unsupported, and it is unconvincing." (internal citation omitted)).

In *Heritage Foundation*, the plaintiffs sought an order compelling federal agencies to process their expedited Freedom of Information Act ("FOIA") requests, arguing that "[a] wrongful

denial of a statutory right to expedited processing necessarily causes irreparable harm because the clock cannot be wound back." 2024 WL 4607501, at *1, *12 (citation and internal quotation marks omitted). Relying on *Washington Post v. DHS*, 459 F. Supp. 2d 61, 75 (D.D.C. 2006) and *Electronic Privacy Information Center v. DOJ*, 416 F. Supp. 2d, 30 41 (D.D.C. 2006), the plaintiffs claimed that "a requester instantly suffers irreparable harm if he should have received expedited processing but does not," and "the loss of the expedited-processing right is enough to show irreparable harm." *Id.* at *12. The court disagreed, finding that "'something more' is required here, and Plaintiffs have not shown it." *Id.* at *13. They had "not shown that the records they seek are so central, highly relevant, or essential to the integrity of the election," thus they could not establish "that the denial of their expedited-processing requests has caused or likely threatens irreparable harm." *Id.* And in neither *Washington Post* nor *Electronic Privacy* "did the court rely *only* on the loss of the statutory right in concluding that the plaintiffs had established irreparable harm." *Id.* (emphasis added). "[B]oth courts looked for 'something more' as well." *Id.*

Here, PSEG-RT has not established that accessing Respondents' properties is essential to the Project, because the Public Service Commission ("PSC") has not yet found that PSEG-RT's application is incomplete or that the surveys PPRP recommended are actually required. Thus, like in *Heritage*, where the plaintiffs could not rely solely on their statutory right to expedited processing of FOIA requests to establish irreparable harm, PSEG-RT cannot show that a denial of access rights under RP § 12-111 threatens irreparable injury. "[S]omething more" is needed. *Heritage*, 2024 WL 4607501, at *13.

That "something more" is illustrated throughout cases where a deprivation of a statutory right was found to constitute irreparable harm. In those cases, the right was clearly conferred, *Planned Parenthood S. Atl. v. Baker*, 326 F. Supp. 3d 39, 45 (D.S.C. 2018), *aff'd*, 941 F.3d 687

(4th Cir. 2019), the plaintiff showed "lasting and significant economic consequences" of its imminent deprivation, and the right was "by its nature, fleeting," *i.e.*, could not be restored. *US Airline Pilots*, 2011 WL 13273132, at *5; *see Permanence. Endo Par Innovation Co., LLC v. Becerra*, No. CV 24-999 (TJK), 2024 WL 2988904, at *6 (D.D.C. June 10, 2024) ("The Court agrees that Par has shown that it will likely suffer irreparable harm because the loss of its statutory right to the 30-month stay, and Supplement 13's presence in the market for even this six-week period, will lead to *permanent* price erosion for Par's Adrenalin® product…" (emphasis added)).

PSEG-RT cannot satisfy those criteria, and the cases cited in its supplemental brief underscore why. First, the statutory right at issue is not clearly conferred. In *Planned Parenthood South Atlantic*, cited in PSEG-RT's supplemental brief (ECF 167 at 13), the court found that a statute "unambiguously confers a right upon Medicaid-eligible patients" to obtain assistance from any qualified and willing healthcare provider, and the plaintiff "would suffer irreparable harm in the absence of a preliminary injunction because she would be deprived of her statutory right to select the qualified and willing provider of her choice." 326 F. Supp. 3d at 45, 48. But here, as explained in Respondents' prior briefings and again below, there is no statute that unambiguously confers the power of eminent domain on PSEG-RT, a prerequisite for an order under RP § 12-111.

Second, PSEG-RT will not suffer actual injury if denied access to Respondents' properties, let alone the "lasting and significant" economic injuries that constitute irreparable harm. *US Airline Pilots*, 2011 WL 13273132, at *5. In *12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 289 F. Supp. 3d 73 (D.D.C. 2018), also cited in PSEG-RT's brief (ECF 167 at 13), the court found that the use of boilerplate notices in violation of the Sunshine Act was not enough to demonstrate irreparable harm, because "Plaintiffs have offered no actual *proof* that the absence of specifics has adversely impacted their participation in past meetings or is likely to have such effect

in the future." *Id.* at 79 (emphasis original). However, evidence showed that the defendant's repeated failure to give notice of subcommittee meetings had in fact deprived plaintiffs of their statutory right to attend and participate in those specific meetings, therefore the plaintiffs had "met the high bar of irreparable harm" warranting a limited injunction on that narrow issue. *Id.* at 80.

Here, PSEG-RT "offered no actual *proof* that," absent access to Respondents' land, it will suffer longstanding economic injuries in the near future. *Id.* at 79. Again, the PSC has not found that PSEG-RT's application is incomplete or surveys are needed. And if the Project is later abandoned, 100% of PSEG-RT's prudently incurred expenses will be recovered under the FERC Order. *See* ECF 247. Without any lasting and significant injuries that will flow from a deprivation of rights, PSEG-RT cannot demonstrate irreparable harm.

Lastly, PSEG-RT's claimed access rights under RP § 12-111 are not intrinsically fleeting. In *Fairy-Mart v. Marathon Petroleum Co.*, LP, No. 3:17-CV-1195 (MPS), 2017 WL 5140514 (D. Conn. Nov. 6, 2017) (*see* ECF 167 at 14), the court enjoined the defendant from completing sales that violated plaintiffs' statutory right of first refusal, because "[d]enying the motion for a preliminary injunction and allowing Marathon to close the sale of their locations to PMG—without first determining whether Marathon offered them a right of first refusal of a 'bona fide offer' as required by law—would *forever* deprive the plaintiffs of the opportunity to purchase these stations." *Id.* at *6 (emphasis added). "The plaintiffs have shown irreparable harm because, once PMG purchases their stations, their statutory right of first refusal—whatever its proper scope— will be irretrievably lost, and money damages for that loss would be extremely difficult to calculate." *Id.* at *1.

PSEG-RT's purported right to access Respondents' properties and build the proposed transmission line will not be "irretrievably" lost if the requested injunction is denied. If the PSC

determines that surveys are in fact needed, and the legislature confers upon PSEG-RT the power of eminent domain, PSEG-RT then could seek the access it prematurely seeks now. Nor will damages be "difficult to calculate" or unrecoverable if the Project is abandoned. *Id.* at *1. Again, under the FERC Order, PSEG-RT can recover all of its prudently incurred costs if the MPRP never materializes.

For the foregoing reasons, PSEG-RT cannot rely solely on its claimed access rights under RP § 12-111 to show irreparable harm. More is needed, and PSEG-RT did not provide it.

**II.    PSEG-RT has no statutory right to enter private property.**

Even if the deprivation of a statutory right were alone sufficient to establish irreparable harm, PSEG-RT's new argument is based on the false premise that it has a "statutory right" to enter Respondents' properties. ECF 167 at 13. It is undisputed that this purported "statutory right" hinges on PSEG-RT being an entity "having the power of eminent domain." RP § 12-111(a). PSEG-RT repeatedly asserts, as if by fiat, that it has such power, but has never pointed the Court to any statute or legal authority where the State of Maryland delegated such power. Thus, PSEG-RT would have this Court fabricate such a delegation and thereby also fabricate a "statutory right" to undergird its new theory of irreparable harm. For numerous reasons, this Court cannot and should not accept PSEG-RT's invitation.

First, the power of eminent domain is a sovereign power of the State of Maryland wielded by the General Assembly. PSEG-RT seems to recognize this fundamental principle when it declares that it has "been conferred the sovereign right of entry" (ECF 167 at 18), but it has never directed the Court to any delegation of the sovereign power of eminent domain by the State of Maryland. Even the cases PSEG-RT has cited demonstrate that a right of entry under a statute like RP § 12-111 is inextricably linked to and derived from the sovereign power of eminent domain.

In *Klemic v. Dominion Transmission, Inc.,* 138 F. Supp. 3d 673, 686 (W.D. Va. 2015), the Court recognized that a right of entry "is part and parcel of its eminent domain authority," and held that if a natural gas company exercised a right of entry, it became a state actor for purposes of claims under 42 U.S.C. § 1983.[3] Likewise, in *King v. Mayor & Council of Rockville*, 52 Md. App. 113, 122 (1982), the court held that "[t]he right to enter property pursuant to § 12–111 is a 'key element' in the exercise of the power of eminent domain." The court further explained that the power of eminent domain "resides in the Legislature, and may either be exercised by the Legislature or delegated by it to public officers." *Id.* at 119 (quoting *Rindge Co. v. Los Angeles Cnty.,* 262 U.S. 700, 709 (1923)).

Thus, as the plain language of RP § 12-111 indicates, a right of entry does not exist without a delegation by the legislature of the power of eminent domain. Here, there has been no such delegation. The only possible source of delegation of the power of eminent domain to a transmission line developer is found in PU § 7-207(b). It is undisputed that the text of that statute, after amendment in 2015, contained no delegation of eminent domain authority to a transmission line developer. In 2017, the legislature addressed that issue by adding the language now found in PU § 7-207(b)(3)(v), which delegates eminent domain authority only "[o]n issuance of a [CPCN]." The PSC, the State entity charged with administering the CPCN process, expressed its view on the new language of PU § 7-207(b)(3)(v) and the CPCN process: "If the commission decided to grant

---

[3] This is another reason why PSEG-RT's agency or "acting on behalf of" theory is untenable as a means to manufacture authority for PSEG-RT to enter private properties. If the State of Maryland (or PPRP or some other State agency) were deemed to be the principal on whose behalf PSEG-RT would be acting, then the State would be liable for damages caused by PSEG-RT during the entries onto private properties, all without the State having consented to such liability. Indeed, RP § 12-111(c) expressly places liability upon "the State … on whose behalf the person inflicting the damage was acting." The mere fact that PPRP has asked PSEG-RT to submit certain studies cannot be construed as the State agreeing to accept liability for everything PSEG-RT does in the course of those studies. Yet that would be the express result under RP § 12-111(c) if this Court were to adopt the legally unsupported agency or "acting on behalf of" theory.

[condemnation] rights, the Commission would grant them in conjunction with the underlying CPCN." ECF 122-1 at 3.

Here, the PSC has not granted any condemnation rights to PSEG-RT and has not issued a CPCN to PSEG-RT. There is no other source of such condemnation authority under Maryland law. PSEG-RT, therefore, is not an entity "having the power of eminent domain," has no statutory right that is being violated, and cannot have suffered irreparable harm even under its new theory.[4]

Second, both Maryland and federal courts have explained that, when statutory language is clear, as it is here, courts are not free to fix perceived or imagined shortcomings in the legislation or to presume that these shortcomings were not an intentional part of the legislative process. *Rosemann v. Salsbury, Clements, Bekman, Marder & Adkins*, LLC, 412 Md. 308, 327 (2010); *New Prime Inc. v. Oliveira*, 586 U.S. 105, 120–21 (2019). Thus, this Court cannot stretch to find a statutory right in order to fix PSEG-RT's claimed problem of being stymied. Nor can this Court presume that the legislature must have intended to give PSEG-RT a right of entry even though no such right is expressed in the plain language of the statute. There is nothing absurd or illogical about the legislature requiring that a private, non-governmental entity receive approval from the PSC *before* being permitted to have the State's power of eminent domain, which is precisely what

---

[4] PSEG-RT also misrepresents Respondents' argument why permitting pre-condemnation surveys on these facts would constitute a temporary, compensable taking. PSEG-RT asks this Court to compel pre-condemnation surveys for the specific purpose of "acquisition and future use of the properties in connection with the Maryland Piedmont Reliability Project." ECF 75-6 at 1. A Court Order granting such authority would cloud title to every property targeted in this lawsuit. *See Sokel v. Nickoli*, 97 N.W.2d 1, 5 (Mich. 1959) ("the notice of proposed taking by eminent domain creates a cloud which prevents the plaintiffs from selling their property or otherwise using it without hindrance"). If any Respondent wished to sell their property after entry of such an Order, the seller would convey title subject to PSEG-RT's "acquisition and future use" of said property for the MPRP. No prudent buyer would purchase property under cloud of condemnation without receiving a considerable discount from market value, if at all. Worse, the cloud on title would not benefit a party with the present right to acquire property by eminent domain, but instead an out-of-state entity that admittedly has no present authority to condemn private property. To permit PSEG-RT to forcibly enter Respondents' properties without the power of eminent domain and without paying for the imposition and the associated diminution in property values is to permit an unconstitutional taking.

the legislature did when it amended the CPCN statute in 2017. *See, e.g.,* ECF 122-1 (PSC explaining amendment to CPCN statute).

For the reasons stated above, in Respondents' previous briefing and supporting documentation (ECF 89, ECF 92, ECF 122, ECF 125, and ECF 247), and during oral argument on May 19, 2025, PSEG-RT has failed to demonstrate the elements necessary for a preliminary injunction. The Motion for Preliminary Injunction should be denied.

Respectfully submitted,

*/s/ Harris W. Eisenstein*
Harris W. Eisenstein (Fed. Bar No. 29694)
David M. Wyand (Fed. Bar No. 23413)
Lauren M. McLarney (Fed. Bar No. 20982)
Rosenberg Martin Greenberg, LLP
25 S. Charles Street 21st Floor
Baltimore, Maryland 21201
Phone: (410) 727-6600
Fax: (410) 727-1115
heisenstein@rosenbergmartin.com
dwyand@rosenbergmartin.com
lmclarney@rosenbergmartin.com
*Attorneys for Respondents*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of June, 2025, a copy of the foregoing Respondents' Second Supplemental Brief was served through the CM/ECF System on all counsel of record.

*/s/ Harris W. Eisenstein*
Harris W. Eisenstein