**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**Northern Division**

| | | |
|---|---|---|
| PSEG RENEWABLE TRANSMISSION LLC, | * | |
| | * | |
| Petitioner, | | |
| | * | |
| v. | | Case No. 1:25-cv-01235 |
| ARENTZ FAMILY, LP, *et al.*, | * | |
| | | |
| Respondents. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## PETITIONER PSEG RENEWABLE TRANSMISSION LLC'S OPPOSITION TO RESPONDENTS' MOTION TO STAY

Kurt J. Fischer (Bar No. 03300)
Venable LLP
210 W. Pennsylvania Avenue
Suite 500
Towson, MD 21204
(410) 494-6200
kjfischer@venable.com

J. Joseph Curran III (Bar No. 22710)
Christopher S. Gunderson (Bar No. 27323)
Kenneth L. Thompson (Bar No. 03630)
Susan R. Schipper (Bar No. 19640)
Emily J. Wilson (Bar No. 20780)
Venable LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
(410) 244-7400
jcurran@venable.com
csgunderson@venable.com
klthompson@venable.com
srschipper@venable.com
ejwilson@venable.com

*Attorneys for Petitioner PSEG
Renewable Transmission LLC*

## TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................ 1

**LEGAL STANDARD** ........................................................................................ 2

**ARGUMENT** .................................................................................................... 3

    **I.**    **The Preliminary Injunction Preserves Rather Than Alters The Status Quo.** ............................................................................................ 3

    **II.**    **The *Nken* Factors Strongly Support Denial Of The Motion To Stay.** ................................................................................................ 5

    1.    Respondents Have Not Demonstrated A Likelihood Of Success On The Merits And Cannot Make Such A Showing Merely By Rehashing Arguments This Court Has Already Rejected. ..................................... 5

    2.    Respondents Have Not Shown That They Will Be Irreparably Harmed. ........................................................................................... 7

    3.    A Stay Pending Appeal Would Substantially Harm PSEG. ................... 8

    4.    Respondents Have Not Shown A Stay Is In The Public Interest. ......... 10

    **III.**    **The Only Modifications Of The Injunction That Could Be Appropriate Under FRCP 65 Are (1) A Bond Requirement, And (2) A Specific Reference to RP § 12-111.  Respondents' Broader Request For "Clarification" Should Be Denied.** ................ 10

    1.    The Company Agrees That The Preliminary Injunction May Be Modified To Include A Bond Requirement, But Respondents' Proposed Bond Amount Is Excessive And Unnecessary. .................... 11

    2.    The Court Could Modify the Proposed Order To Include A Specific Reference To RP § 12-111. ..................................................... 17

**CONCLUSION** ................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aggarao v. MOL Ship Mgmt. Co. et al.*,
   675 F.3d 355 (4th Cir. 2012) .................................................4

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
   326 F.3d 505 (4th Cir. 2003) ...............................................12

*In re Barnes*,
   2020 WL 134374 (D. Md. Jan. 13, 2020)................................7

*Betty Jean Strom Tr. v. SCS Carbon Transp., Ltd. Liab. Co.*,
   11 N.W.3d 71 (S.D. 2024) ...................................................14

*Brown v. Gilmore*,
   533 U.S. 1301 (2001)...........................................................4

*CASA de Md., Inc. v. Trump*,
   2019 WL 7565389 (D. Md. Nov. 14, 2019) ............................9

*Comm. on the Judiciary v. McGahn*,
   407 F. Supp. 3d 35 (D.D.C. 2019).........................................8

*Coreas v. Bounds*,
   458 F. Supp. 3d 352 (D. Md. 2020).......................................13

*Covington v. North Carolina*,
   2018 WL 604732 (M.D.N.C. Jan. 26, 2018) ...........................9

*CSX Transp., Inc. v. Johnson Graham et al.*,
   2024 WL 3595778 (W.D. Ky. July 31, 2024) .........................3

*Defy Ventures, Inc. v. U.S. Small Bus. Admin.*,
   469 F. Supp. 3d 459 (D. Md. 2020).......................................13

*Di Biase et al. v. SPX Corp.*,
   872 F.3d 224 (4th Cir. 2017) ................................................4

*Does 1-5 v. Cooper*,
   2016 WL 10587195 (M.D.N.C. Mar. 2, 2016).........................6

*Fleet Feet, Inc. v. Nike, Inc.*,
   2019 WL 13143233 (M.D.N.C. Dec. 20, 2019) .......................9

*Hassay v. Mayor*,
955 F. Supp. 2d 505 (D. Md. 2013) ....................................................................13

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
174 F.3d 411 (4th Cir. 1999) ...................................................................13, 15, 16

*Julian Dev., LLC v. Old Vill. Mill, LLC*,
2014 WL 1414319 (D. Conn. Apr. 11, 2014) ........................................................3

*Mackie v. Mayor and Com'rs of Town of Elkton*,
265 Md. 410 (1972) ...........................................................................................14

*Maryland v. United States Dep't of Agric.*,
--- F. Supp. 3d ---, 2025 WL 1020224 (D. Md. Apr. 4, 2025)................................3, 6

*Md. Dep't of Human Res. v. United States Dep't of Agric.*,
976 F.2d 1462 (4th Cir. 1992) ............................................................................13

*Mid-Atlantic Express, LLC v. Baltimore Cnty.*,
Md., 410 F. App'x 653 (4th Cir. 2011).................................................................8

*Nken v. Holder*,
556 U.S. 418 (2009)...................................................................................... *passim*

*Northern Indiana Public Service v. Carbon County Coal*,
799 F.2d 265 (7th Cir. 1986) ..............................................................................13

*NovaQuest Capital Mgmt., L.L.C. v. Bullard*,
498 F. Supp. 3d 820 (E.D.N.C. 2020)............................................................12, 15

*Ohio Valley Env't Coal., Inc. v. Pruitt*,
2017 WL 1712527 (S.D. W. Va. May 2, 2017)....................................................3, 7

*Pashby v. Delia*,
709 F.3d 307 (4th Cir. 2013) .........................................................................5, 11

*Rose v. Logan*,
2014 WL 3616380 (D. Md. July 21, 2014)...........................................................7

*Sanderson Farms, Inc. v. Tyson Foods, Inc.*,
2008 WL 11363726 (D. Md. Apr. 25, 2008) ........................................................15

*Silver Star Properties REIT, Inc. v. Hartman vREIT XXI, Inc.*,
2024 WL 308945 (D. Md. Jan. 26, 2024)...........................................................14

*St. Michael's Media, Inc. v. Mayor of Balt.*,
2021 WL 4898176 (D. Md. Oct. 19, 2021) ..........................................................9

*Stone v. Trump*,
  2017 WL 6621108 (D. Md. Dec. 28, 2017)............................................................7

*Turner Broadcasting System, Inc. v. FCC*,
  507 U.S. 1301 (1993)........................................................................................4

**Statutes**

Md. Code Ann., Real Prop. § 12-111 ................................................... *passim*

**Court Rules**

Fed. R. Civ. P. 62.........................................................................................2, 12

Fed. R. Civ. P. 65.................................................................................... *passim*

**INTRODUCTION**

On June 20, 2025, the Court issued a preliminary injunction ("Preliminary Injunction" or "Injunction") in favor of PSEG Renewable Transmission LLC ("PSEG" or the "Company"), affirming the Company's statutory right under Md. Code Ann., Real Prop. ("RP") § 12-111 to enter onto the respondents' properties to the extent necessary "to make surveys, run lines or levels, or obtain information relating to the acquisition and future use of the properties in connection with the Maryland Piedmont Reliability Project." ECF 256. In a detailed and well-reasoned 52-page Memorandum Opinion and accompanying Order supporting the Injunction, ECFs 254-55, the Court found that PSEG "made a strong showing that it is likely to succeed on the merits" of its request for injunctive relief pursuant to RP § 12-111, ECF 254 at 45, that "the balance of the equities tips in PSEG's favor" to grant an injunction, *id.* at 50, and that PSEG "has shown that the issuance of a preliminary injunction is in the public interest." *Id.* at 51.[1] Applying "repeated[]" Fourth Circuit precedent to the facts at hand, *id.* at 46, the Court also found that PSEG had shown that it was likely to suffer irreparable harm absent an injunction. *Id.* at 48-49. In a continued effort to delay PSEG's exercise of this statutory right, on June 24, 2025, certain respondents in this case ("Respondents") filed a motion to stay the Preliminary Injunction ("Motion"), asking the Court for a stay pending the resolution of their appeal of the Preliminary Injunction to the Fourth Circuit.[2] ECFs 258 (Motion), 258-1 (Accompanying Memorandum).

---

[1] All page number citations refer to the CM/ECF generated page numbers at the top of each document.

[2] The moving respondents, who are referred to as "Respondents" herein, are: Arentz Family, LP, Barney's Farm, LLC, Charles William Bond, Morgan Davis Bond, Charlotte Ruth Bixler, Morris L. Bohlayer, Sharon A. Bohlayer, Gary J. Brockmeyer, Nancy M. Brockmeyer, Esther Johann Lentz-Buenger, Helen L. Bull, Chistopher D. Cockey, Carmen Cockey, Thomas B. Collins, Tracey W. Collins, Diane M. Cook, James R. Cook, Robert L. Donmoyer, Dorothy I. Donmoyer, Petrice Marie Donmoyer-Resh, Richard M. Doster, The Dug Hill Rod & Gun Club, Keith Emerson Ensor, Kevin Lee Ensor, Zhejun Fan, Joseph L. Gover, Raina C. Gover, HZ Properties, LLC, Bryan Hendrix, Connie Hendrix, Kimberly A. Johnston, Mohamad A. Kourani, Nada E. Kourani, Julia Lu, M & R, LLC, John D. Meader, Deborah H. Maeder, Nancy P. MacBride, Andrew D. McLean, Rebecca McLean, Carl E. Miller, Betty Lou Miller (Deceased), Catherine V. Miller, Kenneth E. Miller, Fay Ann Miller, Wayne D. Miller, Benjamin Eugene Nusbaum, Kenneth Eugene Nusbaum, Chris N. Resh, Rebecca Irene Scollan, Robert H. Stickles, Sr., Alene R. Stickles, Erich Charles

Respondents' request for a stay effectively asks the Court to ignore its own extensive legal and factual findings and reverse its Memorandum Opinion and Order. Granting a stay pending appeal would be tantamount to a denial of PSEG's motion for preliminary injunction, resulting in the very irreparable harm to PSEG that the Court found would occur *absent* a preliminary injunction in this case. Respondents do not assert any new arguments or raise any additional facts or law for the Court's consideration. Their request that the Court functionally reverse its decision without any new facts or law—*i.e.*, based on the same arguments the Court has already rejected— would engender an illogical result. Even putting aside the nonsensical outcome inherent in their request, Respondents have not met, and cannot meet, any of the requirements for a stay. Accordingly, Respondents' Motion should be denied.

## LEGAL STANDARD

A stay of a preliminary injunction order is a rare exception to the default rule that preliminary injunctions "are not stayed after being entered." Fed. R. Civ. P. 62(c). "A stay is an intrusion into the ordinary process of administration and judicial review," and accordingly, contrary to Respondents' suggestion otherwise, "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427, 433 (2009) (internal quotation marks omitted). The party requesting the stay "bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion." *Id.* at 433-34.

In determining whether to stay a preliminary injunction pending appeal, the Court must consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the

---

Steiger, Troyer Farms, LLC, Troyer Real Estate, LLC, Matt Unkle, Tom Unkle, Leslie Alfred White, Justin Wright, and Amy Gayle Youngblood. *See* ECF 258 at 1.

public interest lies." *Id.* at 426 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). These overlap with the factors that a court considers in deciding whether to grant a preliminary injunction and, as a result, "[i]t is generally logically inconsistent for a court to issue a . . . preliminary injunction and then stay that order, as the findings on which those decisions are premised are almost perfect opposites." *Maryland v. United States Dep't of Agric.*, --- F. Supp. 3d ---, 2025 WL 1020224, at *2 (D. Md. Apr. 4, 2025). The movant's burden is a "heavy" one because "the nonmoving party has already prevailed on the merits and a court has determined that it is entitled to the relief ordered." *Ohio Valley Env't Coal., Inc. v. Pruitt*, 2017 WL 1712527, at *2-3 (S.D. W. Va. May 2, 2017). Put another way, "[a]pplicants for a stay should not be able to unduly delay the orderly and expeditious disposition of cases without an extraordinary showing." *Id.* (citation and internal quotation marks omitted). Respondents have not met their burden here, and the Motion should be denied.

## ARGUMENT

### I.    The Preliminary Injunction Preserves Rather Than Alters The Status Quo.

To the extent the distinction is relevant to Respondents' Motion at all, and contrary to Respondents' assertion, the Preliminary Injunction is not a "mandatory" injunction that alters the status quo. *See* ECF 258-1 at 7-8. Rather, by affirming PSEG's statutory right under RP § 12-111, the Preliminary Injunction *preserves* the status quo and is, therefore, a "prohibitory" injunction. *See, e.g.*, *Julian Dev., LLC v. Old Vill. Mill, LLC*, 2014 WL 1414319, at *6 (D. Conn. Apr. 11, 2014) (holding that an injunction seeking to "refrain" the opposing party from "interfering with [Plaintiff's] right to enter, excavate, remove, and sell stone . . . from the property" was prohibitory rather than mandatory); *CSX Transp., Inc. v. Johnson Graham et al.*, 2024 WL

3595778, at *8 (W.D. Ky. July 31, 2024) (treating an injunction that seeks to guard against property owner interference with the movant's property rights as "prohibitory").[3]

Respondents' argument that the Preliminary Injunction "disrupt[s]" the status quo rests on the factually incorrect claim that "[p]rior to June 20, 2025, PSEG could not enter Respondents properties. Now it can." ECF 258-1 at 8. That is not true; the right of entry provided for in RP § 12-111 is self-executing. That is, under RP § 12-111(a)(1), the Company, after making real and bona fide efforts to notify landowners or occupants, "may . . . [e]nter on any private land to make surveys, run lines or levels, or obtain information relating to the acquisition or future public use of the property or for any governmental report, undertaking, or improvement[.]" The statute confers on the Company a right of non-invasive survey access by its plain language. Respondents refused to allow PSEG to exercise its statutory right, but that refusal did not alter PSEG's statutory right of entry. The Company thus sought, and the Court issued, an order affirming that right of entry, thereby maintaining the status quo by prohibiting interference with the Company's exercise of its statutory right. Accordingly, the Preliminary Injunction is "prohibitory," not "mandatory."

---

[3] In addition, the Fourth Circuit has held that "a preliminary injunction can also act to restore, rather than merely preserve, the status quo, even when the nonmoving party has disturbed it." *Di Biase et al. v. SPX Corp.*, 872 F.3d 224, 231 (4th Cir. 2017) (citing *Aggarao v. MOL Ship Mgmt. Co. et al.*, 675 F.3d 355, 378 (4th Cir. 2012)). For instance, in *Aggarao*, an employee "filed suit against his employer seeking a preliminary injunction to order the employer to resume providing him with medical care following a serious workplace injury." *Di Biase et al.*, 872 F.3d at 231 (citing *Aggarao*, 675 F.3d at 378). "The employer argued that the injunction was improper because it had discontinued financial assistance for medical care to the employee nearly a year earlier, thus a preliminary injunction would not preserve the status quo." *Id.* The Fourth Circuit disagreed, holding that "'it is sometimes necessary to require a party who has recently disturbed the status quo to reverse its actions,' [and that] '[s]uch an injunction restores rather than disturbs, the status quo ante.'" *Id.* (alteration in original). The same logic would apply here, *i.e.*, the Preliminary Injunction was necessary to restore the status quo where Respondents had disturbed it through their unlawful interference with the Company's survey rights under RP § 12-111.

## II.    The *Nken* Factors Strongly Support Denial Of The Motion To Stay.

### 1.    Respondents Have Not Demonstrated A Likelihood Of Success On The Merits And Cannot Make Such A Showing Merely By Rehashing Arguments This Court Has Already Rejected.

In determining whether to grant a stay pending appeal of a preliminary injunction, courts first look to whether the movants have made a "strong showing" of their likelihood of success on appeal.[4]  *Nken*, 556 U.S. at 434 (quoting *Hilton*, 481 U.S. at 776).  And on appeal, the Court's order granting the Preliminary Injunction will be reviewed for an abuse of discretion.  *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (citing *Aggarao*, 675 F.3d at 366).  This is a high burden, which the Respondents have not met and cannot meet.  In fact, Respondents effectively concede this point by arguing only that there is a "fair possibility" that the Fourth Circuit will reverse the Court's order granting the Preliminary Injunction.  ECF 258-1 at 11-14.  But the Supreme Court has cautioned lower courts that a "possibility" standard is far too lenient.  *Nken*, 556 U.S. at 435.

Rather than attempting to identify any abuse of discretion in the Court's decision, Respondents' arguments on this factor are simply a rehash of their prior arguments previously considered and rejected in this proceeding: *i.e.*, that the Company is not a "body politic or corporate having the power of eminent domain" (the Court conducted a thorough analysis, *see* ECF 254 at 25-32, and found that it is), and that Maryland law should be interpreted to require a transmission line developer to already have a CPCN in hand before undertaking the preliminary surveys needed

---

[4] Respondents seem to implicitly argue that in the context of a motion for stay pending the appeal of a preliminary injunction, the Court should apply a "less demanding" standard for this first factor—where, rather than needing to show a strong likelihood of success on the merits on appeal, the Court need only determine whether their appeal presents a serious and difficult legal question.  *See* ECF 258-1 at 11 ("Respondents have a likelihood of succeeding on the merits on appeal because the appeal raises serious and difficult questions of law.") (citing *U.S. Home Corp. v. Settlers Crossing, LLC*, 2015 WL 3973071, at *6 (D. Md. June 29, 2015)).  Even under this more lenient standard, however, Respondents' Motion falls short, failing to identify any arguments not previously considered by the Court or any errors in the Court's reasoning.

to obtain the CPCN in the first place (the Court conducted a thorough analysis, *see id.* at 30-31, and rejected this argument). But merely repeating prior arguments does not justify a stay.

The Court meticulously considered each of Respondents' arguments and appropriately rejected them. Now, Respondents essentially ask the Court to reconsider their prior arguments without identifying anything new in support. And, indeed, Respondents do not even engage with the Court's analysis in any meaningful way. For example, Respondents contend that the Court did not identify the source of PSEG's "power of eminent domain," seemingly ignoring the seven-page discussion in the Memorandum Opinion on this exact issue, in which the Court explained in detail the several reasons that "PSEG is a 'body . . . corporate having the power of eminent domain' within the meaning of [RP § 12-111]." *See* ECF 254 at 25-32. Respondents' other arguments are all in a similar vein, repeating arguments that the Court has already considered without pointing out where, specifically, they believe the Court erred in its analysis. But this Court, along with other district courts within the Fourth Circuit, have repeatedly recognized that this is not enough to support a stay of an injunction pending appeal. *See United States Dep't of Agric.*, 2025 WL 1020224, at *2 (denying motion to stay where the movant (the federal government) "simply rehashe[d] the same arguments that the Court considered in detail and rejected in the Memorandum accompanying the Preliminary Injunction Order" and did not "provide any reason to revisit those conclusions"); *see also Does 1-5 v. Cooper*, 2016 WL 10587195, at *2 (M.D.N.C. Mar. 2, 2016) ("As Plaintiffs have correctly pointed out, Defendants have offered no additional facts, cited no intervening case law, made no argument not previously considered by the Court, or identified any specific flaw in the Court's Memorandum Opinion and Order. Therefore, [Defendants] have not shown why the Court of Appeals is likely to reverse this Court's decision.") (citation omitted).

"It is important to remember that the nonmoving party has already prevailed on the merits and a court has determined that it is entitled to the relief ordered." *Ohio Valley Env't Coal., Inc.*, 2009 WL 10688886, at *3. Respondents' attempt to take a second bite at the apple does not constitute an extraordinary showing and does not otherwise satisfy their heavy burden of demonstrating a likelihood of success on appeal by showing that this Court abused its discretion. *See Stone v. Trump*, 2017 WL 6621108, at *1 (D. Md. Dec. 28, 2017) ("Defendants [have not] shown that the Court abused its discretion in weighing the equities to decide that a preliminary injunction was warranted such that they are likely to succeed on the merits of their appeal of the Preliminary Injunction.").

2.   Respondents Have Not Shown That They Will Be Irreparably Harmed.

Respondents will not suffer irreparable harm absent a stay. In fact, as the Court has already found and as explained in Section II.3 below, it is PSEG that will suffer irreparable harm if the Preliminary Injunction is not allowed to remain in force. *See* ECF 254 at 48-49.

The only new argument Respondents assert in support of this factor is their claim that failure to stay the Preliminary Injunction pending appeal "guarantees that Respondents will lose no matter how the appeal is decided," because PSEG will have already entered onto Respondents' properties by the time the Fourth Circuit hears their appeal and will thus have "irreversibly violated Respondents' property rights" if the Fourth Circuit "later sides with Respondents." ECF 258-1 at 9. But this assertion is insufficient to show irreparable harm in the context of stays pending an appeal. Jurists in this District have explained that "an appeal being rendered moot does not itself constitute irreparable injury." *Rose v. Logan*, 2014 WL 3616380, at *3 (D. Md. July 21, 2014) (quotation omitted); *In re Barnes*, 2020 WL 134374, at *2 (D. Md. Jan. 13, 2020).[5] Instead, "courts

---

[5] Indeed, as other federal district courts have recognized, "*every* stay-pending-appeal request concerning injunctive relief that a lower court has ordered involves a risk that interim compliance will moot the appeal," such that more than

have required more—i.e., that the injury suffered be irreparable in nature—in order to substantiate the stay." *Comm. on the Judiciary v. McGahn*, 407 F. Supp. 3d 35, 42 (D.D.C. 2019).[6]  Because Respondents must assert more than a risk of mootness to show irreparable harm, on this factor, too, Respondents' Motion fails to justify the extraordinary relief requested.

### 3.    A Stay Pending Appeal Would Substantially Harm PSEG.

The third *Nken* factor, whether issuance of the stay will substantially injure the other parties interested in the proceeding, also cuts squarely against Respondents.  Staying the Preliminary Injunction pending appeal would be tantamount to the Court denying PSEG's motion for a preliminary injunction in the first place.  As the Court has already found, PSEG would suffer irreparable harm absent preliminary relief.  *See* ECF 254 at 48-49.  The Court found that "[i]f the project is delayed, PSEG is likely to lose any revenue it would otherwise have received had PSEG been able to meet the June 1, 2027 in-service deadline," and that, "PSEG has established that, in the absence of conducting these surveys, PSEG risks a level of delay that will almost certainly entail some prospective financial harms."  *Id.*  And the Court concluded that "[b]ecause PSEG has shown that the project could be substantially delayed in the absence of an injunction, and that it likely will suffer substantial monetary harm from anticipated future financial losses (such as loss

---

the risk of mootness is required to show irreparable harm.  *Comm. on the Judiciary v. McGahn*, 407 F. Supp. 3d 35, 42 (D.D.C. 2019) (emphasis in original).

[6] Moreover, as the Motion effectively concedes, the risk of mootness in this case is not as dire as Respondents argue, since the purported issues or injuries Respondents have raised are preserved for appeal and will be preserved for appeal even if the Company begins to conduct the surveys.  *See McGahn*, 407 F. Supp. 3d at 42 (holding "the risk of mootness is not actually all that great in this case, because the absolute immunity issue can be preserved for appeal even if the witness's testimony is provided" where witness claimed loss of immunity due to preliminary injunction was irreparable on appeal).  As Respondents point out, the Fourth Circuit has already held, albeit in a different case, that environmental surveys conducted pursuant to construction of a public utility project fell within the capable of repetition, evading review exception to the mootness doctrine.  *See Mid-Atlantic Express, LLC v. Baltimore Cnty.*, Md., 410 F. App'x 653, 656 (4th Cir. 2011) (denying motion to dismiss as moot "[i]n light of the obvious fact that Mid-Atlantic can complete surveys of this type in a short enough time to evade our review").

of revenue) as a result of the delay, PSEG has satisfied the irreparable harm element for a preliminary injunction." *Id.* at 49.

The stay requested by the Respondents would undo the Court's findings above and effectively nullify the Preliminary Injunction. Indeed, a stay therefore does not make sense in this case. *See Fleet Feet, Inc. v. Nike, Inc.*, 2019 WL 13143233, at *1, 4 (M.D.N.C. Dec. 20, 2019) (where defendant moved for stay pending appeal of preliminary injunction limiting defendant's ability to advertise products in a certain manner, denying motion to stay because court had already found plaintiff would be irreparably harmed absent injunction and defendant presented no new arguments on that point, and noting that defendant acknowledged "that staying the injunction will both effectively nullify it and deprive [plaintiff] of a meaningful remedy if it is ultimately successful"); *St. Michael's Media, Inc. v. Mayor of Balt.*, 2021 WL 4898176, at *9 (D. Md. Oct. 19, 2021) (finding that stay would substantially injure the defendants because "[a] decision favorable to plaintiff could come too late to undo the stay."); *CASA de Md., Inc. v. Trump*, 2019 WL 7565389, at *3 (D. Md. Nov. 14, 2019) (finding third factor in *Nken* not met because court had previously found plaintiff would be irreparably harmed absent an injunction and defendant offered no new arguments leading to a different result). *Cf. Covington v. North Carolina*, 2018 WL 604732, at *6 (M.D.N.C. Jan. 26, 2018) (noting that, given its finding of substantial injury or possible irreparable harm to other parties, the court was "reluctant to grant a stay with the effect of 'giv[ing] appellant the fruits of victory whether or not the appeal has merit.'" (alteration in original) (quoting *Personhuballah v. Alcorn*, 155 F. Supp. 3d 552, 560 (E.D. Va. 2016))). This untenable outcome would fly squarely in the face of the Court's findings, which were based on the record evidence in this case.[7] *See* ECF 254 at 45-49.

---

[7] Respondents' argument that "PSEG will not suffer substantial harm by a stay" because "the Court cited no evidence" for its holding that PSEG "has shown irreparable harm sufficient to justify issuance of a preliminary injunction" is

4.  Respondents Have Not Shown A Stay Is In The Public Interest.

Finally, Respondents fail to show that a stay of the Preliminary Injunction—which, as discussed *supra*, would amount to a functional reversal or nullification of the Preliminary Injunction—is in the public interest.  In its Memorandum Opinion, this Court explained that "the Fourth Circuit [has] held [that] … advancing projects like this one is generally in the public interest."  ECF 254 at 51 (citing *Mountain Valley*, 915 F.3d at 221-22; *Sage*, 361 F.3d at 830), and held that there was "no reason to second-guess" PPRP's determination that "conducting the studies at issue here is necessary for it to discharge its statutory duties."  *Id.*  Here, the requested stay of the Injunction would prevent the Company from exercising its statutory right under RP § 12-111 to conduct the studies at issue that PPRP has deemed imperative, directed the Company to undertake, and determined to be in the public interest.  Granting the Respondents' Motion would therefore directly contravene the public interest rather than promote it.

III.    **The Only Modifications Of The Injunction That Could Be Appropriate Under FRCP 65 Are (1) A Bond Requirement, And (2) A Specific Reference to RP § 12-111.  Respondents' Broader Request For "Clarification" Should Be Denied.**

Respondents assert broadly that "the Court should modify the Preliminary Injunction to bring it into compliance with Federal Rule of Civil Procedure 65(c) and clarify the limited scope of injunctive relief."  ECF 258-1 at 16.  The Company does not oppose Respondents' request to modify the Preliminary Injunction to address the issue of a bond requirement pursuant to Rule

---

factually incorrect and ignores the Court's finding on irreparable harm.  Contrary to Respondents' erroneous contention, the Court's Memorandum Opinion cites and analyzes the extensive evidence put forth and squares the facts of this case with established Fourth Circuit precedent holding that economic losses can constitute irreparable injury.  *See* ECF 254 at 46-49.    Respondents' unsupported (and untrue) assertion that "PSEG will not suffer substantial harm," ECF 258-1 at 14, is nothing more than a repeat of the same speculative assertion Respondents made in opposition to the Company's motion for preliminary injunction, which the Court has already considered and rejected.  *See* ECF 254 at 45-49.  In the instant case, the Court pointed to actual evidence, specifically explained that it considered the record (which included sworn declarations submitted by the Company), and found that, based on the record evidence, the Company had satisfied its burden to show irreparable harm.  *See id.*

65(c),[8] but respectfully submits that the $1,000,000 bond requested by Respondents is excessive and unnecessary.[9]  Instead, the bond amount should be set at no more than $1,000 per property ($91,000 total).

The Company also disagrees with Respondents' vague and ambiguous request for "clarification" of the scope of the Preliminary Injunction.  The Preliminary Injunction properly and clearly tracks the text of the rights conferred by RP § 12-111.  That said, the Court could amend the Preliminary Injunction to add a specific reference to RP § 12-111 to show that the Preliminary Injunction's language tracks the statute and the rights conferred on PSEG therein.

     1.   <u>The Company Agrees That The Preliminary Injunction May Be Modified To Include A Bond Requirement, But Respondents' Proposed Bond Amount Is Excessive And Unnecessary.</u>

While the Company does not disagree that the Preliminary Injunction should be modified to include a bond requirement, the bond amount should be set at $91,000.  Respondents' $1,000,000 bond request is unnecessary and excessive in this case.

By way of background, here, no party included a specific request regarding a bond amount in their prehearing (or supplemental post-hearing) briefing, but the Court raised the topic during

---

[8] Fed. R. Civ. P. 65(c) specifies that the "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  The Court retains the discretion to set the bond at an amount as it sees fit or waive the security requirement altogether (or impose a nominal bond amount of $0) but must address the issue of a security before allowing its waiver.  *See Pashby v. Delia*, 709 F.3d at 332 (courts "cannot disregard the security requirement altogether") (internal citations and quotations omitted).

[9] Despite (1) the Company's submission of sworn Declarations confirming it was not seeking access to Respondents' properties to conduct invasive surveys; (2) the Company's repeated assurances in its pleadings and at oral argument that it is not entitled to conduct invasive surveys under RP § 12-111 and therefore would not do so (a fact that Respondents acknowledge, *see* ECF 258-1 at 13); and (3) the Court's acknowledgement of the same, Respondents nonetheless request that "if PSEG is permitted to perform invasive surveys," the Court should order the Company to post a $10,000,000 bond.  ECF 258-1 at 17 n.7.  Because the Order and Preliminary Injunction do not contemplate—and, indeed, in quoting the precise language regarding the survey access contained in RP § 12-111, the Order and Injunction disclaim—the Company conducting invasive surveys on Respondents' properties, Respondents' alternative request for a $10,000,000 bond should be denied as moot.

11

the May 19, 2025 hearing and engaged in a colloquy with counsel for the Company regarding the appropriateness of a bond. *See* Ex. A, Tr. 32:10-34:10. During that colloquy, the Company asserted that no bond was required in this case because RP § 12-111 both provides an entitlement for the right of entry and creates its own mechanism for addressing any consequential damages that arise from the surveys. *Id.* 32:19-33:4. The Company also affirmed that it would not require Respondents to file individual suits in the event the non-invasive surveys caused damage and would willingly work with Respondents to resolve such issues. *Id.* 34:3-9. Respondents did not request the imposition of a bond nor provide reasons for why a surety would be proper in this case. *See generally id.* While the Court contemplated a Rule 65(c) bond at oral argument, the Preliminary Injunction does not expressly discuss a security requirement or a finding of waiver and the Company thus does not oppose Respondents' request for modification of the Injunction only to include such discussion.[10,11] However, contrary to Respondents' request for a bond of $1,000,000, the Company believes a bond of $91,000—$1,000 per property—is appropriate here.

"When modifying a preliminary injunction, a court is charged with the same discretion it exercised in granting the original injunctive relief." *Ohio Valley Envtl. Coalition*, 2009 WL 10688886, at *1 (citations omitted). That discretion includes the ability "to set the bond amount as it sees fit or waive the security requirement." *NovaQuest Capital Mgmt., L.L.C. v. Bullard*, 498 F. Supp. 3d 820, 840 (E.D.N.C. 2020). The Company's proposed bond amount is appropriate because Respondents are unlikely to face any material harm as a result of the Preliminary

---

[10] District courts maintain jurisdiction over preliminary injunctions and possess the inherent power to modify them. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) ("[A] district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted. . . at any time prior to final judgment when such is warranted.").

[11] Importantly, the Respondents' filing of an appeal to the Fourth Circuit does not divest the Court of its power or jurisdiction to modify the Preliminary Injunction to set a bond amount. *See* Fed. R. Civ. P. 62(d) ("While an appeal is pending from an interlocutory order . . . that grants . . . an injunction, the court may . . . modify . . . an injunction on terms for bond or other terms that secure the opposing party's rights. . . .").

Injunction and because of the Company's strong showing on the likelihood of success of its interpretation of RP § 12-111.[12]

*First*, in determining a proper bond amount, courts routinely consider "the potential incidental and consequential costs as well as either the losses the unjustly enjoined or restrained party will suffer during the period he is prohibited from engaging in certain activities or the complainant's unjust enrichment caused by his adversary being improperly enjoined or restrained." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999) (quotations omitted); *see also Hassay v. Mayor*, 955 F. Supp. 2d 505, 527 (D. Md. 2013) ("Security [under Fed. R. Civ. P. 65(c)] is generally fixed in an amount covering the potential incidental and consequential costs as well as either the losses the wrongly enjoined party will suffer or the amount of the complainant's unjust enrichment during the period of prohibited conduct." (internal quotation marks and citations omitted)).

In this case, the activity Respondents are prohibited by law from engaging in is interfering with the Company's exercise of its statutory right of entry. Respondents do not face costs for *not interfering* with land surveyors conducting limited and temporary surveys. Moreover, the magnitude of the potential losses to Respondents' properties resulting from the Company's

---

[12] Notably, it would also be within the Court's discretion to waive the bond requirement for the Company altogether or set a nominal bond amount of $0. *See Md. Dep't of Human Res. v. United States Dep't of Agric.*, 976 F.2d 1462, 1483 n.23 (4th Cir. 1992) (noting that courts have "discretion to set a bond amount of zero where the enjoined or restrained party faces no likelihood of material harm" and collecting cases). The Company believes that the facts here would warrant such a waiver or imposition of a nominal bond of $0. *See Defy Ventures, Inc. v. U.S. Small Bus. Admin.*, 469 F. Supp. 3d 459, 481 (D. Md. 2020) (recognizing the district court has discretion to waive the bond requirement and doing so because, among other reasons, "any harm to the defendants [due to the preliminary injunction] is remote"); *Coreas v. Bounds*, 458 F. Supp. 3d 352, 362 (D. Md. 2020) ("[T]he financial impact to Respondents of an improperly imposed injunction is limited and would not create any significant hardship, [and thus] the Court will waive the security requirement."). *Cf. Northern Indiana Public Service v. Carbon County Coal*, 799 F.2d 265, 281 (7th Cir. 1986) (waiving the requirement of bond pending appeal where the appellant was a solvent public utility, with net worth well in excess of the judgment, such that there was no real risk that the appellant would become insolvent or default on its obligations to pay damages). *See also* Ex. A, Tr. 34:3-9. However, the Company understands that Respondents have requested the imposition of a security and is willing to post a bond in a gesture of good faith.

exercise of its statutory survey right under RP § 12-111 (and the Injunction) are minimal or nonexistent, given the non-invasive nature of the surveys.  As the Court explained in its Memorandum Opinion, the Company "only seeks a temporary right of entry" to conduct *non-invasive* surveys.  ECF 254 at 50.  Consequently, that is all the Preliminary Injunction allows.[13] *See* ECF 256 (allowing the Company to enter onto the properties of Respondents" and "make surveys, run lines or levels, or obtain information" if proper notice is given, pursuant to the precise language of RP § 12-111).  These surveys are non-invasive and impose no costs on the Respondents.  The risk of damage to Respondents' properties is minimal given the non-invasive nature of the surveys, such that a $1,000,000 bond is grossly disproportionate to the potential losses the Respondents may suffer during the survey period.  Enjoining a Respondent's ability to interfere with the exercise of a statutory right of limited, non-invasive right of survey access causes no material harm to Respondents.  Given that Respondents are unlikely to suffer material harm as a result of the Preliminary Injunction, and because RP § 12-111 allows them to recoup any damage

---

[13] For instance, *Mackie v. Mayor and Com'rs of Town of Elkton*, 265 Md. 410 (1972) held that the predecessor statute to RP § 12-111 did not authorize core drill activities.  The Court held that the reach of the statute extended only to activities *similar to* "making surveys, running lines or levels, [or] setting stakes, markers[, and] monuments" that are "innocuous and temporary[,] effecting only minimal incidental damage and little, if any, disturbance."  *Mackie*, 265 Md. at 419.  This holding provides sufficient guidance and notice of the types of surveys permitted under the statute, the relevant portion of which is not considerably different from the predecessor statute in *Mackie*, to comply with Federal Rule of Civil Procedure 65(d).  *See Silver Star Properties REIT, Inc. v. Hartman vREIT XXI, Inc.*, 2024 WL 308945, at *4 (D. Md. Jan. 26, 2024) (noting that when an injunction orders a party to obey the law, the "clarity of the law" on the conduct permitted or enjoined is "crucial" to determining whether Federal Rule of Civil Procedure 65(d) is satisfied); RP § 12-111 (providing specific examples of conduct permitted under the statute such as "mak[ing] surveys, run[ning] lines or levels, or obtain[ing] information" and "[s]et[ting] stakes, markers, monuments, or other suitable landmarks or reference points where necessary"); *Mackie*, 265 Md. at 418 (recognizing the "specific itemization" of permissible surveying activities included within RP § 12-111); *Betty Jean Strom Tr. v. SCS Carbon Transp., Ltd. Liab. Co.*, 11 N.W.3d 71, 79, 90 (S.D. 2024) (interpreting analogous right-of-entry statute to RP § 12-111 and finding that "minimally invasive, non-destructive inquiries to assess the land . . . involv[ing] the use of hand tools (e.g., spades, shovels, augers)" that could result in "small soil disturbances at discrete locations" were permitted as non-invasive surveys under the statute, while geotechnical borings that involve a track mounted drilling rig to create a small diameter hole into the soil to collect samples of subsurface soils and rocks were not, and neither was a "deep dig" involving "the use of a backhoe to dig trenches typically 7 to 10 feet in length, 2 to 3 feet in width, and 6 to 10 feet deep" (internal quotations omitted)).

14

they may sustain, the Company's bond amount of $1,000 per property is appropriate.  *See, e.g.*, *NovaQuest Cap. Mgmt., L.L.C.*, 498 F. Supp. 3d at 840 ("Here, given the limited scope of the injunction imposed, the lack of identified harm to defendant, and the lack of any evidence that plaintiff will be unable to compensate defendant in the event defendant prevails at the conclusion of the litigation, the court waives the bond requirement.").

Even if Respondents were to incur damage because of the survey activity permitted by the Preliminary Injunction, the Maryland legislature has already provided a mechanism to address such damage in RP § 12-111, as the Court recognized in its Memorandum Opinion.  *See* ECF 254 at 50 (noting that "Respondents may file a cause of action for damages in the event that any land or personal property is damaged or destroyed as a result of the surveys."); *see also* Ex. A, Tr. 32:10-34:10 (articulating the Company's position that there is no harm to Respondents and bond should be zero).  RP § 12-111 also does not require any bond or security be provided before an order of entry issues; rather, the tool to account for potential damage is provided as a remedy for landowners in the statute.  *See* RP § 12-111(c).  Respondents thus have everything they need to be reimbursed if they "suffer[] as a result of an improvidently issued injunction."  *Hoechst Diafoil Co.*, 174 F.3d at 421 n.3.  Thus, to the extent any consequential damages arise due to the surveys themselves, RP § 12-111 creates a mechanism whereby Respondents may be fully compensated. *See also* Ex. A., Tr. 34:3-9.

**Second**, the bond amount proposed by the Company is more appropriate here because the Company is highly likely to succeed on the merits such that the risk of an improvidently issued injunction is reduced.  *See Sanderson Farms, Inc. v. Tyson Foods, Inc.*, 2008 WL 11363726, at *1 (D. Md. Apr. 25, 2008).  This reduction in risk militates against a higher bond amount.  *See id.* Here, the Court explained in its Memorandum Opinion accompanying its June 20, 2025 Order that

"PSEG's construction of the statute is the only one consistent with the text, statutory and regulatory context, legislative history, and purpose of § 12-111." ECF 254 at 26. The Court's Memorandum Opinion acknowledged the Company's strong showing of its likelihood of success on the merits. *See id.* at 45 ("PSEG has made a strong showing that it is likely to succeed on the merits."); *id.* at 27 ("Several aspects of the text strongly reveal that the General Assembly intended the statute to apply to circumstances like the one here."); *id.* at 29 ("Several other considerations, beyond the four corners of the statute, also strongly support the conclusion that PSEG qualifies as an entity 'having the power of eminent domain' within the meaning of § 12-111.").

In light of the remote possibility of material harm to Respondents and the Company's strong showing of its likelihood of success on the merits, a $91,000 bond is more than sufficient to account for any harm that may flow to Respondents from being improperly enjoined, especially given that, as described above, RP § 12-111(c) already provides the opportunity for Respondents to seek payment from the Company for damage caused by the Company's non-invasive survey activities on their properties. In contrast, the $1,000,000 bond proposed by Respondents is excessive and unnecessary. In *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, the Fourth Circuit explained that, "[i]n fixing the amount of an injunction bond, the district court should be guided by the purpose underlying Rule 65(c), which is to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order." 174 F.3d at 421 n.3. As discussed *supra*, the harm to Respondents resulting from the Injunction is nil; the prospect of damage to their properties as a result of the Company's non-invasive survey activities is speculative and remote, and, as also discussed *supra*, RP § 12-111 expressly provides a remedy by providing an opportunity for Respondents to seek compensation for any such damage. There is no need for the Company to post a $1,000,000 bond.

2.  <u>The Court Could Modify the Proposed Order To Include A Specific Reference To RP § 12-111.</u>

The Preliminary Injunction adopts the Company's initial proposed order.  *See* ECF 75-6.[14]  As explained during the May 19 hearing, the Company's initial proposed order tracks the language of RP § 12-111 verbatim and as such was "designed to accommodate [] th[e] variety of [survey] needs" for a variety of properties.   As explained during the May 19 hearing, the Company's initial proposed order tracks the language of RP § 12-111 verbatim and as such was "designed to accommodate [] th[e] variety of [survey] need[s]" for a variety of properties.  Ex. A, Tr. 18:23-19:1; *see also id.* 19:1-9 (noting the Company is "very willing and expects to work with Respondents  and their counsel and the Court, as necessary, to fashion an appropriately narrowly tailored set of relief that permits the Company to get the surveys that PPRP has requested, while also making the disruptions to the respondents as minimal as possible").  Indeed, the Company's Petition and Motion for Preliminary Injunction sought this Court's affirmance of a statutory right-of-entry under RP § 12-111, and the Company repeatedly made clear that: RP § 12-111 would govern its access rights, it was seeking only the access to which it is entitled under RP § 12-111, and it was not asking the Court to do anything more than what is provided for by statute.[15]  *See, e.g.*, ECF 105-1 at 9-10.

As the Company and the Court's Memorandum Opinion explained, RP § 12-111 provides only for a temporary right of access to conduct non-invasive survey activities.  *See* RP § 12-111(a), (b) (right of entry is limited to entry on "private land to make surveys, run lines or levels, or obtain information relating to the acquisition or future public use of the property or for any governmental

---

[14]  Despite having numerous opportunities to do so, Respondents have never proposed or suggested specific clarifications to the Injunction, including in the body of or as an attachment to their instant Motion.

[15]  Respondents themselves concede the Company's acknowledgement of the limited and non-invasive nature of its survey access rights under RP § 12-111.  *See* ECF 258-1 at 17.

report, undertaking, or improvement; [or to] set stakes, markers, monuments, or other suitable landmarks or reference points where necessary…" and persons who are entitled to right of entry but have been "refused permission to enter or remain on any private land for the purposes set out [above] … may apply to a law court … for an order directing that the person be permitted to enter on and remain on the land to the extent necessary to carry out the purposes authorized by this section."). Maryland case law interpreting RP § 12-111 makes clear that the only surveys the Company is entitled to conduct are non-invasive surveys.[16] Accordingly, the Preliminary Injunction issued by the Court uses the exact right-of-entry language contained in RP § 12-111 (as set forth in PSEG's Proposed Order, ECF 75-6) and permits the Company to do only that which the statute expressly entitles it to do. *See* ECF 256.

Respondents' generic request for clarification is too ambiguous to be effective. Respondents do not specify or suggest additions to the Preliminary Injunction to "clarify the limited access rights" of the Company. Thus, the Company respectfully submits that, beyond the inclusion of a bond requirement as discussed above, the Court could provide the parties with the "clarification" of the Proposed Order by adding a specific citation to RP § 12-111. Doing so would make clear that the Company's right of entry is conferred by the statute and thus begins and ends with what is permitted under and provided for in the statute. But other than possibly including the specific reference to RP § 12-111 (or if the Court declines to amend the Preliminary Injunction to include this reference), Respondents' request for modification should be denied.

## CONCLUSION

For the foregoing reasons, the Company respectfully requests that the Court deny the Motion to Stay.

---

[16] *See supra* n.13.

Date: July 2, 2025                           Respectfully submitted,

                                             */s/ Kurt J. Fischer*
                                             Kurt J. Fischer (Bar No. 03300)
                                             Venable LLP
                                             210 W. Pennsylvania Avenue
                                             Suite 500
                                             Towson, MD 21204
                                             (410) 494-6200
                                             kjfischer@venable.com


                                             J. Joseph Curran III (Bar No. 22710)
                                             Christopher S. Gunderson (Bar No. 27323)
                                             Kenneth L. Thompson (Bar No. 03630)
                                             Susan R. Schipper (Bar No. 19640)
                                             Emily J. Wilson (Bar No. 20780)
                                             Venable LLP
                                             750 E. Pratt Street
                                             Suite 900
                                             Baltimore, MD 21202
                                             (410) 244-7400
                                             csgunderson@venable.com
                                             srschipper@venable.com
                                             ejwilson@venable.com

                                             *Attorneys for Petitioner PSEG*
                                             *Renewable Transmission LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of July, I electronically filed and served the foregoing on all counsel of record using the CM/ECF system.

*/s/ Emily J. Wilson*
Emily J. Wilson