## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

PSEG RENEWABLE TRANSMISSION
LLC,

     *Plaintiff*,

     v.

ARENTZ FAMILY, LP, *et al.*,

     *Defendants*

Case No. 25-cv-1235-ABA

## MEMORANDUM OPINION AND ORDER

On June 20, 2025, the Court granted Petitioner PSEG Renewable Transmission
LLC's ("PSEG's") motion for a preliminary injunction. ECF No. 256 (preliminary
injunction); ECF No. 255 (order); ECF No. 254 (memorandum opinion). Respondents
have filed a motion to stay the preliminary injunction, ECF No. 258, which PSEG has
opposed, ECF No. 263.

Courts have "inherent" authority to hold an order in abeyance pending appeal, a
grant of authority "preserved" by the All Writs Act, which authorizes federal courts to
"'issue all writs necessary or appropriate in aid of their respective jurisdictions and
agreeable to the usages and principles of law.'" *Nken v. Holder*, 556 U.S. 418, 427, 433
(2009) (quoting 28 U.S.C. § 1651(a)). "A stay is not a matter of right"; a party requesting
a stay "bears the burden of showing that the circumstances justify" a stay, *id.* at 433–34,
based on a consideration of "(1) whether the stay applicant has made a strong showing
that he is likely to succeed on the merits; (2) whether the applicant will be irreparably
injured absent a stay; (3) whether issuance of the stay will substantially injure the other

parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 426
(quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

As an initial matter, the parties dispute whether the preliminary injunction
preserves or alters the "status quo." This argument does not pertain directly to any of
the *Nken* factors, but rather to what standard applies to PSEG's motion for a
preliminary injunction or Respondents' motion to stay. Respondents describe the
preliminary injunction as "mandatory" as opposed to "prohibitory," and argue the
preliminary injunction altered the status quo, which Respondents contend requires
PSEG to show "extraordinary circumstances" to avoid a stay. ECF No. 258-1 at 7–8
(quoting *2311 Racing LLC v. Nat'l Ass'n for Stock Car Auto Racing, LLC*, 139 F.4th 404,
408 (4th Cir. 2025)); *see also id.* at 8 (Respondents arguing, "Prior to June 20, 2025,
PSEG could not enter Respondents properties. Now it can."). PSEG argues that
*granting* a stay would alter the status quo, and that this Court's preliminary injunction
qualifies as "prohibitory" because "the right of entry provided for in RP § 12-111 is self-
executing" and it was Respondents who, by refusing PSEG entry to conduct the studies,
were "interfer[ing] with the Company's exercise of its statutory right." ECF No. 263 at 9;
*see also id.* (PSEG: "Respondents refused to allow PSEG to exercise its statutory right,
but that refusal did not alter PSEG's statutory right of entry.").

This Court already explained why PSEG has shown an entitlement to a
preliminary injunction even though the order confirming its right to access
Respondents' property is "largely congruent with the final relief that PSEG seeks
through its complaint as final relief." ECF No. 254 at 43. But also, this dispute over how
to characterize the "status quo" is largely beside the point with respect to the motion to
stay. Whether the injunction is properly characterized as mandatory or prohibitory, or

preserving the status quo or altering it, the standard for a stay pending appeal is the one articulated in *Nken*. And for largely the reasons already articulated in this Court's memorandum opinion granting PSEG's motion for a preliminary injunction, Respondents have not shown that the *Nken* factors justify a stay pending appeal.

As for Respondents' reliance on *2311 Racing LLC*, the analogy Respondents seek to draw is inapt. That was an antitrust case, where two NASCAR teams alleged that a provision in a NASCAR charter agreement that required releasing claims arising from past conduct violated Section 2 of the Sherman Act. 139 F.4th at 407. The teams sought a preliminary injunction ordering a rewriting of the charter agreement to excise the complained-of release provision, and permitting the teams to compete under that judicially modified contract. *Id*. That clearly constituted a "mandatory" injunction that "alter[ed], rather than preserve[d], the status quo." *Id*. at 408 (quoting *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994)). The status quo would have been either that the teams would (a) agree to the charter agreement and compete under its terms, or (b) forego racing and preserve their right to sue NASCAR based on past conduct.

Here, for the reasons the Court has explained, § 12-111 entitles PSEG, after giving actual notice (which it indisputably has done), to temporarily enter properties along the proposed Piedmont Project route to, among other things, "make surveys, run lines or levels, or obtain information relating to the acquisition or future public use of the property or for any governmental report, undertaking, or improvement." Md. Code Ann., Real Property § 12-111(a)(1). That legal entitlement is particularly clear given that PSEG has been directed to conduct those studies by the state agency responsible for assessing the "environmental, natural resources, and socioeconomic" impact of the project. *See* ECF No. 254 at 7 (quoting COMAR 20.79.04.04(B)–(D)). The preliminary

injunction this Court has granted simply confirms PSEG's preexisting legal entitlement to conduct the studies at issue; the status quo has been preserved, not altered. But even if framed as a modification of the status quo such that it constitutes "[m]andatory preliminary injunctive relief," *Taylor*, 34 F.3d at 270 n.2, PSEG has satisfied that standard, for the same reasons the Court has previously explained.

Respondents' remaining arguments for a stay fail to satisfy the *Nken* standard.

With respect to their likelihood of success on appeal, although Respondents re-argue their proposed interpretation of § 12-111, ECF No. 258-1 at 11–14, this Court has already concluded that PSEG has shown the far more persuasive interpretation of the statute, ECF No. 254 at 25–32, and that the evidence clearly establishes that PSEG gave actual notice as required, *id.* at 12–22. Respondents contend that the Court "did not address whether and when, under PU § 7-207, the State of Maryland delegates the power of eminent domain to a transmission line developer." ECF No. 258-1 at 12. Not so. The Court explained the relationship and respective interpretations of Real Property § 12-111 and Public Utility § 7-207, including that the text and structure of § 7-207 confirm that § 12-111 does not require that an entity like PSEG have already been granted the power to acquire land by condemnation before § 12-111 authorizes the types of studies at issue here. ECF No. 254 at 6, 26–31. Respondents have not shown a likelihood of success on the merits of their appeal.

As for whether Respondents "will be irreparably injured absent a stay," *Nken*, 556 U.S. at 426, Respondents do not attempt to make any such showing in their motion. Insofar as they rely on the harms they previously articulated in opposing entry of a preliminary injunction, the Court has already explained why the balance of harms weighs in PSEG's favor. ECF No. 254 at 49–50. As to "whether issuance of the stay will

substantially injure" PSEG, *see Nken*, 556 U.S. at 426, for the same reasons PSEG has shown it would suffer irreparable harm in the absence of a preliminary injunction, ECF No. 254 at 45–49, it has shown that it will be substantially injured if the preliminary injunction were stayed.

Finally, the public interest factors weigh against a stay for the same reasons they weigh in favor of issuance of the preliminary injunction. *Id.* at 50–51. Respondents argue that, in considering the public interest, the Court should give limited weight to the Power Plant Research Program's conclusion that the studies at issue are necessary for it to conduct its statutorily mandated review. *See* ECF No. 258-1 at 15 (arguing that the PPRP "merely recommended that the PSC deem PSEG's CPCN application incomplete because, among various reasons, the application omitted [certain] field-based surveys"). But that is a semantic distinction. The *reason* the PPRP declined to green-light the project was because it determined that, until those studies are completed, it will be unable to fully assess the environmental impact of locating the transmission line along the currently proposed route.

For these reasons, Respondents' motion to stay pending appeal is denied. Although Respondents have not shown a basis for a stay pending appeal, there are two modifications to the preliminary injunction that they have requested and to which PSEG, at least in part, does not object.

First, Respondents request a monetary bond, and propose an amount of $1 million, which translates to roughly $11,000 per property. ECF No. 258-1 at 17. PSEG argues that any bond should be limited to $1,000 per property, or $91,000. ECF No. 263 at 16–21. The Court will grant Respondents' unobjected-to request to add a bond requirement to the preliminary injunction. But Respondents have not shown that a

bond remotely in the range they propose is justified. A property owner is entitled to monetary damages if an engineer, surveyor or appraiser "damages or destroys any land or personal property." Md. Code Ann., Real Prop., § 12-111(c). Respondents have made no showing that conducting the limited studies at issue poses any likelihood of damage to the properties, let alone in an amount exceeding $1,000 per property. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999) (directing courts, in selecting an amount for a bond, to consider "the potential incidental and consequential costs as well as either the losses the unjustly enjoined or restrained party will suffer during the period he is prohibited from engaging in certain activities or the complainant's unjust enrichment caused by his adversary being improperly enjoined or restrained") (quoting 11A Charles Alan Wright *et al.*, Federal Practice & Procedure § 2954, at 292 (2d ed. 1995)). The bond will be set at $100,000.

Second, Respondents request that the Court "clarify" that the Preliminary Injunction is limited to permitting PSEG "access rights to conducting non-invasive surveys on a temporary and limited basis." ECF No. 258-1. Respondents are correct that the scope of PSEG's rights are limited to those authorized by § 12-111. The Court will amend the preliminary injunction to clarify that the activities PSEG may conduct are limited to those authorized by the statute.

## CONCLUSION AND ORDER

For the foregoing reasons, Respondents' motion to Stay Preliminary Injunction Pending Appeal, ECF No. 258, is GRANTED IN PART AND DENIED IN PART. The request to stay pending appeal is DENIED. The request to modify the preliminary injunction to require payment of a bond is granted (but for an amount smaller than

Respondents request), and their request to clarify the preliminary injunction is granted.

A separate Amended Preliminary Injunction follows.


Date:  July 11, 2025                                    _____/s/_____

                                                        Adam B. Abelson
                                                        United States District Judge