# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

PSEG RENEWABLE     *
TRANSMISSION LLC,

    *

      Petitioner,

    *

          v.                  Case No. 1:25-cv-01235

ARENTZ FAMILY, LP, *et al.*,

    *

      Respondents.

    *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## PETITIONER'S MOTION FOR U.S. MARSHAL ASSISTANCE AND ESTABLISHMENT OF A PROCEDURE FOR FUTURE ASSISTANCE

Kurt J. Fischer (Bar No. 03300)
Venable LLP
210 W. Pennsylvania Avenue
Suite 500
Towson, MD 21204
(410) 494-6200
kjfischer@venable.com

J. Joseph Curran III (Bar No. 22710)
Christopher S. Gunderson (Bar No. 27323)
Kenneth L. Thompson (Bar No. 03630)
Susan R. Schipper (Bar No. 19640)
Emily J. Wilson (Bar No. 20780)
Venable LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
(410) 244-7400
jcurran@venable.com
csgunderson@venable.com
klthompson@venable.com
srschipper@venable.com
ejwilson@venable.com

*Attorneys for Petitioner PSEG*
*Renewable Transmission LLC*

## TABLE OF CONTENTS

I.     BACKGROUND ......................................................................................... 2

    A.    Threats on Social Media and Statements of Non-Involvement from
          Law Enforcement ........................................................................... 3

    B.    Specific Threats of Violence by Respondents and Third Parties at
          Respondents' Properties ............................................................... 6

    1.    Brandon Hill's Father Threatens Gun Violence and Nearly Runs
          Into Multiple While Driving ATV, Requiring Call to Police ................................ 6

    2.    Leslie White and His Representative Threaten Agents;
          Representative Refuses to Permit Entry onto Property.......................................... 8

    3.    Third Parties Disrupt Survey Efforts at Esther Lentz-Buenger
          Property, Requiring Call to Police ........................................................................ 10

    4.    Affiliate of Troyer Farms, LLC and Troyer Real Estate, LLC
          Threatens to Release Dogs on Agents ................................................................... 11

    5.    Partial Owner of Donmoyer-Resh Property Threatens to Shoot
          Land Agent, Prompting Land Agent to File Police Report and
          Preventing Agents from Traveling to the Property ............................................... 11

    6.    Third Party Threatens to Shoot Survey Crew For Performing
          Surveys on Thomas Collins and Tracy Collins Property..................................... 12

II.    LEGAL STANDARD........................................................................................ 12

III.   ARGUMENT .................................................................................................... 13

    A.    The Court Should Order U.S. Marshal Accompaniment for Future
          Notice and Surveys onto the White, Lentz-Buenger, Troyer, Hill,
          Donmoyer-Resh, and Collins Properties. ........................................... 14

    1.    U.S. Marshal Accompaniment onto the White, Lentz-Buenger,
          Hill, Troyer, Donmoyer-Resh, and Collins Properties is Necessary
          and Appropriate in This Case. ............................................................................. 14

    2.    U.S. Marshal Accompaniment onto the White, Lentz-Buenger,
          Hill, Troyer, Donmoyer-Resh, and Collins Properties Will Aid the
          Court's Jurisdiction and Protect the Integrity of the Court's
          Preliminary Injunction. ........................................................................................ 18

3.      U.S. Marshal Accompaniment onto the White, Lentz-Buenger, Hill, Troyer, Donmoyer-Resh, and Collins Properties is Agreeable to the Usages and Principles of Law.................................................................... 19

B.      The Court Should Establish an Expedited Procedure for Evaluating the Need for U.S. Marshal Accompaniment on Additional Properties Where Necessary............................................................... 20

1.      An Expedited Procedural Order is Necessary and Appropriate in this Case. .......................................................................................... 21

2.      An Expedited Procedural Order Will Aid the Court's Jurisdiction and Protect the Integrity of the Court's Preliminary Injunction. ......................... 21

3.      An Expedited Procedural Order is Consistent with the Usages and Principles of Law. ................................................................................. 22

IV.     CONCLUSION............................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*APG Hous., LLC v. Moore*,
  2016 WL 1048004 (D. Md. Mar. 11, 2016) ................................................................... 19, 20

*Mt. Valley Pipeline, LLC v. 4.72 Acres of Land*,
  529 F. Supp. 3d 563 (W.D. Va. 2021) ............................................................................ 13, 18

*Klay v. United Healthgroup, Inc.*,
  376 F.3d 1092 (11th Cir. 2004) ...................................................................................... 18, 19

*Pa. Bureau of Corr. v. U.S. Marshals Serv.*,
  474 U.S. 34 (1985) ..................................................................................................... 13, 14, 15

*Price v. Johnston*,
  334 U.S. 266, 282 (1948) ..................................................................................................... 14

*United States v. N.Y. Tel. Co.*,
  434 U.S. 159 (1977) ....................................................................................................... 13, 15

*U.S. Bank, NA. v. B R Penn Realty Owner LP*,
  137 F.4th 104 (3d Cir. 2025) ............................................................................................... 19

*Wong v. Lubetkin (In re 40 Lake View Drive*, LLC),
  2018 WL 1665697 (D.N.J. Apr. 6, 2018) ............................................................................ 19

**Statutes**

All Writs Act, 28 U.S.C § 1651(a) ................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 70(c) ............................................................................................................... 20

Fed. R. Civ. P. 70(d) ............................................................................................................... 20

## INTRODUCTION

Petitioner PSEG Renewable Transmission LLC ("PSEG" or "the Company") hereby respectfully moves the Court for: (1) an order instructing the U.S. Marshal's Service to accompany the Company to six properties where the Company's agents have so far been threatened, intimidated, or denied access to conduct the surveys permitted by the Amended Preliminary Injunction (ECF 268); and (2) an order establishing a procedure for future requests for U.S. Marshal assistance where necessary to safely execute the Amended Preliminary Injunction.

Many of the Company's interactions with Respondents since the issuance of the Amended Preliminary Injunction have been cooperative.  But there have been continuing threats of violence against the Company's surveyors on social media, and certain property owners have refused access, threatened armed violence, and engaged in intimidation tactics.  This conduct, combined with public statements of non-involvement from local law enforcement offices, is of great concern to the Company as its surveyors attempt to conduct surveys required by various State agencies and authorized by this Court.  Accordingly, the Company seeks U.S. Marshal assistance for six properties where a Respondent or third parties have threatened the Company's surveyors with physical violence and thus interfered with the Company's ability to safely conduct these surveys.  Moreover, to the extent additional instances arise that threaten the safety of the Company's surveyors, the Company respectfully asks the Court to establish an expedited procedure for future requests for U.S. Marshal assistance.

The Company has engaged in months of outreach with Respondents, expended significant resources to hire personal security, and attempted to work with local law enforcement agencies to ensure that all surveys can be safely completed.  Notwithstanding these efforts, certain Respondents and other individuals have put the Company in an untenable position where they cannot carry out the Amended Preliminary Injunction without putting employees and contractors

in harm's way. The ongoing intimidation and threats of violence to the Company and its surveyors on social media exacerbate this risk. The Company thus respectfully requests the Court grant the relief sought herein, which the Court is empowered to do under the All Writs Act, 28 U.S.C § 1651(a).

One day prior to filing this Motion, the Company sent a copy of the Motion and all supporting exhibits to opposing counsel and requested that they confirm whether their clients consented to the relief sought herein. *See* **Exhibit 1** (Declaration of Emily Wilson ("Wilson Decl.") ¶ 11). Counsel for Arentz Family, LP, *et al.*[1] did not take a position on the motion. *See id*. (Wilson Decl., Ex. C). Counsel for Brandon Hill, *et al.*[2] did not take a position on the motion but advised that Brandon Hill would "take affirmative steps to . . . ensure compliance with the access order, including accommodating marshals or whatever else is directed by the Court." *Id*. Counsel for Dell Generation Farms, LLC, *et al.*[3] and Counsel for Peter and John Radio Fellowship, Inc. did not respond. *Id*.

## I.    BACKGROUND

On June 20, 2025, the Court granted the Company's motion for a preliminary injunction to begin surveys related to the Maryland Piedmont Reliability Project ("MPRP"). ECF 254

---

[1] Arentz Family,LP, Barney's Farm, LLC, Charles William Bond, Morgan Davis Bond, Charlotte Ruth Bixler, Morris L. Bohlayer, Sharon A. Bohlayer, Gary J. Brockmeyer, Nancy M. Brockmeyer, Esther Johann Lentz-Buenger, Helen L. Bull, Chistopher D. Cockey, Carmen Cockey, Thomas B. Collins, Tracey W. Collins, Diane M. Cook, James R. Cook, Robert L. Donmoyer, Dorothy I. Donmoyer, Petrice Marie Donmoyer-Resh, Richard M. Doster, The Dug Hill Rod & Gun Club, Keith Emerson Ensor, Kevin Lee Ensor, Zhejun Fan, Joseph L. Gover, Raina C. Gover, HZ Properties, LLC, Bryan Hendrix, Connie Hendrix, Kimberly A. Johnston, Mohamad A. Kourani, Nada E. Kourani, Julia Lu, John D. Meader, Deborah H. Maeder, Nancy P. MacBride, Carl E. Miller, Betty Lou Miller (Deceased), Catherine V. Miller, Kenneth E. Miller, Fay Ann Miller, Wayne D. Miller, Benjamin Eugene Nusbaum, Kenneth Eugene Nusbaum, Chris N. Resh, Rebecca Irene Scollan, Robert H. Stickles, Sr., Alene R. Stickles, Erich Charles Steiger, Troyer Farms, LLC, Troyer Real Estate, LLC, Matt Unkle, Tom Unkle, Leslie Alfred White, Justin Wright, and Amy Gayle Youngblood.

[2] Brandon Hill, Joseph Gover, Michael Davis, Judith Fiedler, Henry Whitaker, Nada E. Kourani, Mohamad Kourani, C. William Knobloch, Jr., Carol Knobloch, Dorothy Donmoyer, Petrice Marie Donmoyer-Resh, Chris Resh, and Karen Schleper.

[3] Dells Generation Farms, LLC, Matthew L. Dell, Francis L. Dell, and Marian V. Dell.

(Memorandum Opinion), ECF 255 (Order), ECF 256 (Preliminary Injunction), ECF 268 (Amended Preliminary Injunction).  Pursuant to the Amended Preliminary Injunction, the Company assembled its survey crews and began providing notice of entry to certain Respondents on July 17, 2025 and began conducting field surveys on July 21, 2025.  *See* ECF 272 at 2 (Status Report).

Many of the Company's interactions with Respondents since the issuance of the Amended Preliminary Injunction have been cooperative.  But, as set forth in detail below, the Company is concerned about the safety of its land agents and surveyors given the social media atmosphere in which many individuals are openly calling for violence against the Company's surveyors and land agents, as well as local law enforcement officials' public statements of non-involvement in matters related to the MPRP.

**A. Threats on Social Media and Statements of Non-Involvement from Law Enforcement**

Since the Court issued the Preliminary Injunction (ECF 256), the Company has observed multiple social media posts where social media users have called for violence against the Company's surveyors and agents.  For instance, the Company is aware of the following posted threats, as previously filed with the Maryland Public Service Commission ("PSC") on August 7, 2025 and set forth in **Exhibit 2**:

- "Dig a hole and put them in it." Ex. 2 at 6.

- "Go in the woods and start poppin off shots at a tree they'll run" *Id.* at 4.

- "Idc what a judge told u u come on my property uninvited your leaving in a body bag." *Id.*

- "Good way to get shot."  *Id.*

- "Trespassers should be shot and survivors should be shot again !"  *Id.* at 5.

- "Trespassers should be arrested or shot."  *Id.*

- "They should be met with small arms and forced off private lands! It's time we stop the government and their overreaching." *Id.* at 1.

- "Someone's gonna end up getting met with a property owners 2nd amendment right. FAFO." *Id.* at 2.

- "Most dangerous job in Maryland right now." *Id.* at 2.

- "Time to build a target range." *Id.* at 8.

- "[S]tart shootin." *Id.* at 6.

- "Like I said, gloves come off if appeal fails.  Lawyering has a limit." *Id.* at 8.

- "So landowners cannot in any way interfere with 'land agents.'  But land agents can interfere with activities of land owners.  The phony judge needs to clarify that before any agent sets foot on private property.  My thought would be to build a personal shooting range on any potential right-of-way." *Id.* at 8 (followed by two emojis depicting skulls).

- "I think propane cannons that arbitrarily fire to ward off coyotes would still be fine.  A few beware of dog signs, no trespassing sings.  Keep out signs.  Firing Range.  Enter at your own risk signs.  To start." *Id.* at 9.

- "[I]f someone came on my land with a gun they wouldn't be leaving it." *Id.* at 12.

- "When they come onto your land, keep your guns out and start to target practice." *Id.* at 14.

The Company has also received threatening correspondence.  On August 9, 2025, PSEG Long Island, another subsidiary of the Company's parent company, received an email titled "Maryland land owners" that stated:

> Fuck you and fuck these federal judges you people paid off.  Get the fuck out of our state.  Step on people's land and suffer the consequences.  We believe in the second ammendment [sic] and you mother fuckers are not going to do this.  You fucking migrants need to be hanged and gutted like fucking fish nailed to a tree[.]

*See* **Exhibit 3** (Declaration of Michael Powers ("Powers Decl.")), Ex. C.

The danger posed by these threats is made more acute by local law enforcement's position of non-involvement in matters related to the MPRP.  In April 2025, the Company engaged in

outreach to various local law enforcement offices, expressing concern about potential violence and requesting an area police present to respond to any threats or other incidents that might arise. *See id.*, Exs. A-B. These requests were either rejected or ignored. *See id.*

Then, beginning on April 23, 2025, the sheriffs' offices in Baltimore, Carroll, and Frederick Counties issued public statements indicating their offices would not enforce any court order permitting the Company to survey private property. The Carroll County Sherriff's Office published a letter on Facebook, indicating it will not enforce a civil court order and will not respond to calls for assistance unless a criminal act takes place. **<u>Exhibit 4</u>** (indicating they "will not respond and enforce a civil court order to allow the [Company] onto anyone's property"); **<u>Exhibit 5</u>** (quoting Sheriff DeWees of Carroll County as saying "[PSEG] underestimated the amount of resistance they would get from landowners in my county, and I'm just the latest in the resistance. . . . All they want to do is to go in a straight line and plow through my county primarily, and I'm going to do whatever I can, as the sheriff, to stop that from happening"). The Carroll County Sheriff's office even advised its deputies that [i]f you should get a call from the [Company] advising that a landowner will not let them onto their property . . . explain the policy of the sheriff is to not intervene, and they should seek relief from the courts if owners refuse access." Ex. 4.

The Frederick County Sheriff's Office, Baltimore County Sheriff's Office, and Maryland State Police have issued similar public statements. *See* **<u>Exhibit 6</u>** (indicating the Frederick County Sheriff's Office will not help enforce any court orders granting temporary access as part of the MPRP); Ex. 5 (indicating the Baltimore County police position that "[t]his is a civil matter and, as such, falls outside the department's jurisdiction"); *id.* (quoting the Maryland State Police as stating that they "are not involved and will not intervene in civil disputes unless directed to do so by court order").

Social media users have interpreted these statements of non-involvement as endorsements of lawlessness.  *See* Ex. 2 at 3 (responding to a comment that said "you have no say" over whether the company can enter with, "my 12 guage says otherwise. And the carroll county sheriff isn't coming to help." [all sic in original]).  The Company has continued to attempt to work in good faith with local law enforcement offices to alert them of the ongoing threats against the Company's agents.  *See* **Exhibit 7** (Declaration of James Gilroy), Ex. A.

**B. Specific Threats of Violence by Respondents and Third Parties at Respondents' Properties**

As noted above, the Company began providing notice of entry to certain Respondents on July 17, 2025 and began surveying properties on July 21, 2025.  ECF 272 at 2.  The Company has been and will continue to notice and survey properties on a rolling basis.  The Company will need to return to each property several times to conduct the surveys required by the State of Maryland's Power Plant Research Program.  ECF 268 at 1.

Given the open calls for violence and law enforcement's expressed non-involvement described above, the Company hired private security who are trained in de-escalation measures to accompany land agents and surveyors.  The Company communicated this intention to Counsel for represented Respondents.  *See* ECF 272-3 at 2.  The Company's private security guards accompanying surveyors do not carry firearms on private property.  *Id.*

Nevertheless, in addition to the threats prominent on social media, certain property owners have threatened violence, engaged in intimidation tactics, and refused access to the Company's agents, as set forth in more detail below.

**1. Brandon Hill's Father Threatens Gun Violence and Nearly Runs Into Multiple While Driving ATV, Requiring Call to Police**

On August 4, 2025, the Company's agents arrived at the property owned by Respondent Brandon Hill (the "Hill Property") to perform multiple surveys.  The Company was not able to

complete the surveys, however, due to threats and physical interference and intimidation from Keith Hill, Brandon Hill's father. Keith Hill has previously interacted with the Company's agents in a harassing manner, including approaching Company employees during public outreach events to, in his words, "film [them] and be obnoxious." Ex. 3 (Powers Decl.) ¶ 17.

Soon after the Company's agents' arrival on the Hill Property, Keith Hill drove an all-terrain vehicle ("ATV") to follow one of the survey crews and almost drove right into one of the security agents, stopping only inches away. *See* **Exhibit 8** (Declaration of Ryan Kivitz ("Kivitz Decl.")) ¶ 7. He then began to verbally harass the survey crew. In particular, he called a Black security agent a "monkey" and accused him of "stealing our property, just like we stole your ancestors." *Id*. ¶ 9. Keith Hill then advised he would start "setting up [his] targets for target practice" and would shoot the survey crew in the head if they did not leave. *Id*. ¶ 11.

Keith Hill next drove his ATV to where the survey crews' cars were parked and began filming the license plates on their vehicles, ignoring the agents' requests that he not record their license plate information due to privacy concerns. *See* **Exhibit 9** (Declaration of Tyeler Franklin ("Franklin Decl.")) ¶ 7; Ex. 3, Powers Decl. ¶¶ 22-23. One of the Company's agents began filming Keith Hill to document his behavior. Ex. 9, Franklin Decl. ¶ 10; Ex. 3, Powers Decl. ¶ 24.

Keith Hill then advised agents that he was intending to begin "target practice" and that the Company's agents were going to be "awful uncomfortable because they're right on my range." Ex. 9, Franklin Decl. ¶ 12; Ex. 3, Powers Decl. ¶ 27. Keith Hill walked away, advising the agent, "You motherfuckers are all going to die in hell." Ex. 9, Franklin Decl. ¶ 13. Keith Hill then got back into his ATV, started the engine, and drove it directly at the agent, stopping only inches in front of him. *Id*. ¶ 14. The agent believed that Keith Hill was going to hit him; two additional

7

crew members who also witnessed the incident believed Keith Hill was going to hit the agent as well.  *Id.*; Ex. 3, Powers Decl. ¶ 25; Ex. 8, Kivitz Decl. ¶ 16.

At this time, the Company's agents called 911 and immediately began walking back towards their vehicles to leave the property.  Ex. 9, Franklin Decl. ¶ 15; Ex. 3, Powers Decl. ¶ 27.  But Keith Hill drove back to the area where agents' vehicles were parked, and he parked his ATV in a position that prevented the Company's agents from leaving.  Ex. 9, Franklin Decl. ¶ 16; Ex. 3, Powers Decl. ¶ 28.  The Company's agents asked Keith Hill to move his ATV, and he refused, instead continuing to verbally harass the agents.  Ex. 9, Franklin Decl. ¶ 17.  A county police officer arrived at the scene approximately 20 minutes later and took oral statements from the Company's land agents and surveyors and from Keith Hill.  Ex. 9, Franklin Decl. ¶ 19; Ex 3, Powers Decl. ¶ 29.

### 2.  Leslie White and His Representative Threaten Agents; Representative Refuses to Permit Entry onto Property

The Company has received two threats associated with the property owned by Respondent Leslie White.  First, in response to the Company's November 18, 2024 letter seeking a voluntary right of access, land agent Jenny Archer received a letter from Mr. White on December 11, 2024.  ECF 64-1.  Mr. White wrote:

> No employee or affiliate of PSEG or any company working on it or PJM's behalf should step foot on my property. If my cameras detect any such activity, I will prosecute offenders and defend my property.  You should note that in many communities in Northern Baltimore and Carroll Counties, there is a "shoot first, ask questions later" attitude.  This is not a threat; I'm just giving you a heads up - a courtesy most local homeowners would not provide.  Uninvited strangers who just show up on our properties typically regret their decision.

*Id.*  Mr. White mailed this letter to Ms. Archer's home address, though her home address is not provided in any communications from the Company.  *See* ECF 64-1.  Ms. Archer ceased attempts at further communication with Mr. White upon receipt of this letter.  *See id.*  The receipt of the

letter at her home "made [Ms. Archer] concerned that Mr. White or other landowners may [travel] to [her] home." *See* **Exhibit 10** (Declaration of Jenny Archer ("Archer Decl.") ¶ 10.)

Thereafter, on July 23, 2025, the Company's land agents and surveyors attempted to conduct a survey of Mr. White's property but were unable to do so due to additional threats from an individual who identified herself as the representative of Mr. White. Upon arriving at the property, a self-identified representative of Mr. White, Ms. Weida Stoecker, informed the Company's agents that she did not want them on the property and that they could not go near her crops. *Id.* ¶ 21. When the land agents asked how many feet away from the crops they should remain, Ms. Stoecker said "zero, I don't want you here at all." *Id.* Ms. Stoecker stated that her son would return soon and he would release dogs, "who are not very nice." *Id.* ¶ 23. Ms. Archer, who has decades of experience working with private property owners regarding proposed infrastructure projects, interpreted this comment as a threat. *Id.* ¶ 24. Given Ms. Stoecker's comments and demeanor, the land agents did not attempt to walk the property line as required for a metes and bounds survey. *Id.* ¶ 26.

The land agents and surveyors also observed a newly placed sign on the property that said "Prayer is the best way to meet the lord. Trespassing is the fastest," which depicted an image of a gun. *Id.* ¶ 19; *see id.* Exhibit A (including photograph of the sign). Ultimately, given all of the above interactions, the land agents attempted to gather as much information as they could from existing public rights of way, but they were unable to complete their metes and bounds survey and left the property.[4] *Id.* at ¶ 23.

---

[4] Ms. Stoecker video recorded the incident. Counsel to Petitioner has attempted to gain access to this video through consultation with opposing counsel Mr. Harris. Despite numerous efforts by undersigned counsel, and despite opposing counsel's statement that he would attempt to obtain the video, opposing counsel has not provided the video. *See* Ex. 10, Wilson Decl. ¶ 10.

### 3. Third Parties Disrupt Survey Efforts at Esther Lentz-Buenger Property, Requiring Call to Police

Additionally, surveyors and land agents, including PSEG Construction Manager and Interim Safety Manager Michael Powers, encountered third-party obstruction on July 23, 2025, while surveying Respondent Esther Lentz-Buenger's property (the "Lentz-Buenger property"). A man stopped his vehicle across the street, exited his vehicle and started yelling at the security guard. *See* Ex. 3, Powers Decl. ¶ 11. The man yelled and cursed for several minutes before he left. *Id.* The Company's agents did not engage him. *Id.* Approximately fifteen minutes later, a woman stopped in the same location across from where survey work was being conducted and began yelling at Mr. Powers and the survey crew. *Id.* ¶ 12. Mr. Powers responded they had a job to do and had court approval to come on the property. *Id.* The woman displayed a "STOP MPRP" yard sign, waving it at passing cars in the middle of the roadway, pointing to the construction crew and yelling that MPRP was stealing the land. *Id.*

Shortly thereafter, the man who previously yelled at the Company's agents returned. *Id.* ¶ 13. He began yelling and cursing at the Company's agents, crossed the street, and approached a land agent's vehicle on the passenger side and the security guard's window on the drivers' side. *Id.* The security guard called 911. *Id.* ¶ 14. After 911 was called, the man left. *Id.* at 15. It took approximately 30-40 minutes for law enforcement to arrive, and the Deputy said he could not do much as it was not criminal. *Id.*

While the Company was able to perform the metes and bounds survey at the Lentz-Buenger Property, the incident highlights the risk the Company's representatives face from third parties attempting to interfere with the Court's Order, and the Company is concerned that its agents will encounter additional threatening and harassing behavior when its agents return to this property to conduct additional surveys. *Id.* at 16.

**4. Affiliate of Troyer Farms, LLC and Troyer Real Estate, LLC Threatens to Release Dogs on Agents**

On August 5, 2025, Ms. Archer received a phone call from an individual who identified himself as Steve Troyer. Ex. 10, Archer Decl. ¶ 33. Steve Troyer told Ms. Archer to "stay the hell off my properties." *Id*. ¶ 34. Ms. Archer attempted to ask Steve Troyer his relation to the properties (the "Troyer Properties"), as well as to inform him that she had previously spoken with Mark Troyer, a representative for Respondents Troyer Farms, LLC and Troyer Real Estate, LLC (the "LLCs"), about access to the properties. *Id*. ¶ 35. Steve Troyer, however, spoke over her, told her that he had dogs and would let them out, and he asked if she understood. *Id*. ¶¶ 35-36. Steve Troyer again told Ms. Archer to stay off "his" properties and ended the call. *Id*. ¶ 37. The phone call Ms. Archer received was from the same number at which Ms. Archer has previously communicated with Mark Troyer, which, in addition to the same last name, suggests that Steve Troyer is affiliated with Mark Troyer and both LLCs. *Id*. ¶¶ 30, 33.

**5. Partial Owner of Donmoyer-Resh Property Threatens to Shoot Land Agent, Prompting Land Agent to File Police Report and Preventing Agents from Traveling to the Property**

Respondents Robert Donmoyer, Dorothy Donmoyer, Petrice Marie Donmoyer-Resh, and Chris Resh collectively own one property located in Carroll County (the "Donmoyer-Resh Property"). After sending multiple letters to these Respondents, on December 16, 2024, the Company's agent, William Spradlin, spoke with Petrice Marie Donmoyer-Resh by phone. ECF 27 ¶ 9. During that conversation, Ms. Donmoyer-Resh refused the Company access to the property and stated, "Do not come on my property, I have a gun, and I will shoot you." *Id.* Mr. Spradlin ceased communications with these Respondents, called the police on December 17, 2024, and filed a police report to document the threat. *See* **Exhibit 11** (Declaration of W. Spradlin ("Spradlin Decl.")) ¶ 5. After Mr. Spradlin reported the incident, the police contacted Ms. Donmoyer-Resh

11

for a statement.  *See id.* Ex. A.  Ms. Donmoyer-Resh admitted that she "kind of threatened [Mr. Spradlin]."  *Id.*  Though the Amended Preliminary Injunction authorizes the Company to survey this property after providing notice of entry to these Respondents, the Company has not attempted to provide notice of entry to the Respondents at this property due to the violent nature of Ms. Donmoyer-Resh's threat.  *Id.* ¶ 7.

### 6. Third Party Threatens to Shoot Survey Crew For Performing Surveys on Thomas Collins and Tracy Collins Property

Finally, on August 12, 2025, the Company's agents were threatened and forced off the property owned by Respondents Thomas Collins and Tracy Collins in Carroll County (the "Collins Property").[5]  While performing a metes and bounds survey on the Collins Property, the survey crew was approached by an individual from an adjacent property.  *See* **Exhibit 12** (Declaration of James Pollock ("Pollock Decl.")) ¶ 5.  The individual asked the survey crew what they were doing on the Collins Property, and the survey crew advised that they were performing surveys related to the MPRP.  *Id.* ¶¶ 5-7.  The individual became hostile, began shouting and cursing at the survey crew, and started physically approaching the survey crew.  *Id.* ¶ 8.  The individual yelled, "Get the fuck off my property" and threatened to shoot the survey crew if they ever returned to the property again.  *Id.* ¶ 9.  Due to this individual's hostile conduct and threatening remarks, the survey crew immediately left the premises and called 911.  *Id.* ¶ 13.  It took approximately 30-40 minutes for an officer to arrive.  *Id.*  He advised that there was "not much" the sheriff's department could do unless something bad occurred.  *Id.*

## II.    LEGAL STANDARD

The All Writs Act empowers a federal court to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C

---

[5] Mr. and Ms. Collins fully cooperated with and did not obstruct the Company's efforts to survey the property.

§ 1651(a). "The Act enables a federal court to 'issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *Mt. Valley Pipeline, LLC v. 4.72 Acres of Land*, 529 F. Supp. 3d 563, 566-67 (W.D. Va. 2021) (quoting *In re Am. Honda Motor Co., Inc.*, 315 F.3d 417, 437 (4th Cir. 2003)); *see also Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 40 (1985)). The power conferred by the Act even extends "under appropriate circumstances" to non-parties that "are in a position to frustrate the implementation of a court order or the proper administration of justice," and "encompasses even those who have not taken any affirmative action to hinder justice." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977); *Mt. Valley Pipeline, LLC*, 529 F. Supp. 3d at 567.

### III.    ARGUMENT

The Company files the present Motion out of concern that the threats and acts of intimidation described above may be acted on and lead to violence, as well as obstruction of the Amended Preliminary Injunction. The Court has the power to protect the integrity of its orders, and the U.S. Marshal's Service is the appropriate vehicle to enforce the Amended Preliminary Injunction so that the Company may safely perform the surveys required by the State of Maryland's Power Plant Research Program. The Company seeks U.S. Marshal accompaniment for future notice and surveys on the White, Lentz-Buenger, Hill, Troyer, Donmoyer-Resh, and Collins properties to ensure safe execution of the Amended Preliminary Injunction considering the personal threats the Company has received from those Respondents or from third parties at those properties.

13

Additionally, the Company seeks an order establishing an expedited procedure for evaluating the need for future U.S. Marshal assistance moving forward, given the possibility of additional interference and continuing danger to the Company's land agents and surveyors.

**A. The Court Should Order U.S. Marshal Accompaniment for Future Notice and Surveys onto the White, Lentz-Buenger, Troyer, Hill, Donmoyer-Resh, and Collins Properties.**

The Court is empowered to direct U.S. Marshal accompaniment onto the White, Lentz-Buenger, Hill, Troyer, Donmoyer-Resh, and Collins properties pursuant to the All Writs Act. The All Writs Act empowers a federal court to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S. § 1651(a). As explained below: (1) U.S. Marshal accompaniment upon the White, Lentz-Buenger, Hill, Troyer, Donmoyer-Resh, and Collins properties is necessary and appropriate due to past threats and intimidation and efforts at obstruction; (2) U.S. Marshal accompaniment would aid the Court's jurisdiction by protecting the integrity of Amended Preliminary Injunction; and (3) U.S. Marshal accompaniment is agreeable to the usages and principles in law, as this is the type of relief the U.S. Marshal's Service exists to provide.

**1. U.S. Marshal Accompaniment onto the White, Lentz-Buenger, Hill, Troyer, Donmoyer-Resh, and Collins Properties is Necessary and Appropriate in This Case.**

U.S. Marshal accompaniment on the White, Lentz-Buenger, Hill, Troyer, Donmoyer-Resh, and Collins Properties is necessary and appropriate in this case because law enforcement presence is the only way to achieve the "rational ends" of the Court's preliminary injunction: the safe and swift procurement of land surveys by the Company. The All Writs Act is a "residual source of authority" that is used to issue writs that are not otherwise covered by a statute. *Pa. Bureau of Corr.*, 474 U.S. at 43. It is often employed when there is no alternative way to achieve "the rational ends of law." *Compare Price v. Johnston*, 334 U.S. 266, 282 (1948) (holding the All Writs Act

14

was properly employed to bring a prisoner before the court to argue his own appeal, when there was no alternative way to achieve this goal), *and United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174-75 (1977) (holding a District Court could compel a third party under the All Writs Act to assist the FBI in installing devices under a warrant as there was no statute granting the district court jurisdiction over the only party capable of installing the devices), *with Pa. Bureau of Corr.*, 474 U.S. at 42 n.7 (holding the district court lacked authority under the All Writs Act to compel the Marshals to transport a state prisoner to federal court because the habeas statute already expressly provided for the issuance of a writ "to the person having custody of the person detained").  RP § 12-111, which covers the scope of permissible surveys, does not provide a remedy that will adequately protect the safety of surveyors who face harassment, intimidation threats of violence, and acts of violence that undermine a lawful order of this Court.

The Amended Preliminary Injunction states that the Company "shall be permitted to enter onto the properties of Respondents and to remain on the property to the extent reasonably necessary to make surveys, run lines or levels, or obtain information relating to the acquisition and future use of the properties in connection with the [MPRP]."  ECF 258.  However, the land agents and surveyors cannot practically enter and remain on the property under threat of violence.

First, with respect to the White property, the Company's land agents cannot safely "enter" and "remain" on the property in light of both Mr. White's mailed threat to Ms. Archer and Mr. White's representative's threat to release dogs on the land agents.  Ex. 10, Archer Decl. ¶¶ 8, 23. First, Mr. White has made clear he operates under a "shoot first, ask questions later" mentality, and that he is willing to research and find the personal home addresses of land agents who attempt to enter his property.  *Id.* ¶ 8; ECF 27-1.  Additionally, in attempting to conduct a survey pursuant to the Court's Amended Preliminary Injunction, Mr. White's self-identified representative Ms.

Stoecker threatened to release dogs on the Company's surveyors, prevented surveyors from accessing a majority of the property, and displayed a threatening yard sign intonating that trespassers would be shot and killed. *See* ECF 64-1; Ex. 10, Archer Decl. ¶¶ 23, 19; Ex. 9, Ex. A. Ms. Stoecker took a video of her interactions with the Company's surveyors. The Company requested that Mr. White's counsel provide the video, but it has not been produced. *See* Ex. 1, Wilson Decl. ¶¶ 3-10. The surveyors could not complete the metes and bounds survey due to these threats and intimidation tactics.

Second, with respect to the Lentz-Buenger's property, U.S. Marshal accompaniment is necessary for protection from third parties. Though unclear, the Company's agents believed the third parties that yelled at them while performing the metes and bounds survey were likely neighbors. Ex. 3, Powers Decl. ¶ 16. While the Company's agents were able to complete the metes and bounds survey after the third parties left, the Company will need to complete additional surveys on the property and anticipate additional third party harassment.

Third, with respect to the Hill property, the Company's agents cannot safely "enter" and "remain" on the property in light of Keith Hill's threats of gun violence against the Company's agents, as well as his aggressive driving a moving vehicle toward two agents that led them both to believe they were about to be run over. *Id.* ¶ 25; Ex. 8, Kivitz Decl. ¶ 7; Ex. 9, Franklin Decl. ¶ 14. Due to Keith Hill's conduct, the Company cannot return to the Hill Property to complete the remaining necessary surveys without assuming a risk that Keith Hill may act upon his prior threats. *See* Ex. 9, Franklin Decl. ¶ 18; Ex. 3, Powers Decl. ¶ 30.

Fourth, with respect to the Troyer properties, U.S. Marshal accompaniment is necessary in light of Steve Troyer's threat to release dogs on the Company's agents upon their arrival to the properties. Ex. 10, Archer Decl. ¶ 36. Though the Company cannot confirm the relationship

between Steve Troyer and Mark Troyer, with whom the Company's agents have previously corresponded, it is very likely that the two individuals are related, given their shared last name and the fact that Steve Troyer called from the same phone number Mark Troyer has used previously. *Id*. ¶ 33.

Fifth, with respect to the Donmoyer-Resh property, the Company's land agents cannot safely "enter" and "remain" on the property after receiving a direct threat that Ms. Donmoyer "ha[s] a gun, and [] will shoot [CLS land agent William Spradlin]." *See* ECF 27-1; Ex. 11, Spradlin Decl. ¶ 4. This threat was taken seriously upon its issuance and a police report was filed in December 2024. Ex. 11, Spradlin Decl. ¶ 5; Ex. 11, Ex. A. Because of this threat, the Company has not yet attempted to notify Ms. Donmoyer-Resh of a proposed entry. Ex. 11, Spradlin Decl. ¶ 7. Rather, U.S. Marshal accompaniment is necessary to serve notice upon Ms. Donmoyer-Resh's property, and accompaniment is necessary for the safe completion of the permitted surveys.

Finally, with respect to the Collins property, U.S. Marshal accompaniment is necessary given the explicit threats against the Company's surveyors. *See* Ex. 12, Pollock Decl. ¶ 9. While the individual who made the threats is not known to the Company, it is likely that he is an owner of the property adjacent to the Collins property. *See id.* ¶ 5. As a result, there is a risk that this individual may be monitoring for the Company's agents' return and will follow up on his threats against them.

For all six properties, the need for U.S. Marshal involvement is heightened due to local law enforcement's public statements of non-involvement. Exs. 4-6. As explained above, local law enforcement has publicly stated that it will not involve itself in civil disputes related to the MPRP, unless (and until) a criminal act actually takes place. Exs. 3-5. Officers that have responded to the above-described incidents have advised the same. *See* Ex. 12, Pollock Decl. ¶ 13; Ex. 3,

Powers Decl. ¶ 15. This means that local law enforcement will not proactively prevent criminal acts of violence against the Company's surveyors with law enforcement presence. *See* Ex. 3, Powers Decl., Exs. A-B. As demonstrated by the land agent's calls to 911 at Ms. Lentz-Buenger's property and Mr. Collins' property, local law enforcement can take between 20-40 minutes to arrive. Ex. 3, Powers Decl. ¶ 29; Ex. 12, Pollock Decl. ¶ 13. This delayed response after a confrontation is insufficient to proactively prevent criminal conduct and acts of violence and intimidation on properties where there has been a clear threat against the Company's agents.

In sum, there is no alternative way to achieve "the rational ends" of the Court's Amended Preliminary Injunction that would allow the Company to "enter" and "remain" on these properties to complete the surveys required by the State of Maryland's Power Plant Research Program, as the Company's land agents experience threats of violence, harassment, and intimidation. U.S. Marshal assistance is needed to proactively assist the execution of the Court's order in circumstances such as these, where threats and intimidation necessitate additional safety protections for the Company's agents to be able to do their jobs.

>    **2. U.S. Marshal Accompaniment onto the White, Lentz-Buenger, Hill, Troyer, Donmoyer-Resh, and Collins Properties Will Aid the Court's Jurisdiction and Protect the Integrity of the Court's Preliminary Injunction.**

U.S. Marshal accompaniment to the White, Lentz-Buenger, Hill, Troyer, Donmoyer-Resh, and Collins Properties is appropriate because it will aid the Court's jurisdiction and protect the integrity of the Court's preliminary injunction. An order directing U.S. Marshal accompaniment is appropriate where, as in this case "the court must act to protect its own jurisdiction." *Mt. Valley Pipeline, LLC*, 529 F. Supp. 3d at 567 (citing *Miller v. Donald*, 541 F.3d 1091, 1096 (11th Cir. 2008); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 n.11 (11th Cir. 2004)). Parties seeking an order under the All Writs Act usually point "to some ongoing proceeding, or some past

18

order or judgment, the integrity of which is being threatened by some action or behavior." *Klay*, 376 F.3d at 1101. Additionally, "a court may enjoin almost any conduct 'which, left unchecked, would have . . . the practical effect of diminishing the court's power to bring the litigation to a natural conclusion.'" *Id.* (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)). In this case, the integrity of the Court's preliminary injunction is undermined by threats of violence, intimidation tactics, and third-party interference.

### 3. U.S. Marshal Accompaniment onto the White, Lentz-Buenger, Hill, Troyer, Donmoyer-Resh, and Collins Properties is Agreeable to the Usages and Principles of Law.

Finally, assistance of the U.S. Marshal's Service is "agreeable to the usages and principles of law" because the U.S. Marshal's Service exists as the executive arm of the judicial branch. Indeed, "'for the execution of judgments in the federal system,' . . . the U.S. Marshals are appropriately substituted for the local sheriff." *U.S. Bank, NA. v. B R Penn Realty Owner LP*, 137 F.4th 104, 115 (3d Cir. 2025) (quoting *LNC Invs. v. Dem. Rep. Congo*, 69 F. Supp. 2d 607, 613 n.8 (D. Del. 1999)).

Numerous courts have issued orders requesting U.S. Marshal assistance for the enforcement of court orders in comparable contexts. *See, e.g.*, *APG Hous., LLC v. Moore*, 2016 WL 1048004, at *3 n.4 (D. Md. Mar. 11, 2016) ("The proposed Writ of Assistance here is designed to enforce this court's Order to defendant to vacate the property[.]"); *Wong v. Lubetkin (In re 40 Lake View Drive*, LLC), 2018 WL 1665697, at *2 (D.N.J. Apr. 6, 2018) (involving an enforcement order whereby U.S. Marshals were instructed to assist in the repossession of property by force and arrest any person who interferes after warning such person that interference may result in his arrest). Even the Federal Rules of Civil Procedure provide a mechanism by which a party may

seek U.S. Marshal assistance for execution of certain orders.[6] *See* Fed. R. Civ. P. 70(c) (providing

a party may seek U.S. Marshal assistance to execute a writ of attachment or sequestration against

the disobedient party's property to compel obedience); *id.* Rule 70(d) (providing a party may seek

U.S. Marshal assistance to enforce a judgment or order for possession). Accordingly, the U.S.

Marshal's Service is the appropriate executive agency for enforcement of the Court's order.

### B. The Court Should Establish an Expedited Procedure for Evaluating the Need for U.S. Marshal Accompaniment on Additional Properties Where Necessary.

As noted above, many of the Company's interactions with Respondents to date have been

cooperative, and the Company does not anticipate a need for U.S. Marshal assistance with every

property. Given the increasing calls for intimidation and violence on social media, however, the

Company anticipates there will be a need to request additional U.S. Marshal accompaniment in

the event Respondents or third parties engage in conduct that obstructs survey access. *See*

*generally* Ex. 1. Accordingly, the Company proposes tailoring U.S. Marshal assistance to specific

properties when circumstances make such accompaniment necessary.

Specifically, the Company proposes that after a threatening or obstructive incident occurs,

the Company notify Chambers within 24 hours of the incident, and the Court may seek to schedule

and conduct a telephone conference with all counsel within seven days of such notice. The counsel

for Respondent, or the Respondent if not represented, would be served with the notice to

Chambers. During such a conference, the Company can establish the facts surrounding the

incident creating a necessity for U.S. Marshal accompaniment.

---

[6] As Judge Gesner noted in *Apg Housing, LLC v. Moore*, although Rule 70(d) authorized the clerk of court to issue writs of assistance, "the recommendation that plaintiff make a sufficient showing of the need for the Writ mandates judicial review of plaintiff's application." 2016 WL 1048004, at *3 n.4 (noting the Court's authority to issue such writs under the All Writs Act).

This procedural order is (1) necessary and appropriate in light of the likelihood that the Company's land agents will encounter additional resistance and obstruction; (2) necessary to aid the Court in protecting the integrity of its preliminary injunction; and (3) agreeable to the usages and principles of law.

### 1. An Expedited Procedural Order is Necessary and Appropriate in this Case.

First, an expedited procedural order is necessary and appropriate in this case where it is likely that the Company's agents will encounter additional resistance, threats of violence or intimidation from Respondents and third parties. Calls for violence against Company surveyors online, and law enforcement's public non-involvement together creates a dangerous environment whereby the Company's agents may be subject to criminally violent acts or threats of such acts that impede the ability of the Company to "enter" and "remain" upon the properties and conduct the necessary surveys. *See* ECF 268.

Furthermore, there is no harm in establishing an expedited procedural order. If there are no additional obstructive or threatening incidents, then additional U.S. Marshal assistance will not need to be requested. Rather, the existence of an expedited procedural order will likely serve as an additional deterrent to obstructive efforts, as there will be timely intervention from the Court in response to threats, violence, or obstruction of the Amended Preliminary Injunction.

### 2. An Expedited Procedural Order Will Aid the Court's Jurisdiction and Protect the Integrity of the Court's Preliminary Injunction.

Second, and as explained above, threats made by Respondents and third parties only serve to obstruct and undermine the integrity of the Amended Preliminary Injunction. If the Company were required to file individual motions for each incident, and if the Company followed the ordinary procedural schedule that accompanies such motions, it could take over a month to receive an order directing U.S. Marshal assistance. *See* Loc. R. 105.2 (D. Md. 2025) (providing fourteen

days for response to a motion and fourteen days for a reply).  Furthermore, it will likely take time to coordinate with the U.S. Marshal's Service to arrange logistics surrounding accompaniment onto specific properties.  Each of these practical delays would serve to undermine the integrity of the Amended Preliminary Injunction.  Accordingly, an expedited procedure that permits telephone conferences within seven days of an obstructive incident will better effectuate the purpose the Court's preliminary injunction.[7]

### 3. An Expedited Procedural Order is Consistent with the Usages and Principles of Law.

Finally, an expedited procedural order is consistent with the usages and principles of law. "Courts have broad authority to control their dockets, and decisions related to timing issues are reviewable only for abuse of discretion." *McLaurin v. Terminix Int'l Co., LP*, 13 F.4th 1232, 1237 (11th Cir. 2021); *Amdur v. Lizars*, 372 F.2d 103, 106 (4th Cir. 1967) (recognizing an inherent power "in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants[.]" (quoting *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)); *Anthony v. BTR Auto. Sealing Sys.*, 339 F.3d 506, 516 (6th Cir. 2003); ("[T]rial courts have inherent power to control their dockets[.]").  Proceeding in an expedited fashion does not prejudice Respondents.  The Court has already held the Company has a right to "enter" and "remain" on the Respondents' properties as necessary to complete a series of non-invasive surveys.  ECF 268.  The presence of U.S. Marshals does not impose any additional burden on Respondents, as the U.S. Marshals will be present to keep the peace, and their presence will become necessary only after a Respondent or third party engages in intimidation or an obstructive or threatening action.

---

[7] For these reasons, the Company also files a motion for an expedited briefing schedule for consideration of this Motion.

## IV.     CONCLUSION

For the reasons stated above, the Company respectfully requests the Court grant the Company's motion requesting the U.S. Marshal's Service accompany the Company's agents onto the White, Lentz-Buenger, Hill, Troyer, Donmoyer-Resh, and Collins properties to serve notice and/or conduct future surveys.  Additionally, the Company requests the Court grant the Company's motion requesting an expedited procedure, such as telephonic conferences, to address any future requests for U.S. Marshal assistance.

Date: August 15, 2025                                    Respectfully submitted,

*/s/ Kurt J. Fischer*
Kurt J. Fischer
Venable LLP
210 W. Pennsylvania Avenue
Suite 500
Towson, MD 21204
(410) 494-6200
kjfischer@venable.com

J. Joseph Curran III
Christopher S. Gunderson
Kenneth L. Thompson
Susan R. Schipper
Emily J. Wilson
Venable LLP
750 E. Pratt Street
Suite 900
Baltimore, MD 21202
(410) 244-7400
jcurran@venable.com
csgunderson@venable.com
klthompson@venable.com
srschipper@venable.com
ejwilson@venable.com

*Attorneys for Petitioner PSEG*
*Renewable Transmission LLC*

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of August, 2025, a copy of the foregoing Motion for

U.S. Marshal Assistance was served through the CM/ECF System on all counsel of record.

*/s/ Emily J. Wilson*
Emily J. Wilson

24