**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| PSEG RENEWABLE TRANSMISSION LLC, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Case No. 1:25-cv-01235 |
| ARENTZ FAMILY, LP, *et al.*, | * | |
| | * | |
| Respondents. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| PSEG RENEWABLE TRANSMISSION LLC, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Case No. 1:25-cv-03352 |
| BELFAST FARMS, LLC, *et al.*, | * | |
| | * | |
| Respondents. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PETITIONER'S RENEWED PARTIAL MOTION FOR U.S. MARSHALS ASSISTANCE**

Pursuant to ECF 293 in *PSEG 1*,[1] Petitioner PSEG Renewable Transmission LLC ("PSEG" or "the Company") hereby respectfully moves the Court for an order instructing the U.S. Marshals Service to accompany the Company to three properties near where the Company's agents have been threatened and intimidated by non-party Roger Dean McGrew, Jr. while conducting the surveys permitted by the Preliminary Injunctions entered in *PSEG 1* and *PSEG 3*.[2]

Mr. McGrew resides on a property to which this Court granted the Company access in *PSEG 3*. In August 2025, he threatened to shoot surveyors and chased them off a neighboring property, as documented in the Company's initial Motion for U.S. Marshals Assistance filed in *PSEG 1*. At that time, the Company sought the assistance of the U.S. Marshals Service to return to the property out of concern that Mr. McGrew—whose identity was then unknown to the Company—would monitor for the Company's return and continue threatening the Company's agents.

That has now happened. Just weeks ago, when surveyors traveled to the same property, Mr. McGrew surveilled them from his porch and then followed them to a local gas station where he berated them, called them offensive slurs, and referenced his 45-caliber pistol.

Due to Mr. McGrew's ongoing behavior, the Company's agents cannot safely travel to the property where Mr. McGrew resides to conduct the surveys and gather the information that it is legally entitled to do. The Company's agents likewise cannot safely travel to the two adjacent properties that are both visible and accessible from the property where Mr. McGrew resides. The Company must return to all three properties, however, to continue its survey work and obtain the information being required by the Maryland Public Service Commission ("PSC") and the Maryland Power Plant Research Program ("PPRP") for its application for a Certificate of Public

---

[1] *PSEG Renewable Transmission LLC v. Arentz Family, LP, et al.*, Case No. 1:25-cv-01235.
[2] *PSEG Renewable Transmission LLC v. Belfast Farms, LLC, et al.*, Case No. 1:25-cv-3352.

1

Convenience and Necessity ("CPCN") to proceed. So that the Company may complete this work, the Company respectfully requests the assistance of U.S. Marshals for its remaining notice and survey efforts on these three properties. The Company has concurrently filed a Petition for Injunctive Relief against Mr. McGrew pursuant to Md. Code Ann., Real Property ("RP") § 12-111(e), as well as a Motion for a Preliminary Injunction that prohibits Mr. McGrew from continuing to interfere with the Company's survey efforts.

## BACKGROUND

On August 15, 2025, the Company filed a motion seeking the assistance of U.S. Marshals on six properties, including the property owned by Thomas Collins and Tracy Collins the "Collins Property"), Respondents in *PSEG 1*. (ECF 282.) The Collins Property is located at 4180 Rupp Road, Manchester, Maryland 21102.

As described therein, on August 12, 2025, while performing a metes and bounds survey on the Collins Property, the survey crew was approached by an individual from an adjacent property who verbally harassed the crew and threatened to shoot the survey crew if they ever returned to the property again. (ECF 282 at 16.) On September 2, 2025, this Court denied the Company's motion, "conclud[ing] that the circumstances—at least at present—do not warrant sending U.S. Marshals to accompany PSEG and its agents to those properties." (ECF 293 at 2.) This Court continued, however, that "if PSEG is unable to complete future surveys or is obstructed from doing so due to interference, PSEG may file a new motion or renewed motion." (*Id*. at 3.)

In *PSEG 3*, the Company sought and obtained a preliminary injunction against Jeffrey and Michele Rhoten, whose property is located at 4101 York Road, Manchester, Maryland 21102 (the "Rhoten Property"). The Company also sought and obtained a preliminary injunction against Ruth Smith, whose property is located at 4152 Rupp Road, Manchester, Maryland 21102 (the "Smith

Property"). The Collins, Rhoten, and Smith Properties are adjacent to one another, as depicted by their street address numbers (4180, 4101, and 4152, respectively) in Figure 1, below:

**Figure 1**



On January 7, 2026, a survey team returned to the Collins Property with an enhanced security presence to complete the metes and bounds survey they began on August 12, 2025. (Exhibit 1, Declaration of Andrew Rachid ("Rachid Decl.") ¶ 8.) While on the property, team members observed an individual watching them from the adjacent Smith Property. (Ex. 1, Rachid Decl. ¶ 9; Exhibit 2, Declaration of Michael "Shane" Nichols ("Nichols Decl.") ¶ 4.) A team member who had also been present for the August 12, 2025 survey recognized the individual as

the same person who had threatened surveyors and chased them off the Collins Property that day. (Ex. 1, Rachid Decl. ¶ 9.)

After completing work on the Collins Property, team members traveled to a nearby Sheetz gas station for a scheduled break. (Ex. 2, Nichols Decl. ¶ 5; Exhibit 3, Declaration of Michael Powers ("Powers Decl.") ¶ 4.) Some team members entered the Sheetz, while others remained in the parking lot. (Ex. 2, Nichols Decl. ¶ 5; Ex. 3, Powers Decl. ¶ 4.) The same individual who team members had observed on the Smith Property arrived to the Sheetz. (Ex. 2, Nichols Decl. ¶ 6.) He approached certain team members in the parking lot and asked them if they were part of the "power line project." (Ex. 2, Nichols Decl. ¶ 7.) After the team members responded that they were, the individual stated that he had seen them "out there" and was making sure that no "lines" were crossed so there wouldn't be any "issues." (Ex. 2, Nichols Decl. ¶ 7.) He then called the team members "motherfuckers" and accused them of "stealing" land. (Ex. 2, Nichols Decl. ¶ 7.) After a team member replied that the individual could speak with the Company or PJM Interconnection, L.L.C., the regional transmission organization, about his concerns, the individual stated that the team members were choosing their families over his family and again called the team members "motherfuckers." (Ex. 2, Nichols Decl. ¶ 8.)

At that point, the individual entered the Sheetz, where other team members were located. (Ex. 3, Powers Decl. ¶ 6.) The individual called the team members "cocksuckers" and then approached the register to purchase cigarettes, at which point he referenced owning a "45 cal." (Ex. 3, Powers Decl. ¶¶ 5, 6.) A team member who heard this statement understood it to be a reference to a 45-caliber pistol. (Ex. 3, Powers Decl. ¶ 6.) The individual then asked for three packs of Marlboro cigarettes, paid for them, and walked out of the store. (Ex. 3,

Powers Decl. ¶ 6.) Using a photo taken by a team member, police identified the vehicle driven by the individual as belonging to Roger Dean McGrew Jr., who resides at 4152 Rupp Road, New Windsor, Maryland 21102—the same address as the Smith Property. (Ex. 3, Powers Decl. ¶¶ 7-8.)

The Company must return to the Collins, Smith, and Rhoten Properties to conduct future surveys, as well as to provide notices of those surveys, as required by the Preliminary Injunctions in both *PSEG 1* and *PSEG 3*. (Ex. 3, Powers Decl. ¶¶ 9-10.) Due to Mr. McGrew's escalating threatening behavior, however, the Company cannot safely return to these properties to complete this work and have been forced to place a hold on these properties. (Ex. 3, Powers Decl. ¶ 11.) While the safety concerns are particularly acute on the Smith Property, where Mr. McGrew resides, his close proximity and ability to access both the Collins and Rhoten Properties raises significant concerns for future survey work on those properties as well.

So that the Company may safely enter and conduct work on these properties—and, in turn, gather the information required by State regulators for the Company's CPCN application to proceed—the Company respectfully seeks the assistance of the U.S. Marshals Service, as set forth in more detail below.

## LEGAL STANDARD

The All Writs Act empowers a federal court to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C § 1651(a). "The Act enables a federal court to 'issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *Mt. Valley Pipeline, LLC v. 4.72 Acres of Land*, 529 F. Supp. 3d 563, 566-67 (W.D. Va. 2021) (quoting *In re Am. Honda Motor Co., Inc.*, 315 F.3d 417, 437

(4th Cir. 2003)); *see also Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 40 (1985)). The power conferred by the Act even extends "under appropriate circumstances" to non-parties that "are in a position to frustrate the implementation of a court order or the proper administration of justice," and "encompasses even those who have not taken any affirmative action to hinder justice." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977); *Mt. Valley Pipeline, LLC*, 529 F. Supp. 3d at 567.

## ARGUMENT

### I. The Court Should Order U.S. Marshals Accompaniment for Future Notice and Surveys onto the Collins, Smith, and Rhoten Properties.

The Court is empowered to direct U.S. Marshals accompaniment onto the Collins, Smith, and Rhoten Properties pursuant to the All Writs Act. The All Writs Act empowers a federal court to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S. § 1651(a). As will be explained below: (1) U.S. Marshals accompaniment upon the Collins, Smith, and Rhoten Properties is necessary and appropriate due to past threats and intimidation and efforts at obstruction; (2) U.S. Marshals accompaniment would aid the Court's jurisdiction by protecting the integrity of Amended Preliminary Injunction; and (3) U.S. Marshals accompaniment is agreeable to the usages and principles in law, as this is the type of relief the U.S. Marshals Service exists to provide.

### II. U.S. Marshals Accompaniment onto the Collins, Smith, and Rhoten Properties is Necessary and Appropriate in This Case.

U.S. Marshals accompaniment on the Collins, Smith, and Rhoten Properties is necessary and appropriate in this case because law enforcement presence is the only way to achieve the "rational ends" of the Court's preliminary injunctions: the safe and swift procurement of land surveys by the Company. The All Writs Act is a "residual source of authority" that is used to issue writs that are not otherwise covered by a statute. *Pa. Bureau of Corr.*, 474 U.S. at 43. It is often

6

employed when there is no alternative way to achieve "the rational ends of law." *Compare Price v. Johnston*, 334 U.S. 266, 282 (1948) (holding the All Writs Act was properly employed to bring a prisoner before the court to argue his own appeal, when there was no alternative way to achieve this goal), *and United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174-75 (1977) (holding a District Court could compel a third party under the All Writs Act to assist the FBI in installing devices under a warrant as there was no statute granting the district court jurisdiction over the only party capable of installing the devices), *with Pa. Bureau of Corr.*, 474 U.S. at 42 n.7 (holding the district court lacked authority under the All Writs Act to compel the Marshals to transport a state prisoner to federal court because the habeas statute already expressly provided for the issuance of a writ "to the person having custody of the person detained").  RP § 12-111, which covers the scope of permissible surveys, does not provide a remedy that will adequately protect the safety of surveyors who face harassment, intimidation threats of violence, and acts of violence that undermine a lawful order of this Court.

The Preliminary Injunctions in *PSEG 1* and *PSEG 3* state that the Company "shall be permitted to enter onto the properties of Respondents and to remain on the property to the extent reasonably necessary to make surveys, run lines or levels, or obtain information relating to the acquisition and future use of the properties in connection with the [MPRP]." (*PSEG 1*, ECF 256; *PSEG 3*, ECF 112.)  However, the Company's survey teams cannot practically enter and remain on the Collins, Smith, or Rhoten Properties under threat of violence and harassment from Mr. McGrew.

When the Company first sought assistance from U.S. Marshals regarding the Collins Property, the Company argued:

> While the individual who made the threats is not known to the Company, it is likely that he is an owner of the property adjacent to the Collins Property. [Citation omitted]. As a result, there is a risk that this individual may be monitoring for the Company's agents' return and will follow up on his threats against them.

(ECF 282 at 21.) The Company's concerns from August have indeed been realized. Mr. McGrew is a resident of the Smith Property, directly adjacent to the Collins Property. He has monitored the Company's work on that property. His behavior has escalated to following the Company's agents to another location, where he again harassed the Company's agents. Most concerning, he continues to threaten the use of a firearm; after threatening in August that he would "shoot" surveyors if they returned, he has again referenced his ownership of a firearm while harassing agents.

To that end, the Company cannot reasonably safely return to the Smith Property, where Mr. McGrew resides, nor to the Collins or Rhoten Properties, which are visible and accessible from the Smith Property. As a result, there is no alternative way to achieve "the rational ends" of the Preliminary Injunctions in *PSEG 1* and *PSEG 3* that would allow the Company to "enter" and "remain" on these properties to complete the surveys required by State regulators. U.S. Marshals assistance is needed to proactively assist the execution of the Court's orders on these properties.

### III. U.S. Marshals Accompaniment onto the Collins, Smith, and Rhoten Properties Will Aid the Court's Jurisdiction and Protect the Integrity of the Court's Preliminary Injunction.

U.S. Marshals accompaniment to the Collins, Smith, and Rhoten Properties is appropriate because it will aid the Court's jurisdiction and protect the integrity of the Court's preliminary injunction. An order directing U.S. Marshals accompaniment is appropriate where, as in this case "the court must act to protect its own jurisdiction." *Mt. Valley Pipeline, LLC*, 529 F. Supp. 3d at 567 (citing *Miller v. Donald*, 541 F.3d 1091, 1096 (11th Cir. 2008); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 n.11 (11th Cir. 2004)). Parties seeking an order under the All Writs Act

usually point "to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by some action or behavior." *Klay*, 376 F.3d at 1101.  Additionally, "a court may enjoin almost any conduct 'which, left unchecked, would have . . . the practical effect of diminishing the court's power to bring the litigation to a natural conclusion.'" *Id.* (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)).  In this case, the integrity of the Court's preliminary injunction is undermined by threats of violence, intimidation tactics, and interference by Mr. McGrew.

### IV. U.S. Marshal Accompaniment onto the Collins, Smith, and Rhoten Properties is Agreeable to the Usages and Principles of Law.

Finally, assistance of the U.S. Marshal's Service is "agreeable to the usages and principles of law" because the U.S. Marshal's Service exists as the executive arm of the judicial branch.  Indeed, "'for the execution of judgments in the federal system,' . . . the U.S. Marshals are appropriately substituted for the local sheriff." *U.S. Bank, NA. v. B R Penn Realty Owner LP*, 137 F.4th 104, 115 (3d Cir. 2025) (quoting *LNC Invs. v. Dem. Rep. Congo*, 69 F. Supp. 2d 607, 613 n.8 (D. Del. 1999)).

Numerous courts have issued orders requesting U.S. Marshal assistance for the enforcement of court orders in comparable contexts.  *See, e.g.*, *APG Hous., LLC v. Moore*, 2016 WL 1048004, at *3 n.4 (D. Md. Mar. 11, 2016) ("The proposed Writ of Assistance here is designed to enforce this court's Order to defendant to vacate the property[.]"); *Wong v. Lubetkin (In re 40 Lake View Drive*, LLC), 2018 WL 1665697, at *2 (D.N.J. Apr. 6, 2018) (involving an enforcement order whereby U.S. Marshals were instructed to assist in the repossession of property by force and arrest any person who interferes after warning such person that interference may result in his arrest).  Even the Federal Rules of Civil Procedure provide a mechanism by which a party may

9

seek U.S. Marshal assistance for execution of certain orders.[3] *See* Fed. R. Civ. P. 70(c) (providing a party may seek U.S. Marshal assistance to execute a writ of attachment or sequestration against the disobedient party's property to compel obedience); *id.* Rule 70(d) (providing a party may seek U.S. Marshal assistance to enforce a judgment or order for possession). Accordingly, the U.S. Marshals Service is the appropriate executive agency for enforcement of the Court's order.

**CONCLUSION**

For the reasons stated above, the Company respectfully requests the Court grant the Company's motion requesting the U.S. Marshals Service accompany the Company's agents onto the Collins, Smith, and Rhoten Properties to serve notice and/or conduct future surveys. A proposed order is attached herewith.

Date: February 12, 2026

Respectfully submitted,

*/s/ Kurt J. Fischer*
Kurt J. Fischer
Venable LLP
210 W. Pennsylvania Avenue
Suite 500
Towson, MD 21204
(410) 494-6200
kjfischer@venable.com

J. Joseph Curran III
Christopher S. Gunderson
Kenneth L. Thompson
Susan R. Schipper
Emily J. Wilson
Venable LLP
750 E. Pratt Street
Suite 900

---

[3] As Judge Gesner noted in *Apg Housing, LLC v. Moore*, although Rule 70(d) authorized the clerk of court to issue writs of assistance, "the recommendation that plaintiff make a sufficient showing of the need for the Writ mandates judicial review of plaintiff's application." 2016 WL 1048004, at *3 n.4 (noting the Court's authority to issue such writs under the All Writs Act).

                                        Baltimore, MD 21202
                                        (410) 244-7400
                                        jcurran@venable.com
                                        csgunderson@venable.com
                                        klthompson@venable.com
                                        srschipper@venable.com
                                        ejwilson@venable.com

                                        *Attorneys for Petitioner PSEG*
                                        *Renewable Transmission LLC*

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 12th day of February, 2026, a copy of the foregoing Motion for U.S. Marshals Assistance was served through the CM/ECF System on all counsel of record.

                   */s/ Emily J. Wilson*
                   Emily J. Wilson